UNITED STATES OF AMERICA
DISTRICT COURT OF MASSACHUSETTS

04 10095 DPW

FILED
IN CLERK'S OFFICE
2004 JAN 15 A 11:04
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| STATES RESOURCES CORPORATION | ) MAGISTRATE JUDGE _____ |
| Plaintiff | ) |
| | ) |
| | ) Civil Action No. |
| | ) |
| v. | ) |
| | ) |
| MICHAEL CAPIZZI, | ) |
| CATHERINE R. CAPIZZI, | ) |
| THE ARCHITECTURAL TEAM, INC., | ) |
| GARRETT, INC., | ) |
| JOHN CONNOLLY, JR., | ) |
| MASSACHUSETTS DEPARTMENT OF REVENUE, | ) |
| JAMES GRUMBACH | ) |
| | ) |
| Defendants | ) |
| | ) |

AMOUNT $150
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK EbM
1-15-04

## INTERPLEADER COMPLAINT

### PARTIES

1) States Resources Corporation (hereafter "States") is a corporation duly organized under the laws of the State of Iowa.

2) Defendant Michael Capizzi is an individual residing at 236 Lincoln Road, Lincoln, MA 01773.

3) Defendant Catherine R. Capizzi is an individual residing at 236 Lincoln Road, Lincoln, MA 01773.

4) Defendant Architectural Team, Inc. is a Massachusetts corporation duly organized under the laws of the Commonwealth of Massachusetts.

84, of the Middlesex South Registry of Deeds. *See* Exhibit B (a true and correct copy of the Mortgage is attached hereto).

13) On March 17, 1989, Catherine Capizzi became bound by all of the terms and conditions of the aforesaid Note and Mortgage by accepting an ownership interest by Quitclaim Deed. Said Deed was recorded in the Middlesex South Registry of Deeds at Book 19715, Page 41. *See* Exhibit C (a true and correct copy of the Deed is attached hereto).

14) On August 14, 1992, Winchendon Savings Bank was declared insolvent or in such condition to be unsafe for the Bank to continue doing business and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. *See* Exhibit D (a true and correct copy of the Assignment of Mortgages and Security Documents is attached hereto).

15) Said Mortgage was assigned by FDIC to First Essex, dated January 18, 1995, and recorded in the Middlesex South Registry of Deeds at Book 25259, Page 594. Then by assignment dated June 28, 1995, said mortgage was assigned back to FDIC. *See* Exhibit E (a true and correct copy of said Assignment is attached hereto).

16) On September 30, 1998, said Mortgage was assigned to States through a Loan Sale Agreement with the FDIC. Said assignment was recorded in the Middlesex South Registry at Book 29864, Page 441. *See* Exhibit F (a true and correct copy of said Assignment is attached hereto).

17) On July 26, 2001, Michael Capizzi and Catherine Capizzi filed suit against States in the United States District Court, District of Massachusetts (Civil Action # 1:01-cv-11298) ("First Complaint"). The Capizzis alleged that a) States had breached the terms of the Amended Note and associated loan documents; b) States had violated G.L. c. 93A, § 9, by failing to abide by the terms of the Amended Note, by engaging in unfair debt collection practices, by failing to disburse real estate tax payments from the escrow account and by failing to give a proper accounting of all payments made, owed and held in escrow.

18) On September 30, 2002, the Court dismissed without prejudice Capizzis' First Complaint, based on the Plaintiffs' failure to meet their discovery responsibilities and, therefore, failure to prosecute their claims pursuant to Fed. R. Civ. P. 41(b), 37 (a)(4). *See* Exhibit G (a true and correct copy of said Order is attached hereto).

19) On December 2, 2002, Michael Capizzi and Catherine Capizzi once again filed suit against States in the United States District Court, District of Massachusetts (Civil Action # 1:02-cv-12319) ("Second Complaint"). The Capizzis reasserted the allegations made in their First Complaint filed on July 26, 2001 (See Paragraph 15) and further requested injunctive relief, enjoining States from conducting a Mortgage Sale of the property.

20) Michael Capizzi filed a Pro Se voluntary petition for Bankruptcy under Chapter 13 of the United States Bankruptcy Code on February 28, 2003. States filed a Motion to Dismiss the Chapter 13 Bankruptcy Case No. 03-11621 on March 3, 2003, on grounds that the Debtor's secured debts were greater than eight hundred seventy-one thousand five hundred fifty and 00/100 dollars ($871,550.00) at the time of the filing, and thus, the Debtor was not an eligible Chapter 13 debtor.

21) On March 5, 2003, in response to States's Motion to Dismiss, the Bankruptcy Court granted relief from stay in order to proceed to judgment in U.S. District Court concerning Capizzis' Second Complaint. *See* Exhibit H (a true and correct copy of said Order is attached hereto).

