UNITED STATES OF AMERICA
DISTRICT COURT OF MASSACHUSETTS

_____

| | |
|---|---|
| STATES RESOURCES CORPORATION | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | )    Civil Action No. 04 10095 DPW |
| | ) |
| v. | ) |
| | ) |
| MICHAEL CAPIZZI, | ) |
| CATHERINE R. CAPIZZI, | ) |
| THE ARCHITECTURAL TEAM, INC., | ) |
| GARRETT, INC., | ) |
| JOHN CONNOLLY, JR., | ) |
| MASSACHUSETTS DEPARTMENT OF REVENUE, | ) |
| JAMES GRUMBACH | ) |
| | ) |
| Defendants | ) |

_____ )

**STATES RESOURCES CORPORATION'S REPLY TO THE AMENDED
COUNTERCLAIMS OF THE ARCHITECTURAL TEAM, INC.**

NOW COMES the Plaintiff and Defendant in Counterclaim, States Resources

Corporation ("States"), by and through its attorneys, Doonan, Graves & Longoria, LLC, and

respectfully replies to Defendant and Plaintiff in Counterclaim's, The Architectural Team, Inc.

("TAT"), Counterclaims as follows:

1. States admits that pursuant to Chapter 28 Section 1332 of the United States Code

    diversity exists in this action, that States is a foreign entity and that The Architectural

    Team is a Massachusetts business corporation, but States is without knowledge and

information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph.  In addition, States is the holder of the Note executed by Michael Capizzi in the amount of seven hundred fifty thousand and 00/100 ($750,000.00) dollars.  Further, Judge Woodlock's decision dated June 9, 2003, found States to be the holder of the Note and that States was owed the sum of eight hundred seventy-five thousand two hundred three and 38/100 ($875,203.38) dollars by Michael Capizzi.

## PARTIES

1. States admits the allegations set forth in paragraph 1 of the Counterclaims that TAT is a Massachusetts business corporation located in Chelsea, Suffolk County, Massachusetts.

2. States admits the allegations set forth in paragraph 2 of the Counterclaims.

## COUNTERCLAIM ONE

3. States repeats its allegations in paragraphs 1-41 of the Complaint.  Further, States asserts the following regarding the allegations set forth in paragraph 3 of the Counterclaims:

    1. States is a valid corporation and the subject foreclosure was done in conformity with Massachusetts law and TAT lacks standing to challenge any state court decision in this action.

    2. States admits that Michael Capizzi is also known as Michael J. Capizzi as set forth in paragraph 2 of TAT's Answer.

    3. No response is required for paragraph 3 of TAT's Answer.

    4. No response is required for paragraph 4 of TAT's Answer.

5.  States is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 5 of TAT's Answer.

6.  No response is required for paragraph 6 of TAT's Answer.

7.  No response is required for paragraph 7 of TAT's Answer.

8.  No response is required for paragraph 8 of TAT's Answer.

9.  No response is required for paragraph 9 of TAT's Answer.

10. No response is required for paragraph 10 of TAT's Answer.

11. States denies the allegations set forth in paragraph 11 of TAT's Answer and further states that Judge Woodlock's decision dated June 9, 2003, found States to be the holder of the Note and that States was owed the sum of eight hundred seventy-five thousand two hundred three and 38/100 ($875,203.38) dollars by Michael Capizzi.

12. No response is required for paragraph 12 of TAT's Answer.

13. No response is required for paragraph 13 of TAT's Answer.

14. No response is required for paragraph 14 of TAT's Answer.

15. No response is required for paragraph 15 of TAT's Answer.

16. States denies the allegations set forth in paragraph 16 of TAT's Answer, and further states that on September 30, 1998, the Note and Mortgage executed by Michael Capizzi and delivered to Winchendon Savings Bank in the amount of seven hundred fifty thousand and 00/100 dollars ($750,000.00), dated October 19, 1988, were assigned to States through a Loan Sale Agreement with the FDIC.  Said assignment was recorded in the Middlesex South Registry at Book 29864, Page 441.  Because a

mortgage is collateral to the debt it secures, the assignment of a note and mortgage go hand-in-hand.  Further, Judge Woodlock's decision dated June 9, 2003, found States to be the holder of the Note and that States is owed the sum of eight hundred seventy-five thousand two hundred three and 38/100 ($875,203.38) dollars by Michael Capizzi.  Further, States is the holder of the subject Promissory Note and TAT lacks standing to challenge the state court decision.

