# UNITED STATES OF AMERICA
## DISTRICT COURT OF MASSACHUSETTS

**CIVIL ACTION NO.:  04-10095DPW**

|  |  |
|---|---|
| STATES RESOURCES CORPORATION<br>    **Plaintiff** | ) ) ) ) |
| **v.** | ) ) |
| MICHAEL CAPIZZI, CATHERINE CAPIZZI,<br>THE ARCHITECTURAL TEAM, INC.,<br>GARRETT, INC., JOHN CONNOLLY, JR.,<br>MASSACHUSETTS DEPARTMENT OF<br>REVENUE, and JAMES GRUMBACH<br>    **Defendants** | ) ) ) ) ) ) ) |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF GARRETT, INC.

### Introduction

The Defendant and Plaintiff-in-Counterclaim, Garrett, Inc. ("Garrett"), hereby submits

this memorandum in support of its Motion for Summary Judgment with respect to the plaintiff's

interpleader action.  By virtue of its Motion, Garrett seeks payment in the amount of  $48,459.20.

### Statement of Material Facts

Garrett is a Massachusetts corporation engaged in the business of, among other things,

conducting real estate auctions.  Exhibit ("Ex.") 1, Verified Counterclaim of Garrett, Inc. ¶¶ 1, 3.

Garrett Healey is the president and sole stockholder of Garrett.  Id. ¶ 3.  Mr. Healey has been in

the auction business for over thirty years.  Id.  He is a licensed and bonded auctioneer in several

states and a member of the National Auctioneers Association, Massachusetts State Auctioneers

Association, and the Certified Auctioneers Institute.  Id.; Ex. 2, Copies of Mr. Healey's

Auctioneer's Licenses; Ex. 3, Certified Auctioneers Institute Diploma.  Garrett regularly

provides services to many local, state and federal agencies, major commercial lending institutions, and attorneys. Ex. 1 ¶ 3 and Ex. A thereto.

In 2002, the Law Office of Doonan, Graves & Longoria, LLC ("Doonan"), acting as an agent for SRC, contacted Garrett for the purpose of hiring Garrett to conduct an auction in connection with SRC's foreclosure on property located at 236 Lincoln Road, Lincoln, Massachusetts ("the Property"). Id. ¶ 5. The Property was owned by Michael and Catherine Capizzi (the "Debtors"). Id.

Garrett and SRC agreed that Garrett would conduct the auction in return for a 3.5% commission on any sale to a third party, plus reimbursement for expenses. Id. at 6, and Ex. C thereto. It is SRC's position that before SRC would be required to pay Garrett, the Court would have to approve any such payment. Ex. 4 SRC's Reply to Garrett's Counterclaim ¶ 28. It is Garrett's position that such approval is not a condition precedent to SRC's obligation. Ex. 1 ¶ 6. This disagreement, however, is not material because Garrett hereby seeks a Court order requiring SRC to pay Garrett in the amount of $48,459.20. **This figure is arrived by adding: 1) $42,000 (3.5% of the auction price), 2) $2,700 for Auctioneer's Fees, and 3) $3,759.20 in advertising costs.** These charges and expenses are outlined in Garrett's invoice for the auction, which is attached hereto as Exhibit F to Exhibit 1.

It is customary and usual practice in the real estate auction business for an auctioneer to receive a commission on the sale price received at auction. Ex. 1 ¶ 7. The standard rate is 3.5% of the sale price for sales over $500,000. Id. It is also customary and usual practice for the auctioneer to paid all advertising and promotional costs and expenses. Id.

Garrett engaged in all necessary promotions, marketing, and scheduling in order to successfully proceed with the auction. Id. ¶ 8. The auction was scheduled and postponed on 5

occasions, apparently as a result of matters relating to Catherine Capizzi's filing of bankruptcy. Id. ¶ 9; Ex. 4 ¶ 9. Each time, Garrett undertook all necessary promotional, marketing and scheduling steps to accommodate the rescheduling. Ex. 1 ¶ 8.

