UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-10095-DPW

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| STATES RESOURCES CORPORATION, | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL CAPIZZI, | ) |
| CATHERINE R. CAPIZZI, | ) |
| THE ARCHITECTURAL TEAM, INC., | ) |
| GARRETT, INC., | ) |
| JOHN CONNOLLY, JR., | ) |
| MASSACHUSETTS DEPARTMENT OF REVENUE, | ) |
| JAMES GRUMBACH, | ) |
| | ) |
| **Defendants** | ) |
| | ) |

## AMENDED VERIFIED COUNTERCLAIMS OF
## DEFENDANTS MICHAEL CAPIZZI AND CATHERINE R. CAPIZZI

Pursuant to Fed R. Civ. P. 13(h) Kevin Duffy is named as a Defendant-in-Counterclaim herein. Defendants and Plaintiffs-in-Counterclaim, Michael Capizzi and Catherine Capizzi, for their counterclaim against Plaintiff and Defendant-in-Counterclaim, States Resources Corporation and against Defendant-in-Counterclaim, Kevin Duffy, allege as follows:

### PARTIES

1.     Plaintiffs-in-Counterclaim, Michael and Catherine R. Capizzi (herein "Plaintiffs" or the "Capizzis"), are currently residents of Concord, Middlesex County, Massachusetts.

2.     Defendant-in-Counterclaim, States Resources Corporation (herein "Defendant" or "States Resources"), upon information and belief, is an Iowa corporation with offices in

Nebraska and doing business in Massachusetts.

3.    Defendant Kevin Duffy (herein "Defendant" or "Duffy") is a resident of Lexington, Middlesex County, Massachusetts.

## FACTS

4.    The Capizzis are the former owners of property located at 236 Lincoln Road, Lincoln, Massachusetts (the "Property") which they occupied as their personal residence.

5.    In connection with the purchase of the Property on October 19, 1988, the Capizzis gave Winchendon Savings Bank (the "Bank") an adjustable rate note (the "Note") in the principal amount of $750,000.00.  The Note was secured by a mortgage (the "Mortgage") on the Property.

6.    Under the terms of the loan documentation, the Bank was responsible for escrowing fees from the borrower to pay the real estate taxes on the Property.

7.    The interest rate on the Note was 9.25% for three years, after which it reverted to prime plus 3%.

8.    On April 22, 1992, the president of the Bank sent a letter to the Capizzis stating that the interest rate on the Note had been "fixed at an annual amortization rate of 6%."

9.    As of April 22, 1992, the Capizzis' monthly payment to the Bank for principal and interest on the loan was $4,668.64, plus escrow payments for real estate taxes of an additional $936.64, for a total monthly payment of $5,605.46 ( the "Amended Note").

10.    The Capizzis confirmed their agreement with the Bank in writing and paid the Bank $5,605.46 in May, June, July and August of 1992.

11.    On August 14, 1992, the Federal Deposit Insurance Corporation ("FDIC") took over the Bank.

12.    In March, 1993, the FDIC confirmed the monthly payments, including the real estate tax escrow, were $5,605.46.

13.    The FDIC reconfirmed through correspondence dated October 18, 1993 and July 24, 1994, that $5,605.46 was the correct amount to be paid monthly on the loan.

14.    In November, 1994, the FDIC sold the Amended Note to First Essex Bank, FSB.

15.    First Essex Bank, FSB notified the Capizzis that their monthly payments were $5,605.46, including $4,668.64 for principal and interest and $936.64 for tax escrow.

16.    On September 30, 1998, States Resources acquired the rights to the Amended Note.

17.    States Resources continuously refused to abide by the terms of the Amended Note and instead sought to collect from the Capizzis the amounts due if the adjustable Note were to be in effect.

18.    In January, 1999, States Resources declared the Capizzis to be in default under the Note and initiated foreclosure proceedings.

19.    Notice of a foreclosure sale scheduled for March 23, 1999 was advertised in the newspaper.

20.    The Capizzis notified States Resources that they were not in default under the Amended Note.

21.    Faced with the prospects of losing their home, the Capizzis paid States Resources $62,581.79 on March 1, 1999.

22.    On July 26, 1999, States Resources again commenced foreclosure proceedings based upon the adjustable Note.

23.    The Capizzis notified States Resources that they were not in default of the

3

operative Amended Note.

