UNITED STATES OF AMERICA
DISTRICT COURT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-10095DPW

|  |  |
|---|---|
| STATES RESOURCES CORPORATION<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| MICHAEL CAPIZZI, CATHERINE CAPIZZI,<br>THE ARCHITECTURAL TEAM, INC.,<br>GARRETT, INC., JOHN CONNOLLY, JR.,<br>MASSACHUSETTS DEPARTMENT OF<br>REVENUE, and JAMES GRUMBACH<br>    Defendants | )<br>)<br>)<br>)<br>)<br>) |

## GARRETT, INC.'S OPPOSITION TO THE ARCHITECTURAL TEAM, INC.'S MOTION TO AMEND (SECOND) ANSWER

### Introduction

Garrett, Inc. ("Garrett") hereby opposes The Architectural Team, Inc.'s Motion to Amend (Second) Answer. As set forth in detail below, this Court should deny the Motion as it relates to Garrett because, *inter alia*, 1) The Architectural Team ("TAT") already has amended its answer and counterclaims once (April 20, 2004), 2) Garrett, as an agent of States Resources Corp. ("States"), owed a fiduciary duty to States and lawfully obeyed the instructions received from it in connection with the foreclosure at issue, 3) Garrett owed no duty to The Architectural Team, Inc. ("TAT") with respect to the $2,000,000 offer at issue, 4) TAT is acting in bad faith by attempting to retaliate against Garrett for refusing to enter into an overbroad and one-sided stipulation proposed by TAT concerning the production of documents, and 5) as co-defendants, TAT cannot assert a claim against Garrett by way of a counterclaim, as proposed.

Thus, the Court should deny TAT's motion because it is futile, asserted in bad faith, and the result of TAT's undue delay and dilatory motive, and award Garrett the attorneys' fees and costs incurred in connection with the motion.

**Facts**

Notwithstanding TAT's histrionics, a close examination of this case reveals that no facts are alleged that, if true, amount to unfair or deceptive acts or practices by Garrett.  Simply put, States, a first lien holder, and TAT, a second lien holder, are at war with each other over what TAT views was States' failure to obtain a high enough price at a foreclosure auction, resulting in TAT's lien not being satisfied completely.  Unfortunately for Garrett, States hired it to conduct the auction. Garrett now is caught in the vitriolic crossfire between TAT and States.  Although both States and TAT have received hundreds of thousand of dollars as a result of Garrett's months of effort with respect to the auction, Garrett never has been paid for its effort or its out-of-pocket expenses—approximately $48,000.

Garrett is in the business of conducting real estate auctions.  Garrett's Verified Answer and Counterclaim, ¶ 3 of Counterclaim.  Mr. Healey has been in the auction business for over thirty years.  Id.  <u>Notwithstanding TAT's bad faith and specious claims regarding a supposed lack of licensing, Mr. Healey, the president and sole shareholder of Garrett Inc., is a licensed auctioneer in Massachusetts, pursuant to M.G.L. chapter 100, et. seq., and a member of the National Auctioneers Association, Massachusetts State Auctioneers Association, and the Certified Auctioneers Institute</u>.  Id.

In 2002, the Law Office of Doonan, Graves & Longoria, LLC ("Doonan"), acting as an agent for States, contacted Garrett for the purpose of hiring it to conduct an auction of the real estate in connection with State's foreclosure on property located at 236 Lincoln Road, Lincoln,

Massachusetts ("the Property"). The Property was owned by Michael and Catherine Capizzi (the "Debtors"). Id. 5.

Garrett engaged in all necessary promotions, marketing, and scheduling in order to successfully proceed with the auction. Id. ¶ 8. The auction was scheduled and postponed on no less than 5 occasions by Doonan. (Postponement from 5/20/03 to 6/24; from 6/24 to 7/24; from 7/24 to 9/23; from 9/23 to 9/26 at 11:30 a.m.; from 9/26 at 11:30 a.m. to 9/26 at 1:15 p.m.) Each time, Garrett undertook all necessary promotional, marketing and scheduling steps to accommodate the rescheduling. Id.

