UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
04-10095-DPW

STATES RESOURCES CORPORATION, )
)
Plaintiff )
v. )
)
)
MICHAEL CAPIZZI, )
CATHERINE R. CAPIZZI, )
THE ARCHITECTURAL TEAM, INC., )
GARRETT, INC., )
JOHN CONNOLLY, JR., )
MASSACHUSETTS DEPARTMENT OF REVENUE, )
JAMES GRUMBACH, )
)
Defendants )
)

## OPPOSITION OF MICHAEL CAPIZZI AND CATHERINE R. CAPIZZI TO STATE RESOURCES CORPORATION'S SPECIAL MOTION TO DISMISS THE CAPIZZIS' COUNTERCLAIMS AGAINST STATES RESOURCES CORPORATION AND TO KEVIN DUFFY'S SPECIAL MOTION TO DISMISS COMPLAINT

Plaintiffs-in-Counterclaim, Michael Capizzi and Catherine R. Capizzi (the "Capizzis"), oppose States Resources Corporation's ("States") Special Motion to Dismiss the Capizzis' Counterclaims against States Resources Corporation and oppose Kevin Duffy's Special Motion to Dismiss Complaint [Counterclaim] for the reasons set forth below. Kevin Duffy was actually named as a Defendant-in-Counterclaim pursuant to Fed. R. Civ. P. 13(h) and not a third-party defendant under Fed. R. Civ. P. 14(a). The Special Motions to Dismiss were included as part of States' and Kevin Duffy's Opposition to Michael Capizzi and Catherine R. Capizzi's Motion for Permission to Record Memorandum of Lis Pendens filed July 12, 2004. The Capizzis reassert

that they are entitled to file a memorandum of lis pendens and oppose States' and Kevin Duffy's special motions to dismiss their counterclaims for the following reasons:

1.  Under Mass. G.L. c. 184, sec. 15, a party seeking to record a memorandum of lis pendens in the Registry of Deeds must first request an "endorsement" from the trial judge. The request must be by motion asking the judge to make a finding that the action "constitutes a claim of a right to title to real property or the use and occupation thereof or the buildings thereon." The Capizzis' motion for permission to record a lis pendens, which is opposed by the two Defendants-in-Counterclaim, clearly requests the Court to make a finding that the Capizzis' Counterclaim to States' Interpleader action sets forth a claim of a right to title to real property. Count III of the Counterclaim requests the Court to set aside the fraudulent and unlawful foreclosure by States on the Capizzis' residential property in Lincoln, Massachusetts which was sold in the foreclosure sale to Defendant-in-Counterclaim Kevin Duffy who purchased the property for no more than 30% of its fair market value with full knowledge of Plaintiffs' claim of fraud and illegality against States. There is no doubt that the Capizzis' Counterclaim contains "a claim of a right to title to real property" which is grounds for the recording of a memorandum of lis pendens.

2.  In *Sutherland v. Aolean Development Corporation*, 399 Mass. 36, 502 N.E. 2d 528 (1987), the Supreme Judicial Court held that a judge ruling on a motion to endorse a memorandum of lis pendens must endorse the memorandum if the action concerns an interest in real estate. The Court rejected an interpretation of the statute that would have allowed the judge to consider whether the complaint would have survived a motion to dismiss under Rule 12(b)(6) and cited *Dilan v. Atiniz* (Appeals Court No. 86-0312CV, Armstrong, J., October 15, 1986) (Single Justice opinion), stating that the likelihood of the plaintiff prevailing on the merits of the

claim is not an appropriate factor for a judge to consider in ruling on a request to endorse a memorandum of lis pendens.

3. The 2002 amendments to the Massachusetts lis pendens statute made extensive changes to Mass. G.L. c.184, sec. 15, effective January 31, 2003. St. 2002, c. 496, sec. 2. A new procedure called a "special motion to dismiss" provided a basis for a defendant to seek to dismiss the underlying action and could be filed on the basis that the defendant "believes that the action or claim supporting the memorandum of lis pendens is frivolous." Mass. G.L. c. 184, sec. 15(c). A claim may be deemed frivolous under the statute on any of the following grounds:

    a.    "it is devoid of any reasonable factual support;"

    b.    "it is devoid of any arguable basis in law; or"

    c.    "the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds." Mass. G.L. c. 184, sec. 15(c).

