# United States District Court
# Eastern District of Massachusetts

### Civil Action No. 04 10095 DPW

_____

STATES RESOURCES CORPORATION

Plaintiff

v.

MICHAEL CAPIZZI,
CATHERINE R. CAPIZZI,
THE ARCHITECTURAL TEAM, INC.,
JOHN CONNOLLY, JR.,
GARRETT, INC.
MASSACHUSETTS DEPARTMENT OF REVENUE,
JAMES GRUMBACH
KEVIN DUFFY

Defendants

_____

**OPPOSITION OF THE ARCHITECTURAL TEAM, INC.
TO THE MOTIONS FOR SUMMARY JUDGEMENT OF
STATES RESOURCES, INC. AND GARRETT, INC.;
SUPPORTING MEMORADUM OF LAW;
AND**

**<u>REQUEST FOR ORAL ARGUMENT</u>**

**<u>PREFACE</u>**

**Due to the commonality of issues raised in the motions for summary judgment filed by States Resources Corporation ("States") and Garrett, Inc., in the interest of judicial economy and to reduce the parties' costs and expenses, The Architectural**

1

Team, Inc. ("TAT")  hereby respectfully files this combined opposition and memorandum of law in opposition to the two summary judgment motions.

States and Garrett, Inc. deliberately failed to reveal to TAT, Michael Capizzi and Linda Micu[1] their knowledge of an unconditional signed offer for $2,000,000.00 with a $50,000.00 deposit for the property at 236 Lincoln Road, Lincoln, MA., ("Property") that would have paid States's claim in full, TAT's claim in full and there would have been surplus funds for the Capizzi family.

The issues in this case are numerous and complex, including:

a.  whether a mortgagee can agree with an auctioneer[2], who has no issued Massachusetts auctioneers license, to provide a *bonus,* in this case of nearly 7900%;

b.  whether an auctioneer has an obligation to bid a "left bid" and inform those with an interest of the receipt of a bona fide written signed offer secured by a paid deposit of $50,000.00 placed in a defunct corporate account by the unlicensed auctioneer, which written, signed offer is from a reputable, responsible and financially able businessperson

---

[1] Identified hereafter, the party to a Memorandum of Sale to the Property, purported highest bidder as to the auction sale of July 24, 2003.
[2] Garrett, Inc. by admission has no auctioneers' license issued to the corporation.

and which if accepted would have satisfied, in full, the court issued execution of TAT and thereafter leaving monies for Michael Capizzi;

c.  the mortgagee (States)[3] and its agents being placed on notice by Linda Micu, the high bidder of the Property of July 24, 2003, of the inability to close the purchase of the Property because of lack of funds and specifically asking Garrett, Inc. to have another take advantage of her[4] purchase of the Property in her place;

d.  than Garrett, Inc. receiving a bona fide unconditional signed offer from Leonard Florence for the same $2,000,000.00 purchase price, informing States and not revealing the same offer to those owed a fiduciary duty;

e.  allowing a non registered foreign corporation that does business in Massachusetts to access the federal courts having done business in Massachusetts.

Today the law of unfair or deceptive trade practices is still developing from its begin in the nineteenth century.

> [A] more interventionist approach replaced the laissez-faire attitude, eventually culminating in the enactment of statutes such as Chapter 93A.  First, in the late nineteenth century and the early twentieth century, courts began awarding multiple damages for intentional deceit in the marketplace. Furthermore, the societal focus began to shift away from the defendant's bad motives to the effects of a

---

[3] Not a lender in this case, but a debt acquirer.
[4] Linda Micu.

> particular business practice or conduct on the general public. Guided by this focus, Congress passed the Federal Trade Commission Act (FTC Act) in 1914, which prohibited "unfair methods of competition." Congress later amended the FTC Act to prohibit "unfair or deceptive acts or practices." Eventually, many states, including Massachusetts, passed their own versions of the FTC Act, the so-called "little FTC Acts."
> MASSACHUSETTS GENERAL LAWS CHAPTER 93A, SECTION 11: THE EVOLUTION OF THE "RAISED EYEBROW" STANDARD, Suffolk University Law Review 2002.

This proceeding has as its centerpiece the measure of the community standard of conduct of fiduciaries and their associates in an area of law being defined in today's world under today's standards of duty, fairness and decency that effect the property and lives of the community based in large part by the rulings of the courts.

