# United States District Court
# Eastern District of Massachusetts

### Civil Action No. 04 10095 DPW

_____

STATES RESOURCES CORPORATION

Plaintiff

v.

MICHAEL CAPIZZI,
CATHERINE R. CAPIZZI,
THE ARCHITECTURAL TEAM, INC.,
JOHN CONNOLLY, JR.,
GARRETT, INC.
MASSACHUSETTS DEPARTMENT OF REVENUE,
JAMES GRUMBACH
KEVIN DUFFY

Defendants

_____

### CONCISE STATEMENT OF MATERIAL FACTS BY THE ARCHITECTURAL TEAM, INC. IN SUPPORT OF THE ARCHITECTURAL TEAM, INC.'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT MOTION OF GARRETT, INC. AND STATES RESOURCES CORPORATION UNDER MA R USDCT LR 56.1

Defendant and Plaintiff in Counterclaim, The Architectural Team, Inc. ("TAT") hereby respectfully submits this Concise Statement pursuant to Local Rule 56.1 in opposition to the Motion for Summary Judgment of Garrett, Inc. and Motion for Summary Judgment of States Resources, Inc ("States").

In support of judicial economy and reduced discovery costs and

1

because of the commonality of issues and time constraints, The Architectural Team, Inc. submits this Concise Statement in support of The Architectural Team, Inc.'s opposition to the Summary Judgment Motions of both States Resources Corporation and Garrett, Inc.

1.      Garrett, Inc. was incorporated on <u>August 8, 2000</u> in Massachusetts. *<u>Ex. 1</u>[1], Response 2 (a) (b) of Garrett, Inc. to Interrogatories of The Architectural Team, Inc. to Garrett, Inc. dated September 27, 2004 ("TAT Ints").*

2.      "The corporation (Garrett, Inc.), itself, had no license [auctioneers license issued by Massachusetts]" *<u>Ex. 2</u>, page 19, lines 6, 7 deposition of Garrett, Inc. August 2, 2004, Garrett Healey designated and testifying ("Dep Garrett, Inc.").*

3.      The auctioneer license to Garrett D. Healy, number 197, is "not transferable". *<u>Ex. 3</u>, Dep Garrett, Inc. (Exhibit 19 of the Deposition).*

4.      Garrett, Inc. admits that no auctioneer's license with its corporate name on it *<u>was issued</u>* by the Commonwealth of Massachusetts. *<u>Ex. 4</u>, Admissions of Garrett, Inc. dated September 20, 2004, Admission Response 1.*

5.      The first auction sale for the property located at and known as at 236 Lincoln Road, Lincoln, MA. ("Property"), by States Resources Corporation ("STATES") was scheduled on 5/20/03. *<u>Ex. 5</u>, VCC[2] Garrett, Inc. ¶ 9.*

6.      Subsequent to the auction date of 5/20/03 of the Property,

---

[1] All ("<u>Ex</u>") refer to Exhibits filed herewith in this Concise Statement.
[2] Verified Counterclaim of Garrett, Inc.

STATES and Garrett, Inc. and no other party, in an exchange of e-mails dated May 27, 2003 and May 29, 2003, between STATES's attorney and Garrett, Inc., an auctioneer fee relating to the Property was the subject of the e-mails between STATES and Garrett, Inc. and *no other party* to this litigation of $600.00 if the Property were purchased by STATES.  STATES and Garrett, Inc. further stated therein that the auctioneers' commission would be increased from $600.00 to (3.5% of the sales price), now claimed to be approximately $48,459.20 by Garrett, Inc. only if the Property were "sold to a 3rd party", if STATES (not TAT) were made "whole" and further specifically providing in the e-mail that the commission of Garrett, Inc. is further "...*subject to court approval*.[3]"  (Emphasis added)

There has never been alleged by either Garrett, Inc. or STATES that either Garrett, Inc. or STATES received any approval at any time from any court for any sum claimed by Garrett, Inc. or STATES.

Such e-mails were never disclosed to The Architectural Team, Inc. until immediately before the within litigation well after any auctions.  *Ex. 6 VVC Exhibit C, and deposition of Garrett, Inc., Exhibit 17; STATES Interpleader Complaint, ¶ 36, Exhibit T; Garrett, Inc. Answer, ¶ 36 "Admitted", Exhibit 17 (e-mails) Deposition of Garrett, Inc., page 323, lines 2-24, Answer 11 by TAT of Interrogatories of Garrett, Inc.*

7.     On or about August 6, 2003, Garrett, Inc. received from Leonard Florence of Chestnut Hill, MA. a signed letter dated August 4, 2003 containing an unconditional offer to buy the Property for $2,000,000.00 and

---

[3] What court not specified; i.e. State Court, Federal Court, Bankruptcy Court, Land Court?

enclosing a designated deposit check for the Property of $50,000.00 . *Ex. 7, deposition of Garrett, Inc., Exhibit 4, 5, 6, 7.(essential all the same)*

8.    Garrett, Inc. admits it knew of Leonard Florence and did business with Leonard Florence during the years preceding the receipt of the August 4, 2003 letter from Leonard Florence. *Ex. 8, Admission of Garrett, Inc., Response 17.*

9.    Garrett, Inc. admits it believed that Leonard Florence was financially capable of purchasing the Property for $2,000,000.00. *Ex. 9, Admission of Garrett, Inc., Response 18.*

10.    Garrett, Inc. knew of the reputation of Leonard Florence in the business community as a good, honorable, trustworthy, and honest businessperson. *Ex. 10, Admission of Garrett, Inc., Response 19, Deposition Garrett, Inc., page 57, line 8-24, page 58, line 1-24, page 59, line 1-13.*

11.    On or about August 6, 2003 Garrett, Inc. received both the signed, written offer of Leonard Florence dated August 4, 2003 for the Property, and to secure the same a "deposit" check of Leonard Florence dated August 4, 2003, cashed by deposit by Garrett, Inc. on August 6, 2004. *Ex. 11, Response to interrogatory number 6 and 7 of TAT, and, Exhibit 5, 6, 7 of the deposition of Garrett, Inc.*

12.    Garrett, Inc. admits that a $50,000.00 deposit personal check of Leonard Florence of Chestnut Hill for the Property made payable to Garrett, Inc. was deposited by Garrett, Inc., the payee, into the account of Garrett Auctioneers, Inc., number 35602310 at the Danvers Savings Bank further

4

admitting that the backside of the $50,000.00 check indicates that the deposit was made on August 6, 2003 into the account of Garrett Auctioneers, Inc by Garrett, Inc.  On the said check of $50,000.00 of Leonard Florence , 96 Lyman Road, Chestnut Hill, MA 02467dated 8/4/03 is typed "Deposit 236 Lincoln Rd., Lincoln, MA".  Garrett, Inc., the payee deposited the check in the name of Garrett Auctioneers, Inc. at the Danvers Savings Bank on August 6, 2003.  *Ex. 12, Admission 9, Response No. 9: Garrett, Inc.; deposition of Garrett, Inc., Exhibit 7 (see deposit date of Danvers Savings Bank dated August 6, 2003.)*

13.    Garrett, Inc. sent a copy of the unconditional written signed offer for the Property made by Leonard Florence to Attorney John Doonan representing STATES.  *Ex. 13, Deposition of Garrett, Inc., page 335, line 3-20; page 336, lines3, through lines 17.*

14.    Garrett, Inc. deposited the Leonard Florence $50,000.00 deposit check for the Property on 08/06/03 into an account in the Danvers Savings Bank of Garrett Auctioneers, Inc., a dissolved corporation and a corporation that is not involved in any way with the office or duties of Garrett, Inc.  *Ex. 14, Exhibit 2 and 7 Deposition of Garrett, Inc.*

15.    Garrett, Inc. contacted Leonard Florence in Garrett, Inc.'s capacity to market the Property consistent with instructions from John Doonan, attorney for STATES, that Garrett, Inc. market the Property.  *Ex. 15, Deposition of Garrett, Inc., page 328 lines 18 – 24; page 327, lines 1-11.*

16.    Garrett, Inc. notified John Doonan of the August 4, 2003 written signed offer of Leonard Florence and designated $50,000.00 deposit

received from Leonard Florence because Garrett, Inc. claims to have a fiduciary duty to John Doonan and STATES Resources Corporation, as their agent. *Ex. 16, Garrett, Inc. answer to Interrogatory 6 (b) of TAT.; page 107, line 14-24; page 108 line 1-22 Deposition of Garrett, Inc.*

17.    Garrett, Inc. admits that neither Garrett, Inc. nor Garrett Healey informed Michael Capizzi, Catherine Capizzi, The Architectural Team, Inc., or Linda Micu of the written signed offer of $2,000,000.00 by Leonard Florence for the Property and designated deposit of $50,0000.00 from Leonard Florence. *Ex. 17, Response 10 of Garrett, Inc. to Request for Admissions of TAT, dated September 20, 2004; answer 6 b of Garrett, Inc. to Interrogatories of The Architectural Team, Inc.; also see Deposition of Garrett, Inc.; page 329, line 1-20.*

18.  Not until Garrett, Inc. filed its Answer and Counterclaim in this litigation was TAT advised that Leonard Florence made a signed written unconditional offer of $2,000.000.00 for the Property and that Leonard Florence had given to Garrett, Inc. a $50,000.00 deposit check in connection with such signed offer or that Garrett, Inc. deposited the $50,000.00 into an account at Danvers Savings Bank,. *Ex. 18, Response 10 to Request for Admissions of Garrett, Inc, dated September 20, 2004.*

19.    After the Memorandum of Purchase, executed by Garrett, Inc. on behalf of STATES dated July 24, 2003, with Linda Micu, high bidder, to purchase the Property for $2,000,000.00 by August 25, 2003, Garrett, Inc. received a voice message by telephone from Linda Micu stating she "...could not go through with the purchase set for August 25, 2003, but

stating that hopefully you (Garrett, Inc.) can get someone else who can take advantage of what I think is a pretty good deal." It appears that at the time of the voice message or shortly thereafter, Garrett, Inc. had received the written officer of Leonard Florence. *Ex. 19, transcription of a voice mail produced by Garrett, Inc. transcription made by Garrett, Inc. re production request dated August 12, 2004 and Exhibit 10, Garrett, Inc. deposition of August 2, 2003, Garrett, Inc, Deposition page 137, line, line 1-18.*

20.    Garrett, Inc. never told Linda Micu of the Leonard Florence written offer of August 4, 2003, Linda Micu being the high bidder of the Property on July 24, 2003 and who noticed Garrett, Inc. within days of the July 24, 2003 bid, she, Linda Micu, could not close and that the Property should be sold to another. *Ex. 20, being Exhibit 10 in Deposition of Garrett, Inc. dated August 2, 2004 and Ex. 16, Response 10 Admission of Garrett, Inc*

21.    Garrett, Inc. admits that:

a.  Neither Garrett, Inc. nor Garrett Healey informed Michael Capizzi, Catherine Capizzi, The Architectural Team, Inc., or Linda Micu of the unconditional $2,000,000.00 written signed offer to purchase the Property dated August 4, 2003, from Leonard Florence indicating that he "would like to make" a $2,000.000.00 offer on the property, *Id, Response to Admissions of Garrett, Inc. 10;*

b.  Leonard Florence had given Garrett, Inc. a $50,000.00 check in connection with such letter, *Id;*

    c.  Garrett. Inc. deposited the $50,000.00 supporting the written offer of Leonard Florence at the Danvers Savings Bank, and did not reveal the deposit to Garrett Auctioneers, Inc., to TAT, Michael Capizzi, Catherine Capizzi, Linda Micu until after STATES and Garrett, Inc. filed pleadings in the with litigation. *Ex. 21  Response of Garrett, Inc. to request for admissions by The Architectural Team, Inc., Request 10; and Exhibit 6 and 7 of the Deposition of Garrett, Inc. dated August 2, 2004.*

    22.  There is neither any claim or record by Garrett, Inc. or STATES of any assent in any interrogatory, admission, or deposition that either TAT, Catherine Capizzi or Michael Capizzi assented to the fee or charges of Garrett, Inc.  *See affidavit of The Architectural Team, Inc. dated October 15, 2004, Ex. 40.*

    23.  TAT was not aware that Leonard Florence of Chestnut Hill, a multi millionaire businessperson with successful business and investment history had made an unconditional written signed offer for the Property in the amount of $2,000,000.00 together with a $50,000 cash deposit on August 4, 2003 to Garrett, Inc., Leonard Florence being a friend and business associate of long standing of Garrett Healey, the sole officer of Garrett, Inc.. *Ex. 22, Answer 5 to interrogatories of Garrett, Inc. served Sept 10, 2004.*

    24.  STATES and Garrett, Inc. had a <u>bona fide</u> buyer submitting to Garrett, Inc. on or about August 4, 2003 a signed, unconditional binding written offer to pay $2,000,000.00 without a single condition for the

Property, made by signed written offer to Garrett, Inc. with a $50,000 00 deposit from a businessperson known to be able to acquire the Property. *Ex. 23, answer 10 and 11 by Garrett, Inc. to Request for admissions of TAT dated September 20, 2004 and answer 6 of TAT to Interrogatories of Garrett, Inc.*

25.    The Leonard Florence written offer to purchase the Property would have resulted in full recovery of the full amount due to the mortgagee (STATES), including costs, The Architectural Team, Inc. and there would have been funds left over for Michael Capizzi. *Ex. 24, Answer 7 of TAT to Interrogatories of Garrett, Inc. dated September 10, 2003.*

26.    TAT had a special attachment, lien, execution and levy on the Property, a known special attachment granted by the Massachusetts Superior Court and execution issued by the Massachusetts Superior Court and levy all known to Garrett, Inc. and STATES. *Ex. 25, answer 8 of TAT to Interrogatories of Garrett, Inc. and Deposition of Garrett, Inc pages 177-178, 331, 332, see also agreement with Linda Micu signed by Garrett, Inc. dated July 24, 2003, wherein it STATES "....there is a real estate lien on the (P)roperty from The Architectural Team, Inc. ...in the amount of $600,000.00..." with similar language just above the signature of Garrett, Inc. of the agreement dated September 26, 2003, Exhibits 10 and 18 respectfully in the Garrett, Inc. deposition. The Memorandums of Sale, July 24, 2003 and September 26, 2003, supra, were prepared by Attorney for STATES and executed by Garrett, Inc., both referring to the $600,000.00 special attachment and lien of The Architectural Team, Inc. See also*

*Exhibit P, STATES Interpleader Complaint.*

27.    Garrett, Inc. and STATES were on notice that The Architectural Team, Inc was owed approximately $600,000.00 and had a lien upon the very Property that was subject of the sale. *Id Ex. 26, Deposition of Garrett, Inc. dated August 2, 2004, Exhibit 10.*

28.    The written unconditional offer of Mr. Leonard Florence of $2,000,000.00 and the $50,000 deposit for the acquisition of the property was not to be applied to the mortgage debt alone but to The Architectural Team, Inc.'s Superior Court special attachment, execution and levy and the balance to Michael Capizzi. *Ex. 27, Answer 7 by TAT to interrogatories of Garrett, Inc. served Sept 10, 2004.*

29.    Garrett Inc. knew of the interest of The Architectural Team, Inc.; saw The Architectural Team, Inc. at both auction sales; and saw The Architectural Team, Inc.'s; and attorney' and while Garrett, Inc., who now seeks payment from the very funds which belong to TAT unlawfully held by Attorney John Doonan, never once told The Architectural Team, Inc. or its counsel that Garrett, Inc. controlled, held and was holding a deposit of $50,000.00 supporting a binding bona fide signed written offer by a reputable businessperson; had a <u>bona fide</u> unconditional written, signed offer that would pay The Architectural Team, Inc. in full but, rather Garrett, Inc. decided to keep this material information from the very entity from which Garrett, Inc. now seeks payment. *Id, Answer 5 to interrogatories of Garrett, Inc. served Sept 10, 2004; Answer 6 and 7 of TAT's Answers to Interrogatories of Garrett, Inc.*

30.    Kevin Duffy, the purchaser of the property for $1,200,000.00 without filing for a single building permit in Lincoln, MA. listed for sale the Property for $2,590,000.00 in *less than* a year after having purchased the Property for $1,200,000.00 on October 22, 2003, and, at the time of his acquisition of title, immediately placed a straw unfunded mortgage upon the Property for $1, 250,000.00 on October 22, 2003, in favor of Joan Duffy, his Mother. *Ex. 28, Deposition of Kevin Duffy August 30, 2003, page 51, lines 9 and 10, page 38, line 16 -18, page 35, line 14-20.*

31.    Only Garrett, Inc. and John Doonan and STATES knew that Leonard Florence had valued the property at $2,000,000.00 through his signed unconditional written offer; and had made an unconditional written offer for the same $2,000,000.00 with a deposit check of $50,000.00, that both STATES and Garrett, Inc. deliberately failed to disclose the same to TAT and Michael and Catherine Capizzi. *Ex. 29, TAT answer to Interrogatories of Garrett, Inc. dated September 10, 2004, answer 8.*

32.    Garrett, Inc. gave no notice of the written offer and deposit check to Michael and Catherine Capizzi, Linda Micu, and/or The Architectural Team, Inc, but did send the written offer to John Doonan, Attorney for STATES.  At all material times, Garrett, Inc. believed that it had no duty to notify them of Mr. Florence's proposal. *Ex. 30, Response 6 (b), Answers to Interrogatories by Garrett, Inc.; deposition Garrett, Inc. August 2, 2004, page 336, lines 3-17, Admission Garrett, Inc. Response 8.*

33.    The local Federal Courts Rules of Bankruptcy (MA R USBCT MLBR 6004-1)) for auctioneers provides a formula for a reasonable

auctioneers' fee which formula was never used or implemented as to the Property by either STATES or Garrett, Inc.  To foreclose STATES need relief from the bankruptcy stay by the Bankruptcy Court, yet neither Attorney Doonan, the attorney of record in the Bankruptcy Court nor Attorney Doonan's office ever mentioned the Leonard Florence signed offer to the Bankruptcy Court nor delivered the deposit to the Bankruptcy Court or Trustee.  *Ex. 31, Answer 6 to Interrogatories of Garrett, Inc. to TATs served Sept 10, 2004.*

34.    The newspaper advertisements of Garrett, Inc.[4] were repeatedly in error; that in fact the Property was advertised by Garrett, Inc. repeatedly as 2 ½ acres, which was an misstatement by Garrett, Inc. understating the land area of the real estate in Lincoln, Massachusetts by nearly 60 %.  Representations of misstatements *Ex. 32, Exhibits 11 AND 16 Deposition of Garrett, Inc.*

35.    The Property has been listed by Kevin Duffy (which listing was published) for sale of the Property at $2,590,000.00 "on six Magnificent Acres".  *Ex. 33, Deposition of Kevin Duffy, Exhibit 4.*

36.    When offering the Property for sale, Kevin Duffy did not add any additions or construction or perform any construction or remodeling that would require a building permit from the Town of Lincoln, as none has been applied for or issued; that Kevin Duffy obtained no permit for renovation to the Property, yet listed the Property for $2,590,000.00, nearly one million four hundred thousand dollars above the foreclosure price of

---

[4] For which Garrett, Inc. seeks reimbursement for the misstated advertisements Interpleader Complaint Exhibit T.

**$1,2000,000.00.  _Ex. 34_, _Deposition of Kevin Duffy, page 40, line 14-19; page 63, line 8-12, Exhibit 18, of Deposition of Garrett, Inc._**

37.    There is no evidence the fees charged by unlicensed Garrett, Inc. were reasonable for a straight forward real estate auction, and for services that misstated advertising, held secret deposits and undisclosed offers and failing to take a second higher bidder, accepted a check from Linda Micu that stated the name Catherine Capizzi, a chapter 11 debtor.  _Ex. 35_, _Answer 6 to interrogatories of Garrett, Inc. served Sept 10, 2004, Exhibit N in STATES Interpleader Complaint._

38.    That Garrett, Inc. knew of the interest of TAT.  _Ex. 36_, _See above signature of auctioneers, Garrett, Deposition, Exhibit 10 and 18._

39.    That the only sum paid upon the judgment, execution and levy of TAT was $210,096.33 although the execution issued in the amount of $541,152.81 and the outstanding balance accrues interest on the outstanding amount at the rate of 12% per annum from September 24, 2003. _Ex. 37_, _Exhibit P and check in Exhibit U in STATES Interpleader Complaint._

40.    That the sum now held by STATES belongs to The Architectural Team, Inc.

41.    That Garrett, Inc. testified that the Certified Auctioneers Institute group consisting of 56,000 members of which Garrett, Inc. is a member, have a standard minimum charge of 2.5 to 5.5 percent; that he carried out these standards; that the standard rate is 3.5%; that they talk about price; they he talks with his competitors; that they have conversations in _private settings_ **(Emphasis added)**.  _Ex 38_, _Deposition of_

*Garrett, Inc. id, page 344 thru 353.*

42.    There is not a scintilla of evidence that TAT was informed or noticed of the percentage charged by Garrett, Inc. at any time until after the sale and foreclosure. *Ex. 39 of The Architectural Team, Inc. answers 11 to Interrogatories of Garrett, Inc.*

43.    That not scintilla of evidence appears anywhere in the record to support reasonableness of Garrett, Inc.'s charges.  Id

44.    That no evidence has been presented that TAT was ever advised on the charges that were to made by Garrett, Inc. from funds otherwise due The Architectural Team, Inc. from the sale of the Property until well *after* the sale of September 26, 2003 and the closing.  *Id, Affidavit of The Architectural Team, Inc., dated October 15, 2004. EX. 40.*

45.    That the totality of the conduct of Garrett, Inc. can be found to be both unfair and deceptive.

Respectfully submitted,
By its Attorney,
  s/Jordan Lewis Ring
Jordan Lewis Ring, Esquire
Attorney for:
The Architectural Team, Inc.
RING LAW FIRM
4 Longfellow Place 37th Floor
Boston, Massachusetts 02114
BBO# 420980
jordanlewisring@masslawyer.us
617-558-9800/fax 617-558-9801

October 18, 2004

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO 04-10095DPW

**STATES RESOURCES CORPORATION,**

**Plaintiff**

**v.**

**MICHAEL CAPIZZI,**
**CATHERINE R. CAPIZZI,**
**THE ARCHITECTURAL TEAM, INC.,**
**JOHN CONNOLLY, JR.,**
**GARRETT, INC.**
**MASSACHUSETTS DEPARTMENT OF REVENUE,**
**JAMES GRUMBACH**
**KEVIN DUFFY**

**Defendants**

<u>CERTIFICATE OF SERVICE <u>MA R USDCT LR 5.2</u></u>

<u>CONCISE STATEMENT OF MATERIAL FACTS
BY THE ARCHITECTURAL TEAM, INC. IN SUPPORT OF THE
ARCHITECTURAL TEAM, INC.'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT MOTION OF GARRETT, INC. AND STATES
RESOURCES CORPORATION UNDER MA R USDCT LR 56.1</u>

**I hereby certify that a true copy of the above document was served upon each party appearing pro se and the attorney of record for each other party by electronic service as provided in the docket**
**ELECTRONIC FILING TO ALL E-MAIL ADDRESSES**

**October 18, 2004**

    **Respectfully submitted.**
    **By its Attorney,**
        **s/Jordan Lewis Ring**
    **Jordan Lewis Ring, Esquire**
    **Attorney for:**
    **The Architectural Team, Inc.**
    **RING LAW FIRM**
    **4 Longfellow Place 37th Floor**
    **Boston, Massachusetts 02114**
    **BBO# 420980**
    **jordanlewisring@masslawyer.us**

**617-558-9800/fax 617-558-9801**

# <mark>EX.1</mark>

GARRETT, INC. ANSWERS TO INTERROGATORIES OF TAT
Response No. 2:

     Garrett objects to this Interrogatory because, in fact, it is more than one interrogatory propounded under the guise of one.  Subject to and without waiving this objection or its General Objections, Garrett responds to the multiple discrete subparts of this Interrogatory as follows:

    **a. Garrett, Inc. is incorporated under the laws of the Commonwealth of Massachusetts and was incorporated on August 8, 2000.**

    b. Garrett D. Healey currently is the President, Treasurer, and Secretary of Garrett, Inc. and was during 2003.

