# United States District Court
# Eastern District of Massachusetts

### Civil Action No. 04 10095 DPW

---

STATES RESOURCES CORPORATION

Plaintiff

v.

MICHAEL CAPIZZI,
CATHERINE R. CAPIZZI,
THE ARCHITECTURAL TEAM, INC.,
JOHN CONNOLLY, JR.,
GARRETT, INC.
MASSACHUSETTS DEPARTMENT OF REVENUE,
JAMES GRUMBACH
KEVIN DUFFY

Defendants

---

### AFFIDAVIT OF THE ARCHITECTURAL TEAM, INC. TO BE FILED WITH CONCISE STATEMENT IN SUPPORT OF OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT BY GARRETT, INC. AND STATES RESOURCES, CORPORATION

1.    I, Robert Verrier, am the managing officer of The Architectural Team, Inc.

2.    I am a registered architect in Massachusetts, Delaware, The District of

Columbia, Colorado, Florida, Georgia, Illinois, Kentucky, Louisiana, Maine,

Maryland, Michigan, Nevada, New Jersey, New York, North Carolina, Ohio,

Pennsylvania, Rhode Island, Vermont, Virginia, West Virginia.

3.    Continuously since 1985 and during all the relevant periods of time referenced

in this litigation, I was an officer of The Architectural Team, Inc. and make this

1

affidavit upon my personal knowledge, understanding, and belief.

4.      The Architectural Team, Inc. was never consulted in the engagement of Garrett, Inc.

5.      The Architectural Team, Inc. never agreed to the engagement of Garrett, Inc. to market 236 Lincoln Road, Lincoln, MA. ("Property") and never agreed to any commission to Garrett, Inc.

6.      The Architectural Team, Inc. claims all funds being held by States as belonging to The Architectural Team, Inc.

7.      The Architectural Team, Inc. strongly disputes the proposition that the charges of Garrett, Inc. which States seeks to deduct from The Architectural Team, Inc.'s funds held by States are reasonable, justified or necessary as the costs of foreclosure.

8.      The Architectural Team, Inc. claims that if monies are owed Garrett, Inc. by States (specifically denied by The Architectural Team, Inc.), that States, because of its conduct and unilateral engagement of Garrett, Inc. upon the terms as alleged by Garrett, Inc. should bear such charges, The Architectural Team, Inc. specifically denying that any monies are due Garrett, Inc. as charged in this litigation by Garrett, Inc.,

9.      The Architectural Team, Inc. denies specifically it owes any monies to Garrett, Inc.

10.     The Architectural Team, Inc. was never advised by States or Garrett, Inc. of fees, commissions or charges, proposed or otherwise, by Garrett, Inc. until *after* foreclosure sale and just before this litigation.

11.     The Architectural Team, Inc. prevailed against Michael Capizzi in the

2

Massachusetts Courts after a full trial, motions for new trial, and multiple appeals, in both Suffolk Superior Court CV 89-4479 and Massachusetts Appeals Court, docket NO: 00 P-11.

12.     The Suffolk County Superior Court ordered a special real estate attachment of the Property on December 15, 1994, which was recorded in Middlesex County Registry of Deeds, Southern District in Book 25104, page 392 through 395, brought forward December 16, 1999, Book 30966, Page 423 of which States had notice.

13.     That Garrett, Inc. knew of the special attachment, judgment and levy since I told this to Garrett, Inc. at the auction site and was noticed in each Memorandum of Sale above the signature of Garrett, Inc.

14.     On September 24, 2003 an execution in the amount of $541,152.81 was issued by the Suffolk County Superior Court in favor of The Architectural Team, Inc. against Michael Capizzi.

15.     On September 24, 2003, the Middlesex Deputy Sheriff levied upon the execution and the special attachment on the Property issued by the Massachusetts Superior Court.

16.     That States and Garrett, Inc. were aware of such execution, levy as against the Property and knew of same during all times relevant to the litigation.

17.     The Architectural Team, Inc., has only recovered $210,096.00 of the $541,152.81 execution due to the conduct and non disclosures of Garrett, Inc. and States.

18.     That The Architectural Team, Inc. is owed all sums not paid upon the execution having received only $210,096.00, and has received no other payments on account of the execution.

