## UNITED STATES OF AMERICA
## DISTRICT COURT OF MASSACHUSETTS

---

| | |
|---|---|
| **STATES RESOURCES CORPORATION** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) **Civil Action** |
| | ) **No. 04 10095 DPW** |
| | ) |
| **v.** | ) |
| | ) |
| **MICHAEL CAPIZZI,** | ) |
| **CATHERINE R. CAPIZZI,** | ) |
| **THE ARCHITECTURAL TEAM, INC.,** | ) |
| **GARRETT, INC.,** | ) |
| **JOHN CONNOLLY, JR.,** | ) |
| **MASSACHUSETTS DEPARTMENT OF REVENUE,** | ) |
| **JAMES GRUMBACH,** | ) |
| **KEVIN DUFFY,** | ) |
| | ) |
| **Defendants** | ) |

---

## STATES RESOURCES CORPORATION'S OBJECTION TO PORTIONS OF THE CONCISE STATEMENT OF MATERIAL FACTS FILED BY THE ARCHITECTURAL TEAM, INC. UNDER UNITED STATES DISTRICT COURT LOCAL RULE 56.1

Now comes States Resources Corporation, through its attorneys, Doonan, Graves & Longoria, LLC, and hereby objects to the following portions of the Statement of Material Facts filed by The Architectural Team, Inc., (hereinafter "Arch"). The numbering of the below paragraphs corresponds with the paragraphs of Arch's Statement of Material Facts that are objectionable.

**ARCH'S STATEMENT #6 (Par. 3):** "There has never been alleged by either Garrett, Inc. or STATES that either Garrett, Inc. or STATES received any approval at any time from any court for any sum claimed by Garrett, Inc. or STATES."

**OBJECTION:** This statement is immaterial for the purposes of the instant Motion and ignores the entire intent of the filing of the Complaint in this matter.

**ARCH'S STATEMENT #7:** "On or about August 6, 2003, Garrett, Inc. received from Leonard Florence of Chestnut Hill, MA. a signed letter dated August 4, 2003 containing an unconditional offer to buy the Property for $2,000,000.00 and enclosing a designated deposit check for the Property of $50,000.00 . *Ex. 7, deposition of Garrett, Inc., Exhibit 4, 5, 6, 7.(essential all the same.*" [sic]

**OBJECTION:** This statement is conclusory, irrelevant and mischaracterizes the letter, which speaks for itself. Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #11:** "On or about August 6, 2003 Garrett, Inc. received both the signed, written offer of Leonard Florence dated August 4, 2003 for the Property, and to secure the same a "deposit" check of Leonard Florence dated August 4, 2003, cashed by deposit by Garrett, Inc. on August 6, 2004. *Ex. 11, Response to interrogatory number 6 and 7 of TAT, and, Exhibit 5, 6, 7 of the deposition of Garrett, Inc.*"

**OBJECTION:** These statements are conclusory, irrelevant and mischaracterize the letter and check, which speak for themselves. They are also objectionable as irrelevant as any third party communications with the auctioneer prior to the sale are not admissible as a matter of law. Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #13:** "Garrett, Inc. sent a copy of the unconditional written signed offer for the Property made by Leonard Florence to Attorney John Doonan representing STATES. *Ex. 13, Deposition of Garrett, Inc., page 335, line 3-20; page 336, lines3, through lines 17.*"

**OBJECTION:** This statement is conclusory, irrelevant and mischaracterizes the letter, which speaks for itself.  Additionally, this statement is inconsistent with at least six (6) different statements of Garrett Healey during his deposition on August 2, 2004, which commenced at 9:02 a.m. and concluded at 5:14 p.m.  *See* Exhibit A (true and correct copies of Garrett Healey's Deposition are attached hereto, page 97, lines 14 to 23; page 162, lines 18 to 23; page 163, line 18 to page 164 line 1; page 164 lines 2 to 8; page 165, lines 18 to 22; page 334, lines 17 to 23.)  Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as

against public policy and we give it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #17:** "Garrett, Inc. admits that neither Garrett, Inc. nor Garrett Healey informed Michael Capizzi, Catherine Capizzi, The Architectural Team, Inc., or Linda Micu of the written signed offer of $2,000,000.00 by Leonard Florence for the Property and designated deposit of $50,0000.00 from Leonard Florence. *Ex. 17, Response 10 of Garrett, Inc. to Request for Admissions of TAT, dated September 20, 2004; answer 6 b of Garrett, Inc. to Interrogatories of The Architectural Team, Inc.; also see Deposition of Garrett, Inc.; page 329, line 1-20."*

