UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No.
04 10095-DPW

STATE RESOURCES CORPORATION, )
                              )
                    Plaintiff )
v.                            )
                              )
MICHAEL CAPIZZI,              )
CATHERINE R. CAPIZZI,         )
THE ARCHITECTURAL TEAM, INC., )
GARRETT, INC.,                )
JOHN CONNOLLY, JR.,           )
MASSACHUSETTS DEPARTMENT OF REVENUE, )
JAMES GRUMBACH, and KEVIN DUFFY, )
                              )
                   Defendants )
                              )

**MEMORANDUM IN SUPPORT OF OPPOSITION OF MICHAEL AND CATHERINE R. CAPIZZI TO MOTION FOR PARTIAL SUMMARY JUDGMENT OF STATES RESOURCES CORPORATION AND MOTION FOR SUMMARY JUDGMENT OF KEVIN DUFFY AND RENEWED MOTION FOR SUMMARY JUDGMENT OF GARRETT, INC.**

Defendants and Plaintiffs-in-Counterclaim Michael Capizzi and Catherine R. Capizzi (sometimes jointly referred to as the "Capizzis") hereby submit this memorandum in support of their combined opposition to the Motion for Partial Summary Judgment of States Resources Corporation ("States"), to the Motion for Summary Judgment of Kevin Duffy ("Duffy") and to the Renewed Motion for Summary Judgment of Garrett, Inc. ("Garrett").

**I. SUMMARY JUDGMENT STANDARD**

Fed. R. Civ. P. Rule 56(c) sets forth the basis for granting summary judgment. The judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When a summary judgment motion is made and supported as required by the rule, Rule 56 (e) provides that the opposing party "...must set forth specific facts showing that there is a genuine issue for trial."

The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial. Pederson v. Time, Inc., et al., 404 Mass. 14, 17, 532 N.E. 2d 1211 (1989), If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment. Id. at p.17; SCA Services, Inc. v. Transportation Insurance Company, 419 Mass. 528, 531, 646 N.E. 2d 394 (1995); Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 368, 667 N.E. 2d 1149 (1996). The inference to be drawn from the burden placed on the moving party is that his failure to establish the absence of a genuine issue of material fact must, without more from his opponent, defeat his motion. Community Nat. Bank v. Dawes, 369 Mass. 550, 554, 340 N.E. 2d 877 (1976). Furthermore, the granting of summary judgment is in error when the party opposing the motion has alleged facts relating to the transaction on which suit has been brought which raise issues entitling him to a trial. Id. at p. 556. In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Applying the above standards, it is clear that each of the moving parties have failed to establish the absence of a genuine issue of material fact. As can be seen from their concise

from enforcing its mortgage on the Capizzi property. For this reason, the foreclosure should be set aside. States counterclaim in the Federal District Court case (C.A. No. 02-12319-DPW) was likewise improper because of States' failure to register under GL c 181.

### IV. States is not entitled to summary judgment against the Capizzis on their counterclaim.

#### A. Res Judicata does not bar the Capizzis from asserting their counterclaims against States.

States maintains that have been advanced and rejected in previous federal court litigation, citing C.A. No. 02-12319-DPW. While it is true that this court rendered a default judgment against the Capizzis on their claim against States and on States counterclaim, the case was never tried on its merits. There were no factual determinations and the default was rendered for procedural reasons. The Capizzis have moved to set aside the default judgment pursuant to Fed. R. Civ. P. 60(b) and the motion is still pending.

The complaint in the Middlesex Superior Court, (C.A. No. 04-1041), was filed on March 17, 2004 on the day that the constable had scheduled to levy on the eviction and remove the Capizzis from their home. The Capizzis brought and ex parte motion to stay the eviction which was unsuccessful. The Capizzis then file a motion for ex parte permission to record a memorandum of lis pendens which the Court heard on April 13, 2004 after notice was given to States and Duffy. The counsel for States and Duffy appeared for the first time at the hearing and both presented memorandum not only opposing the lis pendens but moving for dismissal of the underlying action. Both falsely stated that the Capizzis' case had been tried in several courts. The Capizzis saw these memoranda for the first time at the hearing and had no chance to respond because the judge ruled against them and dismissed the case on the following day. The case is now on appeal in the Massachusetts Court of Appeals.

