April 7, 2005

Clerk's Office
USDC for the District of Massachusetts
U.S. Courthouse
One Courthouse Way
Boston, MA 02110

**RE:    States Resources Corp. v. Michael Capizzi, et al.**
        *Civil Action No. 04 10095 DPW*

Dear Sir or Madam:

      Pursuant to Judge Woodlock's request, enclosed herein please find Plaintiff's Second Memorandum in Support of States Resources Corporation's Motion Requiring a $50,000.00 Bond to be Posted for Costs on Appeal.

                                    Thank you,

                                      /s/ Erin Powers
                                      Erin E. Powers

Encl.

# UNITED STATES OF AMERICA
## DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| **STATES RESOURCES CORPORATION,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | **Civil Action No. 04 10095 DPW** |
| **v.** ) | |
| ) | |
| **MICHAEL CAPIZZI, ET AL.** ) | |
| ) | |
| **Defendants** ) | |
| ) | |
| ) | |

## SECOND MEMORANDUM IN SUPPORT OF STATES RESOURCES CORPORATION'S MOTION REQUIRING A $50,000.00 BOND TO BE POSTED FOR COSTS ON APPEAL

In support of States Resources Corporation's ("States") Motion Requiring a $50,000.00 Bond to be Posted for Costs on Appeal, the Plaintiff, by and through its attorneys, Doonan, Graves & Longoria, LLC, hereby submits the following memorandum of law specifically addressing States' right to security for anticipated appellate attorneys' fees under Fed. R. App. P. 7.

## I. STANDARD OF REVIEW

Fed. R. App. P. 7 gives the district court discretionary authority to require an appellant to file an appeal bond as security for costs on appeal. If an appeal bond is required, the nature of the bond and the amount of the bond is within the discretion of the district court. *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987). Having first hand knowledge of the case, the district court has the ability to impose a bond that reflects the likely outcome on appeal and that includes not only the procedural costs of appeal, but also anticipated attorneys' fees that may be awarded. *Id.*; *see Adsani v. Miller*, 139 F.3d 67, 71-75 (2d Cir. 1998), cert. denied. 525 U.S. 875 (1998).

## II.  ARGURMENT

States requests that an appeal bond be required in this case in order to protect all parties from the appellants', The Architectural Team ("TAT") and  Michael Capizzi and Catherine Capizzi ("the Capizzis"), frivolous claims, as well as, from the excessive costs involved in appellate actions, including, but not limited to the filing fee, copying costs, printing costs, reproduction costs and attorneys' fees.  The imposition of an appeal bond under Fed. R. App. P. 7, would provide States with the security it needs to deal with the anticipated burden of being forced to litigate at the appellate level TAT and the Capizzis' claims, which have no chance of success under existing law and precedent.

Fed. R. App. P. 7 provides that a bond may be required to ensure payment of costs on appeal.  Since "costs" is not specifically defined in Fed. R. App. P. 7, the interpretation of "costs" and whether it includes anticipated attorneys' fees incurred on appeal has been left to the courts to determine.  While the First Circuit has not put forth as in-depth an analysis of the meaning of "costs" under Fed. R. App. P. 7 as other circuits, in *Sckolnick v. Harlow*, 820 F.2d 13 (1st  Cir. 1987),  it upheld an appeal bond for costs that specifically included attorneys' fees, where there was evidence that the appeal may be frivolous.  In *Sckolnick v. Harlow*, the district court required the pro se appellant to post an appeal bond as security for anticipated costs and appellate attorneys' fees, because there was possibility that said fees may be awarded by the appeals court.  The First Circuit held that the district court did not abuse its discretion when it included attorneys' fees in the amount of the bond, since it "implied a view that the appeal might be frivolous and that an award of sanctions against [the appellant] on appeal was a real possibility.  *Id*. at 15; s*ee In re Compact Disc Minimum Advertised Price Antitrust Litigation,* 2003 WL 22417252, *1-2 (D. Me. Oct. 7, 2003). "By implication, 'costs' under Rule 7 would not exclude attorney's fees as a blanket rule for [the

First Circuit]." *Adsani v. Miller*, 139 F.3d 67, 73 (2d Cir. 1998). Consequently, it is clear that the First Circuit allows attorneys' fees to be included as "costs" and the subject of an appeal bond.