22) On May 1, 2003, the Bankruptcy Court granted debtor's Motion to Dismiss and pursuant to 11 U.S.C. 105(A) and 11 U.S.C. 109(G)(2), Michael Capizzi was barred from re-filing for 180 days, since he voluntarily dismissed his filing after a Motion for Relief had been filed.

23) On May 20, 2003, Catherine Capizzi filed a Pro Se voluntary petition for Bankruptcy under Chapter 11 of the United States Bankruptcy Code ("Second Capizzi Bankruptcy"). That same day, States filed a Motion to Dismiss Pursuant to 11 U.S.C. 105(a) and 11 U.S.C. 109(g)(2) and a

Motion for Relief from Stay for Cause Pursuant to 11 U.S.C. 362(d)(1). States then filed a Motion for Relief from Stay to Proceed to Judgment in the District Court on May 23, 2003.

24) States was granted relief to proceed to judgment in U.S. District Court concerning Capizzis' Second Complaint on May 28, 2003. *See* Exhibit I (a true and correct copy of said Order is attached hereto).

25) On June 24, 2003, the Court granted States Motion for Relief from Stay for Cause pursuant to 11 U.S.C. Section 362(d)(1) based on the fact that, as was determined as a matter of law in the state court, Catherine Capizzi did not have an interest in the subject property and, therefore, her bankruptcy did not affect the foreclosure. *See* Exhibit J (true and correct copies of the Order and Memorandum are attached hereto).

26) On June 9, 2003, the Court dismissed with prejudice the Capizzis' Second Complaint pursuant to Fed. R. Civ. P. 41(b), as a result of Plaintiffs failing to plead or defend against the Counterclaims of States. *See* Exhibit K (a true and correct copy of said Order is attached hereto).

27) Further, the Court granted judgment for States against the Capizzis in the sum of eight hundred seventy-five thousand two hundred three and 38/100 dollars ($875,203.38). *See* Exhibit L (a true and correct copy of said Judgment is attached hereto).

28) Michael Capizzi filed a Pro Se voluntary petition for Bankruptcy under Chapter 11 of the United States Bankruptcy Code on September 25, 2003 at 3:38 p.m., the day before the foreclosure sale scheduled for September 26, 2003 at 11:30 a.m. ("Third Capizzi Bankruptcy").

29) On September 26, 2003, the Bankruptcy Court held that based on the record of proceedings in this case and the debtor's prior case, Michael Capizzi was barred from filing another bankruptcy petition until November 1, 2003 and dismissed the Third Capizzi Bankruptcy. *See* Exhibit M (a true and correct copy of said Order is attached hereto).

30) Pursuant to Massachusetts General Law and after proper notice, Plaintiff held a Foreclosure Auction due to the debtor's default on the mortgage on July 24, 2003. Linda Micu was the

highest bidder at that auction for two million and 00/100 dollars ($2,000,000.00); however, Linda Micu defaulted and the sale never occurred, with the five thousand and 00/100 dollars ($5,000.00) forfeited. Upon information and belief, Linda Micu was a straw for the Capizzis to fraudulently delay transfer of the property. *See* Exhibit N (true and correct copies of the Memorandum of Terms and Conditions for the Purchase at Mortgagee's Foreclosure Sale and check are attached hereto).

31) Pursuant to Massachusetts General Law and after proper notice, Plaintiff held another Foreclosure Auction on September 26, 2003. The property was sold to Kevin P. Duffy for one million two hundred thousand and 00/100 dollars ($1,200,000.00). *See* Exhibit O (a true and correct copy of the Foreclosure Deed is attached hereto).

32) The Architectural Team, Inc. has an Attachment on the subject property recorded on or about December 14, 1994 and carried forward on December 16, 1999 in the amount of six hundred thousand and 00/100 dollars ($600,000.00) and recorded at the Middlesex South Registry of Deeds at Book 25104, Page 393. An Execution for five hundred forty-one thousand one hundred fifty-two and 81/100 dollars ($541,152.81) was issued on September 24, 2003 and recorded on September 25, 2003 in the Middlesex South Registry of Deeds. Pursuant to the aforesaid Execution, The Architectural Team, Inc. may possess a claim to any surplus proceeds from the auction sale of the subject property. *See* Exhibit P (true and correct copies of the Attachment and Execution are attached hereto).

33) James Grumbach has an Attachment on the subject property dated December 30, 1998 in the amount of twenty-five thousand and 00/100 dollars ($25,000.00) and recorded at the Middlesex South Registry of Deeds. Pursuant to the aforesaid Attachment, James Grumbach may possess a claim to any surplus proceeds from the auction sale of the subject property. *See* Exhibit Q (a true and correct copy of the Execution is attached hereto).