17. No response is required for paragraph 17 of TAT's Answer.

18. No response is required for paragraph 18 of TAT's Answer.

19. No response is required for paragraph 19 of TAT's Answer.

20. No response is required for paragraph 20 of TAT's Answer.

21. No response is required for paragraph 21 of TAT's Answer.

22. No response is required for paragraph 22 of TAT's Answer.

23. No response is required for paragraph 23 of TAT's Answer.

24. No response is required for paragraph 24 of TAT's Answer.

25. States admits the allegations set forth in paragraph 25 of TAT's Answer.

26. No response is required for paragraph 26 of TAT's Answer.

27. No response is required for paragraph 27 of TAT's Answer.

28. No response is required for paragraph 28 of TAT's Answer.

29. No response is required for paragraph 29 of TAT's Answer.

30. States admits upon information and belief that Linda Micu acted as a straw for the Capizzis at the July 24, 2003 auction, but specifically denies the remaining allegations set forth in paragraph 30 of TAT's Answer and

further states that it had a duty to conduct the foreclosure auction in good

faith and with reasonable diligence, which it did.

31. No response is required for paragraph 31 of TAT's Answer.

32. States is without knowledge and information sufficient to form a belief as

to the truth of the allegations set forth in paragraph 32 of TAT's Answer.

33. States is without knowledge and information sufficient to form a belief as

to the truth of the allegations set forth in paragraph 33 of TAT's Answer

and further states that this action was instituted in order for this Court to

determine who has rights to the surplus funds and how the funds should be

distributed.

34. States is without knowledge and information sufficient to form a belief as

to the truth of the allegations set forth in paragraph 34 of TAT's Answer,

but specifically denies the remaining allegations set forth in paragraph 34

of TAT's Answer and further states that this action was instituted in order

for this Court to determine who has rights to the surplus funds and how the

funds should be distributed.

35. States is without knowledge and information sufficient to form a belief as

to the truth of the allegations set forth in paragraph 35 of TAT's Answer,

but specifically denies the allegations set forth in paragraph 35 of TAT's

Answer and further states that this action was instituted in order for this

Court to determine who has rights to the surplus funds and how the funds

should be distributed.

36. States is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36 of TAT's Answer and further states that this action was instituted in order for this Court to determine who has rights to the surplus funds and how the funds should be distributed.

37. No response is required for paragraph 37 of TAT's Answer.

38. States denies the allegations set forth in paragraph 38 of TAT's Answer and further states that this action was instituted in order for this Court to determine who has rights to the surplus funds and how the funds should be distributed.

39. No response is required for paragraph 39 of TAT's Answer.

40. No response is required for paragraph 40 of TAT's Answer.

41. No response is required for paragraph 41 of TAT's Answer.

## AFFIRMATIVE DEFENSES

1. TAT's affirmative defense set forth in paragraph 1 of the Affirmative Defenses is not applicable.  States complaint clearly states a claim upon which relief can be given, as said complaint clearly requests that the Court determine each defendant's right to the surplus funds and how said funds should be distributed.

2. TAT's affirmative defense set forth in paragraph 2 of the Affirmative Defenses is not valid.  As holder of a mortgage executed and delivered by Michael Capizzi, States had the right to initiate foreclosure proceedings

and conduct a public foreclosure auction when Michael Capizzi defaulted on his loan.

3.  States denies the allegations set forth in paragraph 3 of TAT's Affirmative Defenses and further asserts that as the holder of a mortgage executed and delivered by Michael Capizzi, States had the right to foreclose on the mortgaged premises in order to collect the amount due and owing to it.

4.  TAT's affirmative defense set forth in paragraph 4 of the Affirmative Defenses is not valid.  Said Note and Mortgage, entered into and delivered by Michael Capizzi to Winchendon Savings Bank in the amount of seven hundred fifty thousand and 00/100 dollars ($750,000.00), dated October 19, 1988, and recorded on October 21, 1988 at Book 19420, Page 84, of the Middlesex South Registry of Deeds, was assigned on September 30, 1998, to States through a Loan Sale Agreement with the FDIC.  Because a mortgage is collateral to the debt it secures, the assignment of a note and mortgage go hand-in-hand.  Further, Judge Woodlock's decision dated June 9, 2003, found States to be the holder of the Note and that States was owed the sum of eight hundred seventy-five thousand two hundred three and 38/100 ($875,203.38) dollars by Michael Capizzi.  *See* Exhibit F in the Complaint.