On July 24, 2003, Garrett held an auction for the Property on behalf of SRC. Id. ¶ 10. Garrett obtained a bid for the Property in the amount of $2,000,000 from a buyer by the name of Linda M. Micu. Id. SRC accepted the Micu offer and a $5,000 deposit from her. Id. Doonan later advised Garrett that the Micu deal fell through. Id. ¶ 11. Consequently, SRC requested that Garrett hold another auction for the Property. Id.

On September 26, 2003 Garrett held another auction on behalf of SRC and Doonan. Id. ¶ 12. Garrett obtained a high bid of $1,200,000, which SRC and Doonan accepted. Id.

As a result of obtaining the $1,200,000 for SRC, SRC was able to satisfy the full amount owed to it by its Debtors at that time – $932,630.87. Id.; Ex. 4 ¶ 13. Doonan was paid for its fees and expenses from the auction proceeds as well. Id. Additionally, Doonan paid $210,096.33 to defendant Architectural Team, Inc., a creditor holding a secondary position to SRC. Id. ¶ 13. SRC has a contractual right under its mortgage and note agreement with the debtor to pay all expenses of the auction, such as Garrett's fee, out of the funds received from the sale. Id. ¶ 13. Specifically, the Mortgage granted to SRC states:

> Statutory Power of Sale. This Mortgage is upon Statutory Condition, for any breach of which the Lender shall have the Statutory Power of Sale. **Lender shall be entitled to collect all reasonable costs and expenses incurred inpursuing [sic] the remedies provided in the paragraph 19, <u>including but not limited to</u>, reasonable attorney's fees.** Ex. 5, Mortgage Modification Agreement.

Thus, according to the Mortgage, SRC has the right to pay Garrett's commission and costs as they are an expense of the sale. Indeed, but for Garrett, there would be no funds for any of the parties.

## **Legal Argument**

A Court should grant summary judgment when a moving party shows by credible evidence that there is no genuine issue of material fact and that judgment should enter as a matter of law. Community Nat'l Bank v. Dawes, 369 Mass. 550, 554 (1976). As discussed below, the undisputed facts require that judgment be entered on behalf of Garrett.

SRC the first mortgagee, through Doonan, hired Garrett to conduct the auction on the Property. SRC and Garrett agreed that Garrett would receive a 3.5% commission on the sale price, plus costs and expenses.[1] Doonan contacted Garrett regarding auctioning the Property in approximately late 2002. It is undisputed that during the months leading up to the final auction in September 2003, Garrett took steps necessary to auction the property, including but not limited to, all necessary marketing, promotion and scheduling. These functions were performed for each of the six auction dates scheduled.[2] The auction of this Property had to be rescheduled five times. Each time Garrett had to promote, market and advertise the auction.

Garrett actually held two auctions. The first was on July 24, 2003 and the second on September 26, 2003. On both dates, it was necessary to register buyers and prepare the site. In connection with July 24 auction, Garrett obtained a $2,000,000 bid, which SRC accepted. The July 24 deal subsequently fell through.

At SRC's direction, Garrett held another auction on September 26, 2003 at which the Property was sold for $1,200,000. From the auction proceeds, SRC recovered the $932,630.87 owed to it. Doonan was paid its fees and expenses from the auction proceeds as well. Doonan

---

[1] It is SRC's position that this was subject to Court approval. Garrett contends that such approval was not necessary, however, by virtue of this Motion, Garrett hereby seeks such approval. Garrett reserves the right to argue that such approval is not necessary.
[2] 5/20/03, 6/24/03, 7/24/03, 9/23/04, 9/26/03 at 11:30 a.m., and 9/26/03 at 1:15 p.m.

subsequently paid $210,096.33 to defendant Architectural Team, Inc., a creditor holding a secondary position to SRC. Garrett, however, has not been paid.