24.    Again, faced with the prospect of losing their home, the Capizzis paid States Resources $43, 776.23 on September 23, 1999.

25.    On January 7, 2000, States Resources yet again commenced foreclosure proceedings based upon the adjustable Note.

26.    The Capizzis again notified States Resources that they were not in default under the operative Amended Note.

27.    Yet again faced with the prospect of losing their home, the Capizzis paid States Resources $24,141.53 on February 11, 2000.

28.    In May, 2000, States Resources commenced foreclosure proceedings based on the adjustable Note.

29.    The Capizzis again notified States Resources that they were not in default under the operative Amended Note.

30.    On June 15, 2000, the Capizzis paid States Resources $24, 418.61 to avoid foreclosure.

31.    On July 27, 2000, States Resources commenced foreclosure proceedings based upon the adjustable Note. States Resources claimed that the Capizzis were in default of their tax obligations, even though States Resources had not paid any amounts from the tax escrow account to the taxing authorities.

32.    The Capizzis notified States Resources that they were not in default under the operative Amended Note.

33.    On August 29, 2000, the Capizzis paid States Resources $18,161.88.

34.    On October 26, 2000, States Resources sent yet another notice to the Capizzis

threatening to commence foreclosure proceedings.

35.    On January 31, 2001, the Capizzis sent a demand letter under M.G.L. c. 93A. sec.

9, via certified mail to States Resources.

36.    States Resources refused to tender a settlement offer.

37.    On May 4, 2001, the Capizzis sent another demand letter under M.G.L. c. 93A,

sec. 9, via certified mail to States Resources, demanding that States Resources pay their current

real estate tax bill.

38.    States Resources never responded to the May 4, 2001 demand letter.

39.    On or about June 20, 2001, the Capizzis filed suit against States Resources in

Middlesex Superior Court, C.A. No. 01-2618, seeking a declaratory judgment and damages for

breach of contract and violation of Massachusetts General Laws chapter 93A.  States Resources

removed the suit to U.S. District Court for the District of Massachusetts, case number 01-CV-

11298-DPW ("1st Federal Suit").

40.    On November 22, 2002, within days of the dismissal without prejudice of the 1st

Federal Suit for failure to prosecute, States Resources sent to the Capizzis a certified letter

informing them that it had scheduled a foreclosure sale upon foreclosure of the adjustable Note

for December 16, 2002 at 11:30 a.m.

41.    On or about December 2, 2002, the Capizzis filed a second complaint in the U.S.

District Court for the District of Massachusetts, case number 02-12319-DPW ( 2nd Federal Suit")

seeking a declaratory judgment, damages for breach of contract, violation of M.G.L. c. 93A and

injunctive relief.

42.    Since the FDIC took over the Bank in 1992, the Capizzis have made principal and

interest payments to note holders in the amount of $675,218.52.  Of that amount, $173,180.04

has been paid to States Resources.

43.    Since August, 1992, when the FDIC took over the Bank, the Capizzis have overpaid all note holders in the amount of $181,134.50. Moreover, there has been no adjustment for overpayments since 1992, and the note has never been properly amortized.

44.    Since States Resources took over the loan, the Capizzis have overpaid by $83,630.70.

45.    Since the FDIC took over the Bank in 1992, no note holder, including States Resources, has paid any real estate taxes from the escrow account as they were obligated to do. Indeed, States Resources requested information on several occasions, which the Capizzis provided, showing that they had paid the taxes. To date, States Resources has failed to provide an accounting of the escrow account that States Resources was obligated to maintain, the amounts contained in the escrow account or the amounts, if any, paid from the escrow account.

46.    As a result, the Capizzis have personally paid over $155,000.00 in real estate taxes directly to the Town of Lincoln, Massachusetts.

47.    Plaintiff Michael Capizzi filed a voluntary petition for Bankruptcy under Chapter 13 of the United States Bankruptcy Code on February 28, 2003. Defendant States Resources filed a motion to dismiss the Chapter 13 on the grounds that Michael Capizzi was not an eligible Chapter 13 debtor.