On July 24, 2003, Garrett held an auction for the Property on behalf of States. TAT was present at the auction, but made no effort to be the high bidder. Garrett obtained a bid for the Property in the amount of $2,000,000 from a buyer by the name of Linda M. Micu. States accepted the Micu offer and a $5,000 deposit from her (the "Micu Deal"). Id. ¶ 10.

As clearly alleged in Garrett's Counterclaim, on or about August 4, 2004, -- eleven days after the auction -- Garrett received an offer for the Property in the amount of $2,000,000 from Leonard Florence, Chairman of the Board of International Silver Company. Id. ¶ 11. Mr. Florence gave Garrett a $50,000 deposit for the Property. Id. TAT alleges that Doonan advised Mr. Healey to hold the deposit and that Mr. Healey deposited the check into Garrett's bulk escrow account. Proposed Counterclaim ¶ 45. TAT further alleges that when the Micu Deal eventually fizzled, Doonan "ordered" Garrett to hold another auction for the Property, as opposed to pursuing the offer from Mr. Leonard. Proposed Counterclaim ¶ 54, 55.

It is undisputed that on September 26, 2003 Garrett held another auction on behalf of States and Doonan. Garrett obtained a high bid of $1,200,000, which States and Doonan accepted. See Garrett Counterclaim ¶ 12. TAT again was present at the auction, but made no effort to be the

3

high bidder. As a result of obtaining the $1,200,000, States was able to satisfy the full amount owed to it by its Debtors and to pay Doonan's legal fees. Id. ¶ 13. <u>Moreover, TAT received more than $200,000 from the auction proceeds.</u> <u>Id.</u> Although States has a contractual right under its mortgage and note agreement with the debtor to pay all expenses of the auction from the sale proceeds, States still has not paid Garrett. Upon information and belief, States' refusal to pay Garrett is the result of TAT's threats to States and interference with Garrett's contract with States.

After sorting through all of TAT's specious and illusory claims, it appears as though TAT now is attempting to claim that Garrett somehow violated chapter 93A by not notifying TAT, a junior creditor, of the $2,000,000 offer received outside of the auction process. As discussed below, there is no merit to TAT's claim.

## Legal Argument

**I.    Court Should Deny Motion If Amendment Would Be Futile Or If Amendment Is Unduly Delayed, Made In Bad Faith, Or A Function Of Dilatory Motive.**

It is axiomatic that a Court has the discretion to deny a motion to amend if the amendment would be futile or if there is undue delay, bad faith or dilatory motive. <u>See Maine State Bldg. and Construction Trades Council v. U.S. Dept. of Labor</u>, 359 F.3d 14, 19 (1st Cir. 2004).

### A. TAT Has Engaged In Undue Delay In Seeking To Amend Counterclaims.

<u>This is the second time that TAT has sought to amend its answer and counterclaim</u>. The purportedly <u>"new facts"</u> which form the basis for the proposed second amended complaint concern a $2,000,000 offer from Leonard Florence made on August 4, 2003. <u>These are not "new facts" at all and the existence of this offer was not withheld from TAT until discovery, as</u>

4

TAT would like this Court to believe. See Proposed Second Amended Complaint ¶ 37. Instead, Garrett clearly outlined it in its counterclaim against States on April 7, 2004. See Garrett Inc.'s Answer and Counterclaim at ¶ 11 of Counterclaim. Garrett's counterclaim also included a copy of the check and cover letter received from Mr. Leonard, thereby fully disclosing to all, including TAT, the proposed offer from Mr. Leonard and all relevant information concerning Mr. Leonard. On April 20, 2003, TAT filed its first amended answer and counterclaim. Although TAT was fully aware of the $2,000,000 offer and Mr. Leonard at that time, it took no steps to include those facts as the basis for a counterclaim at that time.

All parties have since filed answers to all complaints, counterclaims, and cross-claims and made their automatic disclosures. At the June 3, 2004 Scheduling Conference, the Court established a discovery deadline of September 7, 2004.

Already having amended its answer and counterclaim once, TAT should not be given yet another opportunity to recast its claims at this late date, especially since it knew of the $2,000,000 offer before it amended its answer and counterclaim the first time.