4. In its memorandum in support of its opposition to lis pendens and special motion to dismiss the Capizzis' Counterclaim, States sets forth in detail the history of proceedings brought by the Capizzis to avoid foreclosure and subsequent eviction, citing the three related proceedings in this Court, the four separate bankruptcy petitions, the action brought in the Middlesex Superior Court on March 17, 2004 in an effort to stay the eviction, and the eviction proceedings in the Concord District Court. Duffy sets forth greater detail of the eviction proceeding in the Concord District Court. In none of these cases have the issues of full payment under the Capizzi Note and illegal and fraudulent foreclosure been tried on the merits nor has evidence been presented by the Capizzis on these issues. The first two cases in this Court were dismissed on procedural grounds prior to any hearing on the merits. C.A. No. 01-11298-DPW was dismissed without prejudice. Although C.A. No. 02-12319-DWP was dismissed with

3

prejudice and resulted in a default judgment for States on its counterclaim in the amount of $875,203.38 under the Note, the issues of liability under the Note and fraudulent claims by States were never tried on the merits, and the Capizzis have filed a motion to set aside the default judgment. The irregularities involved in the foreclosure itself, including refusal to honor the reinstatement provision of the mortgage, refusal to accept a higher bid, inaccurate description of the premises in advertisements for the sale, and sale at less than 30% of the then fair market value, had not occurred when the default judgment was entered. C.A. No. 04-10533-DWP was a last ditch ex parte effort by the Capizzis to stay the eviction and was dismissed without hearing.

The four bankruptcy petitions were all brought by the Capizzis in an effort to avoid foreclosure, except for the final petition of Michael Capizzi which was an attempt to stay the eviction. None of these proceedings involved any consideration of the fraudulent claims by States under the Note or the illegality of the foreclosure and sale.

The Capizzis were not permitted to introduce evidence of wrongful and fraudulent foreclosure in the eviction proceeding in the Concord District Court, and these issues clearly were not tried on their merits in the eviction proceeding. On March 17, 2004, the Capizzis filed a complaint in the Middlesex Superior Court in a final attempt to stay the eviction. The Court would not hear the merits of their claims and denied the request for a stay. The Capizzis then requested permission to file a lis pendens in that case, but the Court denied the request and dismissed the case based solely on the motions filed and served on the Capizzis during the hearing on the lis pendens and without giving the Capizzis any opportunity to oppose the special motions to dismiss. That case is now under appeal.

5. States and Duffy mistakenly maintain that Michael Capizzi lost all interest in the subject property at the time of the foreclosure auction and has no colorable right to the property.

4

States cites *Outpost Café, Inc. v Fairhaven Savings Bank*, 3 Mass App. Ct. 1, 7-8 (1975) for the position that the Plaintiff's equity of redemption is barred "...at least as early as the point in time when the memorandum of sale was executed by the purchaser at the foreclosure sale." This case establishes when the foreclosure sale is completed, but does not involve the issue of whether and under what circumstances a foreclosure can be set aside.

In *White v. Macarelli*, 267 Mass. 596 (1929), the court stated that "[t]he fact that the property was sold for a price less than its market value is not a reason for setting aside the sale if it was free from fraud and was conducted according to the terms of the power." Clearly the fraudulent activity on the part of States, as alleged by the Capizzis, would provide a solid basis for setting aside the foreclosure and foreclosure sale.

A mortgagee who forecloses a mortgage has been held to be in the position of a trustee, and in exercising the power of sale, must do so in good faith and with reasonable diligence. *Sandler v. Silk*, 292 Mass. 493, 198 N.E. 749 (1935). In *Pemstein v. Stimpson*, 36 Mass. App. Ct. 283 (1994), the court noted that "[i]f the statutory norms found in G.L. c. 244, Sections 11-17B, governing foreclosure of real estate mortgages, have been adhered to, Massachusetts cases have generally regarded that as satisfying the fiduciary duty of a mortgagee to deal fairly with the mortgaged property, unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process." Although the mere fact of some inadequacy in the selling price does not ordinarily show bad faith or lack of reasonable diligence, it may be considered with other evidence to support a finding of fraud or lack of reasonable diligence. *Union Market National Bank of Watertown v. Derderian*, 318 Mass. 578, 582 (1945). Where errors are made in the foreclosure requirements, such as failure to state the name of the mortgage holder in the advertisement of the foreclosure sale, the subsequent sale has been

5

declared invalid as a matter of law. *Bottomly v. Kabachnick*, 13 Mass. App. Ct. 480 (1982).

Where the purchaser at a foreclosure sale had notice of facts which defeated the mortgagee's title, the sale could be set aside. Whether the purchaser's conduct was fraudulent was immaterial. *Depon v. Shawye*, 263 Mass. 206 (1928). If a foreclosure sale takes place without a default in the payment of the mortgage, there can be no valid sale and not even a *bona fide* purchaser will be protected. *Rehrig v. Inman*, 258 Mass. 431 (1926). In our case, Defendant-in-Counterclaim Duffy was fully aware of the fraudulent claims prior to consummation of the foreclosure sale and nevertheless acknowledged his intention to acquire the property at 20% of its value.