Respectfully, for these and a number of other reasons referenced hereafter, TAT opposes the summary judgment motions of both States Resources Corporation and Garrett, Inc, filing the within memorandum of law together with an accompanying concise statement of facts and accompanying material affidavit.

## THE LAW

In <u>Sandler v. Silk</u>, 292 Mass. 493, 198 N.E. 749, 751 (1935) the SJC announced modern day approach to duties of conduct governing the rules of foreclosure and the breath of those protected.

4

It has become settled by repeated and unvarying decisions that a mortgagee in executing a power of sale contained in a mortgage is bound to exercise good faith and put forth reasonable diligence. Failure in these particulars will invalidate the sale even though there be literal compliance with the terms of the power. Krassin v. Moskowitz, 275 Mass. 80, 82, 175 N.E. 269, and cases cited; Dexter v. Aronson, 282 Mass. 124, 127, 184 N.E. 455; Boyajian v. Hart, 284 Mass. 557, 558, 188 N.E. 260; Cambridge Savings Bank v. Cronin (Mass.) 194 N.E. 289. This duty and obligation as to good faith and reasonable care extends for the benefit and is available for the protection not only of the mortgagor but of those claiming in his right, including those holding *junior encumbrances or liens*. He is a trustee for the benefit of all persons interested. Bon v. Graves, 216 Mass. 440, 446, 103 N.E. 1023; Winchester Rock & Brick Co. v. Murdough, 233 Mass. 50, 54, 123 N.E. 344; Clapp v. Gardner, 237 Mass. 187, 191, 130 N.E. 47; Brooks v. Bennett, 277 Mass. 8, 16, 177 N.E. 685; Markey v. Langley, 92 U.S. 142, 155, 23 L.Ed. 701. (Emphasis added) at 496.

The SJC went on to specifically hold that attaching creditors are owed the very same fiduciary duty afforded the mortgagor and pronounced the legal concept of that duty as follows:

We have frequently stated that the basic rule of law applicable to the foreclosure of real estate mortgages is that "a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." West-Roxbury Co-op. Bank v. Bowser, 324 Mass. 489, 492, 87 N.E.2d 113, 115 (1949). Manoog v. Miele, 350 Mass. 204, 206, 213 N.E.2d 917 (1966). Union Mkt. Nat'l Bank v. Derderian, 318 Mass. 578, 581-582, 62 N.E.2d 661 (1945). Sandler v. Silk, 292 Mass. 493, 496, 198 N.E. 749 (1935). Cambridge Sav. Bank v. Cronin, 289 Mass. 379, 382, 194 N.E. 289 (1935). *321 "This duty and obligation

> is available for the protection not only of the mortgagor but of those claiming in his right, including those holding junior encumbrances or liens," <u>Sher</u> v. <u>South Shore Nat'l Bank</u>, 360 Mass. 400, 401, 274 N.E.2d 792 (1971), and thus *<u>including Seppala & Aho's attachment</u>*. <u>Sandler</u> v. <u>Silk, 292 Mass. 493, 496, 198 N.E. 749, 794 (1935)</u>. <u>Sher</u> v. <u>South Shore Nat'l Bank,</u> 373 Mass. 316, 367 N.E.2d 613, (1977). (Emphasis added).

In <u>Williams</u> *v.* <u>Resolution GGF OY</u>, 417 Mass. 377, 382-83, 630 N.E.2d 581 (1994), the Supreme Judicial Court observed that:

> [t]he law governing a mortgagee's responsibility to the mortgagor in the exercise of a power of sale is relatively straightforward. The mortgagee 'must act in good faith and must use reasonable diligence to protect the interests of the mortgagor. The mortgagee's duty is more exacting when it becomes the buyer of the property. ...Consistent with these requirements, the mortgagee has a duty to obtain for the property as large a price as possible" (citations and internal quotations omitted).

This duty was also recognized in <u>Taylor</u> v. <u>Weingartner</u>, 233 Mass. 243, 247 (1916) wherein the Court stated:

> The defendant in executing the power [of sale] was bound to exercise the utmost good faith for the protection of the rights of the owner of the equity of redemption....