## <mark>EX.2</mark>

**DEPOSITION OF GARRETT, INC., dated August 2, 2004, Garrett Healey designated.**

**PAGE 19**

1   question to the best of your ability.  And if you

2   don't understand it, Mr. Ring will be kind enough to

3   rephrase it or to try to clarify it for you.

4         MR. RING:  Absolutely.  So agreed.  So

5   agreed.

6       *A.  The corporation, itself, has no*

7   *license.(Emphasis supplied)*

8      Q.  Thank you.  Now, what is your

9   relationship to Garrett Auctioneers, Inc.?

10      A.  As you sTATed, I'm the president.

11      Q.  No.  I haven't sTATed that at all.  I

12   was talking about Garrett, Inc., before.  I don't

13   want to confuse you.  My questions have been

14   regarding Garrett, Inc.

15       MS. WILLIAMS:  Right.

16      Q.  As your counsel will agree, I have

17   been examining you in your capacity as president,

18   treasurer and clerk of Garrett, Inc.

19       My question now is, and I don't want

20   to mislead you, Garrett Auctioneers, Inc., are you

21   aware of that corporation at all?

22      A.  Yes.

23      Q.  And is it true that that corporation



THE COMMONWEALTH OF MASSACHUSETTS
DIVISION OF STANDARDS
ONE ASHBURTON PLACE, BOSTON, 02108

PHONE
617-727-3480

**STATE AUCTIONEER LICENSE**

DATE 4/29/03

08360
CONTROL NO.

197
LICENSE NO.

This is to certify that:

LICENSEE :    GARRETT D. HEALEY
ADDRESS :    4 PORTER MEADOW RD.
CITY :    TOPSFIELD, MA  01983
STATE/ZIP:

This license is in effect as of date of issue. Said licensee must comply with the requirements of Sec. 10 of Chapter 100; said license shall remain in force until one year from date of issue, unless surrendered prior thereto for cancellation.

EXPIRES: 4/28/04

THIS LICENSE IS NOT TRANSFERABLE.

(COPY OF LAW FURNISHED HEREWITH)

_Donald B. Falvey_
DIRECTOR OF STANDARDS



**24    is a corporation of which you are both treasurer,**
**EYAL COURT REPORTING, INC.**

## EX.4

**DEPOSITION OF GARRETT, INC.**

**No. 1:**

Garret, Inc., a corporation duly organized under the laws of Massachusetts holds no auctioneers license issued by Massachusetts to Garrett, Inc.

Response No. 1:

`Garrett, Inc. ("Garrett") admits that an auctioneer's license with its corporate name on it was not issued by the Commonwealth of Massachusetts, but denies that there is any impropriety....`


EX.5

**GARRETT, INC. VVC [5]  paragraph 9**


**9. The auction was scheduled and postponed on no less than 5 occasions by Doonan. (Postponement from 5/20/03 to 6/24; from 6/24 to 7/24; from 7/24 to 9/23; from 9/23 to 9/26 at 11:30 a-rn.; from 9/26 at 11:30 a-rn. to 9/26 at 1:15 p.m.) Each time, Garrett undertook all necessary promotional, marketing and scheduling steps to accommodate the rescheduling.**

---

[5] Verified counterclaim Garrett, Inc.



MSN Hotmail - Message                                                    Page 1 of 2

MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat

**msn**     Your Breast Cancer Treatment OPTIONS?        Search the

Hotmail    Home   Inbox   Compose   Contacts   Options   Help
susan_auctions@msn.com              Free Newsletters | MSN Featured Offers | Find Message

[ Save Address(es) ] [ Block ]                            Previous  Next | Close

From : "Kerry A. Pass" <kap@doonanandgraves.com>
To : "Susan Kagdis" <susan_auctions@msn.com>
Subject : RE: Capizzi/Lincoln
Date : Thu, 29 May 2003 15:45:57 -0400

[ Reply ] [ Reply All ] [ Forward ] [ Delete ] [ Put in Folder... ▾ ]      Printer Friendly Version

In response to the below:

1) No advertising at this time.
2) Commission to auctioneer is 3.5% if sold to a third party - only if our
client is made whole and this is subject to court approval.  Yes, $600.00 if
bought back by the bank. Thanks.

Kerry A. Pass
Paralegal
Doonan, Graves & Longoria, LLC
16 Front Street
Salem, MA 01970
Tel. (978) 741-2680 ext. 14
Fax (978) 744-8780
kap@doonanandgraves.com


-----Original Message-----
From: Susan Kagdis [mailto:susan_auctions@msn.com]
Sent: Tuesday, May 27, 2003 2:43 PM
To: kap@doonanandgraves.com
Subject: Capizzi/Lincoln

Two Things:

1. Marketing expenses for the 6/24 auction are estimated to be $500.00. Do
we have approval to do additional marketing?

2. Can you confirm with John that this is our commission for the auction:
Commission to auctioneer is 3.5% if sold to a 3rd party or $600 if brought
back by Attorney/Client (Doonan, Graves, Longoria)

Susan
Garrett, Inc
978-774-6008

The new MSN 8: smart spam protection and 2 months FREE*
http://join.msn.com/?page=features/junkmail

http://by4fd.bay4.hotmail.msn.com/cgi-bin/getmsg?curmbox=F000000001&msg=MSG10...  5/30/2003

**EX.6**



MSN Home | My MSN | Hotmail | Search | Shopping | Money | People & Chat                    Sign Out

**msn**          Your Breast Cancer Treatment OPTIONS?                    Search the

**Hotmail**    Home | Inbox | Compose | Contacts | Options | Help

susan_auctions@msn.com                        Free Newsletters | MSN Featured Offers | Find Message

Save Address(es)  Block                                              Previous  Next | Close

From : "Kerry A. Pass" <kap@doonanandgraves.com>
To : "Susan Kagdis" <susan_auctions@msn.com>
Subject : RE: Capizzi/Lincoln
Date : Thu, 29 May 2003 15:45:57 -0400

Reply  Reply All  Forward  Delete  Put in Folder...                  Printer Friendly Version

In response to the below:                              MAY 29

1) No advertising at this time.
2) Commission to auctioneer is 3.5% if sold to a third party - only if our
client is made whole and this is subject to court approval.  Yes, $600.00 if
bought back by the bank. Thanks.

Kerry A. Pass
Paralegal
Doonan, Graves & Longoria, LLC
16 Front Street
Salem, MA 01970
Tel. (978) 741-2680 ext. 14
Fax (978) 744-8780
kap@doonanandgraves.com


-----Original Message-----                     MAY 27
From: Susan Kagdis [mailto:susan_auctions@msn.com]
Sent: Tuesday, May 27, 2003 2:43 PM
To: kap@doonanandgraves.com
Subject: Capizzi/Lincoln


Two Things:

1. Marketing expenses for the 6/24 auction are estimated to be $500.00. Do
we have approval to do additional marketing?

2. Can you confirm with John that this is our commission for the auction:
Commission to auctioneer is 3.5% if sold to a 3rd party or $600 if brought
back by Attorney/Client (Doonan, Graves, Longoria)

Susan
Garrett, Inc
978-774-6008

The new MSN 8: smart spam protection and 2 months FREE*
http://join.msn.com/?page=features/junkmail

EXHIBIT
17 SR
8-2-04

http://by4fd.bay4.hotmail.msn.com/cgi-bin/getmsg?curmbox=F000000001&msg=MSG10...  5/30/2003

GARRETT, INC DEPOSITION AUGUST 2, 2004

323

```
1              A.   Yes.

2                   MR. RING:  Would you please mark that

3         saying that those marks on there were not part of

4         the original document?  That's all I have right now.

5         I'll substitute that later.

6                   (Exhibit No. 17; so marked.)

7              Q.   Now, if the property were bought,

8         because I understand from Exhibit 17, I want you to

9         tell me if my understanding is correct, if the

10        property is bought back by Doonan & Graves on behalf

11        of its client, STATES, your total commission would

12        be $600?

13             A.   Does it say that?

14                  (Reviewing document.)

15             A.   That's what it says.

16             Q.   And is that, in fact, true that your

17        total commission would be $600?

18             A.   It's no commission.

19             Q.   Your total fee.  Let me resTATe the

20        question.

21             A.   Would be $600.

22             Q.   Would be $600 for your auctioneering

23        services?

24             A.   Right.(emphasis added)
```

23

EYAL COURT REPORTING, INC.

<u>The Architectural Team, Inc. answers to interrogatory 11 Garrett, Inc.</u>
<u>ANSWER 11.</u>

Objection to the form of the question but answering we are unaware of any communications of any kind with STATES Resources Incorporated. The Architectural Team, Inc. was outraged by the fee sought by Garrett, Inc and Garrett Healey and further both The Architectural Team, Inc. and its attorney discussed both the outrage of the fee and the secret written unconditional offer and cashed deposit and The Architectural Team, Inc. would not assent to any fee to Garrett, Inc. under the circumstances as being reasonable. The Architectural Team, Inc. had no communications directly with the law firm that represented STATES Resources Incorporated and does not know of a STATES Resources Incorporated and knows of no conversations regarding STATES Resources Incorporated and has no idea who their attorney is or was.

**EX.7**

   Frank Smith® TOWLE SILVERSMITHS

Syratech Corporation



August 4, 2003

Mr. Garrett Healey
Garrett Inc.
76 High Street
Danvers, MA 01923

Dear Garrett:

I would like to make an offer of $2,000,000 for the purchase of the property at foreclosure located at 236 Lincoln Road in Lincoln, MA. Enclosed is a check for $50,000 to be applied toward the purchase.

If my offer is acceptable please be in touch with me regarding the details for consummating the sale.

Very truly yours,

Leonard Florence
Chairman of the Board

Merrill Lynch - Check Image                                    Page 1 of 1

Check #:  Date Cleared:  Amount
1814     08/07/2003      50000

---

LEONARD FLORENCE  D.M.P
39 LYMAN ROAD
CHESTNUT HILL, MA 02167

BANK ONE TRUST COMPANY
NATIONAL ASSOCIATION
COLUMBUS, OH 43271
25-80-440

1814

8/4/2003

Pay to the
Order of    Claival Inc. _____ $  *50,000.00

Fifty Thousand and 00/100 _____ Dollars

Deposit 235 Lincoln Rd, Lincoln MA

⑈001814⑈ ⑆044000804⑆ 9001550025 8 2⑈        ⑆0005000000⑆

---



## EX.8

**ADMISSION OF GARRETT, INC.**

**No. 17:**

 That Garrett Healey knew of Leonard Florence as a businessperson and did business with Leonard Florence for many years prior to the offer of Leonard Florence dated August 4, 2003 and identified in paragraph 6 above.

**Response No. 17:**

 Garrett admits that Mr. Healey knew of Mr. Florence and did business with him on occasion during the years preceding the receipt of the August 4, 2003 letter from Mr. Florence.  Garrett denies the remainder of Request No. 17.

# EX.9

ADMISSION OF GARRETT, INC.

**No. 18:**

That Garrett Healey knew at the time he received the written unconditional offer from Leonard Florence that Leonard Florence was a multi millionaire capable of purchasing the property at 236 Lincoln Road, Lincoln, Massachusetts for $2,000,000 and that Garrett Healey believed Leonard Florence had the financial resources to complete the sale.

**Response No. 18:**

Garrett admits that Mr. Healey believed that Mr. Florence was financially capable of purchasing the property at issue for $2,000,000.00. Garrett denies that Mr. Healey knew for a fact that Mr. Florence was "a multi millionaire" and further denies that the August 4 letter from Mr. Florence amounted to an "unconditional offer".

## EX.10

**ADMISSION OF GARRETT, INC.**

**No. 19:**
 That Garrett Healey knew of the repuTATion of Leonard Florence in the business community as a good, honorable, trustworthy, and honest businessperson.
**Response No. 19:**
 Admitted.

DEPOSITION OF GARRETT, INC, SUPRA   PAGE 57

                                                                    57
     1                    MR. RING:  What he knew of Leonard

     2         Florence over the ten years, and I don't want to

     3         restrict your client.

     4              A.    Can you be a little more specific?

     5              Q.    What did you know of his repuTATion in

     6         the community?

     7                    MS. WILLIAMS:  As of when?

     8              Q.    As of over the ten years that you knew

     9         him prior to being --

    10              A.    No.  He had several repuTATions.  He

    11         had a good business repuTATion and he was a good

    12         friend of a lot of people whom I knew, as well.

    13              Q.    Tell me about Mr. Leonard Florence's

    14         business repuTATion, as you understood it.

    15              A.    Good businessman.

    16              Q.    Okay.  Did you know whether or not he

    17         was a substantial financial member of the community?

    18                    MS. WILLIAMS:  Objection.

    19              A.    Yes.

    20              Q.    What was your understanding as to

    21         Mr. Leonard Florence's financial capacities in the

    22         communication?

23          A.   Aboveboard.

24          Q.   So he was honest?
                 EYAL COURT REPORTING, INC.

                                                    58

1           A.   Very.

2           Q.   Truthful --

3           A.   I would say yes.

4           Q.   -- in his capacities to fund the

5    transactions?

6                MS. WILLIAMS:  Objection.

7           A.   What transactions?

8           Q.   Any transactions.  Real esTATe

9    transactions.

10               MS. WILLIAMS:  Objection.

11          A.   That would be my guess he would.

12          Q.   What's the basis of your guess?

13          A.   I've seen him do things and I would

14   say that he qualified for a good transactions.

15          Q.   When you say "he qualified," this is a

16   discovery proceeding.

17          A.   Financially.

18          Q.   Financially?

19          A.   Mh-hmm.

20          Q.   You found him as a financially sound

21   person?

22          A.   Yes.

23          Q.   And he was a -- from your knowledge,

24   he was a charitable man?

                 EYAL COURT REPORTING, INC.

59

```
 1          A.   Yes.

 2          Q.   Gave a lot to charities?

 3          A.   Yes.

 4          Q.   And as a matter of fact, I would say

 5   you admired Mr. Leonard Florence?

 6          A.   Yes.

 7          Q.   And you admired him for his capacity

 8   both as a businessman and a member of the community?

 9          A.   Yes.

10          Q.   And in that capacity, you knew Mr.

11   Florence prior to meeting Mr. Doonan to discuss with

12   Mr. Doonan the sale of 236 Lincoln Street?

13          A.   Yes.

14          Q.   Lincoln Road.  At sometime, did you

15   contact Mr. Leonard Florence regarding the sale of

16   236 Lincoln Road?

17               MS. WILLIAMS:  Objection.

18          A.   May have.

19          Q.   Did Mr. Florence contact you?

20          A.   I don't recall.

21          Q.   When was your first memory -- when is

22   your first memory of any conversation between you on

23   the one hand and Mr. Leonard Florence on the other

24   hand regarding 236 Lincoln Road, Lincoln,
```

EYAL COURT REPORTING, INC.

# EX.11

RESPONSE OF GARRETT, INC TO INTERROGATORIES OF The Architectural Team, Inc.

**Response No. 6:**

Garrett objects to this Interrogatory because, in fact, it is more than one interrogatory propounded under the guise of one.  Subject to and without waiving this objection or its General Objections, Garrett responds to the multiple discrete subparts of this Interrogatory as follows:

a. Sometime in early August 2003, Garrett, Inc. received an August 4 letter from Mr. Florence along with the $50,000.00 check indicating that Mr. Florence "would like to" make an offer on the property.

b. Garrett, Inc. incorporates by reference its response to Interrogatory Number 5[c].  Further answering Garrett, Inc. notified John Doonan of the August 4 letter and $50,000.00 from Mr. Florence because Garrett, Inc. had a fiduciary duty to John Doonan and STATES Resources Corporation, as their agent.  Garrett, Inc. did not have any specific conversation with John Doonan regarding notifying or not notifying the Capizzis, Linda Micu, and/or The Architectural Team, Inc. of Mr. Florence's proposal.  At all material times, Garrett, Inc. believed that it had no duty to notify them of Mr. Florence's proposal.

c. Garrett, Inc. incorporates by reference its response to Interrogatory No. 5[c].

**Interrogatory No. 7:**

[a] Identify the date, time, and place when Garrett, Inc. received a deposit check for the acquisition of the property from Leonard Florence, [b] the date of each conversation relating to the property by Garrett, Inc. referencing the property, and the offer/deposit of Leonard Florence, the details of each conversation with Leonard Florence referencing anything to do with property, [c] the date of deposit of the check from Leonard Florence to Garrett, Inc. or Garrett Auctioneers, Inc., [d] the check number and date of the check of Leonard Florence, the noTATions on the check of Leonard Florence; the amount of the check; [e] the date of deposit of the check of Garrett, Inc.; [f] the date the check of Leonard Florence cleared the banking system, [g] into what account was the $50,000.00 of Leonard Florence deposited; [h] the full and complete reason for deposit into the account of Garrett Auctioneers, Inc. at the Danvers Savings Bank, [i] all those with the right and power and authorization to sign checks of Garrett Auctioneers, Inc. in 2003, and [j] the date the sum of $50,000 was returned to Leonard Florence and the method of return, [k] including the identification of each document relating in any way to the offer of Leonard Florence

32

for the <u>property</u>.

   Frank Smith® 

Syratech Corporation™



August 4, 2003

Mr. Garrett Healey
Garrett Inc.
76 High Street
Danvers, MA 01923

Dear Garrett:

I would like to make an offer of $2,000,000 for the purchase of the property at foreclosure located at 236 Lincoln Road in Lincoln, MA. Enclosed is a check for $50,000 to be applied toward the purchase.

If my offer is acceptable please be in touch with me regarding the details for consummating the sale.

Very truly yours,

Leonard Florence
Chairman of the Board

Merrill Lynch - Check Image                                          Page 1 of 1

Check #:   Date Cleared:   Amount
1814       08/07/2003      50000

LEONARD FLORENCE D.D.S.
33 LYMAN ROAD
CHESTNUT HILL, MA 02167

BANK ONE TRUST COMPANY
NATIONAL ASSOCIATION
COLUMBUS, OH 43271
25-80-440

1814

8/4/2003

Pay to the
Order of   Clarins Inc. _____                    $  *50,000.00

Fifty Thousand and 00/100 _____  Dollars

Deposit 236 Lincoln Rd, Lincoln MA

Leonard Florence

⑆001814⑆ ⑆044000804⑆ 9⑆01550⑆258 2⑆  /00050000000/



https://www.fs.ml.com/customerservice/XN3VppNJrECKs3wQzZ0bQ.ssid/customerservice/r...  6/30/04

## EX.12

ADMISSIONS OF GARRETT, INC.

**No. 9:**

Garrett Healey and Garrett, Inc. received on or about <u>August 6, 2003</u> from Leonard Florence a $50,000.00 check of Leonard Florence payable to Garrett, Inc. which check was dated <u>8/4/2003</u> and upon which check number 1814 of Leonard Florence it was sTATed "Deposit 236 Lincoln Rd, Lincoln, MA" and that Garrett Haley caused the said check of Leonard Florence to be deposited into the Danvers Savings Bank on <u>August 6, 2003</u> into account 35602310 Garrett Auctioneers, Inc. Bulk Action 76 High Street Danvers Ma 01923.

**Response No. 9:**

Garrett objects to the extent that the Requested Admission seeks to paraphrase or characterized the language of a written document. Subject to and without waiving this objection or its General Objections, Garrett admits that a $50,000.00 check from Mr. Florence made payable to Garrett, Inc. was deposited by Garrett in account number 35602310 at Danvers Savings Bank which account is used as a Bulk or Escrow account by Garrett, Inc. Garrett has no independent memory as to when the check was deposited but admits that the backside of the check indicates that the deposit was made on August 6.

Merrill Lynch - Check Image

Page 1 of 1

Check #:   Date Cleared:   Amount:
1814      08/07/2003      50000





https://www.fs.ml.com/customerservice/XN3VppNJrECKs3wQzZ0bQ.ssid/customerservice/r...  6/30/04

# EX.13

DEPOSITION OF GARRETT, INC.