3

19.    The Architectural Team, Inc. claims all funds from the foreclosure of 236
Lincoln Road, Lincoln, MA. ("Property") not rightfully belonging to States now in its
custody, control, and possession including the costs of this litigation and damages
under Chapter 93A.

20.    To date no satisfactory accounting has been rendered by States to The
Architectural Team, Inc.

21.    The Architectural Team, Inc. was never advised of the signed written
unconditional offer of $2,000,000.00 received from Leonard Florence of Chestnut Hill,
MA and the "deposit" check of $50,000.00 for 236 Lincoln Road, Lincoln, MA
("Property") in the account Garrett Auctioneers, Inc, a dissolved Massachusetts
Corporation, controlled by Garrett, Inc. and all known by Attorney Doonan and
States and Garrett, Inc. as early as August 6, 2003 but unknown to The Architectural
Team, Inc. until *after* the sale of the Property on September 26, 2003 which resulted
in a auction sale of the Property for $800,000.00 less than the $2,000,000.00 signed,
written, delivered offer of Leonard Florence, all secured by deposit of $50,000.00 of
Leonard Florence in an account controlled by Garrett, Inc., who followed orders and
instructions from Attorney John Doonan.

22.    If The Architectural Team, Inc. had been provided a copy of the written offer
and check of Leonard Florence it would have contacted Leonard Florence and
caused States to accept the offer or cause the Linda Micu agreement to be assigned
to Florence in which case The Architectural Team, Inc. would have been paid in full.

23.    It appears from the voice mail provided in discovery by Garrett, Inc. that
Linda Micu would have assented to an assignment of her $2,000,000.00 agreement to
Leonard Florence. (See the voice mail message of Linda Micu in the Concise

4

Statement of The Architectural Team, Inc. _EX. 19_.

24.    At the auction of September 26, 2003, The Architectural Team, Inc. would have bid itself the Property beyond the $1,200,000.00 if it knew of Leonard Florence's signed written offer, knowing the reputation of Leonard Florence in the business community as a bright businessman.

25.    It appears Linda Micu would have cooperated in an assignment to Leonard Florence as concluded from the voice message provided by Garrett, Inc. upon discovery, after the deposition of Garrett, Inc.  The written signed offer and check of Leonard Florence was never told to The Architectural Team, Inc. by either Attorney John Doonan or Garrett, Inc. while having cashed the check of Leonard Florence in the Danvers Savings Bank placing the same in the account of a dissolved corporation until October 2003.

26.    I attended the auction sales regarding the Property on July 24, 2003 and September 26, 2003, and had in my hands qualifying bid checks as required by the sale terms, spoke with both Attorney John Doonon and Garrett, Inc. and was _never told_ at those times that Leonard Florence had made a $2,000,000.00 unconditional signed offer from Leonard Florence and having put up a check of $50,000.00 with Garrett, Inc.

27.    Garrett, Inc. kept the $2,000,000.00 signed offer secret from all except Attorney John Doonan.  States too never reveal the written signed offer and cashed deposit check of Leonard Florence for the Property until just before the litigation.

28.    The Architectural Team, Inc. now knows the advertisements of Garrett, Inc. repeatedly stated the acre of the Property as containing butt 2 ½ acres when the acreage was nearly 6 acres.  Such publications were false and must have distracted

bidders or misled potential bidders or deterred others from attending the auction. These were advertisements placed by Garrett, Inc. which were grossly in error, published to market the Property, and which were materially misleading to potential bidders as a matter of pure common sense. The erroneous advertisements were allegedly approved by States attorney; i.e. John Doonan and the cost of the erroneous advertisements in the Boston Globe and other publications  now billed by Garrett, Inc, as a cost for which Garrett, Inc. seeks reimbursement from funds belonging to The Architectural Team, Inc.

29.    Garrett, Inc. would have charged States only $600.00 for Garrett, Inc.'s services, it now seeks $42,000.00 for its services plus costs of grossly erroneous advertisements from funds that rightfully belong to The Architectural Team, Inc.

30.    Garrett, Inc. knew of the monies owed by Michael Capizzi to The Architectural Team, Inc. and the special attachment of The Architectural Team, Inc. upon the Property because I told Garrett, Inc. at the three sales where we meet and talked.

31.    Garrett, Inc. knew of the court execution and levy on the Property by The Architectural Team, Inc.  I told Garrett, Inc. at the sale of September 26, 2003.