**OBJECTION:** This statement is conclusory, irrelevant as a matter of law and mischaracterizes the letter and check, which speak for themselves.  Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect."  *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #18:**  "Not until Garrett, Inc. filed its Answer and Counterclaim in this litigation was TAT advised Leonard Florence made a signed written unconditional offer of $2,000.000.00 for the Property and that Leonard Florence had given to Garrett, Inc. a $50,000.00 deposit check in connection with such signed offer or that Garrett, Inc. deposited the $50,000.00 into an account at Danvers Savings Bank,. *Ex. 18, Response 10*

*to Request for Admissions of Garrett, Inc, dated September 20, 2004."*

**OBJECTION:** This statement is conclusory, irrelevant as a matter of law and mischaracterizes the letter and check, which speak for themselves.  Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect."  *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #19:**  "After the Memorandum of Purchase, executed by Garrett, Inc. on behalf of STATES dated July 24, 2003, with Linda Micu, high bidder, to purchase the Property for $2,000,000.00 by August 25, 2003, Garrett, Inc. received a voice message by telephone from Linda Micu stating she "...could not go through with the purchase set for August 25, 2003, but stating that hopefully you (Garrett, Inc.) can get someone else who can take advantage of what I think is a pretty good deal." It appears that at the time of the voice message or shortly thereafter, Garrett, Inc. had received the written officer of Leonard Florence. *Ex. 19, transcription of a voice mail produced by Garrett, Inc. transcription made by Garrett, Inc. re production request dated August 12, 2004 and Exhibit 10, Garrett, Inc. deposition of August 2, 2003, Garrett, Inc, Deposition page 137, line, line 1-18."*

**OBJECTION:** This statement is conclusory, attempts to embellish the voicemail message, which speaks for itself and is not quoted in its entirety.  The statement further mischaracterizes the letter, which speaks for itself.  Furthermore, the Massachusetts Court

of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #20:** "Garrett, Inc. never told Linda Micu of the Leonard Florence written offer of August 4, 2003, Linda Micu being the high bidder of the Property on July 24, 2003 and who noticed Garrett, Inc. within days of the July 24, 2003 bid, she, Linda Micu, could not close and that the Property should be sold to another. *Ex. 20, being Exhibit 10 in Deposition of Garrett, Inc. dated August 2, 2004 and Ex. 16, Response 10 Admission of Garrett, Inc.*"

**OBJECTION:** This statement is conclusory, irrelevant as a matter of law and mischaracterizes the voicemail message, which speaks for itself and is not quoted in its entirety, and mischaracterizes the Florence's letter, which speaks for itself. Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #21:** "Garrett, Inc. admits that:

a. Neither Garrett, Inc. nor Garrett Healey informed

Michael Capizzi, Catherine Capizzi, The Architectural Team,

6

Inc., or Linda Micu of the unconditional $2,000,000.00 written

signed offer to purchase the Property dated August 4, 2003,

from Leonard Florence indicating that he "would like to make"

a $2,000.000.00 offer on the property, *Id, Response to*

*Admissions of Garrett, Inc. 10;*

c. Garrett. Inc. deposited the $50,000.00 supporting the

written offer of Leonard Florence at the Danvers Savings Bank,

and did not reveal the deposit to Garrett Auctioneers, Inc., to

TAT, Michael Capizzi, Catherine Capizzi, Linda Micu until after

STATES and Garrett, Inc. filed pleadings in the with litigation.

*Ex. 21 Response of Garrett, Inc. to request for admissions by*

*The Architectural Team, Inc., Request 10; and Exhibit 6 and 7*

*of the Deposition of Garrett, Inc. dated August 2, 2004."*

**OBJECTION:** This statement is conclusory, immaterial and redundant.  It is also

irrelevant as a matter of law and mischaracterizes the letter, which speaks for itself.