Clearly the Middlesex Superior Court case has no res judicata effect on this case. There

was no final judgment on the merits. Even assuming that the appeal is not successful, there was no finding on the merits in this case. The issues were never tried. Furthermore, this case was pending before the Middlesex case was commenced.

As for the prior Federal Court case, the default judgment, if it barred any claims against States, would only bar those matters that were raised in that case. As shown herein and in the concise statement of claims, there are a number of subsequent improper acts by States that gave rise to the Capizzis' claims for wrongful foreclosure.

**B. The *Rooker-Feldman* Doctrine does not bar the Capizzis' claims.**

States maintains that the Capizzis' claims must be rejected since they require this Court to review previous Massachusetts State Court decisions relating to the foreclosure action, the summary process proceeding in Concord District Court and the civil suit against States and Duffy in the Middlesex Superior Court. The summary process action has nothing to do with the Capizzis' claims herein except for a claim alleged against Duffy for wrongful eviction. The Middlesex Superior Court decision was commenced after this case was brought. Many of the claims in this counterclaim were raised in the prior Federal action. As previously stated, there was no trial on the merits or hearing on the issues in the Middlesex Superior Court.

**C. The Capizzis' Claims of unlawful foreclosure establish genuine issues of material fact so that States' summary process motion must be rejected.**

**1. A Fraudulent Foreclosure as Alleged in the Complaint May be Set Aside**

Courts have uniformly recognized that a foreclosure may be set aside if there is fraud on the part of the mortgagee. *White v. Macarelli*, 267 Mass. 596 (1929), states that "[t]he fact that the property was sold for a price less than its market value is not a reason for setting aside the sale if it was free from fraud and was conducted according to the terms of the power." 267 Mass. 596, 598.

5

Clearly the fraudulent activity on the part of States, as alleged by the Capizzis, would be a solid basis for setting aside the foreclosure and foreclosure sale. The Counterclaim alleges in detail the repeatedly wrongful and fraudulent efforts of States to coerce large payments from the Capizzis through repeated threats of foreclosure, to intentionally misrepresent the interest and tax escrow provisions of the Capizzis' note, to fail to pay real estate taxes to the Town of Lincoln, Massachusetts, to fail to amortize the note and ultimately to conduct a fraudulent and illegal foreclosure under the mortgage when the Capizzis' payments were current under the note and in spite of the Capizzis' unsuccessful effort to invoke their rights under the reinstatement provisions of the note and mortgage. States repeatedly filed false affidavits in the Federal District Court proceedings involving the note, in Bankruptcy proceedings commenced by Plaintiffs, and in the foreclosure proceedings and sale.

A mortgagee who forecloses a mortgage has been held to be in the position of a trustee, and in exercising the power of sale, "must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." *Seppala & Aho Constr. Co. v. Peterson*, 373 Mass. 316, 320 (1977), quoting *West Roxbury Co-op Bank v. Bowser*, 324 Mass. 489, 492 (1949). See also *Sandler v. Silk*, 292 Mass. 493, 496 (1935). If a mortgagee does anything to inhibit obtaining the highest price possible, its actions can "chill" the sale, thus violating its fiduciary obligations to the mortgagor. See *Clark v. Simmons*, 150 Mass. 357, 361 (1890); *Williams v. Resolution GGF Oy*, 417 Mass. 377, 383 (1994); *Greylock Glen Corp. v. Community Sav. Bank*, 656 F.2d 1, 4-55 (1st Cir. 1981); *In re Ruebeck*, 55 B.R. 163, 169-171 (Bkrtcy. 1985).