While there is a split of authority between the circuits on the definition of "costs" under Fed. R. App. P. 7, the First Circuit "seems to have adopted by implication at any rate a fairly liberal construction of Fed. Rule. App. P. 7. *Donato v. McCarthy*, 2001 WL 1326583, *1 (D. N.H. Oct. 9, 2001).[1] Following the First Circuit's analysis in *Sckolnick v. Harlow*, States has the right to seek security for anticipated appellate attorneys' fees that may be awarded by the appeals court. Here, the evidence clearly shows that TAT and the Capizzis are pursuing unmeritorious appeals that will only result in unnecessary delay in the resolution of this matter and increased litigation costs. Both TAT and the Capizzis have overburdened all parties in this action with their frivolous claims that are unsupported by the law and the facts of this case.

Throughout this action, TAT and the Capizzis have attempted to obscure the facts and hinder the efficient resolution of the case. As shown in Document no. 94, Garrett, Inc.'s Supplemental Local Rule 7.1(a)(2) Certification, since the beginning of this litigation, counsel for TAT has besieged all parties of record with "multiple detailed communications," which counsel for Garrett, Inc. accurately described as "increasingly acrimonious and personal." Furthermore, counsel for TAT has demonstrated a lack of civility and reasonableness in his communication with all parties, particularly counsel for Garrett, Inc. and counsel for States. *See* Document no. 94,

---

[1] The Second Circuit and the Eleventh Circuit have held that that Fed. R. App. P. 39 cannot be used to define "costs" as it is used in Fed. R. App. P. 7. *See Adsani v. Miller*, 139 F.3d 67, 71-75 (2d Cir. 1998) cert. denied. 525 U.S. 875 (1998); *Pedraza v. United Guaranty Corporation*, 313 F.3d 1323, 1330 (11th Cir. 2002). Fed. R. App. P. 39 only provides the circumstances under which "costs" can be awarded and, more importantly, does not set forth a specific definition of "costs" that can be applied to Fed. R. Civ. P. 7. *Adsani*, 139 F.3d at 75. Accordingly, both Circuits have held that the term "costs" in Fed. R. App. P. 7 does include anticipated attorneys' fees incurred in the appellate action, when the law governing the action specifically authorizes the awarding of attorneys' fees to the prevailing party. *See Adsani*, 139 F.3d at 71-75; *Pedraza*, 313 F.3d at 1333. However, the Third Circuit and the D.C. Circuit have held that the term "costs" under Fed. R. App. P. 7 is defined pursuant to Fed. R. App. P. 39 and that said definition does not include anticipated appellate attorneys' fees. *See Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL 307777, *2-3 (3d Cir. June 10, 1997); *In re Presidential Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985).

Exhibits 2 & 3; *see also* Document no. 159, Exhibits B & C.  Any attempts at conciliation by the parties in this action towards counsel for TAT have been rebuffed. *See* Document no. 94, Exhibit 3.

Furthermore, the Capizzis' litigious behavior concerning 236 Lincoln Road, Lincoln, MA ("the Property") over the past five years has resulted in multiple suits in federal and state court against States, all of which have been unsuccessful.[2]  They have clearly abused their litigation rights and taken advantage of the judicial process.    In all of these actions, the Capizzis have put forth the same allegations and claims as those litigated in this action.  After considering the merits of TAT's claims and the Capizzis' claims, their likelihood of success on appeal and the possibility that sanctions may be imposed under Fed. R. App. P. 38, it is necessary that this Court require a bond that secures all costs on appeal, including attorneys' fees.  *See Sckolnick*, 820 F.2d at 15;  *Adsani v. Miller*, 139 F.3d  at 71-75.

Additionally, the mortgage executed and delivered by Michael Capizzi to States supports the proposition that anticipated attorneys' fees should be secured by the appeal bond.   The mortgage specifically provides for the recovery of attorneys fees on the part of lender in two circumstances. *See* Exhibit A (a true and correct copy of the mortgage is attached hereto).  Paragraph seven of the mortgage states that in any legal proceeding that may significantly affect the lender's rights in the property, the lender may do whatever is necessary to protect its rights, including paying attorneys' fees.   Any amounts disbursed by the lender would then become additional debt of the borrower, bearing interest from the date of disbursement.  Further, in paragraph nineteen of the mortgage, amended in the mortgage modification agreement, States is entitled "to collect all reasonable costs and expenses incurred in pursuing [the acceleration remedies provided for in said paragraph] including, but not limited to, reasonable attorney's fees."  Not only are the Capizzis bound by the terms of the mortgage, but as the junior lien holder on the Property, so is TAT.  TAT is subordinate