34) The Massachusetts Department of Revenue has a Tax Lien against the subject property dated March 37, 2002 in the amount of nine thousand six hundred twelve and 17/100 dollars ($9,612.17) and recorded at the Middlesex South Registry of Deeds. Pursuant to the aforesaid Lien, the Massachusetts Department of Revenue may possess a claim to any surplus proceeds from the auction sale of the subject property. *See* Exhibit R (a true and correct copy of the Tax Lien is attached hereto).

35) John Connolly, Jr. has an Attachment on the subject property dated March 19, 2003 in the amount of thirty-five thousand six hundred thirty-eight and 53/100 dollars ($35,638.53) and recorded at the Middlesex South Registry of Deeds at Book 38430, Page 483. Pursuant to the aforesaid Attachment, John Connolly, Jr. may possess a claim to any surplus proceeds from the auction sale of the subject property. *See* Exhibit S (a true and correct copy of the Execution is attached hereto).

36) Garrett, Inc., the auction company who sold the mortgaged premises on September 26, 2003 and provided advertising for the auction, has not yet been paid in full. Per its invoice dated October 16, 2003, Garrett, Inc. is owed six thousand four hundred fifty-nine and 20/100 dollars ($6459.20) for advertising fees and a commission of forty-two thousand and 00/100 dollars ($42,000.00). Upon information and belief, if the property at 236 Lincoln Road was purchased at the auction by a third party in an amount greater than the balance due on the foreclosing first mortgage, Garrett, Inc.'s commission would be 3.5% of the sale price. The Mortgage states that the "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs . . ." Pursuant to its invoice, Garrett, Inc. may possess a claim to any surplus proceeds from the auction sale of the subject property. *See* Exhibit T (a true and correct copy of the Invoice is attached hereto).

37) Michael Capizzi and Catherine Capizzi defaulted on a Mortgage executed on or about October 19, 1988, by Michael Capizzi to Winchendon Savings Bank in the principle amount of seven hundred fifty thousand and 00/100 dollars ($750,000.00) on the property commonly known as 236 Lincoln Road, Lincoln, Massachusetts. Pursuant to the aforesaid Mortgage and related title interest, Michael Capizzi and/or Catherine Capizzi may possess a claim to any surplus proceeds from the auction sale of the subject property. *See* Exhibit B (a true and correct copy of the Mortgage is attached hereto).

38) Through email communications between November 7, 2003 and November 10, 2003, the Plaintiff and The Architectural Team, Inc. negotiated an agreement in which the Plaintiff would disburse a check in the amount of two hundred ten thousand ninety-six and 33/100 dollars ($210,096.33) from the proceeds of the foreclosure sale to The Architectural Team, Inc. In consideration of the payment, The Architectural Team, Inc. would sign an Indemnification Agreement, warranting that the sum of two hundred ten thousand ninety-six and 33/100 dollars ($210,096.33) is due and owing to it and indemnifying the Plaintiff and the Plaintiff's attorneys from any and all actions, proceedings, claims, demands, costs, damages and expenses in connection with or arising out of the payment to The Architectural Team, Inc. of the said funds. Pursuant to that agreement, the Plaintiff, through its attorneys, sent The Architectural Team, Inc. a check for two hundred ten thousand ninety-six and 33/100 dollars ($210,096.33) on November 11, 2003. The Architectural Team, Inc. negotiated the aforesaid check on or about November 13, 2003. However, The Architectural Team, Inc. has yet to sign the Indemnification Agreement. *See* Exhibit U (true and correct copies of the Indemnification Agreement, the check, Emails, and the Letter to Ring Law Firm are attached hereto).

39) The total outstanding debt that was due to the plaintiff is nine hundred thirty-two thousand six hundred thirty and 87/100 dollars ($932,630.87). This amount has been collected by the Plaintiff, but continues to accrue legal fees and costs.

40) The Surplus amount is estimated to be two hundred seventy-two thousand three hundred sixty-nine and 13/100 dollars ($272,369.13).

41) As of January 27, 2003, the date the most current title examination ended, there were no other lien holders on the subject property.

WHEREFORE, Plaintiff respectfully requests this court to:
1. Award Plaintiff its further accrued interest and incurred fees and costs;
2. Determine who is entitled to the surplus of funds;
3. Award costs and attorney's fees to Plaintiff;
4. Determine reasonable auctioneer costs;
5. Award such other relief as this Court deems just and proper.

Date: January____7____, 2004        _____
                                    John A. Doonan, Esq.
                                    BBO# 547838
                                    Erin E. Powers, Esq.
                                    BBO# 654644
                                    Doonan, Graves & Longoria, L.L.C.
                                    100 Cummings Center, Suite 213C
                                    Beverly, MA 01915
                                    (978) 921-2670