5.  States denies the allegations set forth in paragraph 5 of TAT's Affirmative Defenses.

6.  States denies the allegations set forth in paragraph 6 of TAT's Affirmative Defenses and further states that it initiated this lawsuit for the Court to

determine the reasonableness of the auctioneer's fee pursuant to States agreement with the auctioneer.

7.  States denies the allegations set forth in paragraph 7 of TAT's Affirmative Defenses.

8.  In response to TAT's affirmative defense set forth in paragraph 8 of the Affirmative Defenses, States did apply the five thousand & 00/100 ($5,000.00) dollars deposit from Linda Micu at the July 24, 2003 auction to the debt owed to it by Michael Capizzi.   Said deposit was the only one received by States, pursuant to that auction sale.

9.  States denies the allegations set forth in paragraph 9 of TAT's Affirmative Defenses.  States filed the Interpleader complaint in order for this Court to determine who has rights to the surplus funds and how said funds should be distributed.

10. In response to TAT's affirmative defense set forth in paragraph 10 of the Affirmative Defenses, paragraph 19 of the mortgage allowed for the collection of "all reasonable costs and expenses incurred in pursuing the remedies . . ." *See* Exhibit B in the Complaint.  Pursuant to the mortgage, the fees and costs incurred in the foreclosure auction were reasonable; however, the reasonableness of the auctioneer's commission is to be determined by this court.  Further, Judge Feeney's Order, dated September 26, 2003, specifically states that "States be allowed to collect reasonable costs and attorney fees pursuant to Paragraph 7 of the Mortgage for legal services rendered in conjunction with this motion [for relief from stay]"

and has no other affect on the subject foreclosure or fees and costs incurred. *See* Exhibit A (a true and correct copy of the Order is attached hereto).

11. States denies the allegations set forth in paragraph 11 of TAT's Affirmative Defenses. States filed the Interpleader complaint in order for this Court to determine who has rights to the surplus funds and how said funds should be distributed.

12. States denies the allegations set forth in paragraph 12 of TAT's Affirmative Defenses. Further, it is up to this Court to determine the reasonableness of the auctioneer's fee.

13. With regards to paragraph 13 of TAT's Affirmative Defenses, through the discovery process, TAT will have the right to review all fees and costs incurred during the foreclosure proceeding, subject to Judge Woodlock's decision dated June 9, 2003, that found States was owed fees and costs in the amount of fifty eight thousand two hundred twenty and 01/100 ($58,220.01) dollars.

14. States denies the allegations set forth in paragraph 14 of TAT's Affirmative Defenses. Further, it is up to this Court to determine how the surplus funds will be distributed and through the discovery process TAT will have the right to review all fees and costs incurred during the foreclosure proceeding, subject to Judge Woodlock's decision dated June 9, 2003, that found States was owed fees and costs in the amount of fifty eight thousand two hundred twenty and 01/100 ($58,220.01) dollars.

15. In response to TAT's affirmative defense set forth in paragraph 15 of the Affirmative Defenses, States, as holder of a mortgage executed and delivered by Michael Capizzi, had the right to apply the five thousand & 00/100 ($5,000.00) dollars deposit from Linda Micu at the July 24, 2003 auction to the debt owed by Michael Capizzi.   Further, States denies the remaining allegations set forth in paragraph 15 of TAT's Affirmative Defenses.

16. States denies the allegations set forth in paragraph 16 of TAT's Affirmative Defenses.  Further, through email communications between November 7, 2003 and November 10, 2003, the Plaintiff and The Architectural Team, Inc. negotiated an agreement in which the Plaintiff would disburse a check in the amount of two hundred ten thousand ninety-six and 33/100 dollars ($210,096.33) from the proceeds of the foreclosure sale to The Architectural Team, Inc.  In consideration of the payment, The Architectural Team, Inc. would sign an Indemnification Agreement, warranting that the sum of two hundred ten thousand ninety-six and 33/100 dollars ($210,096.33) is due and owing to it and indemnifying the Plaintiff and the Plaintiff's attorneys from any and all actions, proceedings, claims, demands, costs, damages and expenses in connection with or arising out of the payment to The Architectural Team, Inc. of the said funds.  Pursuant to that agreement, the Plaintiff, through its attorneys, sent The Architectural Team, Inc. a check for two hundred ten thousand ninety-six and 33/100 dollars ($210,096.33) on November 11, 2003.  The

Architectural Team, Inc. negotiated the aforesaid check on or about

November 13, 2003.  However, The Architectural Team, Inc. has yet to

sign the Indemnification Agreement.  *See* Exhibit U in the Complaint.