SRC has a contractual right under its mortgage and note agreement with the debtor to pay all expenses of the auction, such as Garrett's fee, out of the funds received from the sale. In addition to its contractual right to do so, common sense and justice dictate that Garrett should be paid. Indeed, but for Garrett's efforts, neither SRC, nor Doonan, nor Architectural Team would have received any funds.

## **Conclusion**

Based on the foregoing, Garrett respectfully requests that this Court enter an order allowing and requiring SRC to pay Garrett $48,459.20.

Respectfully submitted,
The Defendant,
Garrett, Inc.,
By Its Attorneys,


CARMEN A. FRATTAROLI, BBO#: 177960
STEPHANIE M. WILLIAMS, BBO#: 560149
Law Office of Carmen A. Frattaroli
76 Lafayette Street
Salem, MA 01970
(978) 740-9501

Date: May 19, 2004

*Exhibit 1*

UNITED STATES OF AMERICA
DISTRICT COURT OF MASSACHUSETTS

CIVIL ACTION NO.:  04-10095DPW

|  |  |
|---|---|
| STATES RESOURCES CORPORATION<br>          Plaintiff | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL CAPIZZI, CATHERINE CAPIZZI,<br>THE ARCHITECTURAL TEAM, INC.,<br>GARRETT, INC., JOHN CONNOLLY, JR.,<br>MASSACHUSETTS DEPARTMENT OF<br>REVENUE, and JAMES GRUMBACH<br>          Defendants | ) |

## DEFENDANT GARRETT, INC.'S ANWER AND COUNTERCLAIM

Now comes the Defendant, Garrett, Inc., and hereby files its Answer and Counterclaim.

1.  The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 1 and therefore denies same and calls upon the Plaintiff to prove the same.

2.  The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 2 and therefore denies same and calls upon the Plaintiff to prove the same.

3.  The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 3 and therefore denies same and calls upon the Plaintiff to prove the same.

4. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 4 and therefore denies same and calls upon the Plaintiff to prove the same.

5. Admitted

6. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 6 and therefore denies same and calls upon the Plaintiff to prove the same.

7. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 7 and therefore denies same and calls upon the Plaintiff to prove the same.

8. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 8 and therefore denies same and calls upon the Plaintiff to prove the same.

9. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 9 and therefore denies same and calls upon the Plaintiff to prove the same.

10. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 10 and therefore denies same and calls upon the Plaintiff to prove the same.

11. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 11 and therefore denies same and calls upon the Plaintiff to prove the same.

12. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 12 and therefore denies same and calls upon the Plaintiff to prove the same.

13. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 13 and therefore denies same and calls upon the Plaintiff to prove the same.

14. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 14 and therefore denies same and calls upon the Plaintiff to prove the same.

15. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 15 and therefore denies same and calls upon the Plaintiff to prove the same.

16. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 16 and therefore denies same and calls upon the Plaintiff to prove the same.

17. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 17 and therefore denies same and calls upon the Plaintiff to prove the same.

18. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 18 and therefore denies same and calls upon the Plaintiff to prove the same.

19. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 19 and therefore denies same and calls upon the Plaintiff to prove the same.

20. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 20 and therefore denies same and calls upon the Plaintiff to prove the same.

21. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 21 and therefore denies same and calls upon the Plaintiff to prove the same.

22. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 22 and therefore denies same and calls upon the Plaintiff to prove the same.

23. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 23 and therefore denies same and calls upon the Plaintiff to prove the same.

24. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 24 and therefore denies same and calls upon the Plaintiff to prove the same.

25. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 25 and therefore denies same and calls upon the Plaintiff to prove the same.

26. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 26 and therefore denies same and calls upon the Plaintiff to prove the same.

27. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 27 and therefore denies same and calls upon the Plaintiff to prove the same.

28. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 28 and therefore denies same and calls upon the Plaintiff to prove the same.

29. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 29 and therefore denies same and calls upon the Plaintiff to prove the same.

30. Admitted.

31. Admitted.

32. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 32 and therefore denies same and calls upon the Plaintiff to prove the same.

33. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 33 and therefore denies same and calls upon the Plaintiff to prove the same.

34. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 34 and therefore denies same and calls upon the Plaintiff to prove the same.

35. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 35 and therefore denies same and calls upon the Plaintiff to prove the same.

36. Admitted.

37. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 37 and therefore denies same and calls upon the Plaintiff to prove the same.

38. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 38 and therefore denies same and calls upon the Plaintiff to prove the same.

39. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 39 and therefore denies same and calls upon the Plaintiff to prove the same.

40. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 40 and therefore denies same and calls upon the Plaintiff to prove the same.

41. The Defendant lacks sufficient information with which to admit or deny the allegations contained in Paragraph 41 and therefore denies same and calls upon the Plaintiff to prove the same.

## AFFIRMATIVE DEFENSES

The Defendant hereby states that the following affirmative defenses in part, and/or in whole, may be applicable to the allegations contained in the Plaintiff's Complaint and as such are pleaded specifically herein:

A. The Plaintiff has failed to state a claim upon which relief can be granted.

B. The Plaintiff, by its acts and conduct, is estopped from setting forth any claim for relief against the Defendant.

C. The Plaintiff by it acts and conduct have waived any notices or remedies, which they might have had against the Plaintiffs.

D. The Plaintiff willfully and intentionally violated the terms of its agreement with the Defendant.

6

E.  The Plaintiff was negligent in its conduct, which negligence was greater that that of the Defendant, if any, and therefore the Plaintiff is not entitled to recover, as provided under the terms and conditions of M.G.L. Ch. 231, Section 85, as amended.

F.  If the Plaintiff suffered any damages, then such damages were caused by independent, superseding and intervening causes, acts or omissions of parties other than the Defendant, which causes, acts or omissions the Defendant had no reason to anticipate and over which the Defendant had no control, and said acts or omissions superseded any actions or omissions by the Defendant herein for which the Defendant might be considered liable to the Plaintiff, and which the Defendant could not have reasonably foreseen, nor for which it can be held liable in this action.

G.  The Plaintiff's cause, or causes, of action is/are barred by the applicable Statute(s) of Limitations.

H.  The Defendant says that if they failed to perform any agreements, actual or implied referred to in the Plaintiff's Complaint, then and in that event they were excused from such performance.

I.  The Plaintiff has failed to state a claim with any particularity so as to permit the Defendant to proffer any reasonable response as permitted by Statute.

J.  The alleged promises, contracts or agreements upon which the Defendants have brought their Counterclaim were not in writing and signed by the party to be charged therewith or by some person thereunto by them authorized, as required by law.

K.  The Plaintiff has waived any claim against the Defendant.

L.  The Plaintiff's claim has been advanced in bad faith, is frivolous and otherwise without merit.

M.  The Plaintiff is estopped from asserting its claim.

N. The Defendant pleads the doctrine of laches, unclean hands, and release.

WHEREFORE, the Defendant hereby respectfully request this Court to:

a. Enter a judgment in favor of the Defendant;

b. Pursuant to M.G. L. c. 231, hold a hearing and award the Defendant attorneys' fees and costs incurred as a result of this frivolous suit; and

c. Enter such further relief this Court deems meet and just.

**GARRETT, INC. DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

## VERIFIED COUNTERCLAIM

1. The Defendant and Plaintiff-in-Counterclaim, Garret, Inc., is a Massachusetts corporation. Garrett is an entity engaged in trade or commerce.

2. The Plaintiff and Defendant-in-Counterclaim is State Resources Corporation ("SRC").

3. Garrett is in the business of, among other things, conducting real estate auctions. Garrett Healey is the president of Garret. Mr. Healey has been in the auction business for over thirty years. He is a licensed and bonded auctioneer in several states and a member of the National Auctioneers Association, Massachusetts State Auctioneers Association, and the Certified Auctioneers Institute. Garret regularly provides services to many local, state and federal agencies, major commercial lending institutions, and attorneys. Attached hereto as Exhibit A is Garrett's corporate resume.