48.    On March 5, 2003, the Bankruptcy Court granted relief from the stay in order to proceed on the 2nd Federal Suit.

49.    On May 1, 2003, the Bankruptcy Court granted debtor Michael Capizzi's motion to dismiss the Chapter 13, which action he took on advice of counsel.

50.    On May 20, 2003, Defendant Catherine Capizzi filed a voluntary petition for

Bankruptcy under Chapter 11 of the Bankruptcy Code. That action is still pending. However Catherine Capizzi was not on the title to the Property and it was determined that her bankruptcy would not affect a foreclosure.

51.    On June 9, 2003, the Federal District Court dismissed with prejudice Plaintiffs' 2nd Federal suit because Plaintiffs failed to meet the requirements of a Stipulated Order requiring, among other things, that they deposit in escrow the amount of $219,771.95 on or before February 3, 2003, and because they failed to meet certain discovery deadlines and other requirements. The Plaintiffs did not have the available funds at that time to make such a large escrow deposit by February 3, 2003. Furthermore, although the Capizzis owned other real estate which would have yielded $500,000.00 if sold, the sale could not be consummated prior to February 3, 2003. Such deposit was not necessary to secure States Resources since the Property was assessed for over $2,000,000.00 by the Town of Lincoln, Massachusetts.

52.    The Court further granted judgment for States Resources against the Capizzis on its counterclaim in the amount of $875,203.38, being the amount falsely alleged to be due under the Note.

53.    Defendant Michael Capizzi filed a pro se voluntary petition for Bankruptcy under Chapter 11 of the U.S. Bankruptcy Code on September 25, 2003, but the Bankruptcy Court dismissed the petition on September 26, 2003, holding that Michael Capizzi was barred from filing another bankruptcy petition until November 1, 2003. The Court held that Michael Capizzi was barred from filing a new claim for 180 days after voluntary dismissal of his prior Chapter 13 after a motion for relief from the stay had been filed.

54.    Defendant States Resources held a foreclosure auction on the Property on September 26, 2003. The Property was sold to Defendant Kevin Duffy for $1,200,000.00, being

less than one third of its fair market.

55.     Prior to the foreclosure sale, Defendant States Resources refused to acknowledge Plaintiffs' request for reinstatement under the provisions of the Mortgage.

56.     Defendant Duffy and his attorney were fully aware of Plaintiffs' contention that the foreclosure was fraudulent and illegal before Duffy acquired the Property which was conveyed to Duffy through a foreclosure deed recorded on October 27, 2003.

57.     Defendant Duffy commenced a summary process action in the Concord District Court.  On December 18, 2003, after trial, the Court entered a judgment for possession and damages in favor of Defendant Duffy

58.     Plaintiffs filed a notice of appeal on December 29, 2003, and an appeal bond in the amount of $19,007 was set along with a monthly use and occupancy charge of $6,788.00.

59.     Plaintiffs sought review of the amount of the appeal bond, and on March 3, 2004, the Appellate Division determined that the amount of the bond should be $28,058.72 along with a use and occupancy charge of $6,788.00.

60.     The Capizzis were unable at that time to post a bond of this size, and the execution on the eviction was issued to Defendant Duffy by the Concord District Court.

61.     The Capizzis were evicted and moved out of their home on March 17, 2004.


## COUNT I

## (DECLARATORY JUDGMENT AND ACCOUNTING)

62.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 61 hereof as if fully set forth herein.

63.     An actual, justiciable controversy exists between and among Plaintiffs and

Defendant States Resources concerning the amount owed and to be paid in monthly installments under the terms of the loan documents: the obligation of States Resources to pay real estate taxes for the Property from the escrow account: reductions of the principal balance to be credited to the Capizzis as a result of the note holders' failure to pay real estate taxes: and the amounts paid to date under the loan.

64.    Plaintiffs seek declaratory relief from the Court pursuant to M.G.L. c. 231A, and an accounting of amounts paid to date under the loan to States Resources and otherwise, and all parties having an interest which would be affected by the declaration have been named as parties.

## COUNT II

### (BREACH OF CONTRACT)

65.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 64 hereof as if fully set forth herein.