   **B.**  **TAT's Proposed Amendment Would Be Futile.**

   **1.**  **TAT Does Not Allege Noncompliance With Chapter 244.**

This case involves State's foreclosure of a mortgage granted by the Debtors with respect to the Property. Massachusetts General Laws Chapter 244, section 14 controls the process of such a foreclosure under power of sale. Chapter 244 clearly outlines the duties of a mortgagee, such as States, with respect to procedure, notice and form. In Pemstein v. Stimpson, 30 Mass. App. Ct. 283 (1994), the Court held that state law only requires a mortgagee to comply with the requirements of Chapter 244, which are essentially notice and procedure requirements. Id. Furthermore, a foreclosure sale that complies with the requirements of state foreclosure law

5

generally cannot be considered a fraudulent transfer.  See BFP v. Resolution Trust Corp., 511 U.S. 531 (1994) (regularly conducted, noncollusive foreclosure sale that complies with state foreclosure law cannot be fraudulent transfer under Section 548 of Bankruptcy Code).

TAT does not allege that Garrett had any duty to it under Chapter 244.  Nor does it allege that States, let alone, Garrett in any way violated the requirements of Chapter 244, which primarily concern procedure and notice.  Under Chapter 244, section 14, the only duty that States had to TAT was to give it notice of the auctions.  TAT does not claim it did not receive proper notice of these auctions.  In fact, TAT was present at both of them and chose to do nothing to protect its interest.

Clearly, States was subject to Chapter 244 with respect to the foreclosure, which requires a public auction.  The facts alleged in the proposed second amended complaint demonstrate that Mr. Leonard's offer was not made as part of the auction process.  Indeed, TAT's allegations demonstrate that auctions were held on July 24, 2003 and September 26, 2003, while Mr. Leonard's offer was received on August 4, 2003.  See Proposed Second Amended Counterclaim ¶¶ 11, 40.  Mr. Leonard did not make any bids at either the July 24 or the September 26 auctions. TAT makes no allegation regarding the basis upon which States, let alone Garrett, could have acted on a private offer received outside the auction process, or upon which States or Garrett had any duty to notify a junior creditor such as TAT of the private offer.  Moreover, by definition, Garrett, as an auctioneer, only is authorized to sell property by public auction, as opposed to private sale.[1]  See Black's Law Dictionary (Revised Fourth Edition) at p. 166.

---

[1] Snowden v. Chase Manhattan Corp., Mass. Superior Court No. 03-0001B, is wholly distinguishable from this situation.  Among other things, in Snowden, the mortgagors independently had found a buyer for their home and entered into a legally binding deal to sell it. Notwithstanding this, the mortgagee refused to postpone the foreclosure auction on the mortgagor's home. There was no claim against the auctioneer.  In this case, TAT's allegations

6

Finally, TAT, a junior creditor, does not allege any facts that would support any claim that it has standing to attack the price obtained by States, the first mortgagee, at a properly held foreclosure. TAT essentially acknowledges this by virtue of its repeated references to asserting a claim against Garrett by virtue of some sort of action to "reach and apply" a claim by Michael and Catherine Capizzi. Such a claim has not even been made by the Capizzis against Garrett.

### 2. Garrett Had A Fiduciary Duty To States And Was Lawfully Following Directions Received From It.

As an agent, Garrett had a fiduciary duty to States and owed it the utmost good faith and loyalty. See United States v. Drumm, 329 F.2d 109 (1st Cir. 1964); Sabel v. Mead Johnson & Co., 737 F. Supp. 135 (D. Mass. 1990). As a principal, States directed Garrett's conduct and Garrett, as an agent had a duty to obey State's directions. See id. An agent cannot be held liable for the wrongful acts of its principal. In re Lernout & Hauspie Securities Litigation, 236 F. Supp. 2d 161, 176 (D. Mass. 2003).

TAT's proposed allegations with respect to Garrett are that it received the $2,000,000 check and deposited it in an escrow account, and that upon States "orders" it held another auction, notwithstanding the $2,000,000 offer (proposed counterclaim ¶ 54, 55). Thus, TAT acknowledges and alleges that Garrett was acting upon the "orders" of States, as sworn to by Garrett. See Verified Counterclaim ¶ 11. Certainly, these allegations are not sufficient to state a claim for unfair or deceptive practices against Garrett, an agent of States. Moreover, if Garrett had not followed States instructions, it would have risked being in breach of its fiduciary duty to States. Thus, Garrett has been left between a rock and a hard place.