6.  States raises the point that Catherine Capizzi has no stating to request permission to record a memorandum of lis pendens because the conveyance by Michael Capizzi to Catherine Capizzi in March, 1989 was held to be a fraudulent conveyance that must be set aside. Catherine Capizzi has been a party to all court proceedings involving the property including this interpleader action. She is a party to the Counterclaim, and appropriately named as a moving party with respect to the request for a lis pendens. Whether or not she has standing to request permission to record a lis pendens is a moot point that need not be determined here since Michael Capizzi does have standing to challenge the legality of the foreclosure.

7.  States maintains that the Capizzis are barred by the doctrine of res judicata from asserting the same causes of action in this suit that have previously been asserted numerous times in the state and federal courts. But as previously shown, none of the issues concerning the invalidity of the foreclosure were ever tried on the merits in any of such cases. The fact is that Capizzis never had an opportunity to present their claims that their mortgage note was fully paid and in fact overpaid, that they were improperly charged for interest and real estate taxes, that

6

States failed to amortize the note, and that States based its claim on false and fraudulent affidavits.

The First Complaint in this Court was dismissed without prejudice at a time when the Capizzis were representing themselves pro se and did not understand their discovery responsibilities. They did not have an opportunity to present their evidence regarding payment of the Note.

When the Second Complaint was filed in the Federal District Court, States was exerting great pressure on the Capizzis with threats of foreclosure. The Court granted a stay of foreclosure that was contingent on the Capizzis placing in escrow approximately $220,000. Plaintiffs were unable to raise this amount at that time and sought protection in the Bankruptcy Court. On February 28, 2003, Michael Capizzi filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On bad advice from counsel, he moved to dismiss the Chapter 13, and Catherine Capizzi filed a petition under Chapter 11. However, since she was deemed not have an interest in the subject property, her bankruptcy did not affect the foreclosure.

On June 9, 2003, this Court dismissed with prejudice the Capizzis Second Complaint as a result of their failure to plead or defend. The Capizzis were then representing themselves pro se and mistakenly believed that they were under the protection of the Bankruptcy Court. At no time did the Bankruptcy Court render any decisions relating to their liability to States under their mortgage note. No finding or determination was made in the Federal District Court concerning their liability to States other than a default judgment on States' counterclaim in the amount of $875,203.

Michael Capizzi again sought Bankruptcy protection by filing a Pro Se voluntary petition under Chapter 11 on September 25, 2003, but his claim was dismissed on September 26, 2003

because 180 days had not elapsed since he voluntarily dismissed his prior Chapter 13. The Capizzis property was sold at a foreclosure auction on September 26, 2004 to Defendant-in-Counterclaim Kevin Duffy for $1,200,000. Kevin Duffy and his attorney were made fully aware of the Capizzis' claims that the foreclosure was fraudulent and illegal, but nevertheless purchased the property because in their view the purchase price was 20% of the market value of the property. Again false affidavits were filed by States in connection with the foreclosure.

At no time was there an adjudication on the merits on the issue of States' fraudulent claims as to the Capizzis' liability under their note, nor was there a determination of the issues raised by the Capizzis in their First or Second complaints in the Federal District Court. The Court granted a default judgment with prejudice in the Second Complaint because the Capizzis defaulted on procedural grounds in pursuing their claims, and their liability to States and States' liability to them were never tried.

The Capizzis have filed motions to set aside the default judgment based on the fraud of States. But in spite of the default judgment, several wrongful acts occurred subsequently that are grounds for setting aside the foreclosure. States repeatedly filed false affidavits until the foreclosure sale was completed. States also ignored the Capizzis' attempts to bring the mortgage current under the provision of the mortgage allowing borrowers to reinstate within five days of the scheduled auction. The property was sold to Kevin Duffy at no more than 30% of its fair market value. Kevin Duffy acknowledged that he was aware of the Capizzis' claims of fraud and nevertheless asserted his intention to acquire the property at 20% of its fair market value. False affidavits were filed in connection with the foreclosure sale.

Even if the default judgment in the Federal District Court were deemed to prevent further litigation against States on the issue of liability under the note, the Capizzis would not be

precluded from litigating these issues in their claim of fraudulent foreclosure against Kevin Duffy. It is well established under Federal law that a defendant who was not a party to the earlier action may invoke the doctrine of collateral estoppel if the plaintiff had a full and fair opportunity to litigate the issue, and if equitable considerations otherwise warrant precluding relitigation. *Donald J. Fidler v. E.M. Parker Co., Inc.*, 394 Mass. 534 (1984). The issues were never tried in the Federal District Court and the Capizzis, who were representing themselves pro se, defaulted due to lack of awareness of the court requirements and because they were led to believed that their interests were protected through the Bankruptcy Court proceedings.

Plaintiffs attempted to introduce evidence of the fraudulent foreclosure in the eviction proceeding brought by Kevin Duffy in the Concord District Court, but were prevented by the court from introducing any evidence of their full payment of the Note held by States and the subsequent fraudulent foreclosure. In no way was there any trial on the merits of these issues in the eviction proceeding or in other court proceedings.