In <u>Pemstein</u> v. <u>Stimpson,</u> 36 Mass. App.Ct. 283, 286 (1994) the Court stated:

> [i]f the statutory norms found in G.L.c. 244, § § 11-17B, governing foreclosure of real estate mortgages, have been adhered to, Massachusetts cases have generally regarded that as satisfying the fiduciary duty of a mortgagee to deal fairly with the

6

> **mortgaged property, <u>unless the mortgagee's conduct</u>
> <u>manifested fraud, bad faith, or the absence of</u>
> <u>reasonable diligence in the foreclosure sale process.</u>
> <u>(Emphasis added).</u>**

**It is precisely the issues of law raised by the conduct of States and Garrett, Inc.[5]**

**The pending Motion of TAT to further amend the counterclaim/crossclaim (Docket Items numbered 52-55, dated 7/08/2004, pending) by TAT necessitated by the facts obtained and verified through ongoing discovery process, clearly demonstrate that the conduct of States and its unlicensed auctioneer Garrett, Inc. must be carefully reviewed in accordance with the holding in <u>Kattar</u> v. <u>Demoulas</u>, 433 Mass. 1, 13-14, 739 N.E.2d 246 (2000).[6]**

**In Kattar, the SJC started:**

> **Chapter 93A is "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." <u>Slaney</u> v. <u>Westwood Auto, Inc.</u>, 366 Mass. 688, 693, 322 N.E.2d 768 (1975). The relief available under c. 93A is "<u>sui generis</u>. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action." <u>Id</u>. at 704, 322 N.E.2d 768. It "mak[es] conduct unlawful which was not unlawful under the common law or any prior statute." *13 <u>Commonwealth</u> v. <u>DeCotis,</u> 366 Mass. 234, 244 n. 8, 316 N.E.2d 748 (1974). Thus, a cause of action under**

---

**[5]** **The mortgagee herein (State) is not a lending institution but an acquirer of debt.**
**[6]** **All parties rely upon Massachusetts Law, the site of the debt, security, collections, litigation, all transaction taking place in Massachusetts and including the foreclosure process using all applicable Massachusetts law, all as set out in the agreed facts, interrogatories, admissions of all parties.**

c. 93A is "not dependent on traditional tort or contract law concepts for its definition." Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 626, 382 N.E.2d 1065 (1978). See Nei v. Burley, 388 Mass. 307, 313, 446 N.E.2d 674 (1983) ("[A]nalogies between common law claims for breach of contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A dispenses with the need to prove many of the essential elements of those common law claims").[20] ....This is simply a new case for an old proposition: where foreclosure of a mortgage, even on an actual default, is conducted in bad faith to the detriment of the mortgagor, an action will lie. See Levin v. Reliance Co-op. Bank, 301 Mass. 101, 103, 16 N.E.2d 88 (1938); Morse v. Mutual Fed. Sav. & Loan Ass'n of Whitman, 536 F.Supp. 1271 (D.Mass.1982) (holding mortgagee's bringing foreclosure proceedings for ulterior purpose of collecting mortgagor's bad check indebtedness was wrongful and in violation of c. 93A). The motive evidence was relevant to the c. 93A claim and was thus properly admitted.

The defendants further argue that, as matter of law, it was not unfair or deceptive to ask Kattar to testify to what the defendants believed to be true. ...The conduct that violated c. 93A was occasioning the foreclosure as retribution for Kattar's refusal to testify. *Their claim that there can be no c. 93A violation because they had a legal right to foreclose has no merit. Legality of underlying conduct is not necessarily a defense to a claim under c. 93A.* (Emphasis added). See Schubach v. Household Fin. Corp., 375 Mass. 133, 137, 376 N.E.2d 140 (1978). Chapter 93A does not define what constitutes an "unfair or deceptive act or practice." Such a definition would be impossible, because, as the Appeals Court aptly noted, "[t]here is no limit to human inventiveness in this field." Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 503, 396 N.E.2d 149 (1979), quoting H.R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. (1914). Although G.L. c. 93A, § 2 (b), states that courts are to be guided by the Federal Trade Commission and Federal court interpretations of the Federal Trade Commission Act, *14 PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 595, 321 N.E.2d 915 (1975), unfair or

deceptive conduct is best discerned "from the circumstances of each case." Commonwealth v. DeCotis, supra at 242, 316 N.E.2d 748. See Kerlinsky v. Fidelity & Deposit Co., 690 F.Supp. 1112, 1119 (D.Mass.1987), aff'd, 843 F.2d 1383 (1st Cir.1988) ("[I]t is not the definition of an unfair act which controls but the context--the circumstances to which that single definition is applied"). Even if the defendants had the right to foreclose, as the judge found, it was clearly unfair, within the meaning of c. 93A, to use that right for a reason so obviously against public policy. Cf. Anthony's Pier Four, Inc. v. HBC Assocs. ., 411 Mass. 451, 473, 476, 583 N.E.2d 806 (1991) **258 (use of discretionary contract right to "forc[e] financial concessions" was unfair or deceptive act violating c. 93A).