335

```
 1        contents of the letter of Mr. Leonard Florence?

 2              A.   Yes.

 3              Q.   When you say you told him, did you

 4        read the letter or did you paraphrase what was in

 5        there?

 6              A.   I believe I sent him a copy of it and

 7        I also told him what was in it.

 8              Q.   When you say you sent him a copy, did

 9        you send him a copy of the Florence offer?

10              A.   Letter.

11              Q.   Or whatever it was.

12              A.   Yes.

13              Q.   Exhibit Six.

14              A.   (Witness nods.)

15              Q.   I'm sorry.  I apologize.  You've got

16        to say yes or no.  You sent him a copy of it?

17              A.   I believe I did.

18              Q.   That's all you can do is your best

19        memory here today.

20              A.   Right.

21              Q.   Do you have anything else that could

22        give us anything but your best memory today?

23              A.   I wish I did.  I don't.

24              Q.   All you're here for and able to do is
```

EYAL COURT REPORTING, INC

336

```
 1    your best memory today, right?

 2            A.    Correct.

 3            Q.    And your best memory is that you sent

 4    the Exhibit Six to John Doonan?

 5            A.    I believe I did.

 6            Q.    Okay.  And in sending it to John

 7    Doonan, did you redact any information?

 8            A.    No.

 9            Q.    Of course not.  I don't mean to imply

10    anything.

11            A.    That's all right.

12            Q.    When you sent the letter to John

13    Doonan, which is your belief now as we sit here in

14    this late hour of this late afternoon, you did so

15    because you believed he was entitled to see that

16    letter, true?

17            A.    Yes.

18            Q.    And as a matter of fact, you were

19    proud of securing that letter.  We could say that,

20    isn't that true?  2-million-dollar offer,

21    50,000-dollar deposit because of your --

22            A.    I was happy to have a backup and an

23    acceptable number.

24            Q.    So you really were in the affirmative
```

EYAL COURT REPORTING, INC.

## EX.14

The Commonwealth of Massachusetts William Francis Galvin - Public Browse a...   Page 1 of 3



**The Commonwealth of Massachusetts**
**William Francis Galvin**

Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts
02108-1512
Telephone: (617) 727-9640



**GARRETT AUCTIONEERS, INC. Summary Screen**                    Help with this form

| Request a Certificate |
| --- |

The exact name of the Domestic Profit Corporation: GARRETT AUCTIONEERS, INC.

Entity Type: Domestic Profit Corporation

Identification Number: 043234522

Old Federal Employer Identification Number (Old FEIN): 000450664

Date of Organization in Massachusetts: 01/01/1994    Date of Revival: 11/19/1999

Date of Involuntary Dissolution: 08/31/1998

Current Fiscal Month / Day: 12 / 31     Previous Fiscal Month / Day: 00 / 00

**The location of its principal office in Massachusetts:**
No. and Street:    76 HIGH ST.
City or Town:    DANVERS    State: MA    Zip: 01923    Country: USA

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:    State:    Zip:    Country:

**The name and address of the Resident Agent:**
Name:
No. and Street:
City or Town:    State:    Zip:    Country:

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration of Term |
| --- | --- | --- | --- |
|  |  |  |  |

http://corp.sec.state.ma.us/corp/corpsearch/CorpSearchSummary.asp?ReadFro...   6/30/2004

The Commonwealth of Massachusetts William Francis Galvin - Public Browse a...    Pag

| PRESIDENT | GARRETT D. HEALEY | 76 HIGH ST., DANVERS, MA USA 76 HIGH ST., DANVERS, MA USA |
|---|---|---|
| TREASURER | GARRETT D. HEALEY | 76 HIGH ST., DANVERS, MA USA 76 HIGH ST., DANVERS, MA USA |
| CLERK | GARRETT D. HEALEY | 76 HIGH ST., DANVERS, MA USA 76 HIGH ST., DANVERS, MA USA |

**business entity stock is publicly traded:** __

**The total number of shares and par value, if any, of each class of stock which t business entity is authorized to issue:**

| Class of Stock | Par Value Per Share Enter 0 if no Par | Total Authorized by Articles of Organization or Amendments | | Total Issu and Outstan |
|---|---|---|---|---|
| | | *Num of Shares* | *Total Par Value* | *Num of Sha* |

No Stock Information available online. Prior to August 27, 2001, records can be obta on microfilm.

| __ Consent | __ Manufacturer | __ Confidential Data | __ Does Not Require Annual Report |
|---|---|---|---|
| **X** Partnership | __ Resident Agent | **X** For Profit | __ Merger Allowed |

**Select a type of filing from below to view this business entity filings:**

```
ALL FILINGS
Annual Report
Application For Revival
Articles of Amendment
Articles of Consolidation - Foreign and Domestic
```

| View Filings | New Search |
|---|---|

**Comments**

© 2001 - 2004 Commonwealth of Massachusetts
All Rights Reserved

Merrill Lynch - Check Image

Page

Check #:  Date Cleared:  Amount:

1814    08/07/2003    50000





EXHIBIT
7
8-2-04

## EX.15

**DEPOSITION GARRETT, INC.**
EYAL COURT REPORTING, INC.

327

```
1      you as the auctioneer?

2             A.    I told him that the deposit that would

3      be required would be $50,000.

4             Q.    Okay.  And that was based upon your

5      discussion with John Doonan?

6             A.    Correct.

7             Q.    So when you said $50,000 to Leonard

8      Florence, what you were doing were carrying out the

9      directives of John Doonan to you before you talked

10     to Leonard Florence?

11            A.    Yes.

12            Q.    And when you talked to Leonard

13     Florence, securing the bid or the -- strike

14     that -- the letter from Leonard Florence dated

15     August 4th, 2003, which is Exhibit Six in this

16     proceeding, you did so based upon in part the

17     discussions with John Doonan about another sale?

18                  MS. WILLIAMS:  Objection.

19            A.    If there was a possibility of another

20     sale, we were going to make some changes.  That was

21     one of them.

22            Q.    Well, you had a sale in place on the

23     24th of July, right, 2004?

24            A.    Right.
```

EYAL COURT REPORTING, INC.

328

1           Q.   In which you took and secured a

2    5,000-dollar deposit that you gave to Mr. Doonan,

3    true?

4           A.   Mh-hmm.

5                MR. DOONAN:  Objection.

6           Q.   But after that sale on that date, you

7    and Mr. Doonan talked about soliciting other offers?

8           A.   No.

9                MR. DOONAN:  Objection.

10          Q.   So you contacted Leonard Florence

11   without the permission of John Doonan, --

12               MS. WILLIAMS:  Objection.

13          Q.   -- without his knowledge and in

14   disregard of anything that Mr. Doonan may have said

15   to you, true?

16               MS. WILLIAMS:  Objection.

17          A.   No.

18          Q.   In fact, you contacted Leonard

19   Florence in your capacity of marketing the property?

20          A.   Right.

21          Q.   And you did so in marketing the

22   property consistent with the instructions of John

23   Doonan?

24          A.   Correct.


                 EYAL COURT REPORTING, INC.

## EX.16

### ANSWERS OF GARRETT, INC. TO INTERROGATORIES OF TAT

**Interrogatory No. 6:**

[a] <u>Identify</u>, in detail how, when, where and by whom did the matter of the written offer of Leonard Florence for the acquisition of the <u>property</u> first come to the attention of Garrett, Inc., [b] <u>identify</u> all discussions, <u>memoranda</u> and/or <u>documents</u> referencing such discussions or offer or deposit of Leonard Florence, and the decision by Garrett, Inc. to notice or not to notice the offer of Leonard Florence and his deposit for the <u>property</u> to John Doonan, Michael Capizzi, Catherine Capizzi, Linda Micu, and The Architectural Team, Inc. or any one of them, including [c] <u>identifying</u> all dates of notice, <u>documents</u> and persons or persons directly or indirectly related to that decision.

**Response No. 6:**

Garrett objects to this Interrogatory because, in fact, it is more than one interrogatory propounded under the guise of one. Subject to and without waiving this objection or its General Objections, Garrett responds to the multiple discrete subparts of this Interrogatory as follows:

    a. Sometime in early August 2003, Garrett, Inc. received an August 4 letter from Mr. Florence along with the $50,000.00 check indicating that Mr. Florence "would like to" make an offer on the property.

    b. Garrett, Inc. incorporates by reference its response to Interrogatory Number 5[c]. Further answering Garrett, Inc. notified John Doonan of the August 4 letter and $50,000.00 from Mr. Florence because Garrett, Inc. had a fiduciary duty to John Doonan and STATES Resources Corporation, as their agent. Garrett, Inc. did not have any specific conversation with John Doonan regarding notifying or not notifying the Capizzis, Linda Micu, and/or The Architectural Team, Inc. of Mr. Florence's proposal. At all material times, Garrett, Inc. believed that it had no duty to notify them of Mr. Florence's proposal.

    c. Garrett, Inc. incorporates by reference its response to Interrogatory No. 5[c].

**DEPOSITION GARRETT, INC., <u>supra</u>**

```
                                                     307
        1              A.   I'm sure it's the same.  I'm not sure.

        2              Q.   What was the -- how much did you get

        3      paid for your engagement for -- not for
```

45

4    reimbursement of costs but for your services as an

5    auctioneer?

6              A.    I don't know.

7              Q.    How much did you bill for February of

8    2003?

9              A.    I don't know.  I don't have the bill

10   here.

11             Q.    Did you bill a percentage of anything?

12             A.    We didn't have an auction.

13             Q.    Did you bill as a percentage of

14   anything in February --

15             A.    No.

16             Q.    -- 2003?  Okay.  In March of 2003, did

17   you bill any charges to John Doonan regarding the

18   property?

19             A.    I would think the standard cost of the

20   marketing advertising, et cetera.  Auctioneer's fee.

21             Q.    What was the auctioneer's fee?

22             A.    Don't know.  I don't have the invoice

23   here.

24             Q.    Can you tell me how you arrived at the

                      EYAL COURT REPORTING, INC.

1    auctioneer's fee from March of 2003?

2              A.    No.

3              Q.    In April of 2003, did you have charges

4    to John Doonan for the property as an auctioneer?

5              A.    Did we have an auction in April?

6              Q.    I'm asking you, sir, if you remember.

7              A.    Well, I don't remember.

8              Q.    You have no information?

9              A.    Yeah.

10             Q.    In May of 2003 -- may I have your

11   invoice, please, sir?

12             A.    Sure.

13             Q.    Thank you.  You billed services for

14   5-20-03, is that correct?

15                   (Reviewing document.)

16             A.    There is a bill on here.  There's an

17   invoice on here from 5-20-03.

18             Q.    For identification for the record,

19   what exhibit do you have?

20             A.    13.

21             Q.    Now, the first document that is in

22   writing that you produced referencing any agreement

23   between you on the one hand -- when I say "you," I

24   mean Garrett, Inc., and John Doonan's office or John

EYAL COURT REPORTING, INC.

## EX.17

**REQUEST FOR ADMISSIONS FROM GARRETT, INC FROM The Architectural Team, Inc.**

**No. 10:**

That neither Garrett, Inc. nor Garrett Healey ever told Michael Capizzi, Catherine Capizzi, The Architectural Team, Inc., Linda Micu or any one of them *until after this litigation was commenced* of the written $2,000,000.00 written offer of Leonard Florence or the fact that a $50,000 deposit check was received by Garrett Healey and/or Garrett, Inc. and that the check was deposited into an account controlled by Garrett Healey at the Danvers Savings Bank.

**Response No. 10:**

Garrett admits that neither Garrett nor Mr. Healey informed Mr. and Mrs. Capizzi, The Architectural Team, Inc., or Linda Micu of the letter from Mr. Florence indicating that he "would like to make" a $2,000.000.00 offer on the property and that he had given Garrett, Inc. a $50,000.00 check in connection with such letter, or that Garrett deposited the $50,000.00 into its Bulk or Escrow account at Danvers Savings Bank, until Garrett filed its Answer and Counterclaim in this litigation, but denies that it had any obligation to do so. Garrett denies the remainder of Request No. 10.

ANSWER 6 B OF GARRETT, INC TO INTERROTORIES OF The Architectural Team, Inc.

INTERROGATORIES OF The Architectural Team, Inc. TO GARRETT, INC.

b. Garrett, Inc. incorporates by reference its response to Interrogatory Number 5[c]. Further answering Garrett, Inc. notified John Doonan of the August 4 letter and $50,000.00 from Mr. Florence because Garrett, Inc. had a fiduciary duty to John Doonan and STATES Resources Corporation, as their agent. Garrett, Inc. did not have any specific conversation with John Doonan regarding notifying or not notifying the Capizzis, Linda Micu, and/or The Architectural Team, Inc. of Mr. Florence's proposal. At all material times, Garrett, Inc. believed that it had no duty to notify them of Mr. Florence's proposal.

## DEPOSITION OF GARRETT INC

EYAL COURT REPORTING, INC.

329

1    Q.    And at no time did you ever notify any

2    person other than John Doonan that you had secured

3    an offer consistent with what John Doonan said to

4    you in the marketing of that property, true?

5              MS. WILLIAMS:  Objection.

6         A.    I don't recall.

7         Q.    Okay.  You certainly didn't tell

8    Mr. Capizzi?

9         A.    I didn't know Mr. Capizzi.

10         Q.    You certainly didn't tell

11    Mrs. Capizzi?

12         A.    Didn't know her, either.

13         Q.    You certainly didn't tell their

14    lawyer?

15         A.    Don't know him, either.

16         Q.    You certainly didn't tell me?

17         A.    (Witness shakes head.)

18              MS. WILLIAMS:  Answer out loud,

19    Garrett.

20         A.    I don't recall telling anyone.

21         Q.    And the reason you didn't tell anyone

22    was because you decided not to tell anybody, --

23              MS. WILLIAMS:  Objection.

24         Q.    -- true?  You made that decision

EYAL COURT REPORTING, INC.

# EX.18

RESPONSE 10 OF ADMISSIONS OF GARRETT, INC.

**No. 10:**
 That neither Garrett, Inc. nor Garrett Healey ever told Michael Capizzi, Catherine Capizzi, The Architectural Team, Inc., Linda Micu or any one of them *until after this litigation was commenced* of the written $2,000,000.00 written offer of Leonard Florence or the fact that a $50,000 deposit check was received by Garrett Healey and/or Garrett, Inc. and that the check was deposited into an account controlled by Garrett Healey at the Danvers Savings Bank.

**Response No. 10:**
 Garrett admits that neither Garrett nor Mr. Healey informed Mr. and Mrs. Capizzi, The Architectural Team, Inc., or Linda Micu of the letter from Mr. Florence indicating that he "would like to make" a $2,000.000.00 offer on the property and that he had given Garrett, Inc. a $50,000.00 check in connection with such letter, or that Garrett deposited the $50,000.00 into its Bulk or Escrow account at Danvers Savings Bank, until Garrett filed its Answer and Counterclaim in this litigation, but denies that it had any obligation to do so.  Garrett denies the remainder of Request No. 10.

**EX.19**

08/19/2004  07:12   9787409692         FRATTAROLI/DRUCAS              PAGE  04/04

MESSAGE FROM LINDA MICU TO GARRETT HEALEY

Mr. Garrett, Hi this is Linda Micu calling, I am sorry I'm calling kind of late I have just gotten back I have been out of town for a little bit. The reason I am calling is we have had a little bump in the road here financially and we are now having a problem getting financing where as originally we thought it would be a smooth sale. I don't know you know with this auction stuff I am assuming that we will be loosing our $5,000.00 but I guess you know that's kind of how it is but I would at least like to give you the courtesy to let you know at this point that we cannot proceed with this and hopefully you can get this thing going and someone else can take advantage of what I think is a pretty good deal. Again I apologize for any inconvenience I might have caused you. Good bye

Transcribed: August 17, 2004

DEPOSITION GARRETT, INC.

137

1      records it?

2              A.   I don't know.

3              Q.   So you don't know the name of the

4      company that records it.  You don't know if it

5      exists, but you know you received it?

```
 6            A.    Right.

 7            Q.    What was the date, do you remember,

 8     that you received it?

 9            A.    No.

10            Q.    Did you make a report of that to

11     Mr. Doonan?

12            A.    Yes.

13            Q.    In writing?

14            A.    No.  In conversation.

15            Q.    You called Mr. Doonan?

16            A.    I said that she left me a message

17     saying she's going to withdraw and forfeit her

18     deposit.
```

**EX.20**

MEMORANDUM OF TERMS AND CONDITIONS
FOR THE PURCHASE AT MORTGAGEE'S FORECLOSURE SALE

PREMISES: 236 Lincoln Road, Lincoln, MA 01773

_Lind Miru_, of 3 Huckleberry Hill, Lincoln, MA
(hereinafter referred to as "**BUYER**") hereby acknowledges the purchase at public auction from
_Mr. Garrett_, of Garrett, Inc., acting as agent for the States Resources
Corp., (hereinafter referred to as "**SELLER**"), the real estate described in the attached copy of
"Mortgagee's Sale of Real Estate" for the bid sum or purchase price of
$ _2,000,000.00_ DOLLARS. Buyer hereby agrees to
comply with the following terms and conditions of sale, and has paid as a deposit to bind the
bargain the sum of FIVE THOUSAND & 00/100 ($5,000.00) DOLLARS, which sum shall be
forfeited to the Seller should the Buyer fail to comply with these terms and conditions of sale,
but such forfeiture shall not relieve the Buyer from any contractual obligations hereunder nor
shall such forfeiture be applied to the mortgage debt. Such forfeiture shall still be effective in the
event the real estate is sold to the second (2nd) highest bidder.

Such premises are to be conveyed to the Buyer by a good and sufficient Foreclosure Deed
conveying a good and clear record title to the premises located at **236 Lincoln Road, Lincoln,
MA** more fully described in Mortgagee's Notice of Sale of Real Estate attached hereto, subject to
the following:

    1. Provisions of existing zoning, building, subdivision control, environmental
laws and all other laws, by-laws, rules and restrictions of the City/Town of
**Lincoln,** and also of the Commonwealth of Massachusetts relating to use of land
or buildings.

    2. Any existing tenancy or tenancies, leases or occupants, or rights of possession,
if any there be.

    3. Restrictions, rights, reservations, easements and agreements of record, if
applicable.

    4. All outstanding municipal taxes, tax liens, tax titles, tax takings, and
betterment assessments, all transfer costs, including, but not limited to, "tax
stamps" and recording fees, outstanding water rates, water liens, and also sewer
use assessments or taxes, if any there be, all of which shall be assumed by Buyer
without adjustment in favor of Buyer.





1

e:\Massachusetts Foreclosures\Generated_Forms\Memorandum of Terms_Foreclosure_Capizzi_4505.87F

5. Said premises are conveyed subject to the right of redemption of the United States or any of it's sub-agencies or divisions according to law, if applicable, to redeem the said premises.

6. Buyer acknowledges that this sale is subject to "so called" Title 5 Regulations that may require the inspection of the septic system for this property. Buyer further acknowledges that the Mortgagee makes no warranty or representation as to the applicability of the aforesaid Title 5 nor makes any warranty or representation as to whether the subject property will pass Title 5 septic system evaluation. The sole responsibility for compliance, if applicable, of the Title 5 requirements shall be the Buyer's and the Mortgagee shall have no responsibility therefore.

If fire or other casualty damages the buildings, Buyer at his option may cancel this agreement and receive back his deposit. However, the Seller, at its option, shall have the privilege to extend this agreement for an additional period of third (30) days and if the buildings are restored to their former condition within said period then Buyer shall be obligated to purchase said premises. The Buyer may elect, however, to have the proceeds of any insurance money received or to be received on account to such casualty assigned to him by the Seller and proceed with the purchase of said property under the terms of this memorandum.

Buyer acknowledges that Buyer has not been influenced to enter into this transaction nor has it relied upon any warranties or representations, expressed or implied, not set forth in this Agreement, or in the legal advertisement of this sale. Specifically, the Buyer acknowledges that the Seller has made no representations or warranties concerning the compliance of the premises with any and all buildings, zoning, environmental or the laws or ordinances (federal, state or local) which may affect the Buyer's use and/or enjoyment of the Premises. Additionally, any improvements including the buildings, if any, on the premises are sold "AS IS, WHERE IS" with no warranties expressed or implied. Buyer acknowledges that the Seller has made no representations or agreements that the Premises is vacant land, is a lot on which a structure may be built or if there is a partially completed structure on the Premises that it may be completed. Buyer also acknowledges that this sale does not include any personal property located on the premises being sold.

Buyer shall obtain his own financing if needed to purchase the premises sold thereunder and the Buyer acknowledges the Seller has made no representations that Seller will give or obtain financing for Buyer.

If a material defect in the record title, other than those set forth in Clauses 1-5 of this agreement preceding, shall be claimed by the Buyer, the Buyer shall notify the Seller and its attorney thereof in writing at least ten (10) days prior to the closing date stated above and the Seller shall have the option to use such portion of sixty (60) days from date of notice thereof as it may require to perfect said title, but shall be under no such obligation to do so.

If the Seller does not clear the record title or obtain at Seller's expense affirmative Title Insurance over the defect, the deposit made under this agreement shall be refunded without payment of interest thereon to the Buyer and all obligations of either party shall hereto cease, without further recourse.

The balance of the consideration of the sale, which shall be in the form of a Cashier's Check or Bank Check drawn on a Bank located In Eastern Massachusetts, made payable to States Resources Corp., (except the deposit which shall be held by the Seller), shall be paid to Seller and the Premises conveyed to the Buyer by the usual Mortgagee's deed under the statutory power of sale on or before August 25, 2003, at 5:00 p.m. at the said office of DOONAN, GRAVES, & LONGORIA L.L.C., 16 Front Street, 2nd Floor, Salem, Massachusetts, 01970, time being of the essence. At the same time there shall be delivered to the Buyer a properly executed entry to foreclose and a copy of a Judgment of the Land Court authorizing the sale and said entry.

The Buyer acknowledges that if, as the successful bidder at the Foreclosure Sale, the Buyer shall default in purchasing the within described property according to the terms of the Mortgagee's Sale of Real Estate attached hereto, and/or the terms of this Memorandum of Sale that the Seller reserves the right to sell the property by Foreclosure Deed to the second highest bidder providing that said second highest bidder shall deposit with the Seller's Attorney, DOONAN, GRAVES, & LONGORIA L.L.C., the amount of the required deposit as set forth herein and execute this Memorandum of Sale within three (3) business days after written notice of the default of the previous highest bidder and title shall be conveyed to the said second highest bidder within twenty (20) days of said written notice. It is also agreed that the Seller as holder of the mortgage being foreclosed may bid at this foreclosure Sale, and if Seller is the second highest bidder, Seller Shall have the right to purchase said Premises at the second highest bid price if the highest bidder defaults.