32.    Garrett, Inc. talked to me about Mr. Capizzi at both auction sales but never once told me of the Leonard Florence signed written offer or the cashed deposit check.

33.    I would have contacted Leonard Florence if I had seen or been advised such a signed written unconditional offer for the Property was delivered to Garrett, Inc. together with $50,000.00.

34.    I saw and talked to Attorney John Doonon and Garrett, Inc. at the auction of

July 24, 2003 and September 26, 2003, and neither Attorney Doonan or Garrett, Inc.
ever once told me of either the Leonard Florence written offer or the check or the
charges of Garrett, Inc.

35.    At the auction sales Garrett, Inc. read documents prepared by John Doonan
that recited the interest of The Architectural Team, Inc.

36.    I know of no court that approved the fee or charge of Garrett, Inc. States, and
see no approval by any Bankruptcy Court.  States and Garrett, Inc. have outrageously
suggested such language in the e-mail has no meaning whatsoever.

37.    The Architectural Team, Inc. believes the fee and charge of Garrett, Inc.
are not reasonable.

38.    That Garrett, Inc. testified at a deposition about private talks amongst his
group of auctioneers that suggested setting minimum fees.

39.    That as a result of the conduct of Garrett, Inc. and States and either one of
them, The Architectural Team, Inc. may never collect upon the remaining
outstanding portion of its execution (over $300,000.00), since Michael Capizzi has no
known assets and has repeatedly filed for bankruptcy protection.

40.    That at no time was The Architectural Team, Inc. aware of the e-mails upon
which Garrett, Inc. bases its claim even though John Doonan had met and talked
repeatedly with the attorney for The Architectural Team, Inc.  Attorney John Doonan
never revealed the contents of the e-mails until just before the instant litigation
began.

41.    That States has not been deposed notwithstanding the timely proper request
of The Architectural Team, Inc.; and further States has to the best of our knowledge,
not produced any policies of insurance required in mandatory discovery.

42.    The Architectural Team, Inc.'s counsel was never contacted for consultation by attorneys for Garrett, Inc. or States before the filing of summary judgment in order to narrow issues and save costs.

43.    That The Architectural Team, Inc. believes the conduct of Garrett, Inc. and States is both unfair and deceptive.

44.    That no announcement was made at the sale of September 26, 2003 that Leonard Florence had made such a written signed unconditional offer. I was present at that sale.

45.    I had a qualifying deposit check of $50,000.00 at the auction of September 26, 2003 and it was in my possession and I would have bid the Property if I had known of the written signed valuation of Leonard Florence and that Garrett, Inc. had in its control a $50,000.00 deposit check of Leonard Florence. Instead, I let the bid of $1,200,000.00 ($800,000.00 less than that offered in writing signed by Leonard Florence) go unanswered.

46.    At no time until the instant litigation was The Architectural Team, Inc. told of any agreement to pay Garrett, Inc. anything other than a flat auctioneer fee.

47.    At no time until just before the within litigation was I ever told of the signed written unconditional offer of Leonard Florence and the delivered specific "deposit" check of Leonard Florence for $50,000.00.

48.    That while the answers to interrogatories of States and Garrett, Inc. state under oath that only The Architectural Team, Inc. objects to the charges of Garrett, Inc. that is untrue since Michael Capizzi stated he too objected to said charges.

49.    Without admitting anything is due Garrett, Inc. because of its conduct and the issues raised, a flat fee to Garrett, Inc. would have be more reasonable than a

8

percentage of a sale since Garrett, Inc performed a reading of the mortgage language at the auctions and perfunctory ministerial acts and placing misleading material advertisements in Boston area papers and caused the Leonard Florence written offer not to be concluded. Further, the real value auction charge of $600.00 as an auctioneer was by agreement with States inflated as against The Architectural Team, Inc. without <u>bona fide</u> reason to $42,000.00.

50.    No evidence has been presented The Architectural Team, Inc. that Garrett, Inc. secured any buyer but Leonard Florence.

51.    The Architectural Team, Inc. has been presented no evidence of the time spent, hourly rates, skills of a corporation only 4 years old, Garrett, Inc. incorporated 2000, without a Massachusetts auctioneer license, without a real estate license.

52.    Garrett, Inc. has not given to The Architectural Team, Inc. any information that would warrant as reasonable fee of over $42,000.00.