Furthermore, the Massachusetts Court of Appeals has held that "To the extent that

language in the agreement suggests the parties intended to circumvent laws governing

foreclosure that otherwise would govern the manner in which title to the properties could

be transferred, the language is void as against public policy and we give it no effect."

*Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #22:**  "There is neither any claim or record by Garrett, Inc. or

STATES of any assent in any interrogatory, admission, or deposition that either TAT,

Catherine Capizzi or Michael Capizzi assented to the fee or charges of

Garrett, Inc. *See affidavit of The Architectural Team, Inc. dated October 15,*

*2004, Ex. 40."*

**OBJECTION:** This statement is immaterial and irrelevant as a matter of law. Further, it

at least partially refers to Request for Admissions and Interrogatories served upon States

by Arch in violation of the Court's Scheduling Order. Specifically, the Requests for

Admissions were served on August 31, 2004 and the Interrogatories were served

September 1, 2004, literally only seven (7) and six (6) days before discovery was to have

been completed. *See* Exhibit B (true and correct copies of the Certificates of Service are

attached hereto).

**ARCH'S STATEMENT #23:** "TAT was not aware that Leonard Florence of Chestnut

Hill, a multi millionaire [sic] businessperson with successful business and investment

history had made an unconditional written signed offer for the Property in

the amount of $2,000,000.00 together with a $50,000 cash deposit on

August 4, 2003 to Garrett, Inc., Leonard Florence being a friend and

business associate of long standing of Garrett Healey, the sole officer of

Garrett, Inc.. *Ex. 22, Answer 5 to interrogatories of Garrett, Inc. served Sept*

*10, 2004."*

**OBJECTION:** This statement is redundant, conclusory, immaterial, and

mischaracterizes the letter and check, which speak for themselves. It is further

misleading, as it does not include the fact that Florence did not appear at the sale to bid,

which was the only legal avenue for him to "purchase" the property from the plaintiff, if

truly interested. Furthermore, the Massachusetts Court of Appeals has held that "To the

extent that language in the agreement suggests the parties intended to circumvent laws

governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #24:** "STATES and Garrett, Inc. had a bona fide buyer submitting to Garrett, Inc. on or about August 4, 2003 a signed, unconditional binding written offer to pay $2,000,000.00 without a single condition for the Property, made by signed written offer to Garrett, Inc. with a $50,000 00 deposit from a businessperson known to be able to acquire the Property. *Ex. 23, answer 10 and 11 by Garrett, Inc. to Request for admissions of TAT dated September 20, 2004 and answer 6 of TAT to Interrogatories of Garrett, Inc."*

**OBJECTION:** This statement is conclusory and immaterial.  It mischaracterizes the letter and further mischaracterizes Florence as a "bona fide buyer" when he failed to attend the foreclosure sale.  The statement is further objectionable, as the letter and the check speak for themselves.  Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #25:** "The Leonard Florence written offer to purchase the Property would have resulted in full recovery of the full amount due to the

mortgagee (STATES), including costs, The Architectural Team, Inc. and there would have been funds left over for Michael Capizzi. *Ex. 24, Answer 7 of TAT to Interrogatories of Garrett, Inc. dated September 10, 2003."*

**OBJECTION:** This statement is speculative, conclusory, immaterial, and mischaracterizes the letter and check, which speak for themselves.  Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect."   *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #28:**  "The written unconditional offer of Mr. Leonard Florence of $2,000,000.00 and the $50,000 deposit for the acquisition of the property was not to be applied to the mortgage debt alone but to The Architectural Team, Inc.'s Superior Court special attachment, execution and levy and the balance to Michael Capizzi. *Ex. 27, Answer 7 by TAT to interrogatories of Garrett, Inc. served Sept 10, 2004."*