In *Pemstein v. Stimpson*, 36 Mass. App. Ct. 283, 286 (1994), the court noted that "[i]f the statutory norms found in G.L. c. 244, Sections 11-17B, governing foreclosure of real estate mortgages, have been adhered to, Massachusetts cases have generally regarded that as satisfying

the fiduciary duty of a mortgagee to deal fairly with the mortgaged property, unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process." Although the mere fact of some inadequacy in the selling price does not ordinarily show bad faith or lack of reasonable diligence, it may be considered with other evidence to support a finding of fraud or lack of reasonable diligence. *Union Market National Bank of Watertown v. Derderian*, 318 Mass. 578, 582 (1945).

Massachusetts law requires strict adherence to the terms and requirements of foreclosure by power of sale under G.L. c. 244, Sections 11-17B. Failure to comply with these mandatory requirements preclude a mortgagee's recovery, even if a mortgagor had knowledge of and attended the auction. *Bead Portfolio, LLC v. Follayttar*, 47 Mass. App. Ct. 533, 535-536 (1999); *Framingham Savings Bank v. Turk*, 40 Mass. App. Ct. 384, 386-387 (1996); *In re Lapointe*, 253 B.R. 496, 499-500 (1st Cir. BAP 2000).

Where errors are made in the foreclosure requirements, such as failure to state the name of the mortgage holder in the advertisement of the foreclosure sale, the subsequent foreclosure sale has been declared invalid as a matter of law. *Bottomly v. Kabachnick*, 13 Mass. App. Ct. 480, 483-484 (1982), quoting *Moore v. Dick*, 187 Mass. 207, 211-212 (1905) ("[O]ne who sells under a power [of sale] must follow strictly its terms....[and] if it fails to do so there is no valid execution of the power and the sale is wholly void."). Accord, *McGreevey v. Charlestown Five Cents Sav. Bank*, 294 Mass. 480, 483-484 (1936); *Russell v. Bon*, 221 Mass. 370, 372 (1915); *People's Sav. Bank v. Wunderlich*, 178 Mass. 453, 456-457 (1901); *Long v. Richard*, 170 Mass. 120, 128 (1898).

Clearly the foreclosure sale price was grossly inadequate by any standard. Plaintiffs obtained appraisals that prove that the foreclosure sale price of $1,200,000.00 was no more than

7

30% of the then fair market value and less than 50% of the assessed value. Defendant Duffy acknowledged prior to consummation of the foreclosure sale that he was not concerned with Plaintiffs warnings of fraudulent foreclosure because he had the opportunity to acquire the property for 20% of its market value (A.12).

There were other serious errors in the foreclosure that would invalidate the proceedings, even without proof of the fraudulent activity of States Resources in connection with the note and mortgage. As alleged in the counterclaim, States grossly understated the size of the premises in the newspaper advertisement of the foreclosure sale, stating that 2.3 acres were being sold rather than the 5.85 acres that were actually foreclosed. The property was further misdescribed as to number of bedrooms and bathrooms.

Garrett, the auctioneer, received a bid for $2,000.000 and a $50,000.00 deposit prior to the foreclosure auction, deposited the escrow and actually drew on the deposit, but ignored this offer and sold to Defendant Duffy at the foreclosure sale, ignoring the prior offer. In *Snowden v. Chase Manhattan Mortgage Corp.*, 2003 WL 22519518 (Mass. Super.) (2003) the court denied mortgagee's motion for summary judgment and granted summary judgment on liability against the mortgagee where, even though it may have complied with the statutory provisions governing the foreclosure of real estate mortgages, the mortgagee's failure to postpone the auction to permit further inquiry into the viability of the prospective buyer obtained by the mortgagor was not in compliance with its duty to act in the utmost good faith, and was in violation of its fiduciary duty to the plaintiffs to obtain for the property as large a price as possible, and constituted an unfair or deceptive practice in violation of Chapter 93A.