---

[2] The Middlesex Superior Court action, commenced on March 17, 2004 and subsequently dismissed by Judge Burnes on April 13, 2004, is currently before the Massachusetts Appeals Court, who is reviewing the parties' briefs.

and subject to the rights of States as enumerated in the Mortgage, which TAT had constructive notice of, since it was recorded in the Middlesex Southern Registry of Deeds, in Book 19420, Page 84, prior to TAT's attachment being recorded on September 24, 1993, in the Middlesex Southern Registry of Deeds, at Book 41000, Page 259..  Here the underlying contact, the mortgage, clearly provides for the collection of attorneys' fees by States on suits that affect its rights in the property and/ or challenge the actions States takes pursuant to its acceleration and remedy rights.

## III. CONCLUSION

The Plaintiff respectfully requests that this Court include in its determination of  the "costs" of appeal anticipated appellate attorneys' fees and grant its Motion for Requiring a $50,000.00 Bond to be Posted For Costs on Appeal and for such further relief as this Court deems just.

Respectfully Submitted,

Date: April 7, 2005                           /s/ John A. Doonan_____
                                              John A. Doonan, Esq. (BBO# 547838)
                                              Reneau J. Longoria, Esq. (BBO#635118)
                                              Attorneys for States Resources Corporation
                                              Doonan, Graves & Longoria, L.L.C.
                                              100 Cummings Center, Suite 213C
                                              Beverly, MA  01915
                                              (978) 921-2670

———————————————— [Space Above This Line For Recording Data] ———————————— 10-57-9

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on .......... October 19, ............................. ,
19 88 . The mortgagor is .. Michael Capizzi ..............................................................................
............................................... ("Borrower"). This Security Instrument is given to .................................
.. Winchendon Savings Bank ......................................................................., which is organized and existing
under the laws of .... Massachusetts ............................... and whose address is ...................................................
.. 112 Central Street, Winchendon, MA 01475 ................................................. ("Lender").
Borrower owes Lender the principal sum of ..SEVEN HUNDRED FIFTY THOUSAND AND NO/100...............
.............................................. Dollars (U.S. $ .. 750,000.00 ....). This debt is evidenced by Borrower's note
dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not
paid earlier, due and payable on ................ October 19, 2018 ........................ This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and
the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following
described property located in ................................... Middlesex ............................... County, Massachusetts:

For property description see Schedule "A" attached hereto and made
a part hereof.

which has the address of ............ Lincoln Road, ........................................., Lincoln ........................... ,
                                              [Street]                                                    [City]
Massachusetts ..... 01773 ........................... ("Property Address");
                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or
hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the
foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

ᴬCHUSETTS—Single Family—FNMA/FHLMC UNIFORM INSTRUMENT

TA CONCEPTS, INC



UNIFORM COVENANTS. Borrow    nd Lender covenant and agree as follows:

**1. Payment of Principal and In  .est; Prepayment and Late Charges.** Borro     .. ;hall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest. upon notice from Lender to Borrower requesting payment.



If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**13. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**20. Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

**21. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**22. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- [X] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] 2–4 Family Rider
- [ ] Graduated Payment Rider
- [ ] Planned Unit Development Rider
- [X] Other(s) [specify]   Mortgage Modification Agreement

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

.......................................................................(Seal)
Michael/Capizzi                                           —Borrower

.......................................................................(Seal)
                                                          —Borrower

———————————— [Space Below This Line For Acknowledgment] ————————————

COMMONWEALTH OF MASSACHUSETTS

Middlesex
~~XXXXXXX~~ss.                                        October 19     , 19 88

Then personally appeared the above named
Michael Capizzi
and acknowledged the foregoing instrument to be      his        free act and deed,

before me,

REGISTER

Cathy Nitt
                                                      Notary Public.
My commission expires

Cathy Netburn
Notary Public
**My Commission Expires Sept. 25, 1992**

SCHEDULE "A"

The following parcels of land situated in the Southerly part of Lincoln, Middlesex County, Commonwealth of Massachusetts:

1) That parcels of land described as Lot 117-22.01 on a plan entitled "PLAN OF Land in Lincoln, MA., owned by John L. Przybylski, scale 1 inch = 60 feet, Snelling, Hilton & Asso.,Lincoln, MA., Civil Engineers & Land Surveyors, dated May 19,1980 " and recorded with Middlesex South District Registry of Deeds in Book 14168, Page 381; bounded and described as follows:

<u>SOUTHEASTERLY</u>      by land now formerly of Gallitano, as shown on said plan, Two Hundred Fifty-Three and 27/100 (253.27) feet;

<u>SOUTHWESTERLY</u>      by Lot 117-22.012, as shown on said plan, by two lines, Two Hundred Five and 71/100 (205.71) feet, and Two Hundred Fifty-Eight and 22/100 (258.22) feet;

<u>NORTHWESTERLY</u>      by Lot 117-22.02, as shown on said plan, Two Hundred Fifteen and 48/100 (215.48) feet;

<u>NORTHERLY</u>      by 117-22.02, by a curved line Sixty-Three and 68/100 (63.68) feet;

<u>NORTHEASTERLY</u>      by Lot 117-22.02, Two Hundred One and 89/100 (201.89) feet;

<u>EASTERLY</u>      by Lot 117-22.02, by a curved line, One Hundred Twenty-Three and 66/100 (123.66) feet, to the point of beginning.

Said Lot Containing 111,494 square feet, more or less according to said plan.

2) That parcel of land described as Lot 117-21.012 on the aforementioned plan, bounded and described as follows:

SOUTHEASTERLY    by land now or formerly of Gallitano, as shown on said plan, One Hundred Twenty-Eight and 48/100 (128.48) feet;

SOUTHWESTERLY    by land now or formerly of Coffin and the Lincoln land Conservation Trust and Burt, by four lines, Fifty-Three (53.00) feet, Three Hundred Forty and 95/100 (340.95) feet, Seventy-Nine (79.00) feet, and Sixty-Four and 88/100 ( 64.88) feet;

WESTERLY    by land, now or formerly of Burt, Eighty-Four and 31/100 (84.31) feet;

NORTHWESTERLY    by Lots 117-21.07 and 117-22.02 by two lines, One Hundred Fifteen and 29/100 (115.29) feet, and by a curved line Sixty- Four and 15/100 (64.15) feet;

NORTHEASTERLY    by Lot 117-22.01, by two lines, Two Hundred Fifty-Eight and 22/100 (258.22) feet, and Two Hundred Five and 71/100 (205.71) feet to the point of beginning.

Said Lot containing 85,737 square feet, more or less, according to said plan.


3) That parcel of land described as Lot 117-22.03, on "Plan Showing Subdivision of Land in Lincoln, MA., owned by Alphonse L. and Eleanor M. Gallitano and John L. and Jean M. Przybylski ( scale 1 inch = 60 feet) July 1975, Snelling, Hilton & Asso., Lincoln ,MA., Civil Engineers and Land Surveyors", and recorded with Middlesex South District Registry of Deeds in Book 12893, Page 712, bounded and described as follows:

SOUTHEASTERLY    by Lot 117-22.02 as described on said plan, One Hundred Eighty-Three and 51/100 (183.51) feet;

NORTHWESTERLY    by land now or formerly of John A. and Marion M. MacDearmid, Two Hundred Twenty-Eight and 43/100 (228.43) feet;

NORTHEASTERLY    by Lot 117-22.04 as described on said plan, Two Hundred Twenty-Eight and 32/100 (228.32) feet, to point of beginning.

Containing 19,190 square feet more or less according to said plan.



4)  That  parcel of land described as Lot 117-22.02(a minor street) on
the  above mentioned plan. Containing  33,310 square feet more or less.
Subject to   a  right  of  way granted to Alphonse L. and Eleanor M.
Gallitano,  husband  and  wife,  and  their heirs and assigns, dated
November  12,  1975,  and recorded in Book 12893, Page 718. For a more
definite description refer to said plan in Book 12893, Page 712.