17. States denies the allegations set forth in paragraph 17 of TAT's

Affirmative Defenses and repeats and incorporates by reference paragraph

16 herein.

18. States denies the allegations set forth in paragraph 18 of TAT's

Affirmative Defenses and further answers that said allegations are

irrelevant to this matter.

19. States denies the allegations set forth in paragraph 19 of TAT's

Affirmative Defenses.  Further, it is up to this Court to determine how

much Garrett, Inc. should be paid for its services.

4. States denies the allegations set forth in paragraph 4 of the Counterclaims.

5. States denies the allegations set forth in paragraph 5 of the Counterclaims and further

states that Judge Woodlock's decision dated June 9, 2003, found States to be the

holder of the Note and that States was owed the sum of eight hundred seventy-five

thousand two hundred three and 38/100 ($875,203.38) dollars by Michael Capizzi.

<u>COUNTERCLAIM TWO</u>

6. States repeats and incorporates by reference its answers to paragraphs 1-5 of the

Counterclaims.

7. States denies the allegations set forth in paragraph 7 of the Counterclaims.

8.  States denies the allegations set forth in paragraph 8 of the Counterclaims and further states that it is up to this Court to determine how much Garrett, Inc. should be paid for its services.

9.  States denies the allegations set forth in paragraph 9 of the Counterclaims and further states that this action was instituted in order for this Court to determine who has rights to the surplus funds and how the funds should be distributed.

10. States denies the allegations set forth in paragraph 10 of the Counterclaims.

<u>COUNTERCLAIM THREE</u>

11. States admits the allegations set forth in paragraph 11 of the Counterclaims.

12. States admits the allegations set forth in paragraph 12 of the Counterclaims.

13. States admits the allegations set forth in paragraph 13 of the Counterclaims.

14. States is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 of the Counterclaims.

15. States is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 15 of the Counterclaims.

16. States is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 of the Counterclaims.

17. States is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 17 of the Counterclaims.

18. States denies the allegations set forth in paragraph 18 of the Counterclaims.

19. States denies the allegations set forth in paragraph 19 of the Counterclaims and further states that Linda Micu had in her possession a certified check in the amount of

five thousand and 00/100 ($5,000.00) dollars at the time of the foreclosure auction

and, therefore, qualified as a bidder at the auction.

20. States denies the allegations set forth in paragraph 20 of the Counterclaims and

further states that it was under no duty to reveal a copy of the certified deposit check

of the highest bidder at the July 24, 2003 auction to TAT.

21. States denies the allegations set forth in paragraph 21 of the Counterclaims and

further states that if a second highest bidder is not present at a foreclosure auction and

the highest bidder defaults in purchasing the subject property, States's only duty is to

proceed with scheduling another foreclosure auction pursuant to Massachusetts law.

22. States denies the allegations set forth in paragraph 22 of the Counterclaims.

<u>COUNTERCLAIM FOUR</u>

States repeats and incorporates by reference it answers to paragraphs 1-22 of the

Counterclaims.

23. States admits that it did conduct a foreclosure auction, through Garrett, Inc., on

September 26, 2003, but is without knowledge and information sufficient to form a

belief as to the truth of the remaining allegations set forth in paragraph 23 of the

Counterclaims.

24. States admits specifically that the locus in quo was sold by Garrett, Inc. for States

Resources Corporation for one million two hundred thousand and 00/100

($1,200,000.00) dollars, subject to and in conformity with Massachusetts foreclosure

laws, and that the sale was based on good faith and fair dealing and for the highest bid

price known to States, but specifically denies the remaining allegations set forth in

paragraph 24 of the Counterclaims and further states that the sale price of a piece of

real property at a foreclosure auction can only be based on the bids made at that auction. TAT was present at the auction and had the opportunity to bid at the auction in order to ensure that its interest was protected.