4. SRC is in the business of commercial lending and is engaged in trade or commerce in Massachusetts. SRC's conduct with respect to this action and the auction referenced herein occurred primarily and substantially in Massachusetts.

5. In 2002, the Law Office of Doonan, Graves & Longoria, LLC ("Doonan"), acting as an agent for SRC, contacted Garrett for the purpose of hiring Garrett to conduct an auction of the real estate in connection with SRC's foreclosure on property located at 236 Lincoln Road, Lincoln,

Massachusetts ("the Property") on behalf of SRC. The Property was owned by Michael and Catherine Capizzi (the "Debtors").

6. Garrett and SRC agreed that Garrett would conduct the auction in return for a 3.5% commission on any sale to a third party, plus reimbursement for costs, expenses, and a $1,500 flat auction fee (the "Auction Agreement"). Attached hereto as Exhibits B, C, and D are documents reflecting this agreement. Any reference in the correspondence relating to "court approval" was not with respect to Garrett's fee, but instead to proceeding with the foreclosure itself.

7. It is customary and usual practice in the real estate auction business for the auctioneer to receive a commission on the sale price received at auction. The standard rate is 3.5% of the sale price, or alternatively, 25% of any overage. It is also customary and usual practice for the auctioneer to paid all advertising and promotional costs and expenses.

8. Garrett engaged in all necessary promotions, marketing, and scheduling in order to successfully proceed with the auction.

9. The auction was scheduled and postponed on no less than 5 occasions by Doonan. (Postponement from 5/20/03 to 6/24; from 6/24 to 7/24; from 7/24 to 9/23; from 9/23 to 9/26 at 11:30 a.m.; from 9/26 at 11:30 a.m. to 9/26 at 1:15 p.m.) Each time, Garrett undertook all necessary promotional, marketing and scheduling steps to accommodate the rescheduling.

10. On July 24, 2003, Garrett held an auction for the Property on behalf of SRC. Garrett obtained a bid for the Property in the amount of $2,000,000 from a buyer by the name of Linda M. Micu. SRC accepted the Micu offer and a $5,000 deposit from her.

11. Doonan later advised Garrett that the Micu deal fell through. Garrett had obtained a backup offer for the Property in the amount of $2,000,000 from Leonard Florence, Chairman of the Board of International Silver Company. Mr. Florence gave Garrett a $50,000 deposit for the

Property. Attached hereto as Exhibit E is a copy of the Backup Offer and deposit check. Notwithstanding the $2,000,000 Backup Offer, Doonan and SRC insisted that Garrett hold another auction for the Property.

12. On September 26, 2003 Garrett held another auction on behalf of SRC and Doonan. Garrett obtained a high bid of $1,200,000, which SRC and Doonan accepted.

13. As a result of obtaining the $1,200,000 for SRC, SRC was able to satisfy the full amount owed to it by its Debtors. Upon information and belief, Doonan was paid for its fees and expenses from the auction proceeds as well. Upon information and belief, a creditor holding a secondary position to SRC and Garrett has been paid. Upon information and belief, SRC has a contractual right under its mortgage and note agreement with the debtor to pay all expenses of the auction, such as Garrett's fee, out of the funds received from the sale.

14. The commission, fee, and expenses owed to Garrett are set forth in the invoice attached hereto as Exhibit F. Garrett has requested and demanded that Doonan and SRC pay Garrett the money owed to it under the Auction Agreement. Doonan and SRC have failed and refused to pay Garrett.