66.    As alleged above, by its conduct, Defendant States Resources has materially breached the express terms of the Amended Note and associated loan documents, as well as the covenants implied in such contracts to deal with the Plaintiffs fairly and in good faith.  By its said conduct, Defendant States Resources has purposefully denied Plaintiffs the fruits of the contract, as a foreseeable consequence of which Plaintiffs have suffered great loss and damage.

## COUNT III

### (UNLAWFUL AND FRAUDULENT FORECLOSURE)

67.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 66 hereof as if fully set forth herein.

68.    The foreclosure by Defendant States Resources on the mortgage secured by the Property was fraudulent and invalid because Plaintiffs were never in default to States Resources under their Mortgage and Note and the Note was fully paid and even overpaid at the time of the foreclosure.

69.    The foreclosure and subsequent foreclosure sale to Defendant Kevin Duffy were predicated on false and fraudulent affidavits filed by States Resources in the Federal District Court, the U.S. Bankruptcy Court, the foreclosure sale and the Concord District Court through Kevin Duffy.

70.    States Resources intentionally ignored Plaintiffs' requests to reinstate the Mortgage prior to the foreclosure as provided in the Mortgage.

71.    States Resources advertised the foreclosure citing substantially less land than was included in the Property conveyed to Defendant Duffy at the foreclosure sale. The Notice of Foreclosure Sale published in the <u>Boston Globe,</u> September 14, 2003 and September 21, 2003, a copy of which is attached hereto as Exhibit A, describes the property as consisting of 2 ½ acres, whereas the 2004 real estate tax bills from the Town of Lincoln, Massachusetts, attached hereto as Exhibit B, show that the premises consist of 5 parcels totaling 5.84 acres. The advertisement also describes the house as containing 5 bedrooms, 3 fireplaces and 3 full baths, whereas the house actually contains 6 bedrooms, 4 fireplaces and 2 half bathes in addition to the 3 full bathes. This is substantiated by a letter dated March 3, 2003 to Michael Capizzi from Kathleen E. Cook, a real estate broker from Atlantic Associates Real Estate, which accurately describes the premises and recommends a marketing list price of $3,700,000.00 or $4,100,000.00 if subdivided to include a two acre buildable lot. A copy of this letter and a letter expressing an interest in marketing the subdivided lots is attached hereto as Exhibit C.

10

72.    Plaintiff Michael Capizzi notified Kevin Duffy's attorney prior to the auction and Kevin Duffy prior to the closing on the foreclosure sale that Plaintiffs were not in default under the Mortgage and Note which was fully paid at the time of the foreclosure and that the foreclosure was fraudulent and illegal.

73.    Defendant Duffy and his attorney both stated that Duffy was buying the Property at 20% of its true value and that it was worth the risk.

74.    Defendant Duffy paid $1,200,000.00 for the Property at the foreclosure sale which was less than one-third of the then fair market value.

75.    In view of the fraud committed by States Resources in the foreclosure on the Property and the subsequent sale to Defendant Duffy and in view of Defendant Duffy's full knowledge that the foreclosure was fraudulent and illegal and that he was paying less than 30% of its fair market value, the foreclosure sale should be declared void and set aside.  Plaintiffs request this Court to set aside the foreclosure sale and return the Property to the Plaintiffs.

### COUNT IV

### (VIOLATION OF M.G.L. C. 93A)

76.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 75 hereof as if fully set forth herein.

77.    Through its deliberate and wrongful conduct, Defendant States Resources has violated M.G.L. c. 93A, Sec. 9.  States Resources did so by failing to abide by the terms of the Amended Note and instead attempting to collect and collecting under the terms of the adjusted Note which was not in effect, by repeatedly scheduling unwarranted foreclosure proceedings subjecting the Plaintiffs to continuous humiliation and embarrassment, by failing to disburse real

estate tax payments from the tax escrow account, by repeatedly coercing Plaintiffs to pay considerably more than was due under the Note, by failure to provide a proper accounting of all payments made, owed and held in escrow, by failing to properly amortize the Note, by refusing to acknowledge Plaintiffs requests to reinstated the Mortgage prior to the foreclosure as provided in the Mortgage and by fraudulently and illegally foreclosing on Plaintiffs' Property and selling it to Defendant Duffy at less than 30% of its then fair market value. Defendant States Resources engaged in such knowing and willful conduct in order to derive a higher percentage of interest than it was entitled to and in order to gain control of Plaintiffs' Property and sell it at a foreclosure sale for a considerable profit when the amounts outstanding under the Note had been paid in full and substantially overpaid.