---

against Garrett, the auctioneer, hinge on an offer made privately to States independently of the auction process.

7

In light of the foregoing, the proposed amendment would be futile and TAT's motion should be denied.

### C. TAT's Proposed Amendment Is Made In Bad Faith And With A Dilatory Motive.

TAT's effort to characterize Garrett's conduct as unfair or deceptive is specious, at best. In this regard, it is important for the Court to know that TAT began to threaten and then take steps to sue Garrett, only after Garrett expressed a reluctance to enter into an overbroad and unfair stipulation proposed by TAT concerning the deposition of Garrett. Exhibit ("Ex.") 1, Affidavit of Stephanie M. Williams ("Williams Aff.") at ¶¶ 2-6; Ex. 2, Proposed Stipulation. Specifically, in connection with the proposed stipulation, counsel for TAT wrote to counsel for Garrett: **"i am preparing to add 93a claim as against states[,] i will hold of re your clients until we explore", "we are hopeful of Garrett Healeys[sic] full cooperation"**. See Ex.1, Williams Aff.; Exs. 3-4, Emails from Jordan Ring. During a telephone conversation regarding the stipulation, counsel for TAT further stated that TAT wants to go after the "deep pocket" (States) and not the "little guy" (Garrett). Ex.1, Williams Aff. ¶ 5. Counsel for TAT further stated that if Garrett fully cooperated with respect to TAT's proposed stipulation, he would recommend to his client to leave Garrett out of the 93A case. Id. At the time of these discussions, TAT was fully aware of Mr. Leonard's $2,000,000 offer and the fact that Garrett had deposited the $50,000 deposit into its bank account. Id. Due to the extremely overbroad nature of TAT's proposed stipulations, and notwithstanding its veiled threats regarding a chapter 93A crossclaim, Garrett was unwilling to execute TAT's proposed stipulation. Garrett's unwillingness was apparent to TAT by the afternoon of June 30. Id. ¶ 6. The very next morning, counsel for TAT emailed counsel for Garrett a diatribe which announced that TAT

8

would now attempt to amend its answer and counterclaim again in order to include a 93A count against Garrett. Id.

In light of the foregoing, TAT is acting in bad faith in attempting to bring a chapter 93A claim against Garrett. Indeed, the facts show that the proposed claim is in retaliation for Garrett's unwillingness to execute an overbroad and one-sided stipulation. It further appears as though TAT has a "dilatory motive" in attempting to bring such a claim. Indeed, TAT recognizes that Garrett is the "little guy" and appears be attempting to assert a chapter 93A claim in order to delay and drag this case out for Garrett, in order to crush it into submission with respect to TAT's desire for "cooperation" from Garrett vis-à-vis its claim against the "deep pocket" States.

## II.     TAT Cannot Assert A Counterclaim Against Garrett.

Garrett and TAT are codefendants. Yet TAT seeks to assert a counterclaim against Garrett. Obviously, TAT has no right of counterclaim against Garrett. As such, TAT's motion should be denied.

## III.    This Court Should Award Garrett Its Attorneys' Fees And Costs.

In light of the obvious futility of TAT's proposed amendment, as well as TAT's undue delay, bad faith, and dilatory motive in attempting to amend its counterclaims, this Court should enter an order requiring TAT to pay the attorneys' fees and costs incurred in connection with this Opposition.

|  |  |
|---|---|
|  | Respectfully submitted,<br>The Defendant,<br>Garrett, Inc.<br>By Its Attorneys, |
|  | /s/ Stephanie M. Williams<br>STEPHANIE M. WILLIAMS, BBO #560149<br>CARMEN A. FRATTAROLI, BBO # 177960<br>Law Office of Carmen A. Frattaroli<br>76 Lafayette Street<br>Salem, MA  01970 |
| Date: July 19, 2004 | (978) 740-9501 |