8.   States maintains that under the Rooker-Feldman Doctrine, this Court lacks subject matter jurisdiction to review Massachusetts state court decisions. But as previously shown, the Massachusetts state court proceedings did not try the issues relating to the validity of the foreclosure or reach any conclusion with regard thereto. The Capizzis are not asking this Court to retry the Concord District Court decision concerning the eviction, and that court did not try the issues concerning the validity and legality of the foreclosure. This interpleader action was commenced in January, 2004, two months prior to the commencement of the Middlesex Superior Court action, and the merits of the Capizzis' claims of fraudulent foreclosure and defective sale were never tried in the Middlesex Superior Court from which relief was sought merely to stay the eviction. Jurisdiction over the issues involving the foreclosure were properly before this

9

Court under this interpleader action and under the prior actions against States relating to liability of the Capizzis under their note held by States. If any court lacked subject matter jurisdiction of the issues raised herein, it was the Middlesex Superior Court.

9. States maintains that the Capizzis' claim of unlawful and fraudulent foreclosure must be dismissed because said claim has no factual support and is supported by no arguable legal basis. States then attempts to discredit a number of factual issues raised by the Capizzis challenging the legality and validity of the foreclosure. For example, States maintains that the amount of land advertised for sale was based on the municipal lien certificate issued by the Town of Lincoln, but makes no mention of the fact that this lien certificate covered only one of the five parcels sold at the foreclosure sale. States then maintains that the ad was only a "display" advertisement and not the official legal Notice of Mortgagee's Sale required by the Land Court to be advertised in the Concord Journal. Quite obviously the "display" advertisement would attract greater public attention, and advertising less than half the amount of land actually sold would tend to chill the sale. States also challenges the claim that it ignored the high bidder, asserting that the bid was not made by a "registered bidder" and does not count. Several other allegations are attacked by States in similar fashion.

In short, States is attempting to argue the sufficiency of the evidence in its motion to dismiss. If this were a motion to dismiss under Fed. R. Civ. P. 12 (b)(6), it would undoubtedly be treated as a motion for summary judgment and disposed of as provided in Rule 56, since matters outside the pleading have been presented. It is doubtful that a motion for summary judgment would prevail since the Capizzis have presented numerous genuine issues of material fact. Both Defendants-in-Counterclaim have previously filed detailed replies to the Capizzi Counterclaim. The motion requesting permission to file a memorandum of lis pendens does not

suddenly make the Capizzis' Counterclaim frivolous. The material presented in the motions to dismiss and discussion of those issues provides convincing evidence that the Capizzis' claims are not devoid of any reasonable factual support or of any arguable basis in law under Mass. G.L. c 184, sec. 15(c).

## **CONCLUSION**

A motion for permission to record a lis pendens should be granted if the complaint affects the title to real property or its use and occupancy or the buildings thereon. Clearly a counterclaim seeking to set aside a foreclosure and foreclosure sale meets this requirement. The merits of the allegations should not otherwise be considered.

The argument that a foreclosure extinguishes the mortgagor's equity of redemption does not prevent a court from setting aside a fraudulent or otherwise invalid foreclosure, and the Capizzis' Counterclaim contains numerous allegations of fraud on the part of States. By purchasing at the foreclosure sale with full awareness of the mortgagee's fraud, Kevin Duffy became a willing participant therein, although there are adequate grounds to set aside the foreclosure even without such participation.

The Capizzis' have moved to set aside the default judgment in the Federal District Court creating liability under the note, even though the substantive issues were never tried. The Capizzis' default was due to their misunderstanding as the effect of concurrent Bankruptcy filings as well as lack of knowledge when representing themselves pro se.

None of the other related court proceedings involved any adjudication or determination of liability under the Note. The illegality of the foreclosure was based on a number of factors in addition to the finding of liability under the Note, all of which occurred after the default judgment. Under the circumstances, collateral estoppel should not bar the Capizzis from raising

the issues of Note liability against Kevin Duffy.

Clearly there is no basis for a special motion to dismiss. There are ample grounds, both in fact and in law, for the claims alleged by the Capizzis in the Counterclaim.

Dated: July 28, 2004

Respectfully submitted,

MICHAEL CAPIZZI AND
CATHERINE R. CAPIZZI

*/s/ Michael Capizzi*
Michael Capizzi, pro se
1725 Wedgewood Common
Concord, Massachusetts 01742
(978) 369-4894

*/s/ Catherine R. Capizzi*
Catherine R. Capizzi, pro se
1725 Wedgewood Common
Concord, Massachusetts 01742
(978) 369-4894

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail on the date set forth below.

Date: July 28, 2004

*/s/ Michael Capizzi*
Michael Capizzi

12