In recent months it has been judicially determined that the mortgagee's claim of routine compliance with the statute regarding foreclosure is no defense to the conduct such as outlined by TAT.

*Their claim that there can be no c. 93A violation because they had a legal right to foreclose has no merit. Legality of underlying conduct is not necessarily a defense to a claim under c. 93A. Chapter 93A does not define what constitutes an unfair or deceptive act or practice.* Such a definition would be impossible, because, as the Appeals Court aptly noted, [t]here is no limit to human inventiveness in this field. Although G.L.c. 93A, § 2(b), states that courts are to be guided by the Federal Trade Commission and Federal court interpretations of the Federal Trade Commission Act, unfair or deceptive conduct is best discerned from the circumstances of each case. Even if the defendants had the right to foreclose, as the judge found, it was clearly unfair, within the meaning of c. 93A, to use that right for a reason so obviously against public policy." But that observation does not supply the answer in a case such as this. Unlike in the Williams case, supra, where the mortgagor was engaged in a last minute

negotiation for terms that would not have resulted in full payment for the mortgagee, here the plaintiffs had a buyer willing to pay approximately $60,000 above the cost of the equity of redemption which would have resulted in full recovery of the amount due to the mortgagee, including costs, and left some funds available for the plaintiffs." (Citations and quotations omitted). <u>Snowden</u> v <u>Chase Manhattan</u>, 2003 WL 22519518 (Mass.Super.) (Emphasis added).

Even though there is no dispute that plaintiffs failed to make several mortgage payments, and, therefore, that Chase had a legal right to exercise its power of sale, the law requires that it must "exercise the utmost good faith," Taylor, 233 Mass. at 247, and use reasonable diligence to protect the interests of the defaulting home owner. <u>Williams</u>, supra, 417 Mass. at 383. See <u>Levin</u> v. <u>Reliance Co-Operative Bank</u>, <u>301 Mass. 101,</u> 103 (1938) (A mortgagor has a basis for a tort action against the mortgagee despite the existence of a default whenever a foreclosure is conducted negligently or in bad faith); <u>Fenton</u> v.<u>Torrey</u>, 133 Mass. 138, 139 (1882)(One who undertakes to exercise the power of sale in a mortgage must act in good faith and with a careful regard for the interest of the principal). In circumstances such as these, the mortgagee "cannot shelter himself under a bare literal compliance with the conditions imposed by the terms of the power [of sale]." <u>Montague</u> v. <u>Dawes</u>, 14 Allen 369, 373 (1890). Here, not unlike the situation in <u>Drinan</u> v. <u>Nichols</u>, 115 Mass. 353, 357 (1874), before the auction took place, the mortgagee had knowledge (1) that a buyer for the property had been found by the plaintiffs, (2) that the prospective buyer had made a legally binding commitment to purchase the property, (3) that the buyer had not made the offer subject to the condition that he secure financing, (4) that the buyer had a solid commitment for the sale of his own home to another person who had secured financing, and (5) that the buyer was willing to pay a price for the plaintiffs' home that would result in a full recovery of all the money due to the mortgagee, including its costs, under the note and mortgage. Moreover, under the terms of the foreclosure sale established by the mortgagee, anyone who would

buy the property at auction had 30 days following the date of the sale in which to pay the balance of the purchase price.  Thus, the mortgagee was willing to extend a reasonable period of time to anyone who bought the home at auction to pay the balance of purchase price, but it was not willing to extend a reasonable period of time to the plaintiffs, the legal owners of the property, who had secured a buyer for it at a market rate. The position taken by the mortgagee that it had a right nonetheless to proceed with the auction and sell the property in such circumstances due the plaintiffs earlier default is to elevate compliance with the formalities required to exercise the contractual power of sale contained in the mortgage over the fiduciary obligation it owed to the mortgagee and the dictates of basic fairness. <u>Snowden</u> v <u>Chase Manhattan</u>, 2003 WL 22519518 (Mass.Super.)