The Buyer is advised that Massachusetts General Laws, Chapter 111, Section 190-191 provides for a program of lead poisoning prevention and control, and further that there is a possibility of lead paint problem under said law if a child under six years of age becomes a resident of the dwelling being purchased. The Buyer takes this risk; in purchasing this property pursuant to notice given hereunder.

The Buyer is further advised that Massachusetts General Laws. Chapter 14S, Section 26F requires that smoke detectors be installed in all residential structures. The Buyer, in purchasing this property at this foreclosure sale, agrees that he/she will assume all costs relative to the purchase and installation, plus all costs dealing with inspection fees for such smoke detection equipment and Buyer further acknowledges that such equipment shall meet all of the minimum state and the appropriate Fire Department requirements.

In the event that the second highest bidder does not wish to purchase the premises, the holder of the mortgage reserves the right to purchase the premises at the amount bid by the second highest bidder.

In the event the mortgagee cannot deliver title to the premises as provided herein, the purchaser shall only be entitled to the return of his/her deposit and this shall be purchaser's sole and exclusive remedy at law or in equity.

In the event that the Mortgagee is unable to deliver title under the conditions hereinbefore stated or referred to, or at its sole discretion, or, at its sole discretion, unilaterally terminate this Memorandum of Terms and Conditions to permit the owner of the premises to retain ownership, all deposits made by purchaser shall be returned and the contract effected hereby shall cease without recourse to the parties hereto.

The acceptance or recording of a deed and certificate of entry for the premises by the Buyer shall be deemed to be a full performance and discharge of the Seller's obligation hereunder.

This Agreement is executed in duplicate and is to be construed as a Massachusetts contract, to take effect as a sealed instrument, as sets forth the entire contract between the parties, is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified, or amended only by a written instrument executed by the Seller and Buyer. If two or more persons are named herein as Buyer their obligations hereunder shall be joint and several.

**Time is of the essence of this agreement.**

The Seller hereby acknowledges receipt of said deposit in the amount of FIVE THOUSAND & 00/100 ($5,000.00) DOLLARS. Executed as a sealed instrument in duplicate this 24th day of July 2003.

Please note, there is a real estate lien on the property from The Architectural Team, Inc., v. Michael J. Capizzi and Catherine Capizzi in the amount of $600,000.00. Doonan, Graves & Longoria, L.L.C. makes no warranty or representation as to the accuracy of this payoff.

_Linda Mucci or Assigns_
Buyer

_15 Bypass Rd Lincoln, Ma._
Buyer Address

_781 259-1554_
Telephone Number _259-1454_

_[signature]_ p.e.
Auctioneer for Seller as
authorized agent and not otherwise.

4

Admissions by Garrett, Inc.

**No. 10:**

That neither Garrett, Inc. nor Garrett Healey ever told Michael Capizzi, Catherine Capizzi, The Architectural Team, Inc., Linda Micu or any one of them *until after this litigation was commenced* of the written $2,000,000.00 written offer of Leonard Florence or the fact that a $50,000 deposit check was received by Garrett Healey and/or Garrett, Inc. and that the check was deposited into an account controlled by Garrett Healey at the Danvers Savings Bank.

**Response No. 10:**

Garrett admits that neither Garrett nor Mr. Healey informed Mr. and Mrs. Capizzi, The Architectural Team, Inc., or Linda Micu of the letter from Mr. Florence indicating that he "would like to make" a $2,000.000.00 offer on the property and that he had given Garrett, Inc. a $50,000.00 check in connection with such letter, or that Garrett deposited the $50,000.00 into its Bulk or Escrow account at Danvers Savings Bank, until Garrett filed its Answer and Counterclaim in this litigation, but denies that it had any obligation to do so. Garrett denies the remainder of Request No. 10.

## EX.21

Request 10 of admissions Garrett, Inc. <u>supra,</u> and exhibits 6 and 7 of Garrett, Inc <u>supra</u>.

## EX.22

## GARRETT, INC. ANSWERS TO INTERROGATORIES OF The Architectural Team, Inc.

### Interrogatory No. 5:

[a] The date and manner when Garrett, Inc. first learned of Leonard Florence and his interest in the <u>property</u>, said Leonard Florence who is identified in the pleadings, pending motions to amend and in this proceeding and in the request for admissions filed herein, [b] how, when and in detail how Leonard Florence learned of the <u>property</u>, and [c] <u>identify</u> each and every <u>document</u>, item, and <u>communication</u> directly or indirectly referencing Leonard Florence or/and his offer or/and deposit in reference to the <u>property</u> including each and every and all <u>documents</u> and <u>communications</u> whether oral or in writing with any officer, employee, auctioneer and foreclosing attorney of STATES Resources Corporation in any way related to the offer of Leonard Florence for the <u>property</u> and [d] <u>identify</u> any joint defense agreement related to this litigation.

### Response No. 5:

Garrett objects to this Interrogatory because, in fact, it is more than one interrogatory propounded under the guise of one. Subject to and without waiving this objection or its General Objections, Garrett responds to the multiple discrete subparts of this Interrogatory as follows:

    a. Garrett, Inc. does not recall the date that it first learned of Mr. Florence's interest in the property.

    b. Garrett, Inc. objects to this interrogatory because it seeks speculation regarding when a third party learned of the property. Subject to and without waiving this objection or its General Objections, sometime in late July or early August 2003 during a telephone conversation between Mr. Healey and Mr. Florence, Mr. Healey brought up the property to Mr. Florence. According to Mr. Healey, he does not recall if he contacted Mr. Florence for that reason or if they were talking in conversation about other matters that they were involved in together. Mr. Healey believes that he may have sent Mr. Florence some marketing materials.

    c. The documents reflecting Mr. Florence's interest in the property are: Mr. Florence's August 4 letter to Garrett, Inc.; the $50,000.00 check from Mr. Florence; and the $50,000.00 return check to Mr. Florence. Subsequent to the receipt of the $50,000.00 and the August 4 letter, Mr. Healey spoke with

Mr. Florence and told him that his offer had been refused and that a second auction was going to take place. Mr. Healey believes that this conversation took place a day or two before the second auction (September 26, 2003 auction). Mr. Healey asked Mr. Florence whether or not he wanted Mr. Healey to place his bid at the auction with the $50,000.00 deposit on behalf of the $2,000,000.00. Mr. Florence said "no", that he was very busy in a very large project in Chicago and that he would not be able to put the time into pursuing the Lincoln property. Within a few days of initialing receiving the August 4 letter and the $50,000.00 check from Mr. Florence, Mr. Healey advised John Doonan that he had received such from Mr. Florence. Mr. Doonan said that he needed to look into and consider what to do with the proposal from Mr. Florence, and that he would get back to Mr. Healey within a few days. Thereafter, Mr. Doonan told Mr. Healey that he could not accept the offer and that it was necessary to go back to auction with the property.

# EX.23

**GARRETT, INC. ADMISIONS**

**No. 10:**

That neither Garrett, Inc. nor Garrett Healey ever told Michael Capizzi, Catherine Capizzi, The Architectural Team, Inc., Linda Micu or any one of them *until after this litigation was commenced* of the written $2,000,000.00 written offer of Leonard Florence or the fact that a $50,000 deposit check was received by Garrett Healey and/or Garrett, Inc. and that the check was deposited into an account controlled by Garrett Healey at the Danvers Savings Bank.

**Response No. 10:**

Garrett admits that neither Garrett nor Mr. Healey informed Mr. and Mrs. Capizzi, The Architectural Team, Inc., or Linda Micu of the letter from Mr. Florence indicating that he "would like to make" a $2,000.000.00 offer on the property and that he had given Garrett, Inc. a $50,000.00 check in connection with such letter, or that Garrett deposited the $50,000.00 into its Bulk or Escrow account at Danvers Savings Bank, until Garrett filed its Answer and Counterclaim in this litigation, but denies that it had any obligation to do so. Garrett denies the remainder of Request No. 10.

**No. 11:**

That Garrett Healey and/or Garrett, Inc. disclosed both the written offer of Leonard Florence and the deposit check of $50,000.00 of Leonard Florence to Attorney John Doonan within days of receipt by Garrett, Inc. and/or Garrett Healey and did not disclose the same to Michael Capizzi, Catherine Capizzi and The Architectural Team, Inc. until AFTER this litigation was commenced.

**Response No. 11:**

Garrett incorporates by reference its response to Request for Admissions Numbers 8 and 10.

The Architectural Team, Inc. ANSWER TO INTERROGATORY OF GARRETT, INC.

**INTERROGATORY NO. 6:**

STATe the basis for any claim by you that the 3.5% commission claimed by Garrett, Inc. is not reasonable.

<u>ANSWER:</u>

**Garrett, Inc. was and is not licensed as an auctioneer by Massachusetts, secreted a deposit of a purchasers into an account of a defunct corporation; the local Federal Courts Rules of Bankrupty for auctioneers provides a formula for a reasonable fee; based upon the fact that others would do it for less; based upon the fact that Attorney John Doonan did not attempt to find a auctioneer upon a fixed fee of at most a few thousand dollars; based upon the testimony of Garrett Healy that organizations of which he is a member suggested fixing fees in violation of law; ( Garrett**

Healey testified there is a "standard rate" of 3 to 5.5 percent if you are a certified auctioneer all according to testimony of Garrett Healey), based upon the fact that Garrett Healey never told The Architectural Team, Inc. of $2,000,000.00 unconditional written offer and $50,000 cashed check of Leonard Florence and keeping secret the call from Linda Micu noticing a default when Garrett Healey controlled a $50,000.00 deposit for the property at $2,000,000.00 until after the litigation began; based upon the fact the Garrett, Inc is not licensed as a real esTATe broker; based upon the fact that the advertisements of auction were materially wrong and inaccurate; the wrong property descriptions, wrong rooms; based upon the absurd testimony of Garrett Healey that more acres can reduce property values; based upon the fact that Kevin  Duffy testified that more acres increases the property value; based upon the fact that the fee was subject to court approval; based upon the fact that the foreclosing party owed a fiduciary duty to The Architectural Team, Inc. and did not comply with that duty; based upon the fact that as an agent of STATES Garrett Inc acted with deception in not telling The Architectural Team, Inc. about the Florence offer and deposit; based upon the fact that Garrett, Inc. in placing the $50,000.00 into the account of a dissolved corporation and telling STATES of the deposit while at the same time Garrett, Inc. did not tell The Architectural Team, Inc. and that such conduct was both unfair and deceptive to The Architectural Team, Inc.; that Garrett Inc. at the auction sales met both The Architectural Team, Inc. and there attorneys and never once revealed either the $50,000 check deposited into a defunct corporate account or the $2,000,000.00 offer of Leonard Florence; that Garrett Inc. had no auctioneers license; that Garrett, Inc. knew of the special attachment, execution and levy in favor of The Architectural Team, Inc. and while telling STATES Resources Corporation of the Leonard Florence unconditional written offer and deposit Garrett, Inc did not tell The Architectural Team, Inc. or its attorneys; that Garrett Healey hearing at the sale of September 26, 2003 a high bid of only $1,200,000.00, never told Bob Verrier, The Architectural Team, Inc. or its attorney present at the sale of the $50,000.00 deposit that Garrett Auctioneers., Inc was holding at that very moment in the secret account of a defunct Massachusetts Corporation at Danvers Savings Bank, never told the same that Leonard Florence well known in the comminuity had offer to unconditionally buy the same property for $800,000.00 more; knew that Attorney John Doonan and STATES Resources Corporation knew from Garrett Healey but never told The Architectural Team, Inc. and never sought under the circumstances a postponement of the sale at auction to tell The Architectural Team, Inc. and to attempt to contact that day and time Leonard Florence; that Garrett Healey spent that day with Attorney Doonan; was with attorney Doonan at the sale was taking instructions from Attorney Doonan and never once indicated to The Architectural Team, Inc. of the facts known to Attorney Doonan, and that if known Robert Veriier would have take action to protect the property.  That in fact it now appears that Garrett, Inc. and Garrett Healey owe to The Architectural Team, Inc. the damages suffered on account of the conduct of Garrett Healey plus the penal imposition of triple

damages and costs and attorneys fees that exceed any sum that may have under any circumstances been due to Garrett, Inc.; that Kevin Duffy checked the area of land testify it is very important to value; that Kevin Duffy who was the high bidder is a civil engineer, that unlike the public Kevin Duffy went to the Town Hall of Lincoln and found out the advertisements of Garrett, Inc. was in error; that in fact the property at 236 Lincoln Road, Lincoln, MA has been listed for sale at $2,590,000.00 "on six Magnificent Acres" without any additions or construction or remodeling that would require a building permit from the Town of Lincoln; that Kevin Duffy obtained no permit and that Kevin Duffy placed a first mortgage on the property at passing in the name of his mother or sister for a loan that never existed and was missTATed on the public records, and that in fact the monies were never lent by the mother or sister, they were in fact the monies belong to Kevin Duffy and that in fact notwithstanding the mortgage calls for the payment of interest by Kevin Duffy no interest has every been paid; all indicating a consciousness of guilt or a means of covering the sale by conduct that was untrue and deceptive.

# EX.24

ANSWER BY The Architectural Team, Inc. TO INTERRORTORY OF GARRETT, INC.

**INTERROGATORY NO. 7:**

 STATe the basis for any claim by you that Garrett, Inc. had any duty to notify you of the Two Million Dollars ($2,000,000.00) from Mr. Leonard Florence.

ANSWER:

**Incorpoating the answer in INTERROGATORY 6, The Architectural Team, Inc.** further STATES that STATES Resources Corporation mortgagees had violated their duty of good faith and reasonableness owed to The Architectural Team, Inc. A mortgagee in executing a power of sale must put forth reasonable diligence.  This duty and obligation is available for the protection not only of the mortgagor (Michael Capizzi) but of those claiming in his right, including those holding junior encumbrances of liens (The Architectural Team, Inc.)   Here STATES Resources Corporation and Garrett, Inc. had a buyer willing to pay approximately $2,000,000.00 without condition and with a $50,000 00 deposit from a businessperson known to be able to acquire the property above; such a duty was owed to both STATES Resources Corporation and The Architectural Team, Inc.  which offer if implemented would have resulted in full recovery of the amount due to the mortgagee, including costs, and The Architectural Team, Inc. and funds left over for Michael Capizzi.. The Architectural Team, Inc. has a basis of recovery against STATES Resources Corporation and Garrett, Inc. if the foreclosure process is conducted negligently or in bad faith.  Garrett, Inc who undertakes to exercise the power of sale in a mortgage must act in good faith and with a careful regard for the interest of the mortgagor and The Architectural Team, Inc. who had a lien, an special attachment granted by the Massachusetts Superior Court and execution issued by the Massachusetts Superior Court and levy all known to Garrett, Inc.. In circumstances such as these, the mortgagee and the auctioneer, who is agent of the mortgagee, cannot shelter themselves under a bare literal compliance with the conditions imposed by the terms of the power sale. Their claim that there can be no c. 93A violation because they had a legal right to foreclose has no merit.  Legality of underlying conduct is not necessarily a defense to a claim under c. 93A.  93 A makes conduct unlawful which was not unlawful under the common law or any prior sTATute.  Thus, a cause of action under c. 93A is not dependent on traditional tort or contract law concepts for its definition.  This is simply a new case for an old proposition: where foreclosure of a mortgage, even on an actual default, is conducted in bad faith to the detriment of the mortgagor, and thus an action will lie.  Here Garrett, Inc. controlled a $50,000 deposit, Garrett, Inc. had a willing and able buyer to satisfy STATES Resources Corporation and The Architectural Team, Inc. in full and left some funds available for Michael Capizzi and Garrett, Inc decided to keep this a secret

from The Architectural Team, Inc. and Michael Capizzi, but not from STATES Resources Corporation. The law requires that Garrett, Inc. must "exercise the utmost good faith," and use reasonable conduct free of being unfair and deceptive. Garrett, Inc was unfair and deceptive intentional and caused grave financial loss to The Architectural Team, Inc. Garrett, Inc had a duty to notify The Architectural Team, Inc. who Garrett, Inc. was on notice was owed a great deal of money and had a lien upon the very property subject of the sale; and Garrett, Inc decided to keep the offer and the $50,000.00 in its account secret from those who had a right to know.

# EX.25

ANSWER OF The Architectural Team, Inc. TO INTERROGATORY OF GARRETT, INC.

**INTERROGATORY NO. 8:**

STATe the basis for any claim by you that Garrett, Inc. engaged in unfair business practices.

ANSWER

**Incorporating Answers 6 and 7 above herein, The Architectural Team, Inc. further STATES that the offer of Florence for $2,000,000.00 and the $50,000 deposit was not to be applied to the mortgage debt alone but to the The Architectural Team, Inc. execution and the balance to Capizzi. Garrett Healey knew of the interest of The Architectural Team, Inc.; saw The Architectural Team, Inc.; saw The Architectural Team, Inc.'s attorney' and while Garrett, Inc who now seeks payment from the very funds claimed by The Architectural Team, Inc. never once told The Architectural Team, Inc. or its counsel that it had held and was holding $50,000.00; had a bona fide unconditional offer that would pay The Architectural Team, Inc. in full but rather Garrett, Inc. decided to keep this material information from the very entity from which Garrett, Inc now seeks payment. That it appears that Kevin Duffy without filing for a single building permit in Lincoln, MA listed the proper try for $2,590,000.00 having purchased the property for $1,200,000.00 on September 26, 2003, and immediately place a straw mortgage upon the property for $1, 250,000.00 in favor of Joan Duffy, his mother or sister without executing a note as sTATed in the mortgage deeds and without interest payments as called for in the mortgage deed. That both Garrett Healey and John Doonan and the principal STATES Resources Corporation alone knew that Leonard Florence had valued the property at $2,000,000.00 unconditionally offer for the same $2,000,000.00 with the secret deposit of $50,000.00 cash. The conduct of John Doonan, Garrett Healey and STATES Resources Corporation was intentional as to the secret and was both an unfair and deceptive trade practices having taken place in Massachusetts, that Garrett Healey, and Garrett Inc both engaged in unfair or deceptive trade practice or both and for which they are liable to The Architectural Team, Inc. for its damages and penalties and all costs and attorneys fees. Never did Leonard Florence sTATE in writing to keep his offer secret...never.**

EYAL COURT REPORTING, INC.

177

```
       1              A.   Yes, it does.

       2              Q.   Whereabouts?
```

3          A.    "Auctioneer for Seller as authorized

4     agent."

5          Q.    And in that document that is the -- we

6     have been talking about the bidder on July 24th,

7     2003.  That document which is now Exhibit Ten is, in

8     fact, representATIve of the agreement that came out

9     of the bid on that date at that time, sir, true?

10         A.    Yes.

11         Q.    And your signature appears on that as

12    the auctioneer?

13         A.    Correct.

14         Q.    Above your signature, is there any

15    reference to a 600,000-dollar attachment?

16         A.    There is.

17         Q.    Of course, before you signed that, you

18    read that document, true?

19         A.    You asked me a question back when and

20    I answered it that I didn't know about the lien and

21    the answer now is that I can clearly see that it's

22    on this post-auction memorandum.  However, I didn't

23    recall it because memorandums are quite standard to

24    me and I sign them in the heat of the end of the

EYAL COURT REPORTING, INC.

178

1    auction when everybody is trying to make sure that

2    everything is in order, so I didn't recall it and I

3    rely on the attorney for this document and I signed

4    my name to it.

5        Q.    That's fine.  Who is the attorney that

6    you relied upon when you relied upon Exhibit Ten,

7    signing Exhibit Ten?  Who is the attorney you relied

8    upon?

9        A.    On this document?

10        Q.    Yes.

11        A.    John Doonan.

12        Q.    And was the language that is above

13    your signature typed in there, was that on the

14    document at the time you signed it?

15        A.    I -- I'm surprised to see it there

16    now, to be honest with you.  It may have been there.

17    It probably was there.  It's not something I've ever

18    seen before in a memorandum before, however, that I

19    can recall, and I don't recall seeing it that day,

20    but it's there and, clearly, it's above my

21    signature.

22        Q.    And that document, again, just Exhibit

23    Ten you're referring to, true?

24        A.    Yes.

EYAL COURT REPORTING, INC.

EYAL COURT REPORTING, INC.

331

```
 1                MS. WILLIAMS:  Objection.
 2         A.    I followed the direction of the
 3    attorney.
 4         Q.    Okay.  And that attorney was?
 5         A.    John Doonan.
 6         Q.    And you didn't tell me, who you knew,
 7    you said you had me at the foreclosure sale, true?
 8         A.    I knew you were there.
 9         Q.    You knew --
10         A.    I didn't know who you represented.
11         Q.    I didn't introduce myself as the
12    counsel for The Architectural Team?
13         A.    Not to my knowledge.
14         Q.    I didn't give you a card?
15         A.    You gave me a card and you told me
16    that you represent one of the subordinate mortgages.
17         Q.    And I used the word "mortgages"?
18         A.    I'm not sure what you used, but I
19    don't think you specifically told me who your client
20    was.
21         Q.    And you saw -- did you see Robert
22    Berrier at the sale on that date?
23         A.    Who is he?
24         Q.    You don't know Robert Berrier?
                  EYAL COURT REPORTING, INC.
```

332

```
 1         A.    Robert?
 2         Q.    B-E-R-R-I-E-R?
 3         A.    No, I don't.
 4         Q.    The Architectural Team.
 5         A.    Is that the gentleman that was with
 6    you?
 7         Q.    That's right.
 8         A.    Okay.  I don't know him, but I know he
 9    was with you.
10         Q.    Did you ever talk to him?
11         A.    I talked to him when you were there
12    that you and he represented a subordinate lien,
13    loan, mortgage, whatever you had.
14         Q.    Did you ever call his office and tell
15    him about the offer?
16         A.    I didn't know him.  No, I didn't call
17    his office.
18         Q.    Did you ever call his office at all,
19    The Architectural Team's office?
20         A.    Never.
21         Q.    You're absolutely certain about that?
22         A.    Did I call his office?
23         Q.    Yes.
24         A.    I don't even know where his office is.
                  EYAL COURT REPORTING, INC.
```

Exhibit 10 of Garrett, Inc. Deposition, _supra_, Exhibit 18 of Garrett, Inc.