53.    No information has been furnished The Architectural Team, Inc. that others could not have been secured to provide an auctioneer for the same sum Garrett, Inc. agreed to charge State ($600.00 plus approved advertising costs) if States had bid in for the Property.

54.    That a percentage charge by Garrett, Inc. seeking payment from funds belonging to The Architectural Team, Inc. without more is both unfair and deceptive especially in the light of the conduct of Garrett, Inc. and States set out above.

55.    There has never been a reason given to The Architectural Team, Inc. why the written offer signed by Leonard Florence was sent to Attorney Doonan and not to The Architectural Team, Inc.

56.    Garrett, Inc. and States allege that Garrett, Inc. be paid $600.00 for its services

if States bids the Property but over $42,000.00 if a buyer other than States buys the Property; the difference is not <u>de minimus</u> and is unreasonable. (a calculated enormous percentage increase over the flat fee). (<u>See</u>, alleged commission agreement providing percentages and reimbursement to be approved by a court.)

57.    That The Architectural Team, Inc. should not be responsible for the unreasonable charges of Garrett, Inc.; for alleged debts of States and for monies and agreements it never was a party to be consent or implication.

58.    I am utterly baffled how Garrett, Inc.'s fee can be $600.00 if the Property is sold for States, but $42,000.00 if the Property is sold to another.

59.    States's arrangement is both unfair and unreasonable if Garrett Inc.'s fee is $600.00 when States is affected but when States no longer has a pecuniary interest the fee increases by 6900% to approximately $42,000.00.

60.    Kevin Duffy bought the Property for $1,200,000.00 and placed it on the market in less than a year for $2,590,000.00. (<u>See</u>, Exhibit 4 of Duffy deposition, <u>Ev.33</u>. Concise Statement of The Architectural Team, Inc.).  No major work construction or alteration was made to the Property.  (<u>See, Ex. 28</u> of Concise Statement of The Architectural Team, Inc).  At the closing Kevin Duffy paid the full purchase price from his own funds yet placed a mortgage upon the property that was unfunded and in the name of his Mother stating in the recorded mortgage deed he borrowed the money to purchase the Property from his, Kevin Duffy's, Mother.  Kevin Duffy's signature was notararized.  The mortgage was unfunded by Mother and the notarized declaration of loan upon the Property by the recorded mortgage, false. *<u>See</u>, Concise Statement of The Architectural Team, Inc. <u>Ex. 28</u>, Deposition of Kevin Duffy August 30, 2003, page 51, lines 9 and 10, page 38, line 16 - 18, page 35, line 14-20.*

61.     Respectfully the undetermined, unresolved issues make summary judgment inappropriate.

Signed under pains and penalty of perjury this 15 of October , 2004

The Architectural Team, Inc.
By:

Robert Verrier, Managing Officer

11

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO 04-10095DPW

**STATES RESOURCES CORPORATION,**

**Plaintiff**

**v.**

**MICHAEL CAPIZZI,**
**CATHERINE R. CAPIZZI,**
**THE ARCHITECTURAL TEAM, INC.,**
**JOHN CONNOLLY, JR.,**
**GARRETT, INC.**
**MASSACHUSETTS DEPARTMENT OF REVENUE,**
**JAMES GRUMBACH**
**KEVIN DUFFY**

**Defendants**

## CERTIFICATE OF SERVICE MA R USDCT LR 5.2

AFFIDAVIT OF THE ARCHITECTURAL TEAM, INC. TO BE FILED WITH
CONCISE STATEMENT IN SUPPORT OF OPPOSITION TO MOTIONS
FOR SUMMARY JUDGMENT BY GARRETT, INC. AND STATES
RESOURCES, CORPORATION

I hereby certify that a true copy of the above document was served upon each party
appearing pro se and the attorney of record for each other party by electronic service as
provided in the docket
**ELECTRONIC FILING TO ALL E-MAIL ADDRESSES**

October 18, 2004

> **Respectfully submitted.**
> **By its Attorney,**
>     **s/Jordan Lewis Ring**
> **Jordan Lewis Ring, Esquire**
> **Attorney for:**
> **The Architectural Team, Inc.**
> **RING LAW FIRM**
> **4 Longfellow Place 37th Floor**
> **Boston, Massachusetts 02114**
> **BBO# 420980**
> **jordanlewisring@masslawyer.us**
> **617-558-9800/fax 617-558-9801**

1