**OBJECTION:** This statement is unclear, conclusory, immaterial, and mischaracterizes the letter and check, which speak for themselves.  Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect."   *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #29:**  "Garrett Inc. knew of the interest of The Architectural Team, Inc.; saw The Architectural Team, Inc. at both auction sales; and saw The Architectural Team, Inc.'s; and attorney' and while Garrett, Inc., who now seeks payment from the very funds which belong to TAT unlawfully held by Attorney John Doonan, never once told The Architectural Team, Inc. or its counsel that Garrett, Inc. controlled, held and was holding a deposit of $50,000.00 supporting a binding bona fide signed written offer by a reputable businessperson; had a bona fide unconditional written, signed offer that would pay The Architectural Team, Inc. in full but, rather Garrett, Inc. decided to keep this material information from the very entity from which Garrett, Inc. now seeks payment. *Id*, *Answer 5 to interrogatories of Garrett, Inc. served Sept 10, 2004; Answer 6 and 7 of TAT's Answers to Interrogatories of Garrett, Inc."*

**OBJECTION:** This statement is redundant, conclusory, immaterial, and mischaracterizes the letter and check, which speak for themselves.  It further mischaracterizes the nature of foreclosure sales and distribution of surplus funds through an interpleader action, as is at issue in this matter.  Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect."  *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #30:** "Kevin Duffy, the purchaser of the property for

$1,200,000.00 without filing for a single building permit in Lincoln, MA. listed for sale

the Property for $2,590,000.00 in *less than* a year after having purchased the

Property for $1,200,000.00 on October 22, 2003, and, at the time of his

acquisition of title, immediately placed a straw unfunded mortgage upon

the Property for $1, 250,000.00 on October 22, 2003, in favor of Joan Duffy,

his Mother. *Ex. 28, Deposition of Kevin Duffy August 30, 2003, page 51,*

*lines 9 and 10, page 38, line 16 -18, page 35, line 14-20*."

**OBJECTION:**  The cited pages of Mr. Duffy's deposition contain no reference to any

mortgage being a "straw" or "unfunded" and, thus, the statement is objectionable as

inaccurate and unsupported.  Additionally, this statement is immaterial and irrelevant as a

matter of law.  Arch attended the sale and was free to bid to obtain the property and in

turn resell the property.

**ARCH'S STATEMENT #31:**  "Only Garrett, Inc. and John Doonan and STATES knew

that Leonard Florence had valued the property at $2,000,000.00 through his

signed unconditional written offer; and had made an unconditional written

offer for the same $2,000,000.00 with a deposit check of $50,000.00, that

both STATES and Garrett, Inc. deliberately failed to disclose the same to

TAT and Michael and Catherine Capizzi. *Ex. 29, TAT answer to*

*Interrogatories of Garrett, Inc. dated September 10, 2004, answer 8.*"

**OBJECTION:** This statement is immaterial, mischaracterizes the communication, lacks

appropriate foundation for both the statement concerning knowledge of the letter and the

statement that Leonard Florence had "valued" the property.  Furthermore, the

Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349 (Mass. App. 2004).

**ARCH'S STATEMENT #32:** "Garrett, Inc. gave no notice of the written offer and deposit check to Michael and Catherine Capizzi, Linda Micu, and/or The Architectural Team, Inc, but did send the written offer to John Doonan, Attorney for STATES. At all material times, Garrett, Inc. believed that it had no duty to notify them of Mr. Florence's proposal. *Ex. 30, Response 6 (b), Answers to Interrogatories by Garrett, Inc.; deposition Garrett, Inc. August 2, 2004, page 336, lines 3-17, Admission Garrett, Inc. Response 8."*

**OBJECTION:** This statement is conclusory, lacks foundation, is irrelevant and mischaracterizes the letter, which speaks for itself.  Additionally, this statement is inconsistent with at least six (6) different statements of Garrett Healey during his deposition on August 2, 2004, which commenced at 9:02 a.m. and concluded at 5:14 p.m. *See Exhibit A attached hereto, page 97, lines 14 to 23; page 162, lines 18 to 23; page 163, line 18 to page 164 line 1; page 164 lines 2 to 8; page 165, lines 18 to 22; page 334, lines 17 to 23.*  Furthermore, the Massachusetts Court of Appeals has held that "To the extent that language in the agreement suggests the parties intended to circumvent laws governing foreclosure that otherwise would govern the manner in which title to the properties could be transferred, the language is void as against public policy and we give

it no effect." *Levenson v. Feuer*, 60 Mass. App. Ct. 428, 438, 803 N.E.2d 341, 349

(Mass. App. 2004).