Where the purchaser at a foreclosure sale had notice of facts which defeated the mortgagee's title, the sale could be set aside. Whether the purchaser's conduct was fraudulent

was immaterial. *Depon v. Shawye*, 263 Mass. 206, 210 (1928). If a foreclosure sale takes place without a default in the payment of the mortgage, there can be no valid sale and not even a *bona fide* purchaser will be protected. *Rehrig v. Inman*, 258 Mass. 431, 433 (1926). In our case, Defendant Duffy, was fully aware of the fraudulent claims prior to consummation of the sale and acknowledged his intention to acquire the property at 20% of its value in spite of Plaintiffs' assertion of fraud in the foreclosure by the mortgagee.

### 2. States could not reject the bid of Mr. Florence without first bringing it to the attention of the Capizzis.

States maintains that it could not accept the $2,000,000.00 bid of Leonard Florence because in was made outside the auction process. There is no indication that States ever suggested to Mr. Florence that he bid at the next auction or advise him of this possibility. States indicated concern that the Capizzis might sue if it accepted the Florence bid but did not bring this bid to the Capizzis' attention and now asserts that if had no obligation to inform the Capizzis of the bid. Clearly the mortgagee is obligate to take all reasonable steps to maximize the amount to be obtained upon sale of the property. To bring a favorable bid to the attention of the mortgagor would seem to fall within the fiduciary obligations of the mortgagee.

### 3. Inaccurate advertising.

States maintains that the official statutory advertisements were sufficient and that it had no concern about the content of other newspaper advertisements that grossly understated the amount of acreage (2.5 as opposed to 5.8 acres) and otherwise misstated the number of room, etc. Such misstatement would clearly mislead prospective bidder and have the effect of chilling the sale.

### IV. Duffy is not entitled to summary judgment against the Capizzis on their counterclaim.

#### A. Allegations of fraud.

9

The Capizzis have not alleged fraud against Duffy although they have alleged that they informed Duffy and his attorney of the fraud of States before he acquired to Property at the foreclosure sale. They have also pointed out that they learned through Duffy's deposition that he gave his mother a false mortgage on the Property and that he has never made any payments of principal or interest on the mortgage. In the eviction proceedings and for the purpose of establishing the amount of the judgment an of the appeal bond he misled the court into believing that he was paying interest in excess of $6,000.00 per month.

Contrary to Duffy's assertion of insufficient allegation of fraud against State, the Capizzis have spelled this out in their counterclaim in great detail. Certainly no motions have been made by States to strike the allegations of fraud for lack of specificity, either in the present counterclaim or in the prior Federal court actions on this matter. It is peculiar that Duffy, a third party defendant, would raise this claim.

### B. Res Judicata does not bar the Capizzis' claims against Duffy.

Duffy's claim of res judicata is different from States in that Duffy was not a party to the prior Federal court action. Consequently, res judicata or claim preclusion would not apply to Duffy. Issue preclusion, sometimes know as collateral estoppel would not apply to Duffy because the Federal case resulted in a default judgment and was not tried on the merits.

On June 9, 2003, the Federal District Court dismissed with prejudice the Capizzis' Second Complaint as a result of the Capizzis' failure to plead or defend and entered a default judgment in favor of States on its counterclaim for liability under the note. The Capizzis were then representing themselves pro se and mistakenly believed that they were under the protection of the Bankruptcy Court. At no time did the Bankruptcy Court render any decisions relating to their liability to States under their mortgage note. No finding or determination was made in the

Federal District Court concerning the Capizzis' liability to States other than the default judgment against the Capizzis' on their complaint and in favor of States on their counterclaim in the amount of $875,203. As previously noted, the Capizzis have filed a motion to set aside the default judgment pursuant to Fed. R. Civ. P. 60(b) which is currently pending.