5)  That  parcel of land described as Lot 117-21.07 on a "Plan Showing
an   Exchange   of   Land   in   Lincoln,  MA.,  Snelling,  Hilton  &
Assoc.-Lincoln,  Mass.,  Civil Engineers & Land Surveyors, June 1976",
recorded  with  Middlesex  South  District  Registry  of Deeds in Book
13332, Page 155, more particularly described as follows:

NORTHEASTERLY        by  Lot  117-21.06,  Eighty-Eight and 56/100 (88.56)
                     feet;

SOUTHEASTERLY        by  Lot  117-22.01,  One  Hundred Fifteen and 29/100
                     (115.29) feet; and

WESTERLY             by  Lot  117-21, One Hundred Fourteen and 44/100
                     (114.44) feet to the point of beginning.

Containing according to said plan 4,694 square feet, more or less.

6)  A  right  of  way for all usual purposes that streets and ways are
now  or have been used in the Town of Lincoln over that parcel of land
described  in  a  Plan  of  Land entitled "Plan Showing Subdivision of
Land  in  Lincoln,  MA.,  owned by Alphonse L. and Eleanor M. Gallitano
and  John  L.  and  Jean  M. Przybylski", scale 1 inch = 60 feet, July
1975,  Snelling,  Hilton & Asso., Lincoln, MA., Civil Engineers & Land
Surveyors,  being lot 117-22.04 as described on said plan and having a
width  of  33 feet and an area of 39,958 square feet more or less. For
a  more  definite  description  see  plan recorded in Book 12893, Page
712,                           said                              Deeds.



7) All right, title and interest in an undivided one-half interest in and to certain easements which the grantor owns and has the benefit of by virtue of a reservation of said easements in deed from Concord Countryside Realty, Inc. to William F. Burt and Donna G. Burt, of Lots 1, situated Longmeadow Road in the Town of Lincoln, Middlesex County, Commonwealth of Massachusetts, as shown on a plan entitled "Plan of land in Lincoln, Mass., dated October 28, 1971, Albert A. Miller and Wilbur C. Nylander, Civil Engineers and Surveyors, recorded with Middlesex South District Registry of Deeds as Plan No. 143 (A of 3) of 1972 and recorded Book 12158, Page 071, said deed being dated September 1,1972 , recorded with Middlesex South District Registry of Deeds in Record Book 12281, Page 98, said reserved easements being described in said deed as follows:

"The within conveyancing is made subject to reservation of a right of a right of way and easement 50' in width extending from Longmeadow Road to the land of Dorothy G. Gray as shown on the aforementioned plan along the Northeasterly boundary being a distance of 198.81 feet according to said plan; said right of way and easement being for all purposes for which streets and ways are commonly used in the Town of Lincoln and including without limiting the foregoing the right to install electric, telephone, water, sewer, gas, facilities, equipment and services to to and from Longmeadow Road to the Land of said Dorothy G. Gray, including the right to operate, maintain and repair the same."

Said premises are further conveyed subject to and with the benefit of easements, rights, restrictions and agreements of record, if any there be, insofar as the same are now in force and applicable.

For title, see deed to the mortgagor recorded with said Deeds in Book 17611, Page 334.

MORT.   MODIFICATION AGREEMENT

In consideration of Lender granting a mortgage to the undersigned, the parties hereby agree to amend Paragraph 19 of said mortgage, executed of even date as follows:

Paragraph 19 is deleted in full and the following Paragraphs inserted in its place:

> "19.   Acceleration; Remedies.   Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this mortgage, or if a monthly installment remains unpaid for a period of thirty days after the same becomes due and payable, the entire principal amount outstanding hereunder the accrued interest thereon shall at once become due and payable at the option of the Lender.   Failure to exercise such option shall not constitute a waiver of the right to exercise such option if the undersigned is in default hereunder."

> "Statutory Power of Sale.   This Mortgage is upon the Statutory Condition, for any breach of which the Lender shall have the Statutory Power of Sale. Lender shall be entitled to collect all reasonable costs and expenses incurred inpursuing the remedies provided in this Paragraph 19 including, but not limited to, reasonable attorney's fees."

The parties furthermore agree that if the Federal Home Loan Mortgage Corporation, or the Federal National Mortgage Association, or the Government National Mortgage Association buys all or some of the Lender's rights under said Mortgage, then this mortgage Modification Agreement shall no longer apply and the original Paragraph 19 in said mortgage shall be in effect.

October 19, 1988
Date

Borrower Michael Gspizzi

Co-Borrower