25. States denies the allegations set forth in paragraph 25 of the Counterclaims and further states that this action was instituted in order for this Court to determine who has rights to the surplus funds and how the funds should be distributed. TAT was present at the auction and had the opportunity to bid at the September 26, 2003 auction in order to ensure that its interest was protected.

26. States is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26 of the Counterclaims and further states that it had a duty to conduct the sale in good faith and with reasonable diligence and did so. TAT was present at the auction and had the opportunity to bid at the September 26, 2003 auction in order to ensure that its interest was protected.

27. States is without knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the Counterclaims and further states that under Massachusetts law, States was required to sell the Capizzi property by public auction to the highest bidder. Leonard Florence was not a registered bidder at any of the Capizzi foreclosure auctions and, therefore, the so-called "back-up offer" is without relevance or legal consequence.

28. States denies the allegations set forth in paragraph 28 of the Counterclaims and further states that it had a duty to conduct the sale in good faith and with reasonable diligence and did so.

29. States denies the allegations set forth in paragraph 29 of the Counterclaims and further states that under Massachusetts law, States was required to sell the Capizzi property by public auction to the highest bidder. The highest bid at the September 26, 2003 auction was for one million two hundred thousand and 00/100 ($1,200,000.00) dollars. There was no bidder present at the September 26, 2003 auction that bid two million and 00/100 ($2,000,000.00) dollars. TAT was present at the auction and had the opportunity to bid at the auction in order to ensure that its interest was protected.

30. States denies the allegations set forth in paragraph 30 of the Counterclaims and further states that no person made a two million and 00/100 ($2,000,000.00) dollars bid at the public foreclosure auction held on September 26, 2003. TAT was present at the auction and had the opportunity to bid at the September 26, 2003 auction in order to ensure that its interest was protected.

31. States denies the allegations set forth in paragraph 31 of the Counterclaims and further states that under Massachusetts law, States was required to sell the Capizzi property by public auction to the highest bidder. At the July 24, 2003 public auction, States accepted the highest bid of two million and 00/100 ($2,000,000.00) dollars, but the bidder later defaulted and the sale did not occur. States subsequently held another foreclosure auction on September 26, 2003, where the property sold for one million two hundred thousand and 00/100 ($1,200,000.00) dollars. TAT was present at both auctions and had the opportunity to bid at the auctions in order to ensure that its interest was protected.

32. States denies the allegations set forth in paragraph 32 of the Counterclaims.

33. States denies the allegations set forth in paragraph 33 of the Counterclaims and further states that TAT was present at the auctions and had the opportunity to bid at the July 24, 2003 and the September 26, 2003 auctions in order to ensure that its interest was protected. States had a duty to conduct the sale by public auction and in good faith, with reasonable diligence and did so.

34. States denies the allegations set forth in paragraph 34 of the Counterclaims.

<u>AFFIRMATIVE DEFENSES</u>

1. TAT's Counterclaims fail to state a claim for which relief can be given.

2. TAT is barred by the doctrine of unclean hands.

3. TAT is barred by the doctrine of laches.

4. TAT is estopped by its own conduct from asserting any claim for relief against States.

5. TAT has, by breaching the indemnification agreement with States, waived the claims made in its Counterclaims.

6. TAT has waived any claim against States.

7. TAT is barred from asserting its claims as a result of its own bad faith and commercially unreasonable conduct.

8. Pursuant to the Rooker-Feldman doctrine, this Court does not have subject matter jurisdiction to entertain TAT's Counterclaims to the extent that said Counterclaims may be read as an attempt on the part of TAT to ask this Court to review a Massachusetts state court decision.

9. TAT's Counterclaims are barred by Judge Woodlock's decision, dated June 9, 2003, in which Judge Woodlock found States to be the holder of the Note and that States is

owed the sum of eight hundred seventy-five thousand two hundred three and 38/100

($875,203.38) dollars by Michael Capizzi.

10. TAT lacks standing to bring its Counterclaims.

11. TAT's Counterclaims are barred by res judicata and issue preclusion.

<u>CROSS-CLAIMS</u>

No response is required.

WHEREFORE, Plaintiff respectfully requests this Court to:

    a.   Dismiss The Architectural Team's Counterclaims;

    b.   Award States Resources Corporation attorney's fees and costs; and

    c.   Award such other relief as this Court deems just and proper.