15. Garrett has suffered harm as a result of the refusal of Doonan and SRC to pay.

**COUNT I**
**BREACH OF CONTRACT**

16. Garrett repeats and incorporates by reference paragraphs 1 through 15 as if fully stated herein.

17. The foregoing actions and omissions by SRC constitute breach of contract, which has caused Garrett harm.

**COUNT II**
**VIOLATION OF M.G.L. CH. 93A, § 11**

18. Garret repeats and incorporates by reference paragraphs 1 through 17 as if fully stated herein.

19. SRC has knowing and willingly taken steps to deprive Garrett of the benefits and rights it is entitled to under the Auction Agreement, while fully benefiting itself from the fruits of Garrett's labor. Garrett has been harm by SRC's conduct.

20. SRC's actions and omissions amount to a knowing and willing violation of M.G.L. ch. 93A, section 11.

## COUNT III
## UNJUST ENRICHMENT

21. Garrett repeats and incorporates by reference paragraphs 1 through 20 as if fully stated herein.

22. SRC has been unjustly enriched by the acts referred to herein, resulting in detriment to Garrett.

## COUNT IV
## QUANTUM MERUIT

23. Garrett repeats and incorporates by reference paragraphs 1 through 22 as if fully stated herein.

24. SRC knew or should have known that the Defendant expected to be paid for the goods and services provided to it.

25. SRC failed to pay for the services provided in accordance with Garrett's request.

## COUNT V
## PROMISSORY ESTOPPEL

26. Garrett repeats and incorporates by reference paragraphs 1 through 25 as if fully stated herein.

27. SRC agreed to pay Garrett a 3.5% commission, plus fees and expenses for conducting an auction of the Property.

28. SRC made promises and material representations that it would pay Garrett.

29. Garrett relied on those representations.

30. Garrett has been damaged by SRC's breach.

**WHEREFORE,** Garrett hereby requests that this Court

1) enter judgment on its behalf on Counts I, III, IV, and V of the Counterclaim, including prejudgment and postjudgment interest, plus costs and expenses;

2) enter judgment on its behalf on Count II of the Counterclaim, including prejudgment and postjudgment interest, plus attorneys' fees, costs, and expenses;

3) enter an order doubling or trebling the judgment award to Garrett as a result of SRC's willful and knowing violation of chapter 93A, section 11.

**Garrett demands a jury trial on all issues so triable.**

## VERIFICATION

I , Garrett Healey, hereby certify under the pains and penalties of perjury that the foregoing facts set for the in the Counterclaim are true to the best of my knowledge, information and belief.

_____
Garrett Healey, President of
Garrett, Inc.

Respectfully submitted,
The Defendant,
Garrett, Inc.,
By their Attorneys,

_____
CARMEN A. FRATTAROLI, BBO#: 177960
STEPHANIE M. WILLIAMS, BBO#: 560149
Law Office of Carmen A. Frattaroli
76 Lafayette Street
Salem, MA  01970
(978) 740-9501

Date: _____

12

*Exhibit A*

# GARRETT D. HEALEY

## PRESIDENT, GARRETT, INC.

### 16 HIGH STREET DANVERS,

### MASSACHUSETTS 01923
### 978-774-6008
### www.garrettauctioneers.com

Garrett, Inc.'s founder, president and Auctioneer Garrett D. Healy, a resident of Massachusetts with MA auction license #197. A member of the National Auctioneers Association and the Massachusetts Auctioneers Association, Garrett is a nationally accredited auctioneer through the Certified Auctioneers Institute in Indiana.

## EDUCATION
UNIVERSITY OF INDIANA 1991-1993
- Educational Program in Environmental Procedure
- Accreditation Program in Auctioneer Real Estate
- Continuing Education Program in Marketing, Liquidations, Appraisals, Auctioneering
- Certification Program (CAI) for Nationally Certified and Accredited Auctioneer and Appraiser
- Antique and Estate Appraisal Certification

NATIONAL AUCTIONEERS ASSOCIATION 1991
Government Affairs Educational Program specializing in FDIC, RTC, US Marshals, EPA, GAO