78.    Defendant States Resources used unfair and deceptive business practices while engaging in trade or commerce within the Commonwealth of Massachusetts.

79.    As a proximate and foreseeable consequence of the wrongful conduct described in their complaint, the Plaintiffs have lost their home and suffered substantial loss and damages. Because such wrongful conduct was willful and intentional, the Capizzis are entitled to recover from Defendant States Resources treble, or at least double, their actual damages, and to an award of costs and expenses in prosecuting this and relate actions, including reasonable attorney's fees.

## COUNT V

### (WRONGFUL EVICTION)

80.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 79 hereof as if fully set forth herein.

81.    Defendant in Counterclaim Duffy wrongfully purchased the Capizzi's residence

12

at the foreclosure sale and proceeded to evict the Capizzis when he and his attorney were fully aware that the foreclosure was fraudulent and illegal and that the foreclosure sale whereby he acquired title to the property was null and void.

82.    Defendant in Counterclaim Duffy proceeded to levy on the eviction execution on March 17, 2004, and the constable performed the levy and removed the Capizzis and their personal property from the Property at 12:00 Noon on Wednesday, March 17, 2004.

83.    In removing the Capizzis' personal property a substantial amount was either destroyed or damaged.

**WHEREFORE,** the Capizzis respectfully request that this Court:

1.    Enter a declaration in Plaintiffs' favor on Count I of this counterclaim and make a declaration as to the amounts owed under the terms of the loan documentation, declare that States Resources was obligated to pay real estate taxes on the Property from the escrow account, determine the amounts owed to the Plaintiffs as a result of the note holders' failure to pay real estate taxes, make a determination as to amounts paid under the loan, properly amortize the note and award Plaintiffs damages in an amount to be determined at trial and order that Plaintiffs be awarded their costs, expenses and attorney's fees.

2.    Enter judgment in Plaintiffs' favor and against Defendant States Resources on Count II of this counterclaim and award damages in an amount to be determined at trial.

3.    Enter judgment declaring the foreclosure of the Property by Defendant States Resources illegal and void and setting aside the foreclosure sale of the Property to Defendant Duffy and returning title to Plaintiffs.

4.    Enter judgment on Count III of this counterclaim against Defendant States

Resources in an amount equal to treble, or at least double, the amount of damages determined at trial, and award Plaintiffs their costs and expenses, including reasonable attorneys' fees.

     5.      Enter judgment on Count IV of the counterclaim against Defendant in Counterclaim, Kevin Duffy, for damages for wrongful eviction in an amount to be determined at trial, including damages for loss or destruction or damage to personal property removed from the Capizzis' residence upon levy on the eviction execution, and award Plaintiffs-in-Counterclaim their costs and expenses, including reasonable attorneys fees.

     6.      Grant such further relief as the Court deems just and proper.

## VERIFICATION OF COUNTERCLAIM

     We, Michael Capizzi and Catherine R. Capizzi, hereby certify under pains and penalties of perjury that the foregoing facts set forth in the above Counterclaim are true to the best of our knowledge and belief.

Michael Capizzi

Catherine R. Capizzi

14

## JURY TRIAL DEMAND

PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE, AND REQUEST A JURY TRIAL ON ALL OTHER ISSUES.

Respectfully submitted,

MICHAEL CAPIZZI AND
CATHERINE R. CAPIZZI

Michael Capizzi, pro se
1725 Wedgewood Common
Concord, Massachusetts 01742
(978) 369-4894

Catherine R. Capizzi, pro se
1725 Wedgewood Common
Concord, Massachusetts 01742
(978) 369-4894

Dated: July 1, 2004

## CERTIFICATE OF SERVICE

I certify that a true copy of the above document was served by mail upon the attorney of record for each of the parties hereto on the date set forth below.

Date:  July 1, 2004

Michael Capizzi

15