Here too a reputable good faith financially able buyer was found for the acceptable price of $2,000,000.00; a binding signed written commitment had been delivered to Garrett, Inc. and States; the commitment was not subject to financing; that the sum offered by Leonard Florence unconditionally and in a signed writing with $50,000.00 deposit would have paid States in full; TAT in full; and a surplus for the Capizzi family.  Both States and Garrett, Inc. kept that written signed unconditional offer supported by a $50,000.00 secret from The Architectural Team, Inc.; Michael Capizzi; Linda Micu[7]; until *<u>after</u>* the foreclosure of August 26, 2004 when the high bid was $800,000.00 less and the deposit money of Leonard Florence

---

[7] Who had an outstanding agreement of purchase and was willing to allow another to take her place.

still in the control of Garrett, Inc.

It has long been the law of Massachusetts that a mortgagee "cannot shelter himself under a bare literal compliance with the conditions imposed by the terms of the power [of sale]." Montague v. Dawes, 96 Mass. 373, 14 Allen 369, 373 (1890).

The absolute refusal of States and Garrett, Inc. to notice the attaching creditor (TAT) of the receipt of a signed written offer and delivered deposit by a bona fide purchasers for a sum that would have satisfied in full TAT was a breach of a duty it owed to TAT and caused TAT to suffer great harm. The law provides a remedy in such a case. States and Garrett, Inc, would have suffered no financial loss from the disclosure of the written signed offer of Leonard Florence that was $800,000.00 higher than the bid of Kevin Duffy. A postponement of the auction by States or an answered bid by TAT not having such notice of the Leonard Florence written offer, would have created a reasonable opportunity for TAT to maximize the return on the sale and the satisfaction of the execution, but for the fact that the written offer of Leonard Florence was kept a secret from TAT. On these facts developed in the concise statement, States and Garrett, Inc. failed to meet their obligation to act with the utmost good faith and reasonable diligence to protect the interests of TAT. The reasons

of "why" are left to the Court.

In **Slaney v. Westwood Auto, Inc., 366 Mass. 688, 322 N.E.2d 768 (1975),** the Massachusetts Supreme Judicial Court examined chapter 93A at length, and emphasized the distinction between that statutory cause of action and the common law action for fraud and deceit as to a duty to disclose.  The SJC pointed out that "the definition of an actionable 'unfair or deceptive act or practice' goes far beyond the scope of the common law action for fraud and deceit and claim for relief ..[it] is not subject to the traditional limitations of preexisting causes of action such as tort for fraud and deceit." **Id., at 703-04, 322 N.E.2d 768.** Massachusetts case law suggests that one difference between a fraud claim and the more liberal 93A is allowance of a cause of action even in the absence of a duty to disclose. *See,* **Nei v. Boston Survey Consultants, Inc., 388 Mass. 320, 323-24, 446 N.E.2d 681 (1983),** where the court appeared ready to find chapter 93A liability even though it found no duty to speak.  *See,* also **Nei v. Burley,** 388 Mass. 307, 316, 446 N.E.2d 674 (1983) **V.S.H. Realty, Inc.** v. **Texaco, Inc.,** 757 F.2d 411 (1st Cir Ma),1985.

The duty to disclose material facts may arise as a result of a fiduciary or confidential relationship between the parties, or from the particular circumstances of the case, and may be legal or equitable in nature.  As one court put the matter, "A duty to

speak arises from a fiduciary or confidential relationship or where a person is, 'by force of circumstances,' under a duty to speak. <u>See</u>, WILLSTN-CN § 69:17 NONDISCLOSURE OF MATERIAL FACT § 69:17.

Although TAT did not file a cross motion for summary judgment, it is open to the court to enter judgment for TAT, on the issue of liability, in circumstances such as these.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Federal Rules of Civil Procedure Rule 56 summary judgment, when appropriate, may be rendered against the moving party.  Federal Rules of Civil Procedure Rule 56.

As recently stated in <u>National Union Fire Insurance Company of Pittsburgh, Pennsylvania</u> <i>v</i> <u>Lumbermens Mutual Casualty Company</u>, 2004 WL 2149143 (1st Cir.):

> 10A Charles Alan Wright et al., <u>*Federal Practice &*</u>
> <u>*Procedure* § 2720, at 347</u> (3d ed. 1998) ("[S]ummary
> judgment may be rendered in favor of the opposing
> party even though the opponent has made no formal
> cross-motion under Rule 56.").