## MEMORANDUM OF TERMS AND CONDITIONS
## FOR THE PURCHASE AT MORTGAGEE'S FORECLOSURE SALE

### PREMISES: 236 Lincoln Road, Lincoln, MA 01773

_Kevin P. Duffy_, of. _Lexington, MA_
(hereinafter referred to as "**BUYER**") hereby acknowledges the purchase at public auction from _Garrett Healey_, of Garrett, Inc., acting as agent for the States Resources Corp., (hereinafter referred to as "**SELLER**"), the real estate described in the attached copy of "Mortgagee's Sale of Real Estate" for the bid sum or purchase price of $ _1,200,000.00_ DOLLARS. Buyer hereby agrees to comply with the following terms and conditions of sale, and has paid as a deposit to bind the bargain the sum of FIVE THOUSAND & 00/100 ($5,000.00) DOLLARS, which sum shall be forfeited to the Seller should the Buyer fail to comply with these terms and conditions of sale, but such forfeiture shall not relieve the Buyer from any contractual obligations hereunder nor shall such forfeiture be applied to the mortgage debt. Such forfeiture shall still be effective in the event the real estate is sold to the second (2nd) highest bidder.

Such premises are to be conveyed to the Buyer by a good and sufficient Foreclosure Deed conveying a good and clear record title to the premises located at **236 Lincoln Road, Lincoln, MA** more fully described in Mortgagee's Notice of Sale of Real Estate attached hereto, subject to the following:

    1.  Provisions of existing zoning, building, subdivision control, environmental laws and all other laws, by-laws, rules and restrictions of the City/Town of **Lincoln**, and also of the Commonwealth of Massachusetts relating to use of land or buildings.

    2. Any existing tenancy or tenancies, leases or occupants, or rights of possession, if any there be.

    3.  Restrictions, rights, reservations, easements and agreements of record, if applicable.

    4.  All outstanding municipal taxes, tax liens, tax titles, tax takings, and betterment assessments, all transfer costs, including, but not limited to, "tax stamps" and recording fees, outstanding water rates, water liens, and also sewer use assessments or taxes, if any there be, all of which shall be assumed by Buyer without adjustment in favor of Buyer.

1

5.  Said premises are conveyed subject to the right of redemption of the United States or any of it's sub-agencies or divisions according to law, if applicable, to redeem the said premises.

6.  Buyer acknowledges that this sale is subject to "so called" Title 5 Regulations that may require the inspection of the septic system for this property. Buyer further acknowledges that the Mortgagee makes no warranty or representation as to the applicability of the aforesaid Title 5 nor makes any warranty or representation as to whether the subject property will pass Title 5 septic system evaluation.  The sole responsibility for compliance, if applicable, of the Title 5 requirements shall be the Buyer's and the Mortgagee shall have no responsibility therefore.

If fire or other casualty damages the buildings, Buyer at his option may cancel this agreement and receive back his deposit. However, the Seller, at its option, shall have the privilege to extend this agreement for an additional period of third (30) days and if the buildings are restored to their former condition within said period then Buyer shall be obligated to purchase said premises. The Buyer may elect, however, to have the proceeds of any insurance money received or to be received on account to such casualty assigned to him by the Seller and proceed with the purchase of said property under the terms of this memorandum.

Buyer acknowledges that Buyer has not been influenced to enter into this transaction nor has it relied upon any warranties or representations, expressed or implied, not set forth in this Agreement, or in the legal advertisement of this sale. Specifically, the Buyer acknowledges that the Seller has made no representations or warranties concerning the compliance of the premises with any and all buildings, zoning, environmental or the laws or ordinances (federal, state or local) which may affect the Buyer's use and/or enjoyment of the Premises. Additionally, any improvements including the buildings, if any, on the premises are sold "AS IS, WHERE IS" with no warranties expressed or implied. Buyer acknowledges that the Seller has made no representations or agreements that the Premises is vacant land, is a lot on which a structure may be built or if there is a partially completed structure on the Premises that it may be completed. Buyer also acknowledges that this sale does not include any personal property located on the premises being sold.

Buyer shall obtain his own financing if needed to purchase the premises sold thereunder and the Buyer acknowledges the Seller has made no representations that Seller will give or obtain financing for Buyer.

If a material defect in the record title, other than those set forth in Clauses 1-5 of this agreement preceding, shall be claimed by the Buyer, the Buyer shall notify the Seller and its attorney thereof in writing at least ten (10) days prior to the closing date stated above and the Seller shall have the option to use such portion of sixty (60) days from date of notice thereof as it may require to perfect said title, but shall be under no such obligation to do so.

2

If the Seller does not clear the record title or obtain at Seller's expense affirmative Title Insurance over the defect, the deposit made under this agreement shall be refunded without payment of interest thereon to the Buyer and all obligations of either party shall hereto cease, without further recourse.

The balance of the consideration of the sale, which shall be in the form of a Cashier's Check or Bank Check drawn on a Bank located In Eastern Massachusetts, made payable to States Resources Corp., (except the deposit which shall be held by the Seller), shall be paid to Seller and the Premises conveyed to the Buyer by the usual Mortgagee's deed under the statutory power of sale on or before October 27, 2003, at 5:00 p.m. at the said office of DOONAN, GRAVES, & LONGORIA L.L.C., 100 Cummings Center, Suite 213C, Beverly, Massachusetts, 01915, time being of the essence. At the same time there shall be delivered to the Buyer a properly executed entry to foreclose and a copy of a Judgment of the Land Court authorizing the sale and said entry.

The Buyer acknowledges that if, as the successful bidder at the Foreclosure Sale, the Buyer shall default in purchasing the within described property according to the terms of the Mortgagee's Sale of Real Estate attached hereto, and/or the terms of this Memorandum of Sale that the Seller reserves the right to sell the property by Foreclosure Deed to the second highest bidder providing that said second highest bidder shall deposit with the Seller's Attorney, DOONAN, GRAVES, & LONGORIA L.L.C., the amount of the required deposit as set forth herein and execute this Memorandum of Sale within three (3) business days after written notice of the default of the previous highest bidder and title shall be conveyed to the said second highest bidder within twenty (20) days of said written notice. It is also agreed that the Seller as holder of the mortgage being foreclosed may bid at this foreclosure Sale, and if Seller is the second highest bidder, Seller Shall have the right to purchase said Premises at the second highest bid price if the highest bidder defaults.

The Buyer is advised that Massachusetts General Laws, Chapter 111, Section 190-191 provides for a program of lead poisoning prevention and control, and further that there is a possibility of lead paint problem under said law if a child under six years of age becomes a resident of the dwelling being purchased. The Buyer takes this risk; in purchasing this property pursuant to notice given hereunder.

The Buyer is further advised that Massachusetts General Laws. Chapter 14S, Section 26F requires that smoke detectors be installed in all residential structures. The Buyer, in purchasing this property at this foreclosure sale, agrees that he/she will assume all costs relative to the purchase and installation, plus all costs dealing with inspection fees for such smoke detection equipment and Buyer further acknowledges that such equipment shall meet all of the minimum state and the appropriate Fire Department requirements.

In the event that the second highest bidder does not wish to purchase the premises, the holder of the mortgage reserves the right to purchase the premises at the amount bid by the second highest bidder.

In the event the mortgagee cannot deliver title to the premises as provided herein, the purchaser shall only be entitled to the return of his/her deposit and this shall be purchaser's sole and exclusive remedy at law or in equity.

In the event that the Mortgagee is unable to deliver title under the conditions hereinbefore stated or referred to, or in the event the Mortgagee elects to, at its sole discretion, unilaterally terminate this Memorandum of Terms and Conditions to permit the owner of the premises to retain ownership, all deposits made by purchaser shall be returned and the contract effected hereby shall cease without recourse to the parties hereto.

The acceptance or recording of a deed and certificate of entry for the premises by the Buyer shall be deemed to be a full performance and discharge of the Seller's obligation hereunder.

This Agreement is executed in duplicate and is to be construed as a Massachusetts contract, to take effect as a sealed instrument, as sets forth the entire contract between the parties, is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified, or amended only by a written instrument executed by the Seller and Buyer. If two or more persons are named herein as Buyer their obligations hereunder shall be joint and several.

**Time is of the essence of this agreement.**

The Seller hereby acknowledges receipt of said deposit in the amount of ~~FIVE~~ FIFTY THOUSAND & 00/100 ($5,000.00) DOLLARS. Executed as a sealed instrument in duplicate this 26th of September 2003.

*in 2nd Position*

Please note, there is a real estate lien on the property from The Architectural Team, Inc., v. Michael J. Capizzi and Catherine Capizzi in the amount of $600,000.00. Doonan, Graves & Longoria, L.L.C. makes no warranty or representation as to the accuracy of this payoff.

Buyer _Kevin P. Duffy_

Auctioneer for Seller as authorized agent and not otherwise.

Buyer Address _44 Eaton Rd_ _Lexington, MA_

_781-842-7557_

Telephone Number

# EX.26

Exhibit 10 Garrett, Inc deposition, supra.

# EX.27

ANSWER OF The Architectural Team, Inc. TO INTERROGATORY OF GARRETT, INC.

INTERROGATORY NO. 7:
 STATe the basis for any claim by you that Garrett, Inc. had any duty to notify you of the Two Million Dollars ($2,000,000.00) from Mr. Leonard Florence.
ANSWER:

**Incorporating the answer in INTERROGATORY 6, The Architectural Team, Inc.** further STATES that STATES Resources Corporation mortgagees had violated their duty of good faith and reasonableness owed to The Architectural Team, Inc. A mortgagee in executing a power of sale must put forth reasonable diligence.  This duty and obligation is available for the protection not only of the mortgagor (Michael Capizzi) but of those claiming in his right, including those holding junior encumbrances of liens (The Architectural Team, Inc.)  Here STATES Resources Corporation and Garrett, Inc. had a buyer willing to pay approximately $2,000,000.00 without condition and with a $50,000 00 deposit from a businessperson known to be able to acquire the property above; such a duty was owed to both STATES Resources Corporation and The Architectural Team, Inc.  which offer if implemented would have resulted in full recovery of the amount due to the mortgagee, including costs, and The Architectural Team, Inc. and funds left over for Michael Capizzi.. The Architectural Team, Inc. has a basis of recovery against STATES Resources Corporation and Garrett, Inc. if the foreclosure process is conducted negligently or in bad faith.  Garrett, Inc who undertakes to exercise the power of sale in a mortgage must act in good faith and with a careful regard for the interest of the mortgagor and The Architectural Team, Inc. who had a lien, an special attachment granted by the Massachusetts Superior Court and execution issued by the Massachusetts Superior Court and levy all known to Garrett, Inc.. In circumstances such as these, the mortgagee and the auctioneer, who is agent of the mortgagee, cannot shelter themselves under a bare literal compliance with the conditions imposed by the terms of the power sale. Their claim that there can be no c. 93A violation because they had a legal right to foreclose has no merit.  Legality of underlying conduct is not necessarily a defense to a claim under c. 93A.  93 A makes conduct unlawful which was not unlawful under the common law or any prior sTATute.  Thus, a cause of action under c. 93A is not dependent on traditional tort or contract law concepts for its definition.  This is simply a new case for an old proposition: where foreclosure of a mortgage, even on an actual default, is conducted in bad faith to the detriment

of the mortgagor, and thus an action will lie. Here Garrett, Inc. controlled a $50,000 deposit, Garrett, Inc. had a willing and able buyer to satisfy STATES Resources Corporation and The Architectural Team, Inc. in full and left some funds available for Michael Capizzi and Garrett, Inc decided to keep this a secret from The Architectural Team, Inc. and Michael Capizzi, but not from STATES Resources Corporation. The law requires that Garrett, Inc. must "exercise the utmost good faith," and use reasonable conduct free of being unfair and deceptive. Garrett, Inc was unfair and deceptive intentional and caused grave financial loss to The Architectural Team, Inc. Garrett, Inc had a duty to notify The Architectural Team, Inc. who Garrett, Inc. was on notice was owed a great deal of money and had a lien upon the very property subject of the sale; and Garrett, Inc decided to keep the offer and the $50,000.00 in its account secret from those who had a right to know.

# EX.28

DEPOSITION OF KEVIN DUFFY
EYAL COURT REPORTING, INC.

51

1        Q.  Do you know what street they're

2    located at?

3        A.  Lincoln Road.

4        Q.  That's Lincoln Road, Lincoln, Mass.?

5        A.  Right.

6        Q.  And did you list the property for sale

7    with the Barrett organization?

8        A.  I did.

9        Q.  And what price did you list it at?

10       A.  $2,590,000.

11       Q.  And it's no longer listed?

12       A.  That's correct.

13       Q.  Is the property vacant or is somebody

14   living in the property?

15       A.  It's currently vacant.

16       Q.  And it's currently insured for the

17   same million dollars?  You said it was approximately

18   a million dollars, the insurance policy.  Has it

19    been increased or decreased?

20        A.  No, it has not.

21        Q.  Same, is that correct?

22        A.  Yes.

23            MR. RING:  I'll first hand that to

24    your attorney.  I'm sorry.  I don't have another

EYAL COURT REPORTING, INC.

EYAL COURT REPORTING, INC.

38

1        Q.  Do you have the document in front of

2    you that your attorney looked at and Mr. Doonan, I

3    believe looked at?  Can you tell us what it is?

4        A.  It looks like the mortgage securing

5    the loan at 236 Lincoln Road.

6        Q.  May I have it, please?  And this

7    document is from Kevin P. Duffy or it's a copy of

8    the original of the document of Kevin P. Duffy, 44

9    Eaton, E-A-T-O-N, Road, Lexington, Massachusetts.

10    That's your -- again, that's you, true?

11        A.  That's me.

12        Q.  And it's to Joan M. Duffy, an

13     individual at 411 Waverly Oaks Road, Suite 340,

14     Waltham, 02452.  That's your mom?

15          A.  That's correct.

16          Q.  And the sum of the mortgage to your

17     mother, that is, Mrs. Duffy, is $1,250,000?

18          A.  That's correct.

19          Q.  And it specified -- it was a ten-year

20     note?

21          A.  I guess.  I don't remember.

22          Q.  Well, does this document that I have

23     handed you and handed your attorney provide for a

24     ten-year note?

EYAL COURT REPORTING, INC.

EYAL COURT REPORTING

35

1    mortgage loan was going to be from your mother to
2    you?
3         A.  Yes.
4         Q.  And you also told Mr. Fitch the rate
5    of interest?
6         A.  That's correct.
7         Q.  And the terms of the note?
8         A.  Yeah, that's correct.
9         Q.  And where did the check come from that
10   you used at the closing?
11        A.  Fleet Bank.
12        Q.  Fleet Bank in Massachusetts?
13        A.  Yes.
14        Q.  And whose account?
15        A.  Mine.
16        Q.  So the money came from a Fleet Bank
17   account in Massachusetts under whose name?
18        A.  For the conveyance?
19        Q.  Yes.
20        A.  Mine.
21        Q.  Okay.  And by the way, the conveyance
22   was a million two, plus or minus adjustments?
23        A.  That's correct.
24        Q.  And the net amount of that sum came
          EYAL COURT REPORTING, INC

# EX.29

The Architectural Team, Inc. ANSWER TO INTERROGATORY OF GARRETT, INC.

## INTERROGATORY NO. 8:

STATe the basis for any claim by you that Garrett, Inc. engaged in unfair business practices.

## ANSWER

**Incorporating Answers 6 and 7 above herein, The Architectural Team, Inc. further STATES that the offer of Florence for $2,000,000.00 and the $50,000 deposit was not to be applied to the mortgage debt alone but to the The Architectural Team, Inc. execution and the balance to Capizzi.  Garrett Healey knew of the interest of The Architectural Team, Inc.; saw The Architectural Team, Inc.; saw The Architectural Team, Inc.'s attorney' and while Garrett, Inc who now seeks payment from the very funds claimed by The Architectural Team, Inc. never once told The Architectural Team, Inc. or its counsel that it had held and was holding $50,000.00; had a bona fide unconditional offer that would pay The Architectural Team, Inc. in full but rather Garrett, Inc. decided to keep this material information from the very entity from which Garrett, Inc now seeks payment.  That it appears that Kevin Duffy without filing for a single building permit in Lincoln, MA listed the proper try for $2,590,000.00 having purchased the property for $1,200,000.00 on September 26, 2003, and immediately place a straw mortgage upon the property for $1, 250,000.00 in favor of Joan Duffy, his mother or sister without executing a note as sTATed in the mortgage deeds and without interest payments as called for in the mortgage deed.  That both Garrett Healey and John Doonan and the principal STATES Resources Corporation alone knew that Leonard Florence had valued the property at $2,000,000.00 unconditionally offer for the same $2,000,000.00 with the secret deposit of $50,000.00 cash.  The conduct of John Doonan, Garrett Healey and STATES Resources Corporation was intentional as to the secret and was both an unfair and deceptive trade practices having taken place in Massachusetts, that Garrett Healey, and Garrett Inc both engaged in unfair or deceptive trade practice or both and for which they are liable to The Architectural Team, Inc. for its damages and penalties and all costs and attorneys fees.  Never did Leonard Florence sTATe in writing to keep his offer secret...never.**

## EX.30

GARRETT, INC ANSWER TO INTEROGATORIES OF The Architectural Team, Inc. 6(B) AND
GARRETT, INC. DEPOSITION

336

```
1     your best memory today, right?

2              A.    Correct.

3              Q.    And your best memory is that you sent

4     the Exhibit Six to John Doonan?

5              A.    I believe I did.

6              Q.    Okay.  And in sending it to John

7     Doonan, did you redact any information?

8              A.    No.

9              Q.    Of course not.  I don't mean to imply

10    anything.

11             A.    That's all right.

12             Q.    When you sent the letter to John

13    Doonan, which is your belief now as we sit here in

14    this late hour of this late afternoon, you did so

15    because you believed he was entitled to see that

16    letter, true?

17             A.    Yes.

18             Q.    And as a matter of fact, you were

19    proud of securing that letter.  We could say that,

20    isn't that true?  2-million-dollar offer,

21    50,000-dollar deposit because of your --

22             A.    I was happy to have a backup and an

23    acceptable number.

24             Q.    So you really were in the affirmative
```

EYAL COURT REPORTING, INC.

AND GARRETT, INC ADMISSION 8, supra.

# EX.31

ANSWER OF The Architectural Team, Inc. TO INTERROGATORY OF GARRETT, INC.

**INTERROGATORY NO. 6:**

STATe the basis for any claim by you that the 3.5% commission claimed by Garrett, Inc. is not reasonable.

ANSWER:

**Garrett, Inc. was and is not licensed as an auctioneer by Massachusetts, secreted a deposit of a purchasers into an account of a defunct corporation; the local Federal Courts Rules of Bankruptcy for auctioneers provides a formula for a reasonable fee; based upon the fact that others would do it for less; based upon the fact that Attorney John Doonan did not attempt to find a auctioneer upon a fixed fee of at most a few thousand dollars; based upon the testimony of Garrett Healy that organizations of which he is a member suggested fixing fees in violation of law; ( Garrett Healey testified there is a "standard rate" of 3 to 5.5 percent if you are a certified auctioneer all according to testimony of Garrett Healey), based upon the fact that Garrett Healey never told The Architectural Team, Inc. of $2,000,000.00 unconditional written offer and $50,000 cashed check of Leonard Florence and keeping secret the call from Linda Micu noticing a default when Garrett Healey controlled a $50,000.00 deposit for the property at $2,000,000.00 until after the litigation began; based upon the fact the Garrett, Inc is not licensed as a real esTATe broker; based upon the fact that the advertisements of auction were materially wrong and inaccurate; the wrong property descriptions, wrong rooms; based upon the absurd testimony of Garrett Healey that more acres can reduce property values; based upon the fact that Kevin  Duffy testified that more acres increases the property value; based upon the fact that the fee was subject to court approval; based upon the fact that the foreclosing party owed a fiduciary duty to The Architectural Team, Inc. and did not comply with that duty; based upon the fact that as an agent of STATES Garrett Inc acted with deception in not telling The Architectural Team, Inc. about the Florence offer and deposit; based upon the fact that Garrett, Inc. in placing the $50,000.00 into the account of a dissolved corporation and telling STATES of the deposit while at the same time Garrett, Inc. did not tell The Architectural Team, Inc. and that such conduct was both unfair and deceptive to The Architectural Team, Inc.; that Garrett Inc. at the auction sales met both The Architectural Team, Inc. and there attorneys and never once revealed either the $50,000 check deposited into a defunct corporate account or the $2,000,000.00 offer of Leonard Florence; that Garrett Inc. had no auctioneers license; that Garrett, Inc. knew of the special attachment, execution and levy in favor of The Architectural Team, Inc. and while telling STATES Resources Corporation of the Leonard Florence unconditional written offer and deposit Garrett, Inc did not tell The Architectural Team, Inc. or its attorneys; that Garrett Healey hearing at the**

sale of September 26, 2003 a high bid of only $1,200,000.00, never told Bob Verrier, The Architectural Team, Inc. or its attorney present at the sale of the $50,000.00 deposit that Garrett Auctioneers., Inc was holding at that very moment in the secret account of a defunct Massachusetts Corporation at Danvers Savings Bank, never told the same that Leonard Florence well known in the comminuity had offer to unconditionally buy the same property for $800,000.00 more; knew that Attorney John Doonan and STATES Resources Corporation knew from Garrett Healey but never told The Architectural Team, Inc. and never sought under the circumstances a postponement of the sale at auction to tell The Architectural Team, Inc. and to attempt to contact that day and time Leonard Florence; that Garrett Healey spent that day with Attorney Doonan; was with attorney Doonan at the sale was taking instructions from Attorney Doonan and never once indicated to The Architectural Team, Inc. of the facts known to Attorney Doonan, and that if known Robert Veriier would have take action to protect the property.  That in fact it now appears that Garrett, Inc. and Garrett Healey owe to The Architectural Team, Inc. the damages suffered on account of the conduct of Garrett Healey plus the penal imposition of triple damages and costs and attorneys fees that exceed any sum that may have under any circumstances been due to Garrett, Inc.; that Kevin Duffy checked the area of land testify it is very important to value; that Kevin Duffy who was the high bidder is a civil engineer, that unlike the public Kevin Duffy went to the Town Hall of Lincoln and found out the advertisements of Garrett, Inc. was in error; that in fact the property at 236 Lincoln Road, Lincoln, MA has been listed for sale at $2,590,000.00 "on six Magnificent Acres" without any additions or construction or remodeling that would require a building permit from the Town of Lincoln; that Kevin Duffy obtained no permit and that Kevin Duffy placed a first mortgage on the property at passing in the name of his mother or sister for a loan that never existed and was missTATed on the public records, and that in fact the monies were never lent by the mother or sister, they were in fact the monies belong to Kevin Duffy and that in fact notwithstanding the mortgage calls for the payment of interest by Kevin Duffy no interest has every been paid; all indicating a consciousness of guilt or a means of covering the sale by conduct that was untrue and deceptive.