**ARCH'S STATEMENT #33:** "The local Federal Courts Rules of Bankruptcy (MA R

USBCT MLBR 6004-1)) for auctioneers provides a formula for a reasonable

auctioneers' fee which formula was never used or implemented as to the

Property by either STATES or Garrett, Inc. To foreclose STATES need relief

from the bankruptcy stay by the Bankruptcy Court, yet neither Attorney

Doonan, the attorney of record in the Bankruptcy Court nor Attorney

Doonan's office ever mentioned the Leonard Florence signed offer to the

Bankruptcy Court nor delivered the deposit to the Bankruptcy Court or

Trustee. *Ex. 31, Answer 6 to Interrogatories of Garrett, Inc. to TATs served*

*Sept 10, 2004*."

**OBJECTION:** The portion of this statement that refers to the Federal Courts Rules of

Bankruptcy is immaterial. It is also objectionable, as it mischaracterizes the extensive

rulings of the Bankruptcy Court in this matter and incorrectly states that the Bankruptcy

Code was violated.  The portion of this statement that refers to relief from the bankruptcy

stay is immaterial and is only supported by Arch's own answer to an interrogatory from

Garrett, Inc.  Additionally, there has been no showing that any duty implied by the above

statement exists and no showing that any party has filed any pleading in what would be

the appropriate forum (The United States Bankruptcy Court) seeking a finding that such a

duty exists.

**ARCH'S STATEMENT #34:** "The newspaper advertisements of Garrett, Inc. were

repeatedly in error; that in fact the Property was advertised by Garrett, Inc.

repeatedly as 2 ½ acres, which was an misstatement by Garrett, Inc.

understating the land area of the real estate in Lincoln, Massachusetts by

nearly 60 %. Representations of misstatements *Ex. 32, Exhibits 11 AND 16*

*Deposition of Garrett, Inc."*

**OBJECTION:** The above statement is immaterial, irrelevant as a matter of law and lacks

the foundation to be considered by the Court.

**ARCH'S STATEMENT #36:** " When offering the Property for sale, Kevin Duffy did

not add any additions or construction or perform any construction or remodeling

that would require a building permit from the Town of Lincoln, as none has

been applied for or issued; that Kevin Duffy obtained no permit for

renovation to the Property, yet listed the Property for $2,590,000.00, nearly

one million four hundred thousand dollars above the foreclosure price of

$1,2000,000.00. *Ex. 34, Deposition of Kevin Duffy, page 40, line 14-19; page*

*63, line 8-12, Exhibit 18, of Deposition of Garrett, Inc."*

**OBJECTION:** The above statement is redundant, immaterial and implies inaccurately

that no risk was taken and no work was done by Mr. Duffy on the subject property, since

Mr. Duffy testified in his deposition on August 30, 2004, that he would have only applied

for a building permit if structural alterations or footprint alterations were being performed

on the subject property. *See* Exhibit C (a true and correct copy of the Deposition of Kevin

Duffy, page 41 line 18 to page 42 line 3 is attached hereto).

**ARCH'S STATEMENT #37:** "There is no evidence the fees charged by unlicensed

Garrett, Inc. were reasonable for a straight forward real estate auction, and for

services that misstated advertising, held secret deposits and undisclosed

offers and failing to take a second higher bidder, accepted a check from

Linda Micu that stated the name Catherine Capizzi, a chapter 11 debtor. *Ex.*

*35, Answer 6 to interrogatories of Garrett, Inc. served Sept 10, 2004, Exhibit*

*N  in STATES Interpleader Complaint."*

**OBJECTION:** This statement is inaccurate and contains allegations that are conclusory,

immaterial, lack foundation and mischaracterize communications, which speak for

themselves.

**ARCH'S STATEMENT #40:** "That the sum now held by STATES belongs to The

Architectural Team, Inc."

**OBJECTION:** This statement is conclusory and lacks any foundation whatsoever and

should not be considered by the Court.  It is also objectionable, as misleading, since it

does not disclose that Arch was indeed paid at the conclusion of the sale in exchange for

the promised indemnification letter.