The property was sold at a foreclosure auction on September 26, 2004 to Duffy for $1,200,000. After the auction but prior to the sale, Duffy and his attorney were both made fully aware of the Capizzis' claims that the foreclosure was fraudulent and illegal, but nevertheless purchased the property because in their view the purchase price was 20% of the market value of the property and was worth the risk. Again false affidavits were filed by States in connection with the foreclosure and sale.

At no time was there an adjudication on the merits of the issue of States' fraudulent claims as to thr Capizzis' liability under their note, nor was there a determination on the merits of the issues raise by the Capizzis in their First or Second complaints in the Federal District Court. The Court granted a default judgment with prejudice in the Second Complaint because the Capizzis defaulted in pursuing their claims, but their liability to States and/or States liability to them are issues that were never tried on the merits.

The Capizzis have filed a motion to set aside the default judgment pursuant to Fed. R. Civ. P. 60(b) based on the fraud of States. Since the issues of liability in the Second Complaint were never tried on the merits, the Capizzis should not now be barred from raising those issues in another proceeding, even if the motion to set aside the default judgment should prove unsuccessful. But irrespective of the default judgment, several wrongful acts occurred subsequent to the default judgment that are grounds for setting aside the foreclosure. States repeatedly filed false affidavits until the foreclosure sale was completed. States also ignored

Plaintiffs' attempts to bring the mortgage current under the provision of the mortgage allowing borrowers to reinstate within five days of the scheduled auction. The advertisements for the foreclosure sale grossly understated the amount of land being foreclosed, which was nearly three times the amount stated in the advertisements, and also misstated the number of bedrooms and bathrooms in the house. The property was sold to Duffy at no more than 30% of its fair market value. Duffy acknowledged that he was aware of Plaintiffs' claims of fraud and nevertheless asserted his intention to acquire the property at 20% of its fair market value. False affidavits were filed in connection with the foreclosure sale.

In *Heacock v. Heacock*, 402 Mass. 21, 23 n.2 (1988), the court noted that "res judicata is the generic term for various doctrines by which a judgment in one action has a binding effect in another and includes both "claim preclusion" and "issue preclusion". "Claim preclusion", traditionally known as "merger" or "bar", prohibits the maintenance of an action based on the claim that was the subject of an earlier action between the same parties or their privies. "Issue preclusion", traditionally known as "collateral estoppel", prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim between the same parties or their privies. See *Bagley v. Moxley*, 407 Mass. 633, 636-637 (1990). In the *Heacock* Case, the court found no issue preclusion because the issue of fact sought to be foreclosed was not actually litigated in the prior action. *Heacock v. Heacock*, 402 Mass. 21, 25.

Even if the default judgment in the Federal District Court were deemed to prevent further litigation against States on the issue of liability under the note, which the Capizzis claim should not be the case, the Capizzis would not be precluded from litigating these issues in their claim of fraudulent foreclosure against Duffy who was not a party to the Second Federal Complaint. It is

well established under Massachusetts law that a defendant who was not a party to the earlier action may invoke the doctrine of collateral estoppel if the plaintiff had a full and fair opportunity to litigate the issue, and if equitable considerations otherwise warrant precluding relitigation. *Donald J. Fidler v. E.M. Parker Co., Inc.*, 394 Mass. 534 (1984). Collateral estoppel bars the relitigation of issues which have actually been litigated in a prior action involving the same parties, even though the prior action rested on a different claim than the present one. Although the doctrine has been extended to allow a defendant to use the doctrine defensively against a plaintiff who was a party to the prior action, even though the defendant was not a party to the prior action, the doctrine may only be applied to the extent that the issues were treated as essential to, and were fully litigated and determined in, the prior action. *Home Owners Federal Savings & Loan Ass'n v. Northwertern Fire & Marine Insurance Company*, 354 Mass. 448 (1968); *Martin v. Ring*, 401 Mass. 59 (1987). See *Fay v. FNMA*, 419 Mass. 782, 789 (1995) citing Restatement (Second) of Judgments Section 27 and 29 (1982). See also *Comm'r Dept. Employment and Training v. Dugan*, 428 Mass. 138, 142 (1998) (issue decided in prior action must be identical to issue in current adjudication and essential to earlier judgment for collateral estoppel to apply).