Date: May 5, 2004

/s/ John Doonan
John A. Doonan, Esq.  (BBO# 547838)
Doonan, Graves & Longoria, L.L.C.
100 Cummings Center, Suite 213C
Beverly, MA  01915
(978) 921-2670

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RE: | ) |
| | ) |
| Michael Capizzi | ) **CHAPTER 11** |
| | ) **CASE NO. 03-18040-JNF** |
| | ) |
| Debtor | ) |
| | ) |

### ORDER GRANTING STATES RESOURCES CORP.'S MOTION FOR RELIEF FROM STAY

At Boston, in the Eastern District of Massachusetts, having come on to be heard before me, and after notice to all parties, it is hereby

ORDERED and DECREED that States Resources Corp.'s ("States") Motion for Relief from Stay dated September 26, 2003, is allowed; it is further

ORDERED that States and its Successors and/or Assigns be and hereby are permitted to proceed with a foreclosure of a mortgage, dated October 19, 1988, in the amount of seven hundred and fifty thousand & 00/100 ($750,000.00) dollars, on property commonly known as 236 Lincoln Road, Lincoln, MA 01773, title to which is believed to be held by Michael Capizzi ("Debtor"), and shall be permitted to evict the Debtor and all occupants from said premises; and it is further

ORDERED that pursuant to 11 U.S.C. § 105(a) relief is hereby granted with prejudice and in Rem; and it is further

ORDERED that the foreclosure auction scheduled for **September 26, 2003 at 1:00 p.m.** shall be allowed to proceed and any petition for bankruptcy that includes the premises at 236 Lincoln Road Lincoln, MA may not be filed without prior leave of Court; and it is further

ORDERED that States be allowed to collect reasonable costs and attorney fees pursuant to

1

\\Server\My Documents\Bankruptcy\Files\Capizzi\order 9 26 t 3.doc

EXHIBIT
A

09/26/2003 11:40 FAX 978 744 8780    DOONAN @ GRAVES    @011

Paragraph 7 of the Mortgage for legal services rendered in conjunction with this motion

ORDERED that the relief granted in this order is not be stayed pursuant to Federal Rule of Bankruptcy 4001(a) (3).

ORDERED that the case trustee receive notice of any surplus monies that may exist after the sale.

SO ORDERED.

Dated: _September 26, 2003_

_Joan N. Feeney_
Hon. Joan N. Feeney
United States Bankruptcy Judge

2

\\Server\My Documents\Bankruptcy\Files\Capizzi\order 9 26 03.doc

UNITED STATES OF AMERICA
DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| _____ | |
| STATES RESOURCES CORPORATION ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| ) | Civil Action No. 04 10095 DPW |
| ) | |
| v. ) | |
| ) | |
| MICHAEL CAPIZZI, ) | |
| CATHERINE R. CAPIZZI, ) | |
| THE ARCHITECTURAL TEAM, INC., ) | |
| GARRETT, INC., ) | |
| JOHN CONNOLLY, JR., ) | |
| MASSACHUSETTS DEPARTMENT OF REVENUE, ) | |
| JAMES GRUMBACH ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

**CERTIFICATE OF SERVICE**

    I, John A. Doonan, hereby certify that a true and correct copy of the STATES RESOURCES CORPORATION'S REPLY TO THE AMENDED COUNTERCLAIMS OF THE ARCHITECTURAL TEAM, INC. has been served by placing same in the United States Mail, postage prepaid, on this the 5th day of May 2004, to all of the individuals on the following service list.

                                   /s/ John Doonan
                                   John A. Doonan, Esq.

**SERVICE LIST**

Michael Capizzi
1725 Wedgewood Common
Concord, MA 01742

Catherine R. Capizzi
1725 Wedgewood Common
Concord, MA 01742

Law Office of Carmen A. Frattaroli
Attn:  Stephanie Williams
76 Lafayette Street
Salem, MA 01970

Massachusetts Department of Revenue
Counsel for the Commissioner
Attn:  Eileen McAuliffe
100 Cambridge Street
Boston, MA 02114

Ring Law Firm
Attn: Jordan Lewis Ring
4 Longfellow Place, 37th Fl.
Boston, MA 02114

Law Offices of John Connolly, Jr.
Attn:  Joseph B. Harrington
545 Salem Street
Wakefield, MA 01880

Rothenberg, Estner, Orsi, Arone & Grumbach, LLP
Attn:  Nicholas A. Iannuzzi, Jr.
20 Williams St., Suite 245
Wellesley, MA 02481