OTHER
Training from the Accredited Auctioneers & Appraisers Institute

## EMPLOYMENT
GARRETT AUCTIONEERS, INC 1980-Present
President and Chief Auctioneer and Appraiser

BOSTON STATE AUCTIONS 1976-1979
Auctioneer, Appraiser, and Marketing Consultant

GRANITE STATE AUCTIONS 1973-1978
Proprietor and Chief Auctioneer and Appraiser

H.J. GRAY AUCTIONEERS 1971-1973
Auctioneer

## GOVERNMENT AGENCIES
- FEDERAL: FDIC, RTC, US Marshalls, DEA, NCUA, IRS, HUD, FannieMae, FreddieMac, VA
- STATE: MA Department of Revenue
- LOCAL: City & Town Police/Sheriff Departments

## CHARITABLE FOUNDATIONS
Muscular Dystrophy Association, Cardinal Cushing Foundation

## LICENSE & AFFILIATIONS
- Licensed and bonded Auctioneer/Appraiser in Massachusetts, #197
- Licensed and bonded Auctioneer/Appraiser in New Hampshire #2357
- Licensed and bonder Auctioneer/Appraiser in Vermont, #107
- Licensed and bonder Auctioneer/Appraiser in Maine, #985
- Member of the National Auctioneers Association
- Member of the Massachusetts State Auctioneers Association
- Member of the Certified Auctioneers Institute

EXHIBIT A

Case 1:04-cv-10095-DPW    Document 38    Filed 05/27/2004    Page 21 of 23

Company Resume
Garrett, Inc.

# GARRETT, Inc.
### 76 High Street
### Danvers, MA 01923
### 978-774-6008
### www.garrettauctioneers.com

## OBJECTIVES
To offer professional auction and appraisal services to attorneys, financial institutions, corporations and individuals. Areas of Expertise:

| | |
|---|---|
| *Real Estate Auctions* | *Appraisals* |
| *Antique Auctions* | *Auction Marketing* |
| *Bankruptcy Auctions* | *Environmental Experts* |
| *Corporate Auctions* | *Expert Witness* |
| *Foreclosure Auctions* | *Liquidators* |
| *Personal Property Auctions* | *NP Workout Specialists* |

## PROFILE
Dominant in our field, Garrett Auction Company has more than 30 years of experience auctioning real estate and personal property in New England and throughout the country. We are a $100 million results oriented company that produces high market results by bringing the seller and buyer together with bottom-line numbers that produces results for our clients.

## LICENSURE
Licensed throughout the New England States:    MA #197    NH #2357    ME #985    VT #701

## BONDED AND INSURED
- Bonded for $5 million dollars
- 1 million/3 million/5 million insurance

## SPECIALITIES
### *Financial Institutions*

| | | |
|---|---|---|
| Aneskey Bank | First National Bank of Ipswich | Ispwich Bank & Trust |
| Bank of NH | Fleet Bank MA | Ispwich National Bank |
| Blue Hill CU | Fleet Bank, Buffalo | Mass Bank for Savings |
| Broadway Bank/Revere | Fleet Bank, NH | Mellon Bank |
| Danvers Savings Bank | Fleet Bank, South Carolina | Meridian Mortgage Corp |
| Dartmouth Bank of NH | GE Capital Asset Mgmt Corp | Nashua Trust |
| Dime Savings Bank of NY | GMAC | Saugus Bank & Trust |
| East West Mortgage | Heller Financial | Saugus Federal Credit Union |
| Eastern Bank | Howard Bank | US Trust |
| First Colonial Bank | | |

Company Resume
Garrett, Inc.