A motion is not necessary for summary judgment to be granted; the judge can <u>sua</u> <u>sponte</u> grant summary judgment in appropriate cases.  <u>National Expositions, Inc.</u> v. <u>Crowley Maritime Corp.,</u> 824 F.2d 131, 133-34 (1st Cir. 1987)

From the pleadings and admissions and concise statements: (a) both States and The Architectural Team, Inc. were engaged in business; (b) the transactions took place within Massachusetts. Unlike common law fraud and misrepresentation, Chapter 93A imposes liability for material nondisclosure in transactions. *See*, Urman v. South Boston Sav. Bank, 424 Mass. 165, 674 N.E.2d 1078 (1997). It is a violation of the act to fail "to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." *See*, L.B. Corporation v. Schweitzer-Mauduit International, Inc., 121 F Supp 2d 147 (2000).

Further, under section 11 of Chapter 93A, the Court is open to consider and evaluate the claim of TAT for punitive damages and costs as against States and Garrett, Inc. all as provided in § 11 so as to impose the appropriate penalty for such conduct as outlined in the law.

<u>FACTS</u>

The undisputed facts of this instant litigation are that States and Garrett, Inc. had an bonus agreement for fees unknown to TAT; that if costs for auctioneer's fees were to come from States pocket the fee was $600.00; if it came from The Architectural Team, Inc. the same work would generate $42,000.00; that court approval for charges by Garrett, Inc. was necessary by the terms of the e-mails alleged by both States and

Garrett, Inc; that no court approval of the fee of Garrett, Inc. is alleged although expressly mandated in the alleged engagement of Garrett, Inc. by States; that no evidence of time or reasonableness has been presented by Garrett, Inc; that a minimum fee by auctioneers has been discussed in private settings by Garrett, Inc.; that Garrett, Inc. had no auctioneers license; that Garrett, Inc. advertised the Property as 2 ½ acres when in fact the acreage was slightly under six acres; that Garrett, Inc. and States receives a written signed offer from a person able to complete the transaction for $2,000,000.00; together with a deposit check of $50,000.00 placed in a defunct corporate account never revealed to TAT; that the acceptance or implementation of the offer would have paid TAT in full; that both Garrett, Inc. and States purposefully and intentionally kept the written signed offer dated August 4, 2003, received August 6, 2003 secret knowing that Linda Micu will not close the sale on August 25, 2003, but would cooperate to get someone to so close, all as set forth in a voice mail produced through discovery; that Garrett, Inc. and States still refused to tell TAT or Micu of the bid; that the advertisement of property in Lincoln MA published in the Boston Globe is listed as 2 ½ acres when in fact it is nearly 6 acres the cost of which erroneous advertisements States wants to take from the funds belonging to TAT; that Attorney Doonan

approved the advertisement and Garrett, Inc. seeks its costs for
the advertisements; that Kevin Duffy went to the Town Hall to find
out the real acreage as a civil engineer; that Kevin Duffy buys the
Property immediately placing a shame mortgage thereon and then
lists the property for approximately $1,400,000.00 more than the
purchase price paid by Kevin Duffy less than a year before; that
with no further construction or alterations on the Property and
then after discovery of such listing by TAT Kevin Duffy removes
or causes the removal of the listing for the Property for nearly
$2,600,000.00 from the broker and internet.

The burden of proof of reasonableness of fees, different
categories of fees, setting of minimum percentage fees, unfair or
deceptive conduct raise issues that require further discovery not
yet permitted by States.

States filed a Motion for Protective Order, *has not*
responded to deposition requests of TAT properly filed, TAT
assenting to a telephonic deposition, but said telephonic
deposition was objected too by a party other than TAT. *See*,
Motion for Protective Order by States et al, filed 08/03/2004,
Docket Items 74-78; opposed by TAT Docket Item 82, filed
8/10/2004.

At the time of filing for summary judgment by States it had
neither produced a witness for depositions nor produced a policy

of insurance that appears mandated under the mandatory discovery rules[8], notwithstanding repeated requests by The Architectural Team, Inc.  Fed.R.Civ.P. 26(D).