**EX.32**

Jun 17 04 12:50p     Law Offices                 6177425761              p.7



**AUCTIONS          AUCTIONS**

**RESIDENTIAL COLONIAL STYLE HOME,
LINCOLN, MA**
**Public Auction/Mortgage Foreclosure**
236 Lincoln Road, Lincoln
September 26, 2003 at 11:30 A.M.   GA #039503

**Description:** Spectacular 5,000 sq. ft. brick, two-story home, features 6 bedrooms, family room and den, 3 fireplaces, central a/c, full basement, 1 full-baths, patio, 3 car garage, on 2 1/2 acres in prestigious community 12 miles northwest of Boston. Recorded in Middlesex South Book #19718 Page 41.

**TERMS:** A non-refundable deposit of $50,000 in cashier's or certified check required from the successful bidder at auction. Closing is within 30 days of the Auction. The property is sold "AS IS", subject to all taxes and municipal liens and water or other superior liens. Liens of record will be disclosed day of sale. Any announcement made day of sale shall take precedence over any previously written material or oral statements made. Other terms, if any, to be announced at the auction.

**Auctioneer: Garrett D. Healey**
**Lic#  MA 197 * NH 2357 * VT 701 * ME 985**

GARRETT, INC.
76 High Street
Danvers, Massachusetts 01923
Tel 978-774-6006
www.garrettauctioneers.com
*The Experience That Guarantees Success.*

**GARRETT**



EXHIBIT
11
8-2-04

85

AD101655

FEBRUARY 23, 2003

# BOSTON SUNDAY GLOBE

# AUCTIONS

| AUCTIONS | AUCTIONS |
| --- | --- |

## TAX POSSESSION PROPERTY
## CLINTON, MA
### TWELVE PROPERTIES
**SATURDAY, MARCH 8 AT 11 A.M.**

Clinton Town Hall, 242 Church Street, Clinton, MA

| 40 Longedge Rd. | +/- 8,000 SF | Map 130, Parcel 899 |
| 26 N. Oak Court | +/- 7,782 SF | Map 98, Parcel 829 |
| 0 Rogers Field Way | +/- 84,150 SF | Map 131, Parcel 3825 |
| 4 Rogers Field Way | +/- 50,484 SF | Map 131, Parcel 3826 |
| Lindberg St. | 9 Parcels | Map 121 |
| 67 Rigby St. | +/- 10,000 SF | Map 131, Parcel 2302 |

Note: A deposit of $5,000.00 will be required to bid for EACH property above

2300 WATT MICROWAVES, CONVEYOR TOASTER, BUNN TOAST-ER, SHEET PAN RACKS, 100 SHEET PANS, 3 COMP'T S/S SINK, CRESCOR WARMING CABINET, GROEN 20 QT TILT KETTLE, 36" C/TOP REF GLASS EURO SHOW CASE S/C, TRUE SINGLE GLASS DOOR COOLER, TRUE 2 GLASS DOOR COOLER, (3) 6'6" S/S TABLES, ERECTA SHELVING, SAFE, SCALES, PAT FILTERATOR, BUS CART, WAITRESS STATIONS, TIME CLOCK, HAND SINKS, BABY CHAIRS, APPROX. 200 USED, S/S ASSTD SIZE INSERTS. NEW: STOCK POTS, SAUCE PANS, SKILLETS, CHAFERS, CUTTING BOARDS, RUBBER FLOOR MATS, GLASSES, DISHES, LOTS OF PAPER GOODS, BOXES OF SODA MIX, ETC. (25) 20X20 FORMICA TOP TABLES W/BASES, 60 NATURAL WOOD CHAIRS W/PADDED SEAT, MANY MORE ITEMS....

TERMS: CASH OR CERTIFIED FUNDS ONLY OR BANK LETTER, INSPECTION 9 AM SALE DAY, COME EARLY AND BE PREPARED TO MOVE YOUR PURCHASES. (TRUCKER ON PREMISES), 10% BUY-ERS PREMIUM WILL APPLY ON ALL PURCHASES.

EDWARD F. SMITH AUCTIONEER, LIC #126
AVENUE AUCTION SALES
932 DORCHESTER AVENUE, BOSTON, MA 02125
AUCTIONEER (617) 436-3629 FAX (617) 288-5616 APPRAISER

## MORTGAGEE'S FORECLOSURE AUCTION
**TUESDAY, FEBRUARY 25, 2003 @ 10:00 A.M.**
on the premises
81 WOODLAND ROAD, SOUTHBOROUGH, MA
A 04 1.2 BATH COLONIAL ON 1 ACRE
Living room, dining room, kitchen, family room, basement rec. room, deck, two car attached garage w/o finished room above, oil heat and central oad.
Terms: $5,000 deposit. Balance due in 30 days.

**WEDNESDAY, FEBRUARY 26, 2003 @ 12:00 NOON**
on the premises
152 THOMPSON STREET, SPRINGFIELD, MA
Terms: $5,000 deposit. Balance due in 30 days.

**WEDNESDAY, FEBRUARY 26, 2003 @ 12:30 P.M.**
On the premises
101 LAMONT STREET, SPRINGFIELD, MA
Terms: $5,000 deposit. Balance due in 30 days.

---

| AUCTIONS | AUCTIONS | AUCTIONS |
| --- | --- | --- |

Cash registers
Child day care
Clothing & furs
Coins & stamps
Collectibles
Computers-services
Construction equip.
Dancing
Dental supplies
Diamonds & jewelry
Electronic equip.
Energy savers
Firewood, fuel & coal
Fitness
Foods
For sale
Furniture, ect.
Games, dolls & toys
Gardening/landscaping
Handicapped sup-plies
Heating & plumbing

## MORTGAGEE FORECLOSURE
### 332 Broad Street, HOLLIS, N.H.
**Thursday, March 6th - 11:00 A.M.**

SELLING: Contemporary Cape (NEW in 1999) features 5 Bedrooms, 3.5 Baths, Livingroom, Diningroom, Den, Laundry room and 2-car attached garage. TOTAL Gross living area of over 3200 sq. ft. 1st floor has Master bedroom and 1.5 Baths. 2nd floor has 4 Bedrooms and 2 full baths. ALL SITED ON 6.29 ACRE LOT sitting way back from Broad St. via long driveway.

DIRECTIONS: Exit #6 off Everett Turnpike onto Broad St. West toward Hollis. Driveway off Broad St. is approx. 1/2 mile after Nashua/Hollis town line, on the Right. Look for auction signs at entrance to driveway.

TERMS: $5,000 CASH or CERTIFIED CHECK acceptable to the Mortgagee as down payment towards the purchase price to be paid at the time of sale; balance to be paid in forty days upon delivery of deed, at option of the mortgage. Down payment shall be forfeited to the Mortgagees in the event the highest bidder shall fail to consummate the sale.

### RESIDENTIAL COLONIAL STYLE HOME, LINCOLN, MA
**Public Auction/Mortgage Foreclosure**
### 236 Lincoln Road, Lincoln
**March 3rd at 2PM** 0A #035003.

**Description:** Spectacular 8,800 sq. ft. brick two-story home, features 5 bedrooms, family room and den, 3 fire-places, central air, full basement, 3 full baths, patio, 3 car garage on 2 1/2 acres in prestigious community-12 miles northwest of Boston. Recorded in Middlesex South Book #19716 Page 41

TERMS: A non-refundable deposit of $5,000 in cashier's or certified check required from the successful bidder at auction. Closing is within 30 days of the Auction. The property is sold "AS IS" subject to all taxes and municipal liens and water or other superior liens. Liens of record will be disclosed day of sale. Any announcements made day of sale shall take precedence over any previously written material or any statements made. Other terms, if any, to be announced at the auction.

**Auctioneer Garrett D. Healey**
**Lic# 1 MA 197 * NH 2357 * VT 701 * ME 985**
**GARRETT, INC.**
76 High Street, Danvers, MA 01923
Tel. 978-774-6008
www.findauctioneer.com
www.garrettauctioneers.com

---

| PERSONAL PROPERTY | PERSONAL PROPERTY |
| --- | --- |

## ED SMITH SELLS AG...

SALE AT PUBLIC AUCTION RE: Roslindale Restauran...
BUILDING COMING DOWN, EVERYTHING GOES...
CITY OF BOSTON 7 DAY 2 AM FULL LIQUOR L...
RESTAURANT-BAR-PIZZA-FULL KITCHEN...
ROOF TOP HVAC SYSTEMS-EXERCISE EQ...
JACUZZI-STEAM ROOM-BOXING MEMORA...
EQUIPMENT-FIXTURES-DECOR
TO BE SOLD ON THE PREMISES
4150-4161 WASHINGTON ST., ROSLINDA...
**WEDNESDAY, FEBRUARY 26, 2003 AT 1...**

16 SETS BURGUNY PADDED BOOTHS W/TABLES WO...

## CMS, INC.
25 Wareham St., Middleboro, M...
**Thursday, Feb. 27th at 10:30 A...**
INDUSTRIAL REAL ESTATE
3.36 Acres + 4 Buildings + 73,000 Sq. Ft. Mfg...
Adjacent to Middleboro Center
MACHINERY & EQUIP.
SHEARS: Peddinghaus AFPS623J Angle...
(1995); Cincl 12'x3/4" (1987); Pacific 16'x3/8"...
FABRICATING: Whitney 650 & 637A Hyd. P...
Marvel 81A Saw (1987); Esab CNC Plasma &...
Cutters; (30) Welders; Platens; Positioners
MACHINING: Heian Gantry CNC VMC 10'x24'...
LC40 CNC Lathe; Lathes; Mills
FORKLIFTS: Cat 14500# Diesel (500 Hrs.);...
LRG 9000# & 4000# (800-2000 Hrs.)
CRANES: Whitney 15 Ton & (3) 3-Ton 60' Spa...
Lifts; Jibs; Hoists
(5) COMPRESSORS-PAINT SPRAY-OVEN...
PLANT-OFFICES-TRUCK
Inspection Wed., Feb. 26th, 9 A.M.-5 P.M. Or B...

Real Estate Terms: $100,000.00 Deposit, Balance due in 45 da...
Terms: 25% deposit cash, ctfd. ck. or bank letter honored...
w/auctbl. cks. A 10% Buyer's Premium will apply. Other terms a...
For pictorial brochure or info, visit...

## JOSEPH FINN CO...
AUCTIONEERS APPRAISERS
FAX 617-964-7327 * Since 1...
158 Needham St., Newton, MA 02464 - 617-96...
www.josephfinn.com



**WHAT'S**
**K & WHITE**
**LOVER**

raft services
conditioning
l occasions
appliances
Antiques
rts & crafts
Astrology
ito transport
aked goods
auty supplies
Bicycles
illiards-pool
Books
iness machines
ash registers
hild day care
othing & furs
bins & stamps
Collectibles
inputers-services
istruction equip.
Fencing
. supplies
nonds & jewelry
ectronic equip.
Energy savers
wood, fuel & coal
Fitness
Foods
For sale
Furniture, ect.
mes, dolls & toys
ening/landscaping
indicapped sup-
plies
ating & plumbing
otel & restaurant
supplies
Lost & found
Mail order
Medical supplies
Messages
Miscellaneous
Movers
Music

concrete/brick/block building located at heavily traveled intersection. Approx 2200 sq ft bldg on 10,000 sq ft paved lot. Off-street parking, chain-linked fence. Accessible from 93-128-I95. Town water, sewer, electric and gas. Zoned industrial/commercial. Best use for small business, contractor, technology, light manufacturing or shipping. Recorded in Middlesex County Registry of Deeds County Book #32426 Page #224.

**Open Houses: Sunday March 2 and 9, 1-4**

Terms: $10,000 non refundable deposit cash or certified check required by the successful bidder day of sale. Closing to take place within 30 days of the date of sale. Seller guarantees a clean and clear title. The property is sold "As Is" subject to all easements, restrictions, zoning and other matters of record. Any announcements made day of sale shall take precedence over any previously written material or oral statements made. All written material subject to error or omissions.

Auctioneer: Garrett D. Healey
Lic # MA 197 • NH 2362 • VT 701 • ME 985

**GARRETT INC.**
76 High Street Danvers, MA 01923 • 978-774-6008
www.findauctioneer.com • www.garrettauctioneers.com
The Experience That Guarantees Success

### GARRETT

**RESIDENTIAL COLONIAL STYLE HOME, LINCOLN, MA**

**Public Auction/Mortgagee Foreclosure**

**236 Lincoln Road, Lincoln**
**March 3rd at 2PM** GA #030503



**Description:** Spectacular 5,800 sq ft brick two-story home, features 5 bedrooms, family room and den, 3 fireplaces, central air, full basement, 3 full baths, patio, 3 car garage on 2 1/2 acres in prestigious community 12 miles northwest of Boston. Recorded in Middlesex South Book #19716 Page 41

**TERMS:** A non-refundable deposit of $5,000 in cashier's or certified check required from the successful bidder at auction. Closing is within 30 days of the Auction. The property is sold "AS IS" subject to all taxes and municipal liens and water or other superior liens. Liens of record will be disclosed day of sale. Any announcements made day of sale shall take precedence over any previously written material or oral statements made. Other terms, if any, to be announced at the auction.

Auctioneer: Garrett D. Healey
Lic# * MA 197 * NH 2357 * VT 701 * ME 985

**GARRETT, INC.**
76 High Street, Danvers, MA 01923
Tel. 978-774-6008
www.findauctioneer.com
www.garrettauctioneers.com
The Experience That Guarantees Success

### GARRETT



**PERSONAL PROPERTY**    **PERSONAL PROPERTY**

**LIQUIDATION BY PUBLIC AUCTION**

ASSIGNEE'S SALE: RE: MARK'S CURTAIN CORNER
OWNER DECEASED - MUST VACATE

HEAVY BAG, NAUTILUS BACK MACH, FITNESS WEIGHT MACH, 6'X8' JACUZZI, STEAM BATH ROOM W/BOILER, HW HEATERS, LARGE LOT OF BOXING DECOR

HVAC SYSTEMS: (5) HEAT & AIR CONDITIONING UNITS ALL 3 YEARS OLD (1) YORK 100,000 BTU (1) RUDD 135,000 BTU (1) CARRIER 120,000 BTU (2) RHEEN 117,000 BTU (ALL ROOF TOP UNITS), 1 HEAT UNIT 50,000 BTU W/AC PUMP, 12' S/S HOOD W/MAKE UP AIR AND FRESH AIR.

TERMS: CITY OF BOSTON 2AM LIQUOR LICENSE WILL BE SOLD AT 12:30PM. PURCHASE TERMS: $20,000. DEPOSIT IN CASH OR CERTIFIED FUNDS REQUIRED AT TIME OF PURCHASE. BALANCE UPON APPROVAL OF LOCAL LIC AUTHORITY AND COMM. OF MASS ABCC. PURCHASER WILL APPLY WITHIN 7 DAYS OF PURCHASE AND SHOW PROOF OF SAME TO SELLER FOR TRANSFER TO PURCHASER. PERSONAL PROPERTY TERMS: CASH OR CERTIFIED FUNDS ONLY OR BANK LETTER GUARANTEEING PAYMENT. INSPECTION MORNING OF SALE. EVERYTHING SOLD FOR IMMEDIATE REMOVAL AFTER AUCTION. A 10% BUYERS PREMIUM WILL APPLY ON ALL PURCHASES, 5% ON LIQUOR LICENSE. OTHER TERMS TO BE ANNOUNCED.

**EDWARD F. SMITH AUCTIONEER, LIC #126**
**AVENUE AUCTION SALES**
932 DORCHESTER AVENUE, BOSTON, MA 02125
AUCTIONEER (617) 436-8829 FAX (617) 287-0525
APPRAISER

### PUBLIC AUCTION SALE!!
### INDUSTRIAL REAL ESTATE
### METAL FABRICATING & MACHINING
### CMS, INC.

**25 Wareham St., Middleboro, MA**
**Thursday, Feb. 27th at 10:30 A.M.**



**INDUSTRIAL REAL ESTATE**
3.36 Acres • 4 Buildings • 73,000 Sq. Ft. Mfg. & Office
Adjacent to Middleboro Center
**MACHINERY & EQUIP.**

**SHEARS:** Peddinghaus AFPS623J Anglemaster (1995) Cinci 12'x3/4" (1987); Pacific 16'x3/8" (1985)
**FABRICATING:** Whitney 650 & 637A Hyd. Punches; Marvel 81A Saw (1987); Esab CNC Plasma & Flame Cutters; (30) Welders; Platens; Positioners
**MACHINING:** Helan Gantry CNC-VMC 10'x24'; Okuma LC40 CNC Lathe; Lathes; Mills
**FORKLIFTS:** Cat 14500# Diesel (500 Hrs.); (6) Cat LPG 9000# & 4000# (800-2000 Hrs.)
**CRANES:** Whitney 15 Ton & (3) 3 Ton 60' Spans, Vac Lifts; Jibs; Hoists
(5) COMPRESSORS-PAINT SPRAY-OVENS
PLANT-OFFICES-TRUCK
Inspection Wed., Feb. 26th, 9 A.M.-5 P.M. Or By Appt.

**Real Estate Terms:** $100,000.00 Deposit. Balance due in 45 days. Equip. **Terms:** 25% deposit cash, ctfd. ck. or bank letter honoring payment w/unqfd. cks. A 10% Buyer's Premium will apply. Other terms at sale.

**For pictorial brochure or info, visit**
**www.JosephFinn.com**

**JOSEPH FINN CO., INC.**
AUCTIONEERS • APPRAISERS
FAX 617-964-7827 · Mass. License #216
158 Needham St., Newton, MA 02464 • 617-964-1886
www.josephfinn.com

### MAJOR ARCHITECTURAL WOODWORKING AUCTION!!

### ITALPRESS LAMINATING LINE
### SAWS - SANDERS - PLANERS
### BANDER - JOINTER - PRESS

**Peppy & Sons Woodworking, Inc.**
171 Mattakeesett St., Pembroke, MA
**Tuesday, March 4th at 10:30 A.M.**

FEATURING
LAMINATING: 1988 Italpress Mark C 14/32-10 Automated Press

Bakers R
Douglas
Pride Piz
Blodgett
New 24 q
6 burner
Range, C
Hobart L
Dunage F
Board To
Food Trai
Chaffing
Lamps, S
Beer & W
VERWARD
BUYABLE
SYRACUS
Glasses,
Sauce Po
Water Gla
(120) Gre
Metal Ou
Systems,
LY CLEAN
SOLD IN
refundab
in full wit
Complem

**MICHA**

Visi

TO BE SO
1 Catergo
Backhoe
01WR008
1 Caterpil
cavator, s
1 Caterpil
Excavator
Auctioneer
be held th
at 11
This is an
Register to
www.in
or call
Auctioneer
ed @ South
100 Quarry

**ENG**
**WE**
**CH**



JULY 20, 2003                                        BOSTON SUNDAY GLOBE

# AUCTIONS

**Major Wire Company**
Leading Copper & Tinned Wire Fabricator
Very Late Model & Like New Equipment

Sell Thursday, July 31, 2003 At 10:00 A.M.
At 7 Coburn Street, Chicopee, Mass.

**COMPLETE CLOTHING MANUFACTURER PUBLIC AUCTION SALE**
Re: SHEPARDS CLOTHING
MONDAY, JULY 28, 2003 AT 11AM
800 ACUSHNET AVENUE, NEW BEDFORD, MA

Fixed Asset Solutions, LLC
A Gordon Brothers Group Company
www.gbfas.com

**GABRIEL'S**
WOODWORKING & CABINET SHOP
Re: THE WOOD SHOP
Thurs., July 24, at 11 AM · Inspection 9:30 AM
763 MAIN ST., (Route 1A), WALPOLE, MA.

**Auction Marketing Group.com**
**WESTBORO**
Rt 9 & I495 · 7+ACRES
WED. JULY 30, 2003 · 11:00 AM

**REAL ESTATE AUCTION**
FRIDAY, JULY 25, 2003 @ 10:00 A.M.

**FORECLOSURE SALE AT**
**PUBLIC AUCTION**
45,438± SF INDUSTRIAL BUILDING
IN LAKES REGION
FRIDAY, AUGUST 1 AT 11:00 AM
200 TILTON ROAD, NORTHFIELD, NH

James R. St. Jean
AUCTIONEERS
1-800-639-1810
www.jsjauctions.com

**Mortgagee's Sale by Public Auction**
9 Room Single Family Home on 25,000
- sq/ft Lot w/Inground Pool & Barn
To be sold on premises known as:
16 West Street
Bridgewater, MA
Tuesday, July 29, 2003 at 11:00 AM

www.Bermanauctions.com

BERMAN
P.O. Box 20719, Worcester, MA 01602
508-753-3989

**AUCTION**
VERMONT

RESIDENTIAL
Public Auction
July 24th




**EX.33**





# Home Search Results: ML Detail View

**Get the Best in Real Estate**
To learn more about this property, use Contact or call (781)237-8787.

Gail Lockberg

**More about:**
Community | Local Mortgage Rates | Schools | Nearby Shopping, more...



Premium Serv
Register now
and get acce
to these extr
services:
Request a
Home Tour
Add to My
Portfolio
Email to a
Friend
Full Proper
Details
Make an O
online

Showing Property Detail: **3 of 26** partial results. Registe
full results.