**ARCH'S STATEMENT #41:**  "That Garrett, Inc. testified that the Certified Auctioneers

Institute group consisting of 56,000 members of which Garrett, Inc. is a

member, have a standard minimum charge of 2.5 to 5.5 percent; that he

carried out these standards; that the standard rate is 3.5%; that they talk

about price; they he talks with his competitors; that they have

conversations in *private settings* (Emphasis added). *Ex 38, Deposition of*

*Garrett, Inc. id, page 344 thru 353."*

**OBJECTION:** This statement is conclusory, immaterial, inaccurately summarizes

testimony and is irrelevant to this action.  It also directly contradicts allegations criticized

in paragraph thirty-seven (37) of this "Concise Statement of Material Facts."

**ARCH'S STATEMENT #43:** "That not scintilla of evidence appears anywhere in the record to support reasonableness of Garrett, Inc.'s charges. Id."

**OBJECTION:** This statement is conclusory, immaterial, irrelevant and contradicts paragraph forty-one (41) of this "Concise Statement of Material Facts."

**ARCH'S STATEMENT #45:** "That the totality of the conduct of Garrett, Inc. can be found to be both unfair and deceptive."

**OBJECTION:** This statement is conclusory and completely devoid of support.


Respectfully Submitted
States Resources Corporation
By its Attorney,


Dated:  November 12, 2004                         /s/ John Doonan_____
                                                  John A. Doonan, Esq.
                                                  (BBO# 547838)
                                                  Doonan, Graves & Longoria, L.L.C.
                                                  100 Cummings Center, Suite 213C
                                                  Beverly, MA  01915
                                                  (978) 921-2670

Page 97

1    Florence that, in fact, there was an outstanding

2    bid?

3           A.   I don't know.  I don't think so.

4           Q.   You never, ever told John Doonan you

5    received that letter, Exhibit Six, true?

6           A.   No, that's not true.

7           Q.   You kept it secret, true?

8                MS. WILLIAMS:  Objection.

9           A.   I did not keep it secret.

10          Q.   You did not put that outside of your

11   care, custody or control, true?

12               MS. WILLIAMS:  Objection.

13          A.   Ask that question again.

14          Q.   You never gave Mr. John Doonan a copy

15   of the August 4th, 2003, Exhibit Six, true?

16          A.   I am not sure if I gave him a copy of

17   the letter or not.

18          Q.   So you kept it in your file alone?

19               MS. WILLIAMS:  Objection.

20          A.   I'm not sure.

21          Q.   Have you checked your records to see

22   whether or not you ever gave it to Mr. Doonan?

23          A.   I'm not sure.

24          Q.   So you're not sure whether you ever



EXHIBIT

A

Page 162

1    time you, on the one hand, and Mr. Doonan, on the

2    other hand, had such a discussion?

3            A.    Yes.

4            Q.    How did you make Mr. Doonan aware of

5    that?

6            A.    I told him.

7            Q.    What did you say to him, sir?

8            A.    I told him I had a 50,000-dollar

9    deposit.  I think I might have even sent him a copy

10   of the letter of intent, and I told him that it was

11   from an individual that I'm quite aware of is well

12   capable of purchasing this property and closing on

13   this property.

14           Q.    And that individual who was well

15   capable of closing on the property was Leonard

16   Florence?

17           A.    Yes.

18           Q.    And when you -- you say you sent him a

19   copy of a letter.  Is that the offer of Mr. Florence

20   that we've had here?

21           A.    I think.  I'm not sure if I sent him

22   the letter or not, but I think I may have sent him a

23   copy of the letter, as well.

24           Q.    Did Mr. Doonan ever ask you for a copy

EYAL COURT REPORTING, INC.

Page 163

1    of the letter?

2         A.    I honestly don't remember.

3         Q.    Assume all of your answers are honest.

4    I know you're got your best memory here today.   Do

5    you have anything else that could help you refresh

6    your memory more accurately than you're able to do?

7         A.    No.   As close as I can come to

8    accuracy as I think I may have, but I don't

9    remember.

10        Q.    But there's nothing like a memorandum

11   or something in your office that would aid you --

12        A.    No.

13        Q.    -- in more accurately answering these

14   questions?