In *Jarosz v. Palmer*, 436 Mass. 526, 530-531 (2002), the court stated that the doctrine of issue preclusion provides that when an issue has been "actually litigate and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim" quoting *Cousineau v. Laramee*, 388 Mass. 859, 863 n.4 (1983). The court in *Jarosz v. Palmer*, 436 Mass. 526, 533 concluded that the term "judgment" refers to a final determination on the merits of the proceeding, and stated that for a ruling to have preclusive effect, it must have a

13

bearing on the outcome of the case. The court noted prior Massachusetts cases holding that a dismissal with prejudice constitutes a valid final judgment for the purposes of claim preclusion, citing *Department of Revenue v. LaFratta*, 408 Mass. 688, 692 (1990); *Tuite & Sons v. Shawmut Bank, N.A.*, 43 Mass. App. Ct. 751, 755 (1997), but concluded that this principle does not apply with equal force to issue preclusion. In *Treglia v. MacDonald*, 430 Mass. 237, 241-242 (1999), the court held that a default judgment in the Superior Court on a fraud claim that was not actually litigated did not have preclusive effect in a subsequent bankruptcy action in which the same claim was raised between the same parties. Citing Restatement (Second) of Judgments s. 27 comment e, at 257 (1982), the court stated that it is generally held that a default judgment does not have preclusive effect on an issue in a subsequent action because the issues have not been actually litigated.

The issues in this case were never litigated in the Federal District Court, and the Capizzis, who were representing themselves pro se, defaulted due to lack of awareness of the court requirements and because they mistakenly believed that their interests were protected through the Bankruptcy Court proceedings.

The Capizzis attempted to introduce evidence of the fraudulent foreclosure in the eviction proceeding brought by Duffy in the Concord District Court, but were unsuccessful in introducing any evidence of their full payment of the note held by States and the subsequent fraudulent foreclosure. Although the issue was not raised in the eviction proceeding against the Capizzis, Massachusetts courts have held that the issue of plaintiff mortgagee's want of good faith when it took title at the foreclosure sale is not relevant in summary process. Right to possession must be shown, and legal title may be put in issue, but the defendant must seek affirmative relief in equity if there are any other grounds to set aside the foreclosure. *Wayne Investment Corporation*

*v. Ethel Abbott, et al.*, 350 Mass. 775 (1966).

There was absolutely no determination of any issues involving the validity of the foreclosure in the eviction proceeding or in the subsequent unsuccessful Bankruptcy filing by Plaintiff Michael Capizzi or in the subsequent action commenced in the Federal District Court to stay the execution on the eviction or obtain a temporary restraining order. Likewise the ex parte request for a stay of the eviction in the Midddlesex Superior Court case was denied without any adjudication of the Capizzis' claim of fraudulent foreclosure.

### C. Wrongful evection claim not barred by Rooker-Feldman.

The Capizzis are not trying to alter the eviction judgment of the Concord District Court but rather are claiming that Duffy wrongfully proceeded to eviction when he and his attorney knew that the foreclosure was fraudulent and illegal. Thus the Capizzis are not challenging the Concord District Court proceeding, but rather the action of Duffy in bringing that proceeding.

Dated: November 1, 2004

_____
Michael Capizzi, pro se
1725 Wedgewood Common
Concord, Massachusett 01742
(978) 369-4894

_____
Catherine R. Capizzi, pro se
1725 Wedgewood Common
Concord, Massachusett 01742
(978) 369-4894

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of above document was served upon the attorney of record for each of the parties hereto by mail on the date set forth below.

Date: November 2, 2004

_____
Michael Capizzi

15