### Government Agencies

Commonwealth of MA
Drug Enforcement Agency
Fannie Mae
FDIC
Freddie Mac/VA
Housing & Urban Development
Internal Revenue Service

MA Department of Revenue
National Credit Union Association
Resolution Trust Corporation
US Marshall's
Veteran's Administration
City & Town Police/Sheriff Departments

### Attorneys (Partial List)

Adelson, Golden & Loria
Alan Grenneria
Ardiff & Morse
Bourget & Kenney
Carol Kenney, Esq.
Charles S. Palmisano
Cherwin & Glickman
Christopher S. Neagle, Esq.
Deutsch Williams Brooks
Donald E. Rothman, Esq
Driscoll, Gillespie & Stanton
Elihu Pearlman
Frank Hamblett, Esq
Friedman & Atherton
Gaston & Snow
Georgia Gregson
Gerstner, Cambell & Associates
Grella & Murphy
Griffin & McKenney
Hinkley & Hahn
Jack Smolokoff Esq
Jeffery Shribman
Jeffrey C. Haus
Jeffrey Goldman
Joseph C. Lerman, Esq.
Kay, Fialkow & Richmond & Rothstein
Latham & Latham
Laura DeRocki
Law Offices of Verrill & Dana
Law Offices of Wayne Eisenhauser
Lisa Foster, Esq.

Lustig, Glaser & Wilson
M. Pamela Egan
Marnik, Driscoll, &Sullivan
McKenney & Perreault
Mike Cronic and Barry Tycos
Nathanson & Goldberg
Neal Weinstein
Nigro, Petarnis & Lucas
Paula Bonnell Esq
Peabody & Arnold
Peter Bronstein, Esq
Philip C. Wysor
Plunkett & Plunkett
Reimer & Braunstein
Richard C. Woods
Robert Goldstein, Esq.
Robert Marder
Robert Welsh
Roger Soderberg
Sandra Kraege Higby, Esq.
Scott Grover
Shapiro & Kreisman
Sims & Sims
Solomon, Backus, Meyer, & Solomon
Susan Archer
Sweetser & Lombard
Teicholz & Kronick
Tinti, Quinn and Savoy
William C. Wagner, Esq.
William Sullivan

Company Resume
Garrett, Inc.

## REAL ESTATE AUCTION HIGHLIGHTS

**Chapter 7 Bankruptcy Court**
- Newton, Charleston, Somerville, MA. 4 single-family homes condominium. 1993
- Single family residential home, North Andover, MA. 1994

**US Trust Company**
Mortgagee auction of *Charles River Ford*, Cambridge, MA. 92,000 sq ft prime real estate with 31,000 sq ft office building, show room building, and industrial garage/shop. 1992

**US Marshall's**
- 4 story commercial brick building at Middlesex Street, Lowell, MA. Included 5000 sq ft retail and office real estate. 1990
- Newly renovated 31,000 sq ft commercial brick building at Wingate Street, Haverhill, MA. 1990

**Fleet Bank, NH**
48 mobile repossessed residential homes located in MA, NH, VT, ME. 1994

**Danvers Savings Bank**
Bank ordered bankruptcy real estate and vehicle liquation of *Hollywood Limo*, Rt. 1, Peabody. 1992

**Getty Gas Stations**
Surveyed 148 Getty sights on east coast for sale/remarket and assessed environmental issues. 1991

**McDonald's Corp**
- Exclusive auctioneer for *McDonald's Corp* in Chicago.
- Commercial real estate and restaurant equipment auction in Lawrence, MA. 1992

**Chelsea Produce Market**
Office and Industrial buildings/1.5 acres on Beacham St, Everett, MA. 1992

**FDIC**
- Over 350 Commercial, Residential, Agricultural and Industrial properties sold in conjunction with Allied Federal Auctioneers. Largest ever New England auction event held over 3 days in Marlborough, MA. 1993
- *Indian Head Lake Plaza*, Strip Mall. 18-unit retail store, 26,000 sq ft 1993

**First Colonial Bank**
*The Littlefield Building*, 39,000 sq ft commercial and residential building on Central Ave in Lynnfield, MA. The building consisted of 5 commercial units and 45 residential apartments. 1994

**Ballroom Auction**
*30 Residential, Commercial, and Investment Properties* auctioned in MA and NH. 1992

**Chicago Bankruptcy Court**
Court ordered Trustee sale of $5,500,000 in residential real estate and 2.2 million in personal property in New Seabury/Mashpee, MA