## CONCLUSION

The standard for summary judgment is familiar.  Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  To avoid summary judgment, the opposing party must produce affirmative evidence demonstrating a genuine issue for trial.  _See,_ Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);  Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir.1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).  "[T]he nonmovant may not rest upon mere allegations, but must adduce specific provable facts demonstrating that there is a triable issue." Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir.1989).

Many courts have simply decided on an ad hoc basis whether issues pertinent to a particular substantive claim are questions of fact or law, or mixed questions of fact and law.  In an effort to provide some principled basis for making this decision, some courts have applied a functional test that looks at a number

---

[8] The Architectural Team, Inc. had made repeated request for production from States.

of factors to decide whether the question ultimately is more suitably resolved by a court or a jury. This approach has been acknowledged by the Supreme Court and appears to have been followed by at least one federal district court in Massachusetts. *See,* Miller v. Fenton, 474 U.S. 104, 113-15 (1985); Chappee v. Massachusetts, 659 F.Supp. 1220, 1228-29 (D.Mass. 1987), rev'd on other grounds, 843 F.2d 25 (1st Cir. 1988). *See,* also W. Schwarzer, A. Hirsch & D. Barrans, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 458-61 (1992).

For the Court to grant summary judgment, States and Garrett, Inc. they must demonstrate that, based on the relevant substantive law, the undisputed material facts set forth in its memorandum support its motion for judgment as a matter of law. A motion for summary judgment will be granted only if the moving party has explained to the court, in the context of the relevant substantive law, how the undisputed facts mandate summary judgment.

TAT asserts that neither States nor Garrett, Inc. have passed the threshold for summary judgment, and to the contrary TAT is entitled to partial summary judgment on liability of States and Garrett, Inc.

Lastly, in this litigation the Order of the Court dated June 3, 2003, (4) Ordered that summary judgment motions are to be filed

19

by October 8, 2004, *"after the completion of the necessary discovery."* (Emphasis added) *See,* Docket Item Numbered 44, dated 06/03/2004.  In but a few words, States has not completed discovery and in not entitled to the filing of summary judgment motion until discovery is permitted by States.

## THE ARCHITECTURAL TEAM, INC. REQUESTS ORAL ARGUMENT

<div style="margin-left:40%">

Respectfully submitted,
By its Attorney,
s/Jordan Lewis Ring
Jordan Lewis Ring, Esquire
Attorney for:
The Architectural Team, Inc.
RING LAW FIRM
4 Longfellow Place 37th Floor
Boston, Massachusetts 02114
BBO# 420980
jordanlewisring@masslawyer.us
617-558-9800/fax 617-5589801

</div>

October 18, 2004

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MASSACHUSETTS
## CIVIL ACTION NO 04-10095DPW

**STATES RESOURCES CORPORATION,**

**Plaintiff**

**v.**

**MICHAEL CAPIZZI,**
**CATHERINE R. CAPIZZI,**
**THE ARCHITECTURAL TEAM, INC.,**
**JOHN CONNOLLY, JR.,**
**GARRETT, INC.**
**MASSACHUSETTS DEPARTMENT OF REVENUE,**
**JAMES GRUMBACH**
**KEVIN DUFFY**
**Defendants**

<u>CERTIFICATE OF SERVICE</u> <u>MA R USDCT LR 5.2</u>
OPPOSITION OF THE ARCHITECTURAL TEAM, INC.
TO THE MOTIONS FOR SUMMARY JUDGEMENT OF
STATES RESOURCES, INC. AND GARRETT, INC.;
SUPPORTING MEMORADUM OF LAW;
AND
<u>REQUEST FOR ORAL ARGUMENT</u>

I hereby certify that a true copy of the above document was served upon each party appearing pro se and the attorney of record for each other party by electronic service as provided in the docket
ELECTRONIC FILING TO ALL E-MAIL ADDRESSES
October 18, 2004

                                        Respectfully submitted.
                                        By its Attorney,
                                            s/Jordan Lewis Ring
                                        Jordan Lewis Ring, Esquire
                                        Attorney for:
                                        The Architectural Team, Inc.
                                        RING LAW FIRM
                                        4 Longfellow Place 37th Floor
                                        Boston, Massachusetts 02114
                                        BBO# 420980
                                        jordanlewisring@masslawyer.us
                                        617-558-9800/fax 617-558-9801

**October 18, 2004**