Back to Search Results     Prev Property     Next Prop



Address Not Published, Lincoln, MA  01773          Ma

6 bedrooms  3/:
ba

3 car garage

Re
a
$2,590,000      Sh

http://idx.bostonareahomes.us/details.aspx?firstrecord=2&propertytype=1&sort=5...  8/28/2004

Property Details                                                    Pag

Homeowner's
surance



Statu

Property Typ

Area Locatio

Subdivisio

**MLS Comments:**
Gracious Brick Colonial On 6 Magnificent ACoun
Tree-Lined Drive Unfolds IN An Inviting ApprSchool Distri
Classic Residence. This W...
Register now to view complete property informati

Map Pag

## General

| # of HALF BATHS: | 2 | # of Rooms: | 11 |

## Room Dimensions

| | | | |
|---|---|---|---|
| **Bed2 Dimen:** | 14X12 | **Bed2 Level:** | 2 |
| **Bed3 Dimen:** | 16X14 | **Bed3 Level:** | 2 |
| **Bed4 Dimen:** | 17X15 | **Bed4 Level:** | 2 |
| **Bed5 Dimen:** | 19X15 | **Bed5 Level:** | 2 |
| **Bth1 Dscrp:** | Full Bath | **Bth1 Level:** | 2 |
| **Bth2 Dscrp:** | Full Bath | **Bth2 Level:** | 2 |
| **Bth3 Dscrp:** | Full Bath | **Bth3 Level:** | 2 |
| **Din Dimen:** | 16X16 | **Din Level:** | 1 |
| **Fam Dimen:** | 27X16 | **Fam Dscrp:** | Fire |
| **Fam Level:** | 1 | **Kit Dimen:** | 19X |
| **Kit Dscrp:** | Wood/Coal Stv | **Kit Level:** | 1 |
| **Laundry Dimen:** | 15X13 | **Laundry Level:** | 1 |
| **Liv Dimen:** | 32X16 | **Liv Dscrp:** | Fire |
| **Liv Level:** | 1 | **Mbr Dimen:** | 32X |
| **Mbr Dscrp:** | Fireplace, Walk-In | **Mbr Level:** | 2 |

## Equipment

| | | | |
|---|---|---|---|
| **Basement Feature:** | Full, Garage Access | **Cooling:** | Centr |
| **FIRE PLACES:** | 4 | **Heating:** | Hot W Basel Heat Oil |
| **Insulation Feature:** | Full | **Lead Paint:** | Unkn |

## Property

| | | | |
|---|---|---|---|
| **Listing provided courtesy of:** | J M Barrett & Co., Inc. | **Style:** | Colon |
| **Parking Spaces:** | 3 | **Beachfront Flag:** | No |
| **LIST NO:** | 70065830 | **Road Type:** | Publi |
| **Sewer And Water:** | Private Water, Private Sewerage | | |

## Lot Comments

| | | | |
|---|---|---|---|
| **ACRE:** | 5.84 | **LOT DESCRIPTION:** | Pave |

## Additional Information

| | | | |
|---|---|---|---|
| **Disclosure:** | Lincoln Road Behind Drumlin Farms | **GRADE SCHOOL:** | Linco Camp |
| **HIGH SCHOOL:** | Linc/Sudb Hs | **MIDDLE SCHOOL:** | Linco |
| **Tax Year:** | 2004 | **Taxes:** | 1620 |

## Monthly Payments

Edit where needed and select the desired interest

Property Details                                                                    Pag

rate. More options

| Asking Price: | $2,590,000 | Down Payment: | $5... |
| Interest Rate: | 30 yr. fixed @ 6% | Estimated payment: | $12... |

**Neighborhood Snapshot** provided by Yahoo! Estate

**Address Not Published, Lincoln, MA 01773**  M...

Driving Directions          Full Neighborhood F...

Find Nearby Businesses      Local Schools

Back to Search Results    Prev Property    Ne...

┌ Sponsored Links ─────────────────────
Up to 2% Cash Rebate on Home Purchases
Our experienced agents give up to 2% rebates o...
your next home purchase. No cost to you. Nation...
service.
www.gettherebate.com

Free Home Listings up to Twice a Day
Be the first to see your dream home as soon as i...
market. Absolutely no obligation. Visit JustListed...
request new e-mail home listings with color phot...
www.justlisted.com

Easy Online Application from ING Direct
Orange Mortgage Account - get a great low rate...
absolutely no points, no application fees and no
prepayment penalty. It's simply a great deal. Like...
everything we do at ING Direct.
home.ingdirect.com

Home Buying at Realtor.com®
Visit Realtor.com® for all of your home finance n...
Find current rates for mortgage, home equity or...

Property Details                                                    Page

refinancing loans - plus payment calculators, online
applications and helpful articles.
finance.realtor.com

---

y Account  My Search  My Portfolio  My Resources  My Listing  Ab
erms of Use  Privacy Policy  Yahoo! Privacy Policy

004, An independently owned and operated member of The Pruden
ate Affiliates, Inc.

*Prudential*  is a service mark of The Prudential Insurance Company of A
Equal Housing Opportunity. ⌂

04 MLS Property Information Network, Inc. All Rights Reserved. Th
erty listing data and information set forth herein were provided to M
erty Information Network, Inc. from third party sources, including s
ors and public records, and were compiled by MLS Property Inform
work, Inc. The property listing data and information are for the pers
mercial use of consumers having a good faith interest in purchasin
ing listed properties which such consumers may have a good faith
urchasing or leasing. MLS Property Information Network, Inc. and it
scribers disclaim any and all representations and warranties as to t
uracy of the property listing data and information set forth herein. T
uracy of all information, regardless of source, including but not limit
are footages and lot sizes, is deemed reliable but not guaranteed a
ersonally verified through personal inspection by and/or with the a
essionals.

MLS information on this website was last updated as recently as A
4 11:45 AM CST.

LTOR® -- A Registered collective membership mark that identifies
te professional who is a member of the National Association of
LTORS® and subscribes to its strict Code of Ethics.

dential Town and Country Real Estate collects personal information
e. For information on how this information is collected and how it is
se view the Prudential Town and Country Real Estate Privacy Poli
oo! does not collect or receive any of this information.

IOO REALTY INC. (YRI) AND YAHOO! INC. (YAHOO!) DO NOT F

Property Details                                                                    Page

AL ESTATE LISTINGS. All listings on this website are presented by
dential Town and Country Real Estate. The multiple listing data that
his website is copyrighted by the MLS and is protected by all applic
yright laws. All real estate listings, prices, and descriptions provided
or Yahoo! either on this website or on a website to which you may
wing your submission of a showing or listing request are electronica
ed there by Prudential Town and Country Real Estate and not YRI
oo!. All property descriptions and other data and information used i
arch tools for selecting properties and determining pricing on this w
website to which you may be linked are supplied by third party ver
sonal, educational and non-commercial purposes only, have not bee
fied by YRI or Yahoo!, and are not intended to be binding on YRI or
stings are subject to prior sale and may not be available when your
ocessed. All prices and terms are subject to change without notice.
guarantee either expressly or by implication that you will find a real
g that meets your specifications.

lover, Arlington, Bedford, Belmont, Boston, Burlington, Cambridge,
icord, Dover, Duxbury, Gloucester, Lexington, Lincoln, Manchester
i, N. Andover, Needham, Somerville, Stoneham, Sudbury, Swamps
tertown, Wayland, Wellesley, Weston, Winchester

## EX.34

Deposition of Kevin Duffy, Exhibit 4

### EYAL COURT REPORTING, INC.

40

1          (Exhibit No. 3; so marked.)

2          Q.   Three for identification is a

3     document, copy of a mortgage form entitled Short

4     Form.  I, Kevin P. Duffy.  It's dated October 27,

5     2003.  Did you notarize your signature?  Do you

6     remember your signature being notarized on Exhibit

7     Three?

8          (Reviewing document.)

9          A.   I don't remember it being notarized,

10    but that's my signature.

11         Q.   Is that your signature on Exhibit

12    Three?

13         A.   Yeah.

14         Q.   Tell me, did you file for any building

15    permits in the Town of Lincoln in the year 2003?

16         A.   No.

17         Q.   Did you file for any building permits

18    in the Town of Lincoln in 2004?

19         A.   No.

20      Q.  As an engineer or as a licensed

21   engineer, are you aware of the permitting process

22   required in the Commonwealth of Massachusetts when

23   someone does work on a structure that they file for

24   a building permit?

EYAL COURT REPORTING, INC.

EYAL COURT REPORTING, INC.

63

1    half.

2      Q.  And what's the basis of your belief?

3      A.  My memory.

4      Q.  Your memory.  And can you tell me

5    what's in Exhibit 11 as far as bathrooms, if you can

6    make out that?

7      A.  Three full baths.

8      Q.  Now, tell me, would you rather have

9    more acreage or less acreage in that area?

10     A.  I would rather have more.

11     Q.  Why?

12     A.  It's a nicer piece of property.

13     Q.  So let me understand something.  It's

14   a nicer piece of property.  When you say "it," just

15   for the record, 236 Lincoln Road, Lincoln, Mass., is

16   a nicer piece of property with more acres than less

17    acres, true?

18         A.  True.

19         Q.  And so that if you had nine acres, you

20    would be happier?

21         A.  True.

22         Q.  And if you had two and a half acres,

23    you wouldn't be as happy as if it had almost six

24    acres, true?

EYAL COURT REPORTING, INC.

## EX.35

**ANSWER OF GARRETT, INC**
<u>Interrogatory No. 6:</u>

 [a] <u>Identify</u>, in detail how, when, where and by whom did the matter of the written offer of Leonard Florence for the acquisition of the <u>property</u> first come to the attention of Garrett, Inc., [b] <u>identify</u> all discussions, <u>memoranda</u> and/or <u>documents</u> referencing such discussions or offer or deposit of Leonard Florence, and the decision by Garrett, Inc. to notice or not to notice the offer of Leonard Florence and his deposit for the <u>property</u> to John Doonan, Michael Capizzi, Catherine Capizzi, Linda Micu, and The Architectural Team, Inc. or any one of them, including [c] <u>identifying</u> all dates of notice, <u>documents</u> and persons or persons directly or indirectly related to that decision.

**Response No. 6:**

 Garrett objects to this Interrogatory because, in fact, it is more than one interrogatory propounded under the guise of one.  Subject to and without waiving this objection or its General Objections, Garrett responds to the multiple discrete subparts of this Interrogatory as follows:

    a. Sometime in early August 2003, Garrett, Inc. received an August 4 letter from Mr. Florence along with the $50,000.00 check indicating that Mr. Florence "would like to" make an offer on the property.

    b. Garrett, Inc. incorporates by reference its response to Interrogatory Number 5[c].  Further answering Garrett, Inc. notified John Doonan of the August 4 letter and $50,000.00 from Mr. Florence because Garrett, Inc. had a fiduciary duty to John Doonan and STATES Resources Corporation, as their agent.  Garrett, Inc. did not have any specific conversation with John Doonan regarding notifying or not notifying the Capizzis, Linda Micu, and/or The Architectural Team, Inc. of Mr. Florence's proposal.  At all material times, Garrett, Inc. believed that it had no duty to notify them of Mr. Florence's proposal.

    c. Garrett, Inc. incorporates by reference its response to Interrogatory No. 5[c].

## **EX. 36**

**SEE, supra 10, 18, Garrett, Inc. exhibits**

## EX. 37



Bk30966Pg423

### JORDAN LEWIS RING & ASSOCIATES
ATTORNEYS AND COUNSELLORS AT LAW
4 Longfellow Place 37th floor
Boston, Massachusetts, 02114-2854 USA

Indonesian Office
"THE TOWERS"
330 Hammond Pond Parkway
PH 1721 NORTH
Chestnut Hill, MA 02467-1514

eMADO
Affiliated Caribbean Office
Philipsburg, St. Maarten
Netherlands Antilles
011 5995 77777

TELEPHONE    617.558.9890
FAX          617.558.9901
E-Mail: masslawyer@medianet.net
http://masslawyer-ring.com

Boston, December 15, 1999

Register of Deeds
Middlesex County Registry of Deeds
Southern District
208 Cambridge Street
Cambridge, MA    02141

REAL ESTATE ATTACHMENT__REQUEST TO BRING FORWARD c.223, section 114A

Dear Sir:

Please be advised that I am counsel of record for the Plaintiff in the matter of The Architectural Team, Inc. v Michael J. Capizzi and Catherine Capizzi et al, Suffolk Superior Court docket number 89-4479D in which a special real estate attachment was ordered on December 14, 1994, and recorded in the Middlesex South Registry of Deeds on December 15, 1994 at Book 25104, pages 393 thru 395.

Pursuant to Chapter 223, section 114A, regard this as a written request of the Plaintiff, The Architectural Team, Inc. and the attorney for the Plaintiff, (BBO # 420980) to bring forward the real estate attachment upon the books of attachments of your Registry.

Please record such attachment as being brought forward.

Enclosed find the recording fee of $10.00 represented by The Architectural Team, Inc. check numbered 4293 drawn upon Fleet, Boston of which you are the payee.

Thank you for your as ever splendid cooperation.

Attorney for The Architectural Team, Inc.

Ⓩ

JORDAN LEWIS RING, ESQUIRE FAX: 617 558 9801> To: Adam Kelly John Doonan Esqs> 19787448780 DATE >9/24/2003    TIME: 2:13:44 PM PAG

Sep 24 03 12:44p    Law Offices    6177425761    P

# Commonwealth of Massachusetts

**SUFFOLK, ss.**

SUPERIOR COURT DEPARTM
OF THE TRIAL COURT
FOR CIVIL BUSINESS

*To the Sheriffs of our Several Counties, or their Deputies, ~~or to any Constable of our City of~~*

GREE

WHEREAS ....THE ARCHITECTURAL TEAM, INC.,........................................

.........................................................................................................

.........................................................................................................

~~of Boston, within our County of Suffolk,~~ .........................................................

by the consideration of our Justices of our Superior Court, holden at Boston, for and with

County of Suffolk, aforesaid, to wit, on the .......eleventh.......day of ....September.

A.D. 200 3 , recovered judgment ~~against~~ after Rescript against MICHAEL J._CAI

.........................................................................................................

**Civil Action**    .........................................................................................................

**No.** 89-4479    .........................................................................................................

~~of said Boston,~~ ....................................................................................

.........................................................................................................

**$541,096.06**    for the sum of ....─..─..─..─..five hundred forty-one thousand ninety-six ─.─.─.─.─

.....................    dollars and ─ ─ ─ ─ six ─ ─ ─ ─ ─ cents, damages, and ─..─..─ fifty-six ─.─.─

..........56.75.......    and ─..─..─ seventy-five ─.─.cents, costs of suit, as to us appears of record, whereof exe

remains to be done on this, the........first............execution: ...........................

**\*Interest after Judgment in the sum of $2,155.92 included in Writ of Ex**

**$541,152.81**    Rule 54 (F)................................................................................

We command you, therefore, that of the goods, chattels, or lands of the said judgment deb

within your precinct, you cause to be paid and satisfied unto the said judgment creditor

value thereof in money, the aforesaid sums, being ─ ─ 541,152 ─ dollars and ─ ─ ─ 81

issuance of execution

cents, in the whole, with interest thereon from said day of the ~~rendition of said judgmer~~

thereof also to satisfy yourself for your own fees; ~~and for want of goods, chattels, or lands~~

said judgment debtor    to be by    shown unto you, or found within ~~your precinct~~

acceptance of the said judgment creditor    to satisfy the sums aforesaid with inte

aforesaid we command you to take the *bod* ~~of the said~~ judgment debtor , and    c

unto our jail in Boston, in ~~our County of Suffolk,~~ or any jail in your precinct aforesai

detain in ~~your custody~~ within our jail, until    pay the full sums above mentioned wit

~~fees, or that~~    ~~be discharged by the said judgment creditor , or otherwise, by order~~

Hereof fail not, and make return of this writ with your doings thereon into the clerk's of

our said Court, at Boston within our County of Suffolk, within twenty years after the date

said judgment, or within ten days after this writ has been satisfied or discharged.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the ..........twenty-fourth..........

of.......September......, in the year of our Lord two thousand .and three.................

Ass<sup>t</sup>/Clerk/Magi

**DOONAN AND GRAVES**
CLIENTS IOLTA ACCOUNT
16 FRONT ST. 2ND FLOOR
SALEM, MA 01970
(978) 741-2680

EASTERN BANK
SALEM, MA 01970
53-179/113

PAY TO THE
ORDER OF ___ The Architectural Team, Inc.

Two Hundred Ten Thousand Ninety-Six and 33/100***********************************************

MEMO____ Capitzl

⑈003572⑈ ⑆011301798⑆ 40  173545314

CK # 3572          PD 11/13/03          $210

# EX. 38

**EYAL COURT REPORTING, INC.**

344

1    document, --

2                      MR. RING:  I'm sorry.

3                      MS. WILLIAMS:  -- please?

4                      MR. RING:  I should have copies of

5    that.  I don't.

6                      MS. WILLIAMS:  Paragraph seven.

7                      (Reviewing document.)

8              Q.  For the record, the standard rate is

9    3.5, this is paragraph No. 7, page 9, of the sales

10   price or alternatively 25 percent of any overage.

11   When you say the "standard rate," could you define

12   what you mean by the standard rate?

13             A.  It's been our standard rate and it's

14   been standard in the industry.  You know, I mean,

15   some companies charge 5 percent; some companies

16   charge four.  There are companies out there that

17   charge 2.5.  Our standard rate is 3.5.

18             Q.  When you say the standard rate, do you

19   say the standard rate in the industry or your

20   standard rate?

21             A.  Our standard rate.  As I said, the

22   standard rate in the industry is from 2 to 5, 5.5

23   percent even.

24             Q.  So it's not a fixed rate in the

EYAL COURT REPORTING,

345

```
 1    industry?  It's negotiable?

 2              A.    May I say that I did five auctions of

 3    this type last month, all of which paid over 5

 4    percent commission.

 5              Q.    My question though to you is -- I

 6    appreciate it.

 7              MR. RING:  Motion to strike,

 8    nonresponsive.

 9              Q.    The question is, is there a standard

10    rate in the industry of percentage?

11              A.    I look at my competitors.  We talk

12    about price.  We've discussed it and, again, there

13    are companies out there that are working for 2

14    percent.

15              Q.    When you say we talked about price,

16    who is the "we"?

17              A.    Myself and other auction companies

18    that, you know, I compete with.

19              Q.    And when you say you talked about

20    price, could you tell us a little bit more what you

21    mean by you talked about price?

22              MS. WILLIAMS:  Objection.

23              A.    Commissions, we discuss commissions

24    and so forth.  You know, we have conventions like
```

EYAL COURT REPORTING, IN

346

1    lawyers have conventions.  We talk.  The standard

2    rate nationally is 2 to 5.5 percent.  Our standard

3    rate is 3.5 percent for foreclosures, 5 to 6 percent

4    for conventional sales.

5                    MS. WILLIAMS:  When you say "our," you

6    mean Garrett, Inc.?

7                    THE WITNESS:  Garrett, Inc.

8            Q.    Well, you say discuss this at

9    conventions.  What conventions do you mean?

10           A.    Well, I attend a lot of auction

11   conventions.

12           Q.    Auctioneer conventions?

13           A.    Right.

14           Q.    Which you all discuss fees that you

15   charge?

16                    MS. WILLIAMS:  Objection.

17           A.    (Witness nods.)

18           Q.    Do you discuss fees that you charge at

19   auctioneer conventions?

20           A.    Do we?

21           Q.    Yes.

22           A.    You mean, as open forum?

23           Q.    Sure.

24           A.    No.  Well, yeah.  It's probably

                    EYAL COURT REPORTING, INC.

                                                        347

1    brought up in certain parts of the forum, but I'm

2    just talking privately with other auctioneers.  We

3    converse in private settings and what have you.

4          Q.    So there's really no standard rate in

5     the industry.   Only standard rate in your office?

6          A.    No.   There's standard rates in the

7     industry.   I just told you from 2 to 5 percent 5.5

8     percent.

9          Q.    Okay.   And that the 5.5 percent is a

10    standard rate in the industry set by the industry?

11              MS. WILLIAMS:   Objection.   That's not

12    what he said.

13         A.    If you have a formal education and

14    you're a certified auctioneer in this country, in

15    this United STATES of America, if you're a certified

16    auctioneer, okay?   There is a standard rate of 3 to

17    5.5 percent.

18              If you're non-certified and you're

19    just an auctioneer, okay?   Which a lot of people

20    here in this sTATe are because we haven't cleaned it

21    all up yet, these people will work subordinately.

22    Okay?   Also get you in trouble.

23         Q.    Well, people who have auctioneer's

24    licenses charge between the figures you've just now

EYAL COURT REPORTING, INC.

348

1     told me about?

2              MS. WILLIAMS:   Objection.   If you

3     know.

4          A.    I didn't say auctioneer's licenses.   I

5     said are certified auctioneers.

6          Q.    Certified?

7          A.    With a formal education in the

106

8     industry.

9          Q.   Okay.  Could you tell me what you mean

10    by "certified"?

11         A.   A certified auctioneer is an

12    auctioneer that has taken a four-year program, and

13    there's only two universities in the country that

14    offer it, one of which is the University of Indiana.

15    To be certified is a four-year program.

16         Q.   The other?

17         A.   The other?

18         Q.   You said two.

19         A.   The other university is in Texas.

20         Q.   Now, the question is, there's a

21    standard among those types of persons who got that

22    certification to charge those percentages, --

23          MS. WILLIAMS:  Objection.

24         Q.   -- right?

349

```
1          A.   That's what they standardly charge,
2     yes.
3          Q.   How do you know that?
4          A.   Because I'm a member of the
5     association.
6          Q.   And how do they tell you that?
7          A.   Because we have, again, conventions.
8          Q.   At these conventions, they tell you
9     the standard rates?
10         A.   Well, we correspond otherwise.
11              MS. WILLIAMS:  Objection.
12         Q.   You also correspond --
13              MS. WILLIAMS:  Let him ask the
14     question.
15         Q.   So you correspond otherwise among
16     people similarly situated within the United STATES
17     as to what to charge for auctions?
18              MS. WILLIAMS:  Objection.  I think
19     you're mischaracterizing his testimony and you're
20     getting way off the track here.
21              MR. RING:  I do not --
22         Q.   Well, I'm going to withdraw the
23     question in deference to your lawyer's objection and
24     ask you whether or not there is a consensus of
```

EYAL COURT REPORTING, INC.