15        A.    There's nothing that I'm aware of.

16        Q.    So I got the best right now.

17        A.    You're right up on top.

18        Q.    Thank you.   And when say you sent this

19   to Mr. Doonan when you learned that the lady wasn't

20   going through with her transaction, did you send it

21   to him by fax or did you send it to him by mail?

22             MR. DOONAN:   Objection.

23        A.    If I sent it to him, it would be

24   probably by fax, but I don't recall sending it to

1    him.

2            Q.   So you had this letter.  You may have

3    sent it to him; you may not have sent it to him?

4            A.   Correct.

5            Q.   Did Mr. Doonan ever say to you please

6    send me a copy of that letter or words to that

7    effect?

8            A.   I don't recall.

9            Q.   Did Mr. Doonan ever tell you not to

10   tell anyone that you had received such a letter?

11           A.   No.

12           Q.   So the decision not to tell or

13   announce the letter to anyone was yours alone and

14   not Mr. Doonan's?

15               MS. WILLIAMS:  Objection.

16           A.   Not to tell?

17           Q.   Yes.

18           A.   A decision not to tell anyone?

19           Q.   Yes.

20           A.   I don't think that was a decision.

21   Why would I even think of telling anyone?

22           Q.   So it never came to your thought that

23   you should tell Mr. Capizzi or any one of the

24   attorneys involved with the property about the

Page 165

1    letter -- let me finish the question -- a letter of

2    Mr. Florence offering the property $2 million?

3        A.    I'm contracted with John Doonan's

4    office and all my correspondence would go through

5    him, and I feel as though that's confidential

6    information between his office and my office, so I

7    would correspond with him only.

8        Q.    So the letter that you received from

9    Mr. Florence to you which has been marked as an

10    exhibit in this proceeding, and that's Exhibit Six,

11    you believe was confidential between yourself and

12    Mr. Doonan?

13        A.    I do.

14        Q.    And when -- if it was confidential

15    between you and Mr. Doonan, I would assume then you

16    would have told Mr. Doonan about the letter?

17        A.    I did.

18        Q.    Okay.  And if you didn't send him the

19    letter, as you now can't recall either way, did you

20    at least discuss the content of the letter of Mr.

21    Florence?

22        A.    We did.

23        Q.    When you say, "We did," is there

24    anybody beside you?

Page 334

1    between the bid price and the Leonard Florence price

2    is $100,000, true?

3            A.   Correct.

4            Q.   Of which you, too, would have got a

5    commission of 3.5 percent if it was carried out of

6    $800,000?

7            A.   Correct.

8            Q.   Now, when you received the August 4th

9    document from Mr. Florence, which is Exhibit Six in

10   this proceeding, that document went solely, solely

11   outside of your office, Garrett, Inc., to John

12   Doonan representing States Properties?

13           MR. DOONAN:   Objection.  He's already

14   testified he doesn't know whether he sent it

15   anywhere.

16           MS. WILLIAMS:   Objection.

17           Q.   I am going to withdraw that question

18   and ask you, sitting here after all of these hours,

19   and I appreciate your time, it's valuable, can you

20   recall anyone other than John Doonan to whom you

21   sent the August 4th, 2003, letter?

22           A.   I don't recall sending the letter to

23   anyone.

24           Q.   Did you ever tell John Doonan the

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO 04-10095DPW

**STATES RESOURCES CORPORATION,**

**Plaintiff**

**v.**

**MICHAEL CAPIZZI,**
**CATHERINE R. CAPIZZI,**
**THE ARCHITECTURAL TEAM, INC.,**
**JOHN CONNOLLY, JR.,**
**GARRETT, INC.**
**MASSACHUSETTS DEPARTMENT OF REVENUE,**
**JAMES GRUMBACH**
**KEVIN DUFFY**

**Defendants**

### CERTIFICATE OF SERVICE MA R USDCT LR 5.2

**REQUEST FOR ADMISSIONS**
**TO STATES RESOURCE CORPORATION**
**MADE BY**
**THE ARCHITECTURAL TEAM, INC.**
**PURSUANT TO FED. R. CIV. P. 36; LOCAL RULE 26.1 (C) AND LOCAL RULE 36.1.**
**I hereby certify that a true copy of the above document was served upon (each**
**party appearing pro se and) the attorney of record for each other party by**
**electronic service as provided in the docket**
ELECTRONIC FILING TO ALL E-MAIL ADDRESSES

**August 31, 2004**

> **s/Jordan Lewis Ring**
> **Jordan Lewis Ring, Esquire**
> **Attorney for:**
> **The Architectural Team, Inc.**
> **RING LAW FIRM**
> **4 Longfellow Place 37th Floor**
> **Boston, Massachusetts 02114**
> **BBO# 420980**
> **jordanlewisring@masslawyer.us**
> **617-558-9800/fax 617-558-9801**



EXHIBIT
B

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MASSACHUSETTS
# CIVIL ACTION NO 04-10095DPW

**STATES RESOURCES CORPORATION,**

**Plaintiff**

**v.**

**MICHAEL CAPIZZI,**
**CATHERINE R. CAPIZZI,**
**THE ARCHITECTURAL TEAM, INC.,**
**JOHN CONNOLLY, JR.,**
**GARRETT, INC.**
**MASSACHUSETTS DEPARTMENT OF REVENUE,**
**JAMES GRUMBACH**
**KEVIN DUFFY**

**Defendants**

## CERTIFICATE OF SERVICE MA R USDCT LR 5.2

### FIRST SET OF INTERROGATORIES PROPOUNDED BY THE

### ARCHITECTURAL TEAM, INC. TO BE ANSWERED UNDER OATH BY

### STATES RESOURCES CORPORATION

**I hereby certify that a true copy of the above document was served upon each party appearing pro se and the attorney of record for each other party by electronic service as provided in the docket**
ELECTRONIC FILING TO ALL E-MAIL ADDRESSES

**SEPTEMBER 1, 2004**

> s/Jordan Lewis Ring
> Jordan Lewis Ring, Esquire
> Attorney for:
> The Architectural Team, Inc.
> RING LAW FIRM
> 4 Longfellow Place 37th Floor
> Boston, Massachusetts 02114
> BBO# 420980
> jordanlewisring@masslawyer.us
> 617-558-9800/fax 617-558-9801

17

1          A.    I'm somewhat aware of it, yes.

2          Q.    Tell me what you're awareness is

3     regarding building permits in the Commonwealth of

4     Massachusetts.

5          A.    Can you repeat that question, please?

6          Q.    Sure.  If you don't understand a

7     question, please tell me and I'll withdraw the

8     question.  I'm going to withdraw that question for

9     you.

10              What is your understanding about the

11    issuance or the application for building permits in

12    Massachusetts, since you have a license as a civil

13    engineer?

14         A.    Work on a structure that you're going

15    to enlarge, alter, whatever, you oftentimes will

16    require a -- go make application for a building

17    permit.

18         Q.    And you often or do you have to as a

19    matter of regulation and law in Massachusetts when

20    you alter a building, do work on a building apply

21    for a building permit in the local town governments?

22         A.    It depends presumably on the nature of

23    the work.

24         Q.    Tell us what nature of the work would

EYAL COURT REPORTING, INC.



1    require a building permit.

2         A.    Structural alterations, footprint

3    alterations.  That's about the extent of it.

4         Q.    And you applied for no building

5    permits?

6         A.    No, I did not.  I'm not doing

7    anything.

8         Q.    You applied for no building permits in

9    the Town of Lincoln in any year of 2003 or 2004?

10        A.    That's correct.

11             MR. RING:  Now, let the record show

12   Mr. Doonan left at approximately 10:45 this day.

13        Q.    Now, at the passing of the property

14   that's represented by Exhibit Two, Foreclosure Deed

15   to you, did you insure the property?

16        A.    Yes.

17        Q.    Who was your insurance agent?

18        A.    Michael Kelly.

19        Q.    And where would I -- is that

20   K-E-L-L-E-Y or Y?

21        A.    Just Y, I believe.

22        Q.    He's an insurance broker or salesman

23   in this Commonwealth?

24        A.    Agent.

EYAL COURT REPORTING, INC.