350

```
1     agreement between people similarly situated,
2     certificates, as you said, charge rates --
```

108

3           MS. WILLIAMS:  Objection.

4           Q.    -- for foreclosure sales?

5           MS. WILLIAMS:  Objection.  Answer it

6    only if you know there's a consensus or an agreement

7    as to what rates to charge.

8           A.    I don't know.

9           Q.    Well, you just testified that you

10   discussed in these auction settings or these

11   certification settings 2.5 to 5 percent.  And you

12   shake your head yes, and I apologize.

13          MS. WILLIAMS:  He has testified to

14   that.

15          Q.    You have testified to that and you

16   just affirm by the shake of your head.  When was the

17   last time this understanding was your understanding

18   of the standard rate?  A year ago?  Two years ago?

19   Five months ago?

20          A.    I work with it every day.

21          Q.    So it's currently your understanding?

22          A.    Right.

23          Q.    It's currently your understanding that

24   the industry of which you are a part of -- what do

                  EYAL COURT REPORTING, INC.

                                                    351

1    you call that industry?  Auctioneer industry?

2           A.    Well, I belong to a few of them.  I

3    belong to the Certified Auctioneers Institute, The

4    National Auctioneers Institute and the American

5    Marketing Institute.

                        109

6          Q.   Well, do each one agree to 2.5 or 5

7    percent or just one?

8               MS. WILLIAMS:  Objection.  He has not

9    sTATed there's been an agreement.  I think that's

10   very clear.

11          Q.   Let me withdraw that in deference to

12   the keen observations of your attorney.  Is there

13   any understanding that you understand there is among

14   any of these groups as to charge in a similar

15   foreclosure situation?

16               MS. WILLIAMS:  Objection.

17          A.   I don't know that there's any -- any

18   rule, if that's what you're asking me.  But I can

19   tell you that under the Certified Auctioneers

20   Institute certification and designation, that this

21   group of people, which is made up about 56,000

22   auctioneers worldwide, have a standard and that

23   standard is 2.5 to 5.5 percent for real esTATe

24   auctioneers.

                    EYAL COURT REPORTING, INC
                                                    352

1          Q.   How do you know this?

2          A.   Because I'm a member.

3          Q.   And did you read this?

4          A.   I am a part of it.

5          Q.   You're a part of it?

6          A.   Correct.

7          Q.   And this takes place in the United

8    STATES or does it take place outside the United

9    STATES?

10          A.    What did I just say?  Worldwide.

11    There are 56,000 of us.

12          Q.    So this happens in the United STATES,

13    too?

14          A.    Exactly.

15          Q.    Now, tell me, how you determine what

16    to charge?

17                MS. WILLIAMS:  Objection.

18          A.    You know, in my --

19                MS. WILLIAMS:  Just answer the

20    question.

21          A.    -- profession, Attorney Ring, --

22                MS. WILLIAMS:  Garrett.

23          A.    -- I don't make my own rules as I go

24    along.  I go along where what works and what has to

                  EYAL COURT REPORTING, INC.
                                                    353

 1    be done to bring things to fruition, just like

 2    there's no Chilton Manual for what you charge for

 3    your fee, there's no Chilton Manual for what I

 4    charge for my fee.

 5          Q.    Do you base your fee in any part upon

 6    this understanding of 2.5 to 5 percent worldwide?

 7                MS. WILLIAMS:  Objection.  He's

 8    testified regarding this very clearly.  He didn't

 9    say there was an understanding or an agreement.

10    Let's be clear about that.

11          Q.    The standards that you say are

12    published in the industry among 50,000-odd people

13    worldwide, are those standards carried out by you?

                        111

14          A.    Myself and many others.

15          Q.    And when you say "many others," you

16   mean people throughout the United STATES?

17          A.    Correct.

18          Q.    How long have you carried out that

19   kind of a policy?

20                MS. WILLIAMS:  Objection.

21          Q.    A week old or two weeks old or a year

22   old?

23          A.    Since 1991 when I became a certified

24   auctioneer.


                   EYAL COURT REPORTING, INC.

## EX. 39

**ANSWER OF The Architectural Team, Inc. TO INTERROGATORY OF GARRETT, INC.**

**INTERROGATORY NO. 11:**

Describe in full and complete detail any and all communications between you and/or Attorney Jordan Ring on the one hand, and STATES Resources Incorporated and/or Doonan, Graves & Longoria on the other hand regarding the commission to be paid to Garrett, Inc. in connection with the auction of the Property.
ANSWER:

Objection to the form of the question but answering the communications sTATing we are unaware of any communications of any kind with STATES Resources Incorporated. The Architectural Team, Inc. was outraged by the fee charged by Garrett, Inc and Garrett Healey and further both The Architectural Team, Inc. and its attorney discussed both the outrage of the fee and the secret offer and deposit and The Architectural Team, Inc. would not assent to any fee to Garrett, Inc under the circumstances. The Architectural Team, Inc. had no communications directly with the law firm of STATES Resources Corporation and does not know of a STATES Resources Incorporated and knows of no conversations regarding STATES Resources Incorporated

## EX. 40

# United States District Court
# Eastern District of Massachusetts

Civil Action No. 04 10095 DPW

_____

STATES RESOURCES CORPORATION

Plaintiff

v.

MICHAEL CAPIZZI,
CATHERINE R. CAPIZZI,
THE ARCHITECTURAL TEAM, INC.,
JOHN CONNOLLY, JR.,
GARRETT, INC.
MASSACHUSETTS DEPARTMENT OF REVENUE,
JAMES GRUMBACH
KEVIN DUFFY

Defendants

_____

AFFIDAVIT OF THE ARCHITECTURAL TEAM, INC. TO BE FILED WITH
CONCISE STATEMENT IN SUPPORT OF OPPOSITION TO MOTIONS FOR
SUMMARY JUDGMENT BY GARRETT, INC. AND STATES RESOURCES,
CORPORATION

1.    I, Robert Verrier, am the managing officer of The Architectural Team, Inc.

2.    I am a registered architect in Massachusetts, Delaware, The District of

Columbia, Colorado, Florida, Georgia, Illinois, Kentucky, Louisiana, Maine,

Maryland, Michigan, Nevada, New Jersey, New York, North Carolina, Ohio,

Pennsylvania, Rhode Island, Vermont, Virginia, West Virginia.

3.    Continuously since 1985 and during all the relevant periods of time referenced

in this litigation, I was an officer of The Architectural Team, Inc. and make this

1

affidavit upon my personal knowledge, understanding, and belief.

4.    The Architectural Team, Inc. was never consulted in the engagement of Garrett, Inc.

5.    The Architectural Team, Inc. never agreed to the engagement of Garrett, Inc. to market 236 Lincoln Road, Lincoln, MA. ("Property") and never agreed to any commission to Garrett, Inc.

6.    The Architectural Team, Inc. claims all funds being held by States as belonging to The Architectural Team, Inc.

7.    The Architectural Team, Inc. strongly disputes the proposition that the charges of Garrett, Inc. which States seeks to deduct from The Architectural Team, Inc.'s funds held by States are reasonable, justified or necessary as the costs of foreclosure.

8.    The Architectural Team, Inc. claims that if monies are owed Garrett, Inc. by States (specifically denied by The Architectural Team, Inc.), that States, because of its conduct and unilateral engagement of Garrett, Inc. upon the terms as alleged by Garrett, Inc. should bear such charges, The Architectural Team, Inc. specifically denying that any monies are due Garrett, Inc. as charged in this litigation by Garrett, Inc.,

9.    The Architectural Team, Inc. denies specifically it owes any monies to Garrett, Inc.

10.    The Architectural Team, Inc. was never advised by States or Garrett, Inc. of fees, commissions or charges, proposed or otherwise, by Garrett, Inc. until *after* foreclosure sale and just before this litigation.

11.    The Architectural Team, Inc. prevailed against Michael Capizzi in the

Massachusetts Courts after a full trial, motions for new trial, and multiple appeals, in both Suffolk Superior Court CV 89-4479 and Massachusetts Appeals Court, docket NO: 00 P-11.

12.    The Suffolk County Superior Court ordered a special real estate attachment of the Property on December 15, 1994, which was recorded in Middlesex County Registry of Deeds, Southern District in Book 25104, page 392 through 395, brought forward December 16, 1999, Book 30966, Page 423 of which States had notice.

13.    That Garrett, Inc. knew of the special attachment, judgment and levy since I told this to Garrett, Inc. at the auction site and was noticed in each Memorandum of Sale above the signature of Garrett, Inc.

14.    On September 24, 2003 an execution in the amount of $541,152.81 was issued by the Suffolk County Superior Court in favor of The Architectural Team, Inc. against Michael Capizzi.

15.    On September 24, 2003, the Middlesex Deputy Sheriff levied upon the execution and the special attachment on the Property issued by the Massachusetts Superior Court.

16.    That States and Garrett, Inc. were aware of such execution, levy as against the Property and knew of same during all times relevant to the litigation.

17.    The Architectural Team, Inc., has only recovered $210,096.00 of the $541,152.81 execution due to the conduct and non disclosures of Garrett, Inc. and States.

18.    That The Architectural Team, Inc. is owed all sums not paid upon the execution having received only $210,096.00, and has received no other payments on account of the execution.

19.     The Architectural Team, Inc. claims all funds from the foreclosure of 236 Lincoln Road, Lincoln, MA. ("Property") not rightfully belonging to States now in its custody, control, and possession including the costs of this litigation and damages under Chapter 93A.

20.     To date no satisfactory accounting has been rendered by States to The Architectural Team, Inc.

21.     The Architectural Team, Inc. was never advised of the signed written unconditional offer of $2,000,000.00 received from Leonard Florence of Chestnut Hill, MA and the "deposit" check of $50,000.00 for 236 Lincoln Road, Lincoln, MA ("Property") in the account Garrett Auctioneers, Inc, a dissolved Massachusetts Corporation, controlled by Garrett, Inc. and all known by Attorney Doonan and States and Garrett, Inc. as early as August 6, 2003 but unknown to The Architectural Team, Inc. until *after* the sale of the Property on September 26, 2003 which resulted in a auction sale of the Property for $800,000.00 less than the $2,000,000.00 signed, written, delivered offer of Leonard Florence, all secured by deposit of $50,000.00 of Leonard Florence in an account controlled by Garrett, Inc., who followed orders and instructions from Attorney John Doonan.

22.     If The Architectural Team, Inc. had been provided a copy of the written offer and check of Leonard Florence it would have contacted Leonard Florence and caused States to accept the offer or cause the Linda Micu agreement to be assigned to Florence in which case The Architectural Team, Inc. would have been paid in full.

23.     It appears from the voice mail provided in discovery by Garrett, Inc. that Linda Micu would have assented to an assignment of her $2,000,000.00 agreement to Leonard Florence. (See the voice mail message of Linda Micu in the Concise

Statement of The Architectural Team, Inc. _EX. 19_.

24.     At the auction of September 26, 2003, The Architectural Team, Inc. would have bid itself the Property beyond the $1,200,000.00 if it knew of Leonard Florence's signed written offer, knowing the reputation of Leonard Florence in the business community as a bright businessman.

25.     It appears Linda Micu would have cooperated in an assignment to Leonard Florence as concluded from the voice message provided by Garrett, Inc. upon discovery, after the deposition of Garrett, Inc.  The written signed offer and check of Leonard Florence was never told to The Architectural Team, Inc. by either Attorney John Doonan or Garrett, Inc. while having cashed the check of Leonard Florence in the Danvers Savings Bank placing the same in the account of a dissolved corporation until October 2003.

26.     I attended the auction sales regarding the Property on July 24, 2003 and September 26, 2003, and had in my hands qualifying bid checks as required by the sale terms, spoke with both Attorney John Doonon and Garrett, Inc. and was _never told_ at those times that Leonard Florence had made a $2,000,000.00 unconditional signed offer from Leonard Florence and having put up a check of $50,000.00 with Garrett, Inc.

27.     Garrett, Inc. kept the $2,000,000.00 signed offer secret from all except Attorney John Doonan.  States too never reveal the written signed offer and cashed deposit check of Leonard Florence for the Property until just before the litigation.

28.     The Architectural Team, Inc. now knows the advertisements of Garrett, Inc. repeatedly stated the acre of the Property as containing butt 2 ½ acres when the acreage was nearly 6 acres. Such publications were false and must have distracted

bidders or misled potential bidders or deterred others from attending the auction.
These were advertisements placed by Garrett, Inc. which were grossly in error,
published to market the Property, and which were materially misleading to potential
bidders as a matter of pure common sense.  The erroneous advertisements were
allegedly approved by States attorney; i.e. John Doonan and the cost of the erroneous
advertisements in the Boston Globe and other publications  now billed by Garrett,
Inc, as a cost for which Garrett, Inc. seeks reimbursement from funds belonging to
The Architectural Team, Inc.

29.     Garrett, Inc. would have charged States only $600.00 for Garrett, Inc.'s
services, it now seeks $42,000.00 for its services plus costs of grossly erroneous
advertisements from funds that rightfully belong to The Architectural Team, Inc.

30.     Garrett, Inc. knew of the monies owed by Michael Capizzi to The
Architectural Team, Inc. and the special attachment of The Architectural Team, Inc.
upon the Property because I told Garrett, Inc. at the three sales where we meet and
talked.

31.     Garrett, Inc. knew of the court execution and levy on the Property by The
Architectural Team, Inc.  I told Garrett, Inc. at the sale of September 26, 2003.

32.     Garrett, Inc. talked to me about Mr. Capizzi at both auction sales but never
once told me of the Leonard Florence signed written offer or the cashed deposit
check.

33.     I would have contacted Leonard Florence if I had seen or been advised such a
signed written unconditional offer for the Property was delivered to Garrett, Inc.
together with $50,000.00.

34.      I saw and talked to Attorney John Doonon and Garrett, Inc. at the auction of

July 24, 2003 and September 26, 2003, and neither Attorney Doonan or Garrett, Inc.

ever once told me of either the Leonard Florence written offer or the check or the

charges of Garrett, Inc.

35.    At the auction sales Garrett, Inc. read documents prepared by John Doonan

that recited the interest of The Architectural Team, Inc.

36.    I know of no court that approved the fee or charge of Garrett, Inc. States, and

see no approval by any Bankruptcy Court.  States and Garrett, Inc. have outrageously

suggested such language in the e-mail has no meaning whatsoever.

37.    The Architectural Team, Inc. believes the fee and charge of Garrett, Inc.

are not reasonable.

38.    That Garrett, Inc. testified at a deposition about private talks amongst his

group of auctioneers that suggested setting minimum fees.

39.    That as a result of the conduct of Garrett, Inc. and States and either one of

them, The Architectural Team, Inc. may never collect upon the remaining

outstanding portion of its execution (over $300,000.00), since Michael Capizzi has no

known assets and has repeatedly filed for bankruptcy protection.

40.    That at no time was The Architectural Team, Inc. aware of the e-mails upon

which Garrett, Inc. bases its claim even though John Doonan had met and talked

repeatedly with the attorney for The Architectural Team, Inc.  Attorney John Doonan

never revealed the contents of the e-mails until just before the instant litigation

began.

41.    That States has not been deposed notwithstanding the timely proper request

of The Architectural Team, Inc.; and further States has to the best of our knowledge,

not produced any policies of insurance required in mandatory discovery.

42. The Architectural Team, Inc.'s counsel was never contacted for consultation by attorneys for Garrett, Inc. or States before the filing of summary judgment in order to narrow issues and save costs.

43. That The Architectural Team, Inc. believes the conduct of Garrett, Inc. and States is both unfair and deceptive.

44. That no announcement was made at the sale of September 26, 2003 that Leonard Florence had made such a written signed unconditional offer. I was present at that sale.

45. I had a qualifying deposit check of $50,000.00 at the auction of September 26, 2003 and it was in my possession and I would have bid the Property if I had known of the written signed valuation of Leonard Florence and that Garrett, Inc. had in its control a $50,000.00 deposit check of Leonard Florence. Instead, I let the bid of $1,200,000.00 ($800,000.00 less than that offered in writing signed by Leonard Florence) go unanswered.

46. At no time until the instant litigation was The Architectural Team, Inc. told of any agreement to pay Garrett, Inc. anything other than a flat auctioneer fee.

47. At no time until just before the within litigation was I ever told of the signed written unconditional offer of Leonard Florence and the delivered specific "deposit" check of Leonard Florence for $50,000.00.

48. That while the answers to interrogatories of States and Garrett, Inc. state under oath that only The Architectural Team, Inc. objects to the charges of Garrett, Inc. that is untrue since Michael Capizzi stated he too objected to said charges.

49. Without admitting anything is due Garrett, Inc. because of its conduct and the issues raised, a flat fee to Garrett, Inc. would have be more reasonable than a

percentage of a sale since Garrett, Inc performed a reading of the mortgage language

at the auctions and perfunctory ministerial acts and placing misleading material

advertisements in Boston area papers and caused the Leonard Florence written offer

not to be concluded. Further, the real value auction charge of $600.00 as an

auctioneer was by agreement with States inflated as against The Architectural Team,

Inc. without bona fide reason to $42,000.00.

50.    No evidence has been presented The Architectural Team, Inc. that Garrett,

Inc. secured any buyer but Leonard Florence.

51.    The Architectural Team, Inc. has been presented no evidence of the time

spent, hourly rates, skills of a corporation only 4 years old, Garrett, Inc. incorporated

2000, without a Massachusetts auctioneer license, without a real estate license.

52.    Garrett, Inc. has not given to The Architectural Team, Inc. any information

that would warrant as reasonable fee of over $42,000.00.

53.    No information has been furnished The Architectural Team, Inc. that others

could not have been secured to provide an auctioneer for the same sum Garrett, Inc.

agreed to charge State ($600.00 plus approved advertising costs) if States had bid in

for the Property.

54.    That a percentage charge by Garrett, Inc. seeking payment from funds

belonging to The Architectural Team, Inc. without more is both unfair and deceptive

especially in the light of the conduct of Garrett, Inc. and States set out above.

55.    There has never been a reason given to The Architectural Team, Inc. why the

written offer signed by Leonard Florence was sent to Attorney Doonan and not to

The Architectural Team, Inc.

56.    Garrett, Inc. and States allege that Garrett, Inc. be paid $600.00 for its services

if States bids the Property but over $42,000.00 if a buyer other than States buys the Property; the difference is not <u>de minimus</u> and is unreasonable. (a calculated enormous percentage increase over the flat fee). (<u>See</u>, alleged commission agreement providing percentages and reimbursement to be approved by a court.)

57.    That The Architectural Team, Inc. should not be responsible for the unreasonable charges of Garrett, Inc.; for alleged debts of States and for monies and agreements it never was a party to be consent or implication.

58.    I am utterly baffled how Garrett, Inc.'s fee can be $600.00 if the Property is sold for States, but $42,000.00 if the Property is sold to another.

59.    States's arrangement is both unfair and unreasonable if Garrett Inc.'s fee is $600.00 when States is affected but when States no longer has a pecuniary interest the fee increases by 6900% to approximately $42,000.00.

60.    Kevin Duffy bought the Property for $1,200,000.00 and placed it on the market in less than a year for $2,590,000.00. (<u>See</u>, Exhibit 4 of Duffy deposition, <u>Ev.33</u>. Concise Statement of The Architectural Team, Inc.).  No major work construction or alteration was made to the Property.  (<u>See</u>, <u>Ex. 28</u> of Concise Statement of The Architectural Team, Inc).  At the closing Kevin Duffy paid the full purchase price from his own funds yet placed a mortgage upon the property that was unfunded and in the name of his Mother stating in the recorded mortgage deed he borrowed the money to purchase the Property from his, Kevin Duffy's, Mother.  Kevin Duffy's signature was notararized.  The mortgage was unfunded by Mother and the notarized declaration of loan upon the Property by the recorded mortgage, false. <u>See</u>, Concise Statement of The Architectural Team, Inc. <u>Ex. 28</u>, *Deposition of Kevin Duffy August 30, 2003, page 51, lines 9 and 10, page 38, line 16 - 18, page 35, line 14-20.*

61.     Respectfully the undetermined, unresolved issues make summary judgment inappropriate.

Signed under pains and penalty of perjury this 15 of October , 2004

The Architectural Team, Inc.
By:

Robert Verrier, Managing Officer

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO 04-10095DPW

**STATES RESOURCES CORPORATION,**

**Plaintiff**

**v.**

**MICHAEL CAPIZZI,**
**CATHERINE R. CAPIZZI,**
**THE ARCHITECTURAL TEAM, INC.,**
**JOHN CONNOLLY, JR.,**
**GARRETT, INC.**
**MASSACHUSETTS DEPARTMENT OF REVENUE,**
**JAMES GRUMBACH**
**KEVIN DUFFY**

**Defendants**

## CERTIFICATE OF SERVICE MA R USDCT LR 5.2

AFFIDAVIT OF THE ARCHITECTURAL TEAM, INC. TO BE FILED WITH
CONCISE STATEMENT IN SUPPORT OF OPPOSITION TO MOTIONS
FOR SUMMARY JUDGMENT BY GARRETT, INC. AND STATES
RESOURCES, CORPORATION

I hereby certify that a true copy of the above document was served upon each party
appearing pro se and the attorney of record for each other party by electronic service as
provided in the docket
ELECTRONIC FILING TO ALL E-MAIL ADDRESSES

October 18, 2004

Respectfully submitted.
By its Attorney,
    s/Jordan Lewis Ring
Jordan Lewis Ring, Esquire
Attorney for:
The Architectural Team, Inc.
RING LAW FIRM
4 Longfellow Place 37th Floor
Boston, Massachusetts 02114
BBO# 420980
jordanlewisring@masslawyer.us
617-558-9